DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:24-CR-00091-ODW |
| v. | ) | |
| | ) | |
| ALEXANDER SMIRNOV, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**DEFENDANT'S SECOND RENEWED EMERGENCY *EX PARTE* MOTION FOR (1) PROVISION OF EYE DROPS, AND (2) A COURT ORDERED MEDICAL FURLOUGH UNDER 18 U.S.C. § 3142(i) FOR EYE SURGERY WITH DR. H. GEORGE TANAKA**

COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby Submits his Second Renewed Emergency *Ex Parte* Motion for the following relief:

1. Immediate provision of Mr. Smirnov's eye drops; and

1

2.      A court order that for a medical furlough under 18 U.S.C. § 3142(i), to have eye surgery performed by his doctor, H. George Tanaka, M.D., under any reasonable conditions of release imposed by this Court.

On May 20 and 21, 2024, undersigned counsel sent several emails and text messages to counsel for the government to determine the government's position as to Mr. Smirnov's present motion. On May 21, 2024, the government advised that it opposed any requests for release for medical treatment, as sought in this motion.

In filing this motion, Mr. Smirnov refers this Court to developments that have taken place since this Court's denial of Mr. Smirnov's prior motion on May 15 (*see* Dkt. 69, May 15, 2024), as set forth in Dr. Tanaka's letters of May 15 (attached as Exhibit 1) and May 17, 2024 (attached as Exhibit 2).

Dated this 21st day of May, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   FACTS AND PROCEDURAL HISTORY.

*1.   In his letter of May 17, 2024, Dr. Tanaka issued a blunt warning about Mr. Smirnov's imminent blindness.*

The current motion is prompted by Dr. Tanaka's recent, dire warning of Mr. Smirnov's deteriorating eye condition and imminent blindness. *See infra* at (A)(5) ("Withholding Mr. Smirnov's eye drops is tantamount to allowing Mr. Smirnoff to go blind . . . . These eye drops are not 'Pain-Reducing' medications meant to provide comfort. They are necessary to prevent blindness from glaucoma. Mr. Smirnov's current complaints of pain and blurry vision indicate his . . . glaucoma is being grossly undertreated. This would be blatantly obvious with a proper examination of Mr. Smirnov's eyes and a measurement of his intraocular pressure which is evidently beyond the capabilities of the jail. Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail officials.").

It is with this warning in mind (and, mindful of Dr. Tanaka's clear opinion that proper medical treatment is "beyond the capabilities" of the government) that Mr. Smirnov reviews the history of his non-treatment in this case.

*2.   Back in February, Mr. Smirnov advises this Court about his severe eye condition and seeks treatment, which this Court rejects.*

As this Court is aware, at the detention hearing on February 26, 2024, defense counsel advised of his concern related to Mr. Smirnov's need for eye surgery. Notwithstanding this concern, Mr. Smirnov (who had been rearrested on February 22, 2024, despite having spent the two prior days on conditions of release, with no attempt at "flight") was formally ordered detained. He has been in the continuous custody of the Marshal's Service since February 22.

As this Court is also aware, Mr. Smirnov filed on March 11, 2024 an Emergency *Ex Parte* Motion seeking remedies for his deteriorating eye condition. *See* Dkt. 52 (Mar. 11, 2024). His

3

motion requested either: a) that he be released on a medical furlough under 18 U.S.C. § 3142(i) to have his eye surgery performed by his treating physician Dr. Tanaka; or b) that this Court order the Marshal's Service to transport him to Dr. Tanaka, for eye surgery which had been scheduled (at that point) for March 27, 2024.[1]

On March 13, 2024, after the government filed an opposition, this Court denied Mr. Smirnov's motion, urging him to follow internal protocols to receive his remedies. *See* Dkt. 56 (Mar. 13, 2024).[2]

> 3. *After a lengthy delay, Mr. Smirnov receives his eye drops; however, the eye surgery promised by the government-contracted doctor is abruptly cancelled when that doctor expresses concerns about his payment.*

---

[1]      In his prior motion, Mr. Smirnov explained the need for a court order compelling the Marshal's Service to take action:

> On March 8, 2024, Counsel Chesnoff spoke to a United States Marshals' Office Los Angeles representative . . . . The representative . . . stated that it would not be within the Marshals' protocol to travel with a prisoner for six hours to San Francisco for surgery. He further stated that the process requires the Defendant to first notice the medical staff at the Santa Ana City jail of his medical problem issues . . . . As stated herein, . . . this protocol will not address Defendant's serious eye issues . . . and may result in irreparable harm. For that reason, that Defendant is seeking the alternative remedy of a Court Order directing the USMS to transport Defendant for the surgery and post-operative care with Dr. Tanaka.

Dkt. 52 at 2, n.1.

Mr. Smirnov also attached to his March 11 motion a letter from Dr. Tanaka, stating in summary that "Mr. Smirnov has [already] undergone several surgeries to treat his glaucoma and prevent blindness; however, his intraocular pressure continues to be poorly controlled . . . . Mr. Smirnov has suffered severe optic nerve damage from glaucoma."

[2]      This Court stated on March 13: "There are procedures in place to assure the medical needs of inmates are met. The first step in the established protocol . . . is a request made to the detaining facility, in this case the Santa Ana City Jail. . . . *Defendant has apparently initiated that process and his request has been evaluated.* Assuming the necessary procedure cannot be performed at his current facility, upon approval by the USMS, he will be transported to an appropriate medical facility under contract with the USMS, for the necessary medical procedure." Dkt. 56 at 1-2 (emphases added).

Since the Court's March 13 order denying Mr. Smirnov's motion, his efforts to receive medical care have been frustrated. First, after an initial delay of several weeks, Mr. Smirnov was eventually given his medically prescribed eye drops to treat the intense pain in his eyes. Unfortunately, despite this short period of humane compliance, Mr. Smirnov advised counsel (in an email dated May 8, 2024) that he had awakened that day with "strong eye pain" and had been without his eye drops notwithstanding having filed an Inmate Grievance Form on May 4, 2024.

Second, Mr. Smirnov's efforts to pursue the internal remedial "process" touted by this Court (*see supra* at n.2) have proven fruitless. *See* Dkt. 56 (Court recognizes that, as of its March 13 order, Mr. Smirnov had indeed "initiated that process"). At some point after this Court's order, Mr. Smirnov was taken to an eye doctor (apparently named Dr. Lee) who served as a government contractor. That doctor assured Mr. Smirnov that his eye surgery should indeed take place and scheduled that surgery.

That surgeon's office, however, thereafter cancelled the surgery, on short notice. As relayed to defense counsel by the Marshal's Service, the surgeon's office had expressed concern about whether they would be paid for performing the eye surgery. Hearing this, counsel told the Marshal to advise the doctor's office that counsel would personally guarantee payment for his client's surgery.

> 4.   *In an order dated May 15, 2024 (Dkt. 69), this Court denies Mr. Smirnov's renewed emergency motion (Dkt. 67), based on the government representations in Dkt. 68.*

After Mr. Smirnov filed a renewed *ex parte* emergency motion (Dkt. 67) to address these medical issues, the government filed a response that contained factual representations purporting to address Mr. Smirnov's condition. *See* Dkt. 68 at 1 (stating that, based on a conversation with the Marshals Service, "the government understands that (1) Santa Ana City Jail officials retrieved eye drops from Defendant because they were expired, and have not provided new eye drops yet

because the drops, according to the jail's medical staff, are for pre-operative care; and (2) jail officials have scheduled a surgery for Defendant with a local ophthalmologist set for the last week of May 2024.") (referring to Declaration of Sean F. Mulryne).

The day after the government's response, this Court entered an order that—without mentioning the issues raised by the non-provision of Mr. Smirnov's eye drops—held:

> Having once again given further consideration of the earlier filings and especially noting the Declaration of Sean F. Mulryne, co-counsel for the United States, submitted in support of the government's opposition to the motion, in which counsel states that surgery has been scheduled to take place in less than two weeks, the instant motion is again DENIED as moot.

Dkt. 69 (May 15, 2024).

> 5.  *Dr. Tanaka's letter of May 17 (attached as Exhibit 2) makes plain that the government's representations are inaccurate and, more importantly, that Mr. Smirnov is going blind due to the government's non-treatment.*

Reviewing this Court's ruling and the government representations upon which it rested, Dr. Tanaka registered his strong disagreement—and, warned of his patient's impending blindness—in a letter (attached as Exhibit 2) dated May 17, 2024:

> I read with great concern the above referenced document regarding my patient, Alexander Smirnov, who carries a diagnosis of severe open angle glaucoma in both eyes.
>
> I have documented in previous correspondence that continued ophthalmologic care is essential to maintain Mr. Smirnov's eyesight. Glaucoma is a progressive and incurable disease that requires daily eyedrop medications to prevent irreversible and permanent blindness. Santa Ana City Jail officials have confiscated my patient's eye drops and have not provided him with any new eye drops because "the eye drops are for pre-operative care." This statement is completely erroneous and untrue. Glaucoma patients are required to take daily eye drop medications to control their intraocular pressure around the clock. These drops are not simply taken before an operation. They are required *every day* to prevent irreversible blindness. It is obvious that the medical staff at Santa Ana City Jail are not qualified to make any judgements whatsoever regarding the medical necessity of Mr. Smirnov's glaucoma medications. *Withholding Mr. Smirnov's eye drops is tantamount to allowing Mr. Smirnoff to go blind which falls below the standard of care of any accredited medical facility.*

6

These eye drops are not "Pain-Reducing" medications meant to provide comfort. They are necessary to prevent blindness from glaucoma. Mr. Smirnov's current complaints of pain and blurry vision indicate his intraocular pressure is markedly elevated and his glaucoma is being grossly undertreated. This would be blatantly obvious with a proper examination of Mr. Smirnov's eyes and a measurement of his intraocular pressure which is evidently beyond the capabilities of the jail. *Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail offi*cials.

In addition, Mr. Smirnoff has requested a medical furlough which would allow him the opportunity to have prompt and appropriate surgical therapy for his glaucoma by a qualified and experienced fellowship-trained glaucoma specialist such as myself. *By holding Mr. Smirnov in custody and withholding without proper medical care, the United States government is complicit in the loss of his vision.*

In my professional opinion Mr. Smirnov's visual health would be best served by releasing him from custody so that I may immediately resume appropriate sight-saving therapy including all necessary glaucoma medications and promptly schedule and perform his long overdue glaucoma surgery. I am fully qualified, prepared and equipped to provide Mr. Smirnov with the urgent ophthalmologic attention he needs to restore his vision, and I will assume full responsibility for his glaucoma care during the time he is released from custody.

I urge the Court to grant Mr. Smirnov's motion for 1) Immediate restoration of his glaucoma therapy and 2) Release from custody to receive prompt and appropriate glaucoma surgery.

Exhibit 2 (May 17, 2024) at 1 (first emphasis original; additional emphases added).

**B.      THE COURT SHOULD ORDER THAT MR. SMIRNOV BE IMMEDIATELY GRANTED THE MEDICAL CARE TO WHICH HE IS ENTITLED.**

While this Court understandably believes 1) that Mr. Smirnov is currently scheduled for off-site eye surgery next week and 2) that this surgery (with a government-contracted doctor) will help him, Mr. Smirnov respectfully suggests that continuing along this path—a path that places Mr. Smirnov's eyesight in the hands of bureaucrats, local jail officials, and contract surgeons—may constitute deliberate indifference to fast-approaching blindness. *See, e.g.*, *Hussain v. Ponce*, No. CV1806579JFWRAO, 2018 WL 6220015, at *3–4 (C.D. Cal. Aug. 15, 2018) ("The government must give medical care to incarcerated persons. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)). Failure to do so can

1  constitute an Eighth Amendment violation. *Id.* In order to prevail on an inadequate medical care

2  claim, a plaintiff must show "deliberate indifference to his serious medical needs." *Id.* (quotations

3  omitted).").

4      Instead, Mr. Smirnov urges: 1) that surgery with Dr. Tanaka *alone* (*not* with a team that is

5  "evidently" incapable of providing this complicated surgery) be immediately ordered in this case,

6  and 2) that immediate provision of all of Mr. Smirnov's eye drops (which are *not*, as the

7  government mistakenly suggests, needed only for "pre-operative care") should be ordered.

8

9  **C.   CONCLUSION**

10     Defendant requests that this Court grant this Second Renewed Emergency *Ex Parte* Motion

11  and order the relief requested herein.

12     DATED this 21st day of May, 2024.

13

14                        Respectfully Submitted:

15                        CHESNOFF & SCHONFELD

16

17                         /s/  David Z. Chesnoff
                        DAVID Z. CHESNOFF, ESQ.

18                        *Pro Hac Vice*
                        RICHARD A. SCHONFELD, ESQ.

19                        California Bar No. 202182
                        520 South Fourth Street

20                        Las Vegas, Nevada 89101

21                        Telephone: (702)384-5563
                        rschonfeld@cslawoffice.net

22                        dzchesnoff@cslawoffice.net

23                        Attorneys for Defendant
                        ALEXANDER SMIRNOV

24

25

26

27

28

## DECLARATION OF COUNSEL

I, David Z. Chesnoff, do hereby declare that the following statements are true and correct:

1. I am co-counsel of record for Defendant Alexander Smirnov in this case.

2. The assertions in the underlying Second Renewed Emergency *Ex Parte* Motion are true and correct upon information and belief.

3. Undersigned counsel has communicated with counsel for the government over the past two days but, as of noon on May 21, 2024, the government has not agreed to the remedies sought in this Second Renewed *Ex Parte* Motion.

4. This Second Renewed *Ex Parte* Motion is brought in light of the emergency issues related to Defendant's health, specifically Defendant's eyes and as detailed above and in the attachments to this motion.

5. Undersigned counsel has also notified counsel for the government via email of the filing of this Second Renewed *Ex Parte* Motion. Specifically, the following counsel for the government are being notified by email of this Motion:

Derek Edward Hines
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue NW Room B-200
Washington, DC 20530
771-217-6091
Email: deh@usdoj.gov

Leo J. Wise
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW, Room B-200
Washington, DC 20530
771-217-6091
Email: LJW@USDOJ.GOV (Inactive)

Christopher Michael Rigali
Office of Special Counsel, U.S. Dept. of Justice
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
202-616-2652
Email: christopher.rigali2@usdoj.gov

Sean F Mulryne
Office of the Special Counsel - Weiss
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
202-430-4880
Email: sfm@usdoj.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on this 21st day of May, 2024.

DAVID Z. CHESNOFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

11