1  DAVID Z. CHESNOFF, ESQ.
   *Pro Hac Vice*
2  RICHARD A. SCHONFELD, ESQ.
   California Bar No. 202182
3  CHESNOFF & SCHONFELD
4  520 South Fourth Street
   Las Vegas, Nevada 89101
5  Telephone: (702) 384-5563
6  dzchesnoff@cslawoffice.net
   rschonfeld@cslawoffice.net
7  Attorneys for Defendant, ALEXANDER SMIRNOV

8

9                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
10                              * * * * * *

11  UNITED STATES OF AMERICA,        )   CASE NO. 2:24-CR-00091-ODW
12                                    )
            Plaintiff,                )   **DEFENDANT'S NOTICE OF**
13                                    )   **MOTION AND MOTION FOR**
14  v.                                )   **ACCESS TO CIPA § 4 FILING**
                                      )
15  ALEXANDER SMIRNOV,                )
                                      )
16                                    )
            Defendant,                )   **Honorable Otis D. Wright II**
17  _____ )   **September 9, 2024 at 10:00 a.m.**

18

19       PLEASE TAKE NOTICE that on September 9, 2024 at 10:00 a.m., or as soon thereafter

20  as counsel may be heard, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through

21  his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law

22  firm of CHESNOFF & SCHONFELD, will ask this Honorable Court to enter an order granting

23  his Motion to Motion for Access to Government's CIPA § 4 Filing.

24       This Motion is made and based upon the attached Memorandum of Points and Authorities,

25  and upon the government's apparent filing of an *ex parte*, *in camera* motion (and related

26  documents) to invoke the Confidential Information Procedures Act ("CIPA") to excuse provision

27

28  of complete discovery in this case. *See* ECF Nos. 86 (Government's Notice of Manual Filing of

                                    1

Classified Motion for Protective Order under CIPA § 4), 87 (application to exceed page length) (June 24, 2024); *see also* ECF No. 89 (Order "accept[ing] the Government's *ex parte*, *in camera* and sealed Motion and Memorandum of Law in Support for a Protective Order as filed with the Classified Security Officer") (June 25, 2024).

On August 2, 2024, government counsel advised defense counsel that the government opposes the present motion.

Dated this 5th day of August, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

 /s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    Background**

As shown above, it appears that on June 24, 2024, the Government has filed in the present case an *ex parte*, *in camera* motion to invoke the Confidential Information Procedures Act ("CIPA") to excuse their provision of complete discovery in this case. *See* ECF Nos. 86, 87. It further appears that this Court 1) "accept[ed] the Government's *ex parte*, *in camera* and sealed Motion and Memorandum of Law" on June 25, 2024 (ECF No. 89), and 2) signed the government's proposed order (with no amendments) on July 17, 2024—but did not enter that order on the docket until July 22, 2024. *See* ECF No. 94. Nevertheless, and without having seen any of these secret materials, Mr. Smirnov respectfully urges the Court to invoke CIPA and craft an order permitting undersigned defense counsel restricted, "eyes-only" access to the complete cache of discovery under seal.

**B.    CIPA's Possible Impact on the Present Case: The Limited Provision of Substitute "Summaries" in Lieu of the Complete Discovery Mandated Under *Brady***

"CIPA procedures . . . endeavor to harmonize a defendant's right to a fair trial with the government's right to protect classified information." *United States v. Sedaghaty*, 728 F.3d 885, 903–05 (9th Cir. 2013) (citing *United States v. Abu–Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010)). "While the government must safeguard classified information . . . , 'courts must not be remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence.'" *Sedaghaty*, 728 F.3d at 903 (quoting *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990)).

While CIPA does not "expand or restrict established principles of discovery" and "does not have a substantive impact on the admissibility of probative evidence," *Sedaghaty*, 728 F.3d at 903 (citing *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir.1998); S. Rep. No. 96–823 at

8, *reprinted in* 1980 U.S.C.C.A.N. at 4301–03), it *does* "establish[] procedures for handling classified information in criminal cases," *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008), so that trial courts may rule "on questions of admissibility involving classified information *before* introduction of the evidence in open court," *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (citation omitted) (emphasis added); *see also Sedaghaty*, 728 F.3d at 903-04.

Section 4 of CIPA provides:

> The court, upon a sufficient showing, may authorize the United States [1] to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, [2] to substitute a summary of the information for such classified documents, or [3] to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. app. 3 § 4.

The district court's first task under Section 4 is to "determine whether, pursuant to the Federal Rules of Criminal Procedure, statute, or the common law, the information at issue is discoverable . . . ." *Sedaghaty*, 728 F.3d at 904 (citing *United States v. Rewald*, 889 F.2d 836, 847–48 (9th Cir. 1989)). If it is, then "the court must next determine whether the government has made a formal claim of the state secrets privilege, 'lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer.'" *Sedaghaty*, 728 F.3d at 904 (quoting *United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1261 (9th Cir.1998) and *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953)).[1]

---

[1]    While we presume that the Special Counsel's Office has marked its Section 4 motion with a banner line and (for certain paragraphs) portion marks indicating classification status, that Office is not an original classification authority under Executive Order 13526. Any classification of the Office's submission is derivative of the classification of the materials it discusses, and prosecutorial claims regarding sensitivity do not change that. *See In re Terrorist Attacks On Sept. 11, 2001*, 523 F. Supp. 3d 478, 498 (S.D.N.Y. 2021) ("Simply saying 'military secret,' 'national security' or 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege." (cleaned up)). Relatedly, to obtain relief under Section 4, the

If the material is both discoverable and covered by the state secrets privilege, "then the court must determine whether the evidence is '*relevant and helpful to the defense of an accused.*'" *Sedaghaty*, 728 F.3d at 904 (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957) (emphasis added)). "If the information meets the 'relevant and helpful' test, CIPA § 4 empowers the court to determine the terms of discovery, if any." *Sedaghaty*, 728 F.3d at 904 (quoting 18 U.S.C. app. 3 § 4).

In turn, Section 6 of CIPA:

> guides the procedures for making "determinations concerning the use . . . of classified information . . . ." 18 U.S.C. app. 3 § 6(a). Specifically, CIPA § 6(c)(1) deals with substitutions and provides that a court may authorize a substitution for classified material in the form of a statement or summary "if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. app. 3 § 6(c)(1). This requirement arises out of the Constitution's guarantee that all criminal defendants must have " '*a meaningful opportunity to present a complete defense.*' " *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) . . . . [T]he fundamental purpose of a substitution under CIPA is "to place the defendant, as nearly as possible, *in the position he would be in if the classified information [itself] . . . were available to him.*" *United States v. Moussaoui*, 382 F.3d 453, 477 (4th Cir.2004); *see also United States v. Rezaq*, 134 F.3d 1121, 1143 (D.C.Cir.1998).

*Sedaghaty*, 728 F.3d at 904-05 (emphasis added).

Mr. Smirnov's attempt to invoke these statutory protections—and, receive a complete disclosure—is hamstrung by the fact that he has not seen any of the material that the government

---

Office must validly invoke what has been referred to as the "national security privilege" and the "classified information privilege" under *United States v. Reynolds*, 345 U.S. 1 (1953). *See, e.g., United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989); *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006); *United States v. Libby*, 453 F. Supp. 2d 35, 38 n.5, 40 (D.D.C. 2006). This entails "strict requirements," including an "affidavit of the responsible department head for the information pertinent to its decision concerning the privilege." *Black v. Sheraton Corp. America*, 564 F.2d 531, 543 (D.C. Cir. 1977).

deems "classified," much less learned *how* this Court plans to assure the government's drafting of a "substitute" to replace the missing discovery.[2]

Nevertheless, to avoid the probability (condemned in *Sedaghaty* and, evidently, approved by this Court, *see* ECF No. 94 at 2, §(1) (court approves of "substitutions or summaries," in addition to redactions and deletions) of receiving a biased substitute or summary, Mr. Smirnov urges this Court to grant this motion for independent, defense attorneys' "eyes-only" access to the totality of the discovery, so it can make its own decisions about the propriety and structure of Mr. Smirnov's defense. *Compare Sedaghaty*, 728 F.3d at 905-6 (reversing conviction where government provides biased "summary" in lieu of classified information: "The wording of the summary bolsters the inculpatory section while discrediting the exculpatory section . . . . Because the underlying documents are classified, we are constrained in our comments about the summary. But it is a fundamental principle underlying CIPA that the summary should be evenhanded, worded in a neutral fashion and not tilted or shaded to the government's advantage. *See* S. Rep. No. 96–823 at 9 (1980), reprinted in 1980 U.S.C.C.A.N. at 4302–03 (stating that the 'judge should ensure that a substitution . . . is crafted so that the Government obtains no unfair advantage in the trial'")).

---

[2]   Between April 5 and July 31, 2024, the government has produced discovery, none of which was designated as "classified." Mr. Smirnov notes that, while his attorneys (Messrs. Chesnoff and Schonfeld) have received interim security clearances, they have not yet received full clearances, which will happen only after both attorneys are interviewed and approved by the FBI. In any event, given the defense's non-receipt of "classified" discovery to date, Mr. Smirnov respectfully reserves his right to supplement or amend this motion after he receives and lawfully inspects such items.

## C.     A Court-Ordered, Eyes-Only Inspection is Preferable

A motion pursuant to Section 4 of CIPA is a critical juncture where the government asks the Court to endorse the withholding of discoverable material by determining, *inter alia*, whether the material is "relevant or helpful" to the defense. In effect, because CIPA "creates no new rights of or limits on discovery of a specific area of classified information," prosecutors filing such a "CIPA motion" seek permission to withhold *Brady* material. *See, e.g.*, *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). Such motions thus require the District Court to 1) stand in a defendant's shoes, 2) predict defenses that the defendant has not yet presented and is entitled to develop and modify until the case is tried, and, on the other hand, 3) protect important defense rights to exculpatory information relevant to trial and sentencing (including impeachment material).

Given the foregoing—and given that Section makes clear that the Court "*may*" allow the prosecutors to shield their submission from Mr. Smirnov—we respectfully submit that this Court should not do so and should, instead, grant attorneys'-eyes-only access to the paragraphs and pages of the submission that are *not* portion-marked by the Government as "classified."

While recognizing that this Court has discretion to proceed *ex parte* in this matter, Mr. Smirnov urges the Court to exercise that discretion under CIPA's Section 4 in the context of: (1) the general presumption against *ex parte* proceedings in criminal cases;[3] (2) the post-CIPA development of bodies of law under FOIA, in habeas proceedings, and in motions to suppress

---

[3]     *See, e.g., United States v. Stevens*, 2008 WL 8743218, at *5 (D.D.C. 2008) ("*[E]x parte* communications between prosecutors and the trial judge "are greatly discouraged and should only be permitted in the rarest of circumstances." (cleaned up)); *see also United States v. Napue*, 834 F.3d 1311, 1318 (7th Cir. 1987) ("[T]he district court in exercising its discretion must bear in mind that *ex parte* communications are disfavored. They should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum.").

1  FISA intercepts where parties are granted greater access to filings by the Defense Department and

2  USIC agencies that summarize sensitive information;[4] and (3) a case involving cleared defense

3  counsel who have already been granted access to sensitive classified materials and are subject to a

4  CIPA § 3 protective order that carefully governs the handling of such materials.  *See supra* at n.2

5  (noting that FBI has not yet fully "cleared" either defense attorney and urging that this process be

6  expedited and classified material be produced under protective order).

7  

8         Under these circumstances, our request for access to the classified portions of the CIPA §

9  4 filing is not inconsistent with the 1980 House Report, as quoted in *United States v. Mejia*, 448

10  F.3d 436 (D.C. Cir. 2006). It would not "defeat the very purpose of the discovery rules" to grant

11  cleared counsel access to even the classified portions of the submission. *Id*. at 457. Similarly, the

12  committee notes to Rule 16 (which are themselves quoted in *Mejia*) provide that prosecutors may

13  seek a protective order authorizing the withholding of discoverable material based on a submission

14  that is "in whole *or in part*" *ex parte*. *Id*. (emphasis added). Mr. Smirnov's position is that the "in

15  part" portion of that language is the prudent and fair course in this case.

16  

17         *Mejia* itself is not to the contrary. First, before addressing whether the *ex parte* district court

18  proceedings in that case constituted an abuse of discretion, the District of Columbia Circuit Court

19  "examined the documents de novo," and found that "they are *not* helpful to the defense." 448 F.3d

20  at 457 (emphasis added). Moreover, the Court conducted its with the benefit of a developed trial

21  record, including the defendant's substantive arguments. By contrast, trial courts have expressed

---

4      *See, e.g*., ECF No. 20-3 at 7-12 ¶¶ 17-27 in *Judicial Watch, Inc. v. DOJ*, No. 18 Civ. 2107 (TSC) (D.D.C. Oct. 18, 2019) (publicly filed declaration explaining FBI's application of National Security Act in FOIA case); ECF No. 10-2 at 7-8 in *Smith v. NARA*, No. 18 Civ. 2048 (TSC) (D.D.C. Dec. 20, 2018) (publicly filed declaration explaining NARA's Glomar response in FOIA case); ECF No. No. 93-2, *Doe v. Mattis*, No. 17 Civ. 1928 (TSC) (June 1, 2018) (publicly filed redacted declaration Defense Department official); ECF No. 67-2 at 10-15, *ACLU, et al. v. DOJ, et al*., No. 10 Civ. 436 (D.D.C. Nov. 25, 2014) (publicly filed declaration explaining CIA's application of National Security Act in FOIA case).

concerns about resolving CIPA Section 4 motions *ex parte* before defendant like Mr. Smirnov have had a similar opportunity to fully develop their defenses. *See, e.g.*, *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) ("[I]n those rare situations where the government is compelled to make an *ex parte* Section 4 filing containing arguments in support of immateriality, the government should fully explain why the *ex parte* filing is necessary and appropriate."); *United States v. Rezaq*, 899 F. Supp. 697, 707 (D.D.C. 1995). Finally, the Circuit Court in *Mejia* signed off on the *ex parte* CIPA procedure only *after* concluding that the classified materials were "*not helpful to the defense*" and, therefore, not subject to *Brady*'s strictures. *See* 448 F.3d at 457 (emphasis added).

Additionally, in *United States v. Stillwell*, 986 F.3d 196 (2d Cir. 2021), the Second Circuit reached a different result in a *Mejia*-like situation—a result that provided for disclosure of a classified Section § 4 submission to cleared defense counsel. *See supra* at n.2 (urging that FBI fully clear both defense attorneys forthwith). The Government in *Stillwell*—as in *Mejia*—submitted a Section 4 motion to the trial court *ex parte*, without notice to the defendants or, for that matter, even to the prosecutors. The Second Circuit vacated the district judge's *ex parte* "protective order [in *Stillwell*] and eventually ordered that the withheld [classified] information be disclosed, first to the [prosecutor], and then to defense counsel." *United States v. Hunter*, 32 F.4th 22, 28 (2d Cir. 2022); *see also id.* at 25 (district court *ex parte* order vacated by Second Circuit had restricted both parties' access to "certain classified documents"). Under this precedent, Mr. Smirnov is entitled to review the redacted version of the government's Section 4 filing and, after full security clearances are granted for his attorneys, all the unredacted, classified discovery, notwithstanding this Court's prior ruling in ECF No. 94.

**D.**    **Conclusion**

Mr. Smirnov thus respectfully requests that this Court grant this motion and impose a protective order (under whatever conditions it deems appropriate) to grant Mr. Smirnov's defense team access to the complete discovery provided or referenced in the Government's CIPA filings.

DATED this 5th day of August, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

 /s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of August, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.


/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

11