DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6090
    E-mail:      LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:      SFM@usdoj.gov; CMR@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER SMIRNOV,<br><br>Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY THE SPECIAL COUNSEL AND DISMISS THE INDICTMENT IN THIS CASE<br><br>Hearing Date:  August 26, 2024<br>Hearing Time:  11:30 a.m.<br>Location:      Courtroom of the Hon.<br>                 Otis D. Wright II |

      The United States of America, by and through its counsel of record, hereby submits this response to the defendant's Motion to Disqualify the Special Counsel and Dismiss the Indictment in This Case, ECF 93. The motion should be denied because United States Attorney Weiss was lawfully appointed special counsel and because he has been funded in a manner consistent with the Appropriations Clause.

Dated: August 5, 2024                    Respectfully submitted,

                                         DAVID C. WEISS
                                         Special Counsel


                                         /s/

                                         LEO J. WISE
                                         Principal Senior Assistant Special Counsel

                                         DEREK E. HINES
                                         Senior Assistant Special Counsel

                                         SEAN F. MULRYNE
                                         CHRISTOPHER M. RIGALI
                                         Assistant Special Counsels

                                         United States Department of Justice

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

III.  ARGUMENT ....................................................................................................... 4

    A.  Special Counsel Weiss Was Lawfully Appointed ....................................... 4

        1.  The Appointments Clause Is Not Implicated Because Special Counsel Weiss Was Nominated by the President and Confirmed by the Senate. ........................................................ 5

        2.  Special Counsel Weiss's Appointment Does Not Violate the Special Counsel Regulations. ........................................... 9

    B.  Special Counsel Weiss's Funding Does Not Violate the Appropriations Clause. ................................................................ 14

        1.  Congress's Permanent Indefinite Appropriation Encompasses This Prosecution. ................................................ 14

        2.  Even Assuming the Appropriation Does Not Apply, Dismissal Is Not Appropriate. ................................................ 18

IV.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                Page(s)

*Assignment of Army Lawyers to the Department of Justice,*
   10 Op. O.L.C. 115 (1986)...................................................................8

*Bond v. United States,*
   564 U.S. 211 (2011) .......................................................................19

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979) .......................................................................10

*Collins v. Yellin,*
   141 S. Ct. 1761 (2021).....................................................................19

*Edmond v. United States,*
   520 U.S. 651 (1997) .........................................................................5

*Fed. Hous. Fin. Agency v. UBS Americas Inc.,*
   712 F.3d 136 (2d Cir. 2013) ..............................................................7

*In re Grand Jury Investigation,*
   315 F. Supp. 3d 602 (D.D.C. 2018) .............................................9, 12

*In re Grand Jury Investigation,*
   916 F.3d 1047 (D.D.C. 2019).............................................................9

*In re Persico,*
   522 F.2d 41 (2d Cir. 1975) ................................................................8

*In re Sealed Case,*
   829 F.2d 50 (D.C. Cir. 1987)......................................................8, 9, 12

*Lo Duca v. United States,*
   93 F.3d 1100 (2d Cir. 1996) ..............................................................7

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018)......................................................................5

*Morrison v. Olson,*

487 U.S. 654 (1988) ................................................................................................3

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,

551 U.S. 644 (2007) ..............................................................................................12

*Naval Court-Martial*,

18 Op. Att'y Gen. 135 (1885) ...............................................................................8

*NLRB v. Noel Canning*,

573 U.S. 513 (2014) ................................................................................................8

*Private Attorneys*,

4B Op. O.L.C. 434 (1980) .....................................................................................8

*Seila Law LLC v. CFPB*,

140 S. Ct. 2183 (2020) ...........................................................................................19

*Shoemaker v. United States*,

147 U.S. 282 (1893) ................................................................................................7

*Trump v. United States*,

144 S. Ct. 2312 (2024) ............................................................................................7

*United States ex rel. Accardi v. Shaughnessy*,

347 U.S. 260 (1954) ................................................................................................10

*United States v. Biden*, No. 2:23-CR-00599-MCS-1,

2024 WL 1432468 (C.D. Cal. Apr. 1, 2024) .....................................................passim

*United States v. Biden*, No. 23-cr-61 (MN),

2024 WL 1603775 (D. Del Apr. 12, 2024)........................................................passim

*United States v. Bilodeau*,

24 F.4th 705 (1st Cir. 2022) ..................................................................................19

*United States v. Caceres*,

440 U.S. 741 (1979) ................................................................................................11

*United States v. Concord Mgmt. & Consulting LLC*,

317 F. Supp. 3d 598 (D.D.C. 2018) ....................................................................9

*United States v. Libby*,
  429 F. Supp. 2d 27 (D.D.C. 2006).................................................................9, 12

*United States v. Manafort*,
  312 F. Supp. 3d 60 (D.D.C. 2018)..........................................................10, 11, 13

*United States v. Manafort*,
  321 F. Supp. 3d 640 (E.D. Va. 2018).................................................9, 10, 11, 12

*United States v. McIntosh*,
  833 F.3d 1163 (9th Cir. 2016).......................................................................19

*United States v. Montalvo-Murillo*,
  495 U.S. 711 (1990).....................................................................................18

*United States v. Morrison*,
  449 U.S. 361 (1981).....................................................................................18

*United States v. Nixon*,
  418 U.S. 683 (1974).........................................................................6, 8, 9, 13

*United States v. Pisarski*,
  965 F.3d 738 (9th Cir. 2020).........................................................................19

*United States v. Rutherford*,
  442 U.S. 544 (1979).....................................................................................15

*United States v. Stone*,
  394 F. Supp. 3d 1 (D.D.C. 2019)............................................................15, 16, 17, 18

*United States v. Trevino*,
  7 F. 4th 414 (6th Cir. 2021).........................................................................19

*United States v. Trump*,
  No. 23-80101-CR, 2024 WL 3404555 (S.D. Fla. July 15, 2024)...............................6, 7

*Weiss v. United States*,
   (1994).........................................................................................................7

**Statutes**

5 U.S.C. § 301 ................................................................................................3, 11

5 U.S.C. § 553 ......................................................................................................10

5 U.S.C. §§ 552-53 ..............................................................................................10

18 U.S.C. § 1001 ...................................................................................................1

18 U.S.C. § 1519 ...................................................................................................1

28 U.S.C. § 515(a) .............................................................................................2, 6

28 U.S.C. § 541(a) ................................................................................................5

28 U.S.C. § 1291(a) .............................................................................................19

28 U.S.C. §§ 509 ..........................................................................................passim

28 U.S.C. §§ 591-599 ............................................................................................2

28 U.S.C. § 533 .....................................................................................................2

**Regulations**

28 C.F.R. Part 600 (2003) ...................................................................................17

28 C.F.R. pt. 600 .................................................................................................13

28 C.F.R. § 600.10 ..............................................................................................10

28 C.F.R. § 600.3 .............................................................................................4, 13

28 C.F.R. § 600.4 .......................................................................................3, 13, 16

28 C.F.R. § 600.7(b) ...........................................................................................16

28 C.F.R. §§ 600.1-600.10 ....................................................................................3

**Other Authorities**

Final Rule, Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) ......................3

Pub. L. 80-597 ......................................................................................................8

Pub. L. No. 57-115 ...............................................................................................8

Pub. L. No. 66-389 ...............................................................................................8

The President and the Independent Counsel,

   86 Geo. L.J. 2133 (1998)....................................................................................8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On February 14, 2024, Defendant Alexander Smirnov was indicted for making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001 (Count One), and for causing the creation of a false record in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two). The charges are based on false derogatory information that he provided to the FBI about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1, in 2020, after Public Official 1 became a candidate for President of the United States.

The defendant now moves to dismiss the indictment for alleged defects in the appointment and funding of Special Counsel Weiss's investigation. *See* Def.'s Mot. to Disqualify the Special Counsel & Dismiss the Indictment ("Def.'s Mot."), ECF 93. He challenges Special Counsel Weiss's appointment on two grounds—that it violates (1) the Appointments Clause and (2) the Department of Justice's internal regulations.  He further challenges Special Counsel Weiss's funding under the Appropriations Clause. In upholding Special Counsel Weiss's authority, two courts, including one in this district, have rejected arguments that Special Counsel Weiss's appointment violated the Department of Justice's regulations and that his funding violates the Appropriations Clause. *See United States v. Biden*, No. 2:23-CR-00599-MCS-1, 2024 WL 1432468, at *10-16 (C.D. Cal. Apr. 1, 2024), *appeal dismissed*, No. 24-2333, 2024 WL 2745125 (9th Cir. May 14, 2024) ("*Biden I*"); *United States v. Biden*, No. CR 23-61 (MN), 2024 WL 1603775, at *1-4 (D. Del. Apr. 12, 2024) ("*Biden II*"). This Court should do the same. The only new argument not presented to those courts is the defendant's Appointments Clause challenge, but this argument also fails. As United States Attorney for the District of Delaware, Special Counsel Weiss was nominated by the President and confirmed by the

Senate, consistent with constitutional requirements. Accordingly, the Court should deny the defendant's motion to dismiss.

## II.    BACKGROUND

On August 11, 2023, Attorney General Merrick Garland issued an order stating that, "[b]y virtue of the authority vested in the Attorney General, including 28 U.S.C. §§ 509, 510, 515, and 533," he was appointing United States Attorney for the District of Delaware David Weiss to serve as Special Counsel for the Department of Justice. Att'y Gen. Order No. 5730-2023, Appointment of David C. Weiss as Special Counsel (Aug. 11, 2023), perma.cc/LY96-QUZJ ("Appointment Order"). Section 509 vests in the Attorney General "[a]ll functions" of "other officers of the Department of Justice" and "of agencies and employees of the Department of Justice." 28 U.S.C. § 509. Section 510, entitled "Delegation of authority," reads as follows:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

*Id*. § 510. Section 515(a) states that any "officer of the Department of Justice . . . may, when specifically directed by the Attorney General, conduct any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought." 28 U.S.C. § 515(a). Section 533 permits the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533(1).

In the Appointment Order, the Attorney General also made "Sections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations" applicable to Special Counsel Weiss. These provisions are some, but not all, of the special counsel regulations promulgated by the Attorney General after a statute governing independent counsels

lapsed.[1] Section 600.4 establishes that the "jurisdiction of a Special Counsel shall be established by the Attorney General" and the "Special Counsel will be provided with a specific factual statement of the matter to be investigated." 28 C.F.R. § 600.4. Section 600.5 provides that a Special Counsel may request staff from within the Department of Justice and may hire from outside the Department. *Id*. § 600.5. Section 600.6 vests the Special Counsel with "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney" and the discretion to "determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities." *Id*. § 600.6.

Section 600.7 mandates compliance with Departmental practices and policies but permits the Special Counsel to bypass the "required review and approval procedures by the designated Departmental component" and "consult directly with the Attorney General," while clarifying that "[t]he Special Counsel shall not be subject to the day-to-day supervision of any official of the Department," such that only the Attorney General may set aside a proposed "investigative or prosecutorial step" if it "so inappropriate or unwarranted under established Departmental practices." *Id*. § 600.7. Section 600.8 lays

---

[1] The special counsel regulations replaced the independent counsel regime formerly located in Title IV of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired). *See* Final Rule, Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999); *see also Morrison v. Olson*, 487 U.S. 654 (1988). The Ethics in Government Act had required the Attorney General in certain cases to ask a court to appoint an independent counsel, who then operated with significant freedom from Department of Justice supervision. Once that provision lapsed, the Attorney General promulgated the special counsel regulations found at 28 C.F.R. §§ 600.1-600.10. *See* 5 U.S.C. § 301 (authorizing the head of a department to issue regulations "for the government of his department" and "the distribution and performance of its business"). The regulations sought "to strike a balance between independence and accountability in certain sensitive investigations." 64 Fed. Reg. at 37,038. They provide for a wholly Executive Branch procedure for appointing a special counsel, who exercises discretion "within the context of established procedures of the Department," with "ultimate responsibility for the matter and how it is handled . . . continu[ing] to rest with the Attorney General." *Id*.

out budgeting and notification requirements for a Special Counsel. *Id*. § 600.8. Section 600.9 requires the Attorney General to make certain reports to Congress related to the Special Counsel. *Id*. § 600.9. Finally, Section 600.10 provides that the regulations "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative." *Id*. § 600.10.

Pursuant to the statutory authorities and regulations cited in the Appointment Order, the Attorney General authorized Special Counsel Weiss to "conduct the ongoing investigation" into "allegations of certain criminal conduct by, among others, Robert Hunter Biden." Appointment Order. Attorney General Garland also authorized Special Counsel Weiss to "prosecute federal crimes in any federal judicial district arising from the investigation of these matters." *Id*. This case arose from the investigation of Robert Hunter Biden because the defendant provided false derogatory information to the FBI about Robert Hunter Biden's business dealings.

On February 14, 2024, a grand jury indicted the defendant on two counts. ECF 1. On July 15, 2024, the defendant filed the instant motion to disqualify the Special Counsel and dismiss the indictment in this case, arguing that Special Counsel Weiss was unlawfully appointed and that Congress did not appropriate the funds to prosecute the defendant. For the following reasons, the defendant's arguments fail.

## III. ARGUMENT

### A. Special Counsel Weiss Was Lawfully Appointed

The defendant makes two arguments challenging Special Counsel Weiss's appointment: (1) that it violates the Appointments Clause and (2) that it violates the Department of Justice's internal regulations because Special Counsel Weiss was not appointed from "outside the government" under 28 C.F.R. § 600.3. Both arguments lack merit, and the Court should deny the defendant's motion.

4

1.   <u>The Appointments Clause Is Not Implicated Because Special
Counsel Weiss Was Nominated by the President and Confirmed
by the Senate.</u>

Because Special Counsel Weiss has already been appointed in a manner consistent with the Appointments Clause, this case does not raise any constitutional issue. The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States.'" *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018). It provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Department.

Art. II, § 2, cl. 2. The Appointments Clause differentiates between two distinct classes of officers: principal officers and inferior officers. *See Edmond v. United States*, 520 U.S. 651, 659-60 (1997). Principal officers must be nominated by the President and confirmed by the Senate. *Id*. at 559. As to inferior officers, Presidential nomination and Senate confirmation is the "default manner of appointment," *id*., but Congress may also "by law vest the Appointment of such inferior Officers, . . . in the President alone, in the Courts of Law, or in the Heads of Departments." Art. II, § 2, cl. 2.[2]

In his role as United States Attorney for the District of Delaware, Special Counsel Weiss was nominated by the President and confirmed by the Senate. *See* 28 U.S.C. § 541(a). Since 2019, he has been lawfully investigating allegations of criminal conduct surrounding Hunter Biden and his associates, and he brought charges in two cases

---

[2] Because Special Counsel Weiss was nominated by the President and confirmed by the Senate, the Court need not decide whether he is a principal or inferior officer.

5

stemming from this investigation in the District of Delaware before becoming special counsel. *See United States v. Robert Hunter Biden*, Criminal Action Nos. 23-mj-274 (MN) and 23-61 (MN) (D. Del.). Pursuant to his authority under 28 U.S.C. §§ 509, 510, 515, 533, Attorney General Garland has merely delegated to Special Counsel Weiss—an existing officer—the ability to continue to investigate and prosecute "allegations of certain criminal conduct by, among others, Robert Hunter Biden" and to do so in "any federal judicial district arising from the investigation of these matters." Appointment Order.

The statutory provisions cited in the Appointment Order plainly permit the Attorney General to delegate this authority. As another court in this district already concluded, "Title 28 clearly vests the Attorney General with the functions of the DOJ . . . and permits the Attorney General to delegate those functions to any other officer of the DOJ." *See Biden I*, 2024 WL 1432468, at *12 (citing 28 U.S.C. §§ 509, 510, 515, 533; *United States v. Nixon*, 418 U.S. 683, 694 (1974)). Specifically, drawing on his authority over "all functions" of the Department of Justice, *id*. § 509, Attorney General Garland delegated to Special Counsel Weiss—an existing "officer" of the Department of Justice—the authority to "perform[]" the function of continuing his existing investigation into Hunter Biden and any associated criminal conduct, *id*. § 510. The Attorney General also "specifically directed" Special Counsel Weiss to pursue the investigation in districts other than the one where he "is a resident," including the Central District of California. *Id*. § 515(a). As special counsel, Special Counsel Weiss is therefore continuing an investigation that he already had the authority to conduct and he is prosecuting the resulting case in the Central District of California pursuant to § 515(a).[3]

The defendant does not make a single contrary argument grounded in the facts or procedural history of this case. Instead, he merely copies and pastes large portions from the recent Florida district court opinion in *United States v. Trump*, No. 23-80101-CR, 2024

---

[3] In fact, United States Attorneys' Offices routinely litigate in other districts when a district is recused pursuant to the authority in § 515(a).

WL 3404555 (S.D. Fla. July 15, 2024). *See* Def.'s Mot. at 5-10. The government respectfully disagrees with the reasoning in that opinion, as well as Justice Thomas's solo concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347-52 (2024). In any event, contrary to the defendant's claim that this case is "functionally indistinguishable" from that one, *see* Def.'s Mot. at 9, those cases involved different facts than here. Special Counsel Weiss was a duly appointed United States Attorney when he was named special counsel, not a private citizen. For that reason, § 515(a)'s language authorizing any "officer . . . when specifically directed by the Attorney General" to "conduct any kind of legal proceeding" applies to Special Counsel Weiss as an existing United States Attorney—an issue that neither Justice Thomas's concurrence nor the Florida district court had before them or even discussed. *See Trump*, 144 S. Ct. at 2347-48; *Trump*, 2024 WL 3404555, at *12.

Special Counsel Weiss also did not need to be re-appointed when he assumed the role of special counsel. It is well-established that Congress may confer on validly appointed officers "additional duties, germane to the offices already held by them . . . without thereby rendering it necessary that the incumbent should be again nominated and appointed." *Shoemaker v. United States*, 147 U.S. 282, 301 (1893); *accord Weiss v. United States*, 510 U.S. 163, 170-75 (1994); *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 144 (2d Cir. 2013). Congress authorized the Attorney General to delegate his functions to another "officer[]" within the Department of Justice, including the ability to litigate in other jurisdictions. *See* 28 U.S.C. §§ 509, 510, 515, 533. As special counsel, Special Counsel Weiss has merely been delegated the additional authority to continue his ongoing investigation in the Central District of California. This additional authority is plainly "germane" to his existing duties as the United States Attorney who began the investigation. *See Lo Duca v. United States*, 93 F.3d 1100, 1110-11 (2d Cir. 1996) (holding that *Shoemaker*'s "germaneness" standard is "fully met" because the duties "performed by

an extradition officer are virtually identical to those performed every day by judges and magistrate judges").

Historical practice also supports this conclusion, as past Attorneys General have "made extensive use of special attorneys" drawing on the authority to retain counsel originally conferred in 1870. *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975); *see also NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (courts "put significant weight upon historical practice" when interpreting constitutional provisions that concern "the allocation of power" between Congress and the Executive Branch). These instances span nearly 140 years and include some of the most notorious scandals in the Nation's history, including Watergate. *See, e.g.*, Brett M. Kavanaugh, The President and the Independent Counsel, 86 Geo. L.J. 2133, 2142-44 (1998). Congress has also long demonstrated its understanding that the Attorney General has authority to appoint special counsels by repeatedly appropriating funds for the Attorney General to compensate them. *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-410; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317. And published opinions of the Attorney General, for more than a century, have recognized that authority. *See, e.g.*, *Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 442-43 & n.5 (1980) (Appendix); *Naval Court-Martial*, 18 Op. Att'y Gen. 135, 136 (1885).

And even if the Court were to find that the Appointments Clause is implicated, the statutory provisions referenced in the appointment order—28 U.S.C. §§ 509, 510, 515, and 533—establish "by law" the authority in the Attorney General to appoint Special Counsel Weiss. *See* Art. II, § 2, cl. 2. The overwhelming majority of courts—including the Supreme Court—have held as much. *See, e.g.*, *Nixon*, 418 U.S. at 694; *In re Sealed*

*Case*, 829 F.2d 50, 55-59 (D.C. Cir. 1987); *In re Grand Jury Investigation*, 916 F.3d at 1051-54; *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 607-26 (D.D.C. 2018); *United States v. Manafort*, 321 F. Supp. 3d 640, 655-59 (E.D. Va. 2018) ("*Manafort I*"); *United States v. Libby*, 429 F. Supp. 2d 27, 34-45 (D.D.C. 2006).

In *Nixon*, the Supreme Court recognized that, taken together, these statutory provisions give the Attorney General the power to "appoint subordinate officers to assist him in the discharge of his duties," including an independent counsel. 418 U.S. at 694 (citing 28 U.S.C. §§ 509, 510, 515, 533). *Nixon* expressly addressed §§ 509, 510, 515, 533, the same statutes cited by the Attorney General in the Appointment Order, and held that they give the Attorney General the power to appoint an independent counsel. Nor was that statement dicta. In *Nixon*, the Attorney General's statutory authority to promulgate the regulations appointing the independent counsel "was a necessary antecedent to determining whether the regulations were valid, and, therefore, was necessary to the decision that a justiciable controversy existed. The Supreme Court's quoted statement regarding the Attorney General's power to appoint subordinate officers is, therefore, not dictum." *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.D.C. 2019); *accord Concord Mgmt. & Consulting*, 317 F. Supp. 3d at 623; *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 652 (D.D.C. 2018). Therefore, "these provisions vest in the Attorney General the investigative and prosecutorial functions and powers"—including the ability to prosecute the defendant in the Central District of California—and "authorize him to delegate such functions and powers to others within the Department of Justice," such as Special Counsel Weiss. *In re Sealed Case*, 829 F.2d at 55 n.29 (citation omitted).

2.   <u>Special Counsel Weiss's Appointment Does Not Violate the Special Counsel Regulations.</u>

The defendant also argues that Special Counsel Weiss's appointment violates the special counsel regulations. As a threshold matter, as four courts have already held, the regulations do not create judicially enforceable rights, so alleged violations of these

1    regulations are not reviewable. *See Biden I*, 2024 WL 1432468, at \*11-13; *Biden II*, 2024
2    WL 1603775, at \*1-2; *Manafort I*, 321 F. Supp. 3d at 656; *United States v. Manafort*, 312
3    F. Supp. 3d 60, 75-79 (D.D.C. 2018) ("*Manafort II*"). Agency regulations generally fall
4    into two distinct categories: (1) substantive rules and (2) "interpretative rules, general
5    statements of policy, or rules of agency organization, procedure, or practice." *Chrysler*
6    *Corp. v. Brown*, 441 U.S. 281, 301 & n.30 (1979). Substantive rules "affect individual
7    rights and obligations" and are binding because they have the force and effect of law. *Id.*
8    at 302 (citation omitted). Substantive rules must also be promulgated according to the
9    "procedural requirements imposed by Congress," *id.* at 303, including the notice and
10   comment procedures set forth in the Administrative Procedure Act, *see* 5 U.S.C. § 553.
11   Meanwhile, interpretive rules, general statements of policy, or rules of agency
12   organization, procedure, or practice are exempted from notice and comment requirements.
13   *See id.* § 553(b)(A).

14           The Department of Justice was "unambiguously clear" that the special counsel
15   regulations were not substantive rules that would afford parties any enforceable rights.[4]
16   *Biden I*, 2024 WL 1432468, at \*12. The plain text of the regulations compels this
17   conclusion. Section 600.10 explicitly states that the regulations are "not intended to, do
18   not, and may not be relied upon to create any rights, substantive or procedural, enforceable
19   at law or equity." 28 C.F.R. § 600.10. In the Final Rule promulgating these regulations,
20   the Department stated that they "relate[] to matters of agency management or personnel"
21   and "agency organization, procedure, or practice." Final Rule, Office of Special Counsel,
22   64 Fed. Reg. 37,038 (July 9, 1999) (citing 5 U.S.C. §§ 552-53). "Courts have held that the
23   type of language used in section 600.10 is effective to disclaim the creation of any

24   _____

25   [4] This distinction alone disposes of defendant's citation to *United States ex rel. Accardi v.*
26   *Shaughnessy*, 347 U.S. 260 (1954), in which the invoked provisions were "[r]egulations
     with the force and effect of law." *Id.* at 265. This case "does not address and does not lend
27   any particular support to defendant's argument that internal Departmental regulations may
28   be enforced against the agency by a third party." *Manafort II*, 312 F. Supp. 3d at 78.

1    enforceable rights." *Manafort II*, 312 F. Supp. 3d at 76 (collecting cases). The Department

2    of Justice also did not use notice and comment rulemaking procedures when promulgating

3    the regulations, and they were promulgated pursuant to 5 U.S.C. § 301, which allows the

4    head of an executive department to "prescribe regulations for the government of his

5    department, the conduct of its employees, the distribution and performance of its business,

6    and the custody, use, and preservation of its records, papers, and property." *See* 64 Fed.

7    Reg. at 37,042.

8        The special counsel regulations are therefore "internal rules intended solely to guide

9    the Attorney General and other Department personnel." *Manafort II*, 312 F. Supp. 3d at

10   75. "The case law also makes it clear that internal agency regulations that were not

11   required by the Constitution or a statute are not enforceable by the defendant in a criminal

12   prosecution." *Id*. at 76 (collecting cases); *accord Manafort I*, 321 F. Supp. 3d at 657

13   (Supreme Court has "made clear in the criminal context that a court need not enforce an

14   agency's internal rules when the agency was 'not required by the Constitution or by statute

15   to adopt any particular procedures or rules[.]") (citing *United States v. Caceres*, 440 U.S.

16   741, 749 (1979)). Because the regulations "do not afford defendant grounds to move to

17   dismiss the indictment," *id*. at 79, his challenge fails on this basis alone. *See Biden II*, 2024

18   WL 1603775, at *2 (Defendant "is not entitled to dismissal (or any other remedy) in this

19   case even if the DOJ has violated its own DOJ regulations."); *Manafort I*, 321 F. Supp. 3d

20   at 660 ("[E]ven assuming defendant is correct that the Acting Attorney General violated

21   the Special Counsel regulations when he appointed the Special Counsel here, that fact does

22   not warrant dismissal of the Superseding Indictment.").

23       Even if the regulations did provide the defendant with an enforceable right, his

24   argument would still fail. As Judge Scarsi already held, the special counsel regulations are

25   not the only mechanism by which the Attorney General may appoint a special counsel.

26   *Biden I*, 2024 WL 1432468, at *12. Rather, as described, the Attorney General's statutory

27   authority under 28 U.S.C. §§ 509, 510, 515, and 533 provides him with the authority to

28

                                             11

delegate virtually any of his functions to Special Counsel Weiss. This statutory authority predated—and then survived—the specific statutory mechanism for Independent Counsel through the now-lapsed Ethics in Government Act, which first contained the limitation to appointing a special prosecutor from outside of government service.[5] *See* 92 Stat. at 1869. Courts have routinely recognized that the Act did not affect the Attorney General's plenary power to empower independent Special Counsel. *See In re Sealed Case*, 829 F.2d at 52-53, 55-58 (noting Independent Counsel Lawrence Walsh possessed *both* authority under the Ethics in Government Act *and* authority delegated by the Attorney General under §§ 509, 510, 515, and 533); *Libby*, 429 F. Supp. 2d at 34 (noting that after letting the Independent Counsel statute lapse, Congress "certainly could have acted to prevent further delegation of such authority if it had wanted to, but it did not.").[6] The principle that these two statutory schemes operated independently, without abrogating each other, accords with the familiar presumption against implicitly repealing an existing statute. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (cleaned up).

Here, the Attorney General invoked §§ 509, 510, 515, and 533 to confer independence and autonomy on the Special Counsel and further determined that he would make "[s]ections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations . . . applicable to the Special Counsel." Appointment Order. Thus, the Attorney General

---

[5] The defendant also claims, without any support, that this case presents a "conflict of interest" because it is being prosecuted by someone appointed by Attorney General Garland, who in turn was appointed by the individual who the defendant was "allegedly lying about." Def.'s Mot. at 12. It is simply not a conflict of interest for the Department of Justice to prosecute someone for making false statements to federal law enforcement, even when those false statements were about the President.

[6] *See also In re Grand Jury Investigation*, 315 F. Supp. 3d at 628 n.12 ("The Special Counsel was appointed pursuant to, and his powers flow from, the Attorney General's statutory authority, not the regulations."); *Manafort II*, 321 F. Supp. 3d at 656 ("The Special Counsel's legal authority is not grounded in the procedural regulations at issue here, but in the Constitution and in the statutes that vest the authority to conduct criminal litigation in the Attorney General and authorize the Attorney General to delegate these functions when necessary.").

12

incorporated the substance of these provisions into the Appointment Order as the terms of the delegation—but he did not, in fact, rely on § 600.3 for the appointment itself. Section 600.3 provides that "[t]he Special Counsel shall be selected from outside the United States Government." 28 C.F.R. § 600.3. The Appointment Order does not cite § 600.3 as a basis for the Attorney General's authority to appoint United States Attorney Weiss as special counsel. Nor is Special Counsel Weiss the first sitting United States Attorney to be so designated; in fact, he is the third after United States Attorneys Patrick Fitzgerald and John Durham. The defendant's assertion that "[t]he Attorney General had no lawful basis to pick and choose what parts of an integrated regulation to apply" is followed by no citation, Def.'s Mot. at 11—and for good reason, because that is exactly what an Attorney General may do.[7] The appointment letters of Special Counsel Fitzgerald excluded him from the provisions of 28 C.F.R. pt. 600 altogether, while the appointment orders of Special Counsels Durham and Weiss specify that §§ 600.4 to 600.10 are "applicable to the Special Counsel." But all three appointment orders relied on the Attorney General's statutory authority, not § 600.3. *See* Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Dec. 30, 2003); Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Feb. 6, 2004)[1]; Att'y Gen. Order 4878-2020 (Oct. 19, 2020). Put another way, the Attorney General applies these internal regulations where he deems appropriate. In this case, as with nearly all Special Counsels to date, the Attorney General delegated his authority by statute and, along with that delegation, made applicable the substantive and procedural requirements of 28 C.F.R. §§ 600.4 through 600.10.

The defendant also argues that dismissal is necessary under *Nixon*. *See* Def.'s Mot. at 15. Judges Scarsi and Berman Jackson have already rejected this argument, too. *See Biden I*, 2024 WL 1432468, at *13; *accord Manafort II*, 312 F. Supp. 3d at 76. Like in *Manafort II*, the defendant simply "lifts one sentence from [*Nixon*]," which "concerned a

---

[7] The phrase "integrated regulation" has no meaning that government counsel can discern.

13

different regulation, promulgated for a different purpose, and the case does not stand for the proposition that the regulations at issue should be read to confer any enforceable rights on defendant." *Id*. at 76. After analyzing the case at length, Judge Berman Jackson explained that in the context of the specific dispute between the President and the Special Prosecutor over the availability of executive privilege and the validity of the Special Prosecutor's subpoena, the Supreme Court held only that the President and the Attorney General could not themselves continue to exercise the discretion that had been delegated by regulation to the Special Counsel. *See id.* at 77-78. That is not the case here, where a criminal defendant is attempting to enforce internal agency regulations by challenging the delegation in the first instance. Accordingly, for all of these reasons, the Court should reject the defendant's challenges to Special Counsel Weiss's appointment.

   **B.    Special Counsel Weiss's Funding Does Not Violate the Appropriations Clause.**

      1.    <u>Congress's Permanent Indefinite Appropriation Encompasses This Prosecution.</u>

Under the Appropriations Clause, "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., art. I, § 9, cl.7. The defendant argues that the permanent appropriation is limited to independent counsels under the now-lapsed Independent Counsel Act.[8] Two courts have already rejected this argument with respect to Special Counsel Weiss, and another has rejected this argument with respect to Special Counsel Mueller. *See Biden I*, 2024 WL 1432468, at *13-16; *Biden*

---

[8] Defendant briefly references the discussion about the Appropriations Clause in *United States v. Trump* in his argument about the Appointments Clause. *See* Def.'s Mot. at 9-10. As set forth above, Special Counsel Weiss was lawfully delegated the authority as special counsel to continue his investigation into Hunter Biden and, as a result, to prosecute this case. Accordingly, the Appropriations Clause analysis in *United States v. Trump* also does not apply here.

14

1  *II*, 2024 WL 1603775, at \*2-4; *United States v. Stone*, 394 F. Supp. 3d 1, 14-23 (D.D.C.
2  2019). The defendant's argument fails here for similar reasons as in those cases.

3       "The use of the permanent appropriation to fund special counsel appointed after the
4  independent counsel statutes lapsed is well established." *Biden II*, 2024 WL 1603775, at
5  \*2. The defendant's argument to the contrary "ignores the plain language" of the
6  appropriations statute governing Special Counsel Weiss. *Stone*, 394 F. Supp. 3d at 19.
7  Specifically, Congress created a "permanent indefinite appropriation . . . to pay all
8  necessary expenses of investigations and prosecutions by independent counsel appointed
9  pursuant to the provisions of [the Independent Counsel Act] or *other law*." *Id*. at 18
10  (quoting 101 Stat. 1329) (emphasis added). As explained above, the Attorney General has
11  drawn on several statutory provisions in Title 28—the relevant "other law"—to delegate
12  Special Counsel Weiss the authority to pursue this prosecution and to name him as special
13  counsel. And three Attorneys General have used this permanent appropriation to fund
14  special counsels who were (a) appointed other than through the Ethics in Government Act
15  and (b) sitting United States Attorneys at the time.

16       The Government Accountability Office ("GAO") "has conducted audits and
17  reported to Congress that other special attorneys appointed after the expiration of section
18  591 have been supported with funds from the permanent appropriation." *Stone*, 394 F.
19  Supp. 3d at 22 (citations omitted). After receiving these GAO reports, Congress has left
20  undisturbed the practice, indicating the appropriation is being used as intended. *See United*
21  *States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory
22  construction has been fully brought to the attention of the public and the Congress, and
23  the latter has not sought to alter that interpretation although it has amended the statute in
24  other respects, then presumably the legislative intent has been correctly discerned."
25  (cleaned up)).

26       The defendant's argument that the phrase "independent counsel" in the permanent
27  appropriation excludes Special Counsel Weiss is not persuasive. "[T]he Ethics in
28

15

Government Act at no point explicitly defined the term 'independent' or 'independent counsel.'" *Biden I*, 2024 WL 1432468, at *13. Further, the Attorney General appointed Special Counsel Weiss with the broad independence found in the provisions incorporated into the appointment order. *See* 28 C.F.R. § 600.4. Although the Special Counsel remains subject to the Attorney General's ultimate control, he also retains "a substantial degree of independent decisionmaking," 64 Fed. Reg. at 37,039-40, and is not part of the regular Department chain of command or "subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b).

The defendant reads "independent counsel" as if it refers solely to *outside* counsel. *See* Def.'s Mot. at 17-18. But "[t]he phrase 'other law' sweeps broadly, and sections 509, 510, and 515 are surely 'other law' under which special attorneys—including special counsel who investigate the President—may be appointed." *Stone*, 394 F. Supp. 3d at 20. The defendant also contends that Special Counsel Weiss cannot fall within the permanent appropriation because of the authority that the Attorney General retains over Special Counsel. *See* Def.'s Mot. at 18-19. But *Stone* rightly rejected that argument: "[T]he fact that the regulation calls for a certain level of oversight and compliance with the policies and procedures of the Department of Justice does not mean a special counsel is not 'independent' as that term is generally understood and as it was used in the permanent appropriation." 394 F. Supp. 3d at 21. Again, "there is nothing in the language of the provision itself that would support the defendant's attempt to narrow the appropriation to cover only specially appointed lawyers who operate under terms identical to those in the much-criticized Ethics in Government Act. And it is the language of the Congressional authorization, and not the level of autonomy the lawyer enjoys, that controls." *Id.*

The GAO's analysis accords with the reasoning in *Biden I*, *Biden II*, and *Stone* that the permanent indefinite appropriation is not limited to counsel appointed pursuant to the lapsed Independent Counsel Act. The GAO noted that when Special Counsel Fitzgerald was appointed, he was a sitting United States Attorney and "continued to perform his

duties as a United States Attorney after his appointment as Special Counsel." GAO Report at 1. The GAO explained that it has a "responsibility to audit" the "use of the account to finance Special Counsel Fitzgerald's activities, and the provisions of 28 C.F.R. Part 600 (2003)," and the GAO concluded that "we do not object to the use of the permanent indefinite appropriation to fund Special Counsel Fitzgerald's expenses." *Id*. at 2. "[T]he permanent indefinite appropriation does not require that a Special Counsel be appointed from outside the government," and such special counsel falls within "other law" under the appropriation. *Id*. The GAO "agree[d] with the Department that the same statutory authorities that authorize the Attorney General (or Acting Attorney General) to delegate authority to a United States Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation." *Id*. at 7. The GAO likewise agreed that the "Part 600 [regulation] is not a substantive (legal) limitation on the authority of the Acting Attorney General to delegate departmental functions to Special Counsel Fitzgerald." *Id*. Nowhere did the GAO conclude that only "outside" regulatory special counsel, or statutory special counsel appointed under the Independent Counsel Act, had the requisite level of independence necessary to fall within the terms of the permanent indefinite appropriation.[9]

The government anticipates that the defendant may argue, as the defendant did in the *Biden* cases, that the GAO opinion and *Stone* favor his interpretation of the appropriation. But these arguments hold no water, and indeed, they were rejected in both *Biden* cases. *See Biden I*, 2024 WL 1432468, at \*15; *Biden II*, 2024 WL 1603775, at \*3. It is not true that the GAO opinion only approved of Special Counsel Fitzgerald's

---

[9] Given that Congress saw fit to sunset the Independent Counsel Act—which prioritized independence of the special counsel over the Attorney General's prerogatives to administer the Department of Justice—the defendant cannot credibly argue that Congress nonetheless insisted that *only* that lapsed degree of independence could satisfy the terms of the permanent appropriation, which it left in place.

appointment because of the complete exclusion of the Part 600 regulations. Although the GAO indicated that Special Counsel Fitzgerald's exclusion from Part 600 altogether "contribute[d] to [his] independence," 2004 WL 2213560, at *3, it also noted that it had not objected to the use of the permanent appropriation to fund Special Counsel who were appointed under Part 600. *See id.* at *3-4 n.11 & n.17. Likewise, the *Biden* defendant suggested that *Stone* approved of Special Counsel Mueller's appointment only because it was an outside appointment under the regulations. Again, that is not true: the district court focused specifically on the degree of oversight contemplated by §§ 600.6 and 600.7 and concluded "a review of the regulation does not indicate that an attorney covered by its terms is so hamstrung that he or she cannot be said to fall within the broad category of 'independent counsel' Congress intended to fund." *Stone*, 394 F. Supp. 3d at 21-22. In short, by conferring on the Special Counsel here "full power and independent authority" (§ 600.4) to conduct this investigation and prosecution, the Attorney General rendered the Special Counsel an "independent counsel" under the appropriation.

2.   Even Assuming the Appropriation Does Not Apply, Dismissal Is Not Appropriate.

The defendant asserts, with no analysis, that "[a] prosecution brought in violation of the Appropriations Clause must be dismissed." Def.'s Mot. at 19. But it is a "general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," including the government's interest in prosecution and the public's interest in the administration of criminal justice. *United States v. Morrison*, 449 U.S. 361, 364-65 (1981); *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 721-22 (1990). Here, the "errors" of which the defendant complains would not preclude prosecution altogether, because the government could simply transition to a funding source other than the permanent appropriation.

Neither of the defendant's two principal cited cases support dismissal. In fact, they and cases relying on them contradict it.[10] In *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit held that an appropriations rider prevented DOJ from using funds to prosecute individuals who acted in "strict compliance" with state laws permitting medical marijuana. Notably, however, the Ninth Circuit remanded for an evidentiary hearing on compliance and expressly declined to decide what remedy existed in a criminal prosecution if a violation of the Appropriations Clause had occurred. *See id.* at 1179. However, the posture of the case is instructive: the Ninth Circuit held that it had jurisdiction over the interlocutory appeal only because the defendant had requested either dismissal of the indictment *or* an injunction against the prohibited use of funds. *See id.* at 1171-72; *see also* 28 U.S.C. § 1291(a) (permitting interlocutory appeals from decisions regarding injunctive relief). Again, in the defendant's second cited case, the Ninth Circuit affirmed the district court after it "enjoined the government from spending additional funds on the prosecution" after "finding that *Pisarski* and *Moore* strictly complied with California's medical marijuana laws." *United States v. Pisarski*, 965 F.3d 738, 740 (9th Cir. 2020).[11]

Unlike those defendants, however, the defendant here cannot claim that prosecuting him *at all* violates a congressional prohibition on the use of appropriated funds; instead, his argument is only that one specific appropriation is not available. Thus, even if this Court were to agree with the defendant, enjoining the Special Counsel from using the

[10] The "see also" Supreme Court cases defendant cites following this statement deal with Article III standing, not remedy. *See Collins v. Yellin*, 141 S. Ct. 1761, 1780 (2021); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *Bond v. United States*, 564 U.S. 211, 220 (2011). The government assumes for purposes of this response that defendant has standing. But what remedy is available if the Court finds a violation of the Appropriations Clause is a wholly distinct analysis. *See, e.g.*, *Collins*, 141 S. Ct. at 1781 (observing that the scope of relief turns on the harm attributable to a constitutional violation).

[11] Two other circuits likewise did not dismiss the indictment. *See United States v. Bilodeau*, 24 F.4th 705, 711 n.6 (1st Cir. 2022); *United States v. Trevino*, 7 F.4th 414, 421-22 (6th Cir. 2021).

permanent appropriation would not prevent the Special Counsel from using other appropriated funds to pursue the prosecution. Because the Court cannot grant more relief than is warranted by an alleged constitutional violation, the nature of the defendant's objection cannot support dismissal.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, the Court should deny the defendant's motion to dismiss.