DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALEXANDER SMIRNOV, ) <br> ) <br> Defendant, ) <br> _____ ) | CASE NO. 2:24-CR-00091-ODW <br><br> Honorable Otis D. Wright II <br> Date of Hearing: August 26, 2024 <br> Time of Hearing: 11:30 a.m. |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY THE SPECIAL COUNSEL AND DISMISS THE INDICTMENT IN THIS CASE

COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby files his Reply in support of his Motion to Disqualify David C. Weiss (Special

Counsel), Leo J. Wise (Principal Senior Assistant Special Counsel), Derek E. Hines (Senior Assistant Special Counsel), and Sean F. Mulryne and Christopher M. Rigali (Assistant Special Counsels), and dismiss the Indictment (ECF No. 1, Feb. 14, 2024) in this case.[1]

Dated this 9th day of August, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

 /s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

---

[1] Mr. Smirnov filed his notice of motion and motion to dismiss on July 15, 2024, as ECF No. 93 (collectively, "Def. Mot."). The Government filed its opposition on August 5, 2024, as ECF No. 99 ("Gov. Opp."). This matter is set for a hearing on August 26, 2024. *See* ECF No. 93.

## TABLE OF CONTENTS

I. ARGUMENT..................................................................................... 1

    A. The present indictment—which charges neither President Biden nor his son, but a third-party who happened to have alleged dealings with the latter—exceeds the scope of the Appointments Order.....................1

    B. By pointing out the conflict of interest that is facially apparent in this case, Mr. Smirnov advanced a claim grounded in precedent and recent commentary..............................................................................6

    C. The Government's reliance on *United States v. Nixon* is misplaced, and this Court should—as did Judge Cannon in the Florida case—reject it and dismiss the Mr. Smirnov's indictment................................... 7

    D. The correct remedy for the instant violation of the Appointments Clause is—as held in the Florida case—dismissal................................ 10

II. CONCLUSION............................................................................. 12

CERTIFICATE OF SERVICE.................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Manafort v. U. S. Dep't of Just.*,
311 F. Supp.3d 22 (D.D.C. 2018)……………………………………………. 5

*Trump v. United States*,
144 S. Ct. 2312 (2024)……………………………...………………………4

*United States v. Donald J. Trump, et al.*,
Case 9:23-cr-80101-AMC (July 15, 2024)…………………………………2, 12

*United States v. Nixon*,
418 U.S. 683 (1974)……………………………………………………….6-10

**ARTICLES**

Tillman and Blackman, *What We Did and Did Not Argue in United States v. Trump*,
Harvard J. Pub. Policy (July 16, 2024)…………………...…………………6-7, 9-10

# MEMORANDUM OF POINTS AND AUTHORITIES

I. ARGUMENT

*A. The present indictment—which charges neither President Biden nor his son, but a third-party who happened to have alleged dealings with the latter—exceeds the scope of the Appointments Order.*

While duly reciting several regulatory exceptions in subsection (b), the present Appointment Order (that is, Order No. 5730-2023, signed by Attorney General Garland on Aug. 11, 2023) was crafted narrowly to apply—as the *only* named target—to Robert Hunter Biden, whose Delaware-based indictment was already a matter of record:

> In 2019, United States Attorney David C. Weiss, along with federal law enforcement partners, began investigating allegations of certain criminal conduct by, among others, Robert Hunter Biden. That investigation includes the investigation and prosecutions referenced and described in *United States v. Robert Hunter Biden*, Criminal Action Nos. 23-mj-274 (MN) and 23-61 (MN) (D. Del.).
>
> By virtue of the authority vested in the Attorney General, including 28 U.S.C §§ 509, 510, 515, and 533, in order to discharge my responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of certain matters, I hereby order as follows:
>
> (a) David C. Weiss, United States Attorney for the District of Delaware, is appointed to serve as Special Counsel for the Department of Justice.
>
> (b) The Special Counsel is authorized to conduct the ongoing investigation described above, as well as any matters that arose

> from that investigation or may arise from the Special Counsel's investigation or that are within the scope of 28 C.F.R. § 600.4(a).
>
> (c) The Special Counsel is authorized to prosecute federal crimes in any federal judicial district arising from the investigation of these matters.
>
> (d) Sections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel.

*Id*. at 1-2.

By the terms of his Order, therefore, Special Counsel Weiss received far less prosecutorial latitude than did Special Counsel Jack Smith in *United States v. Trump, et al*., Case 9:23-cr-80101-AMC, the "documents" case previously pending in the United States District Court for the Southern District of Florida. There, as summarized by District Judge Cannon in her July 15, 2024 order of dismissal ("Fla. Order"):

> The Appointment Order [for Special Counsel Smith] . . . authorizes the Special Counsel to conduct *two* specified "ongoing investigation[s]" and to "prosecute federal crimes arising from" those investigations . . . . The first investigation relates to "efforts to interfere with the lawful transfer of power following the 2020 presidential election" . . . . The second investigation is "referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United States* . . ., as well as any matters that arose or may arise directly from this investigation or that are within the scope of 28 C.F.R. § 600.4(a)" . . . . The instant Superseding Indictment—and the only indictment at issue in this Order—arises from the latter investigation.

Fla. Order at 7 (emphasis added). Thus, while Special Counsel Smith was authorized to investigate *two* "ongoing investigations" into former President Trump, the instant Appointment Order never mentions Mr. Smirnov and the instant Indictment does not charge "Robert Hunter Biden," the only person expressly mentioned in that Order.

Here, the Indictment at para. 41 states "[i]n July 2023, the FBI requested that the U.S. Attorney's Office for the District of Delaware assist the FBI in an investigation of allegations related to the 2020 1023. At that time, the United States Attorney's Office for the District of Delaware was handling an investigation and prosecution of Businessperson 1." The Appointment of Special Counsel cited in the Government's Opposition is dated August 11, 2023, which is a date after the FBI's request identified in paragraph 41 of the Indictment.

Accordingly, although the Government has asserted in their Opposition that "[t]his case arose from the investigation of Robert Hunter Biden because the defendant provided false derogatory information to the FBI about Robert Hunter Biden's business dealings;" it appears the Government is referring to the investigation conducted by Mr. Weiss in his capacity as the U.S. Attorney for the District of Delaware, but prior to his appointment as Special Counsel on August 11, 2023. *See* Gov. Opp. at p. 4, lines 12-14.

Furthermore, in its opposition, the Government 1) ignores the narrowness of Mr. Weiss's authority in this case, while 2) complains that Mr. Smirnov, in his motion,

3

quoted "large portions" of Judge Cannon's damning opinion to support her dismissal of the Florida indictment—which was based on Mr. Smith's *broader* grant of prosecutorial authority than the one received by Mr. Weiss. *See, e.g.*, Gov. Opp. 6-7; *but compare id*. at 15 (unable to distinguish Judge Cannon's opinion on the merits, the Government is reduced to weakly stating that it "respectfully disagrees with the reasoning in that opinion, as well as Justice Thomas's solo concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347-52 (2024).").

These distinctions highlight the liberties taken by Mr. Weiss in his prosecution of Mr. Smirnov, on a narrowly drawn Appointment Order. The Government proffers nothing—not even a bare allegation, much less any actual evidence—to support the supposition that, once engaged in its Hunter Biden investigation, Special Counsel Weiss sought supplemental regulatory authorization (under 28 C.F.R. § 600.4(a), as cited in subsection (b) of the Appointment Order) to investigate not only the President's son, but also "any matters that arose from that investigation or may arise from the Special Counsel's investigation or that are within the scope . . . § 600.4(a)." Mr. Smirnov is not aware of the Government ever having made any request (or, having held any consultation with the Attorney General) for supplemental, expanded authority beyond what was conferred in the August 11, 2023 Order.[1]

---

[1] We note parenthetically that the Government did not mention an interesting deviation from statutory template in this case. Thus, the text of 28 C.F.R. § 600.4(b) provides:

4

The foregoing reveals that Mr. Weiss's statutorily unfounded prosecution of Mr. Smirnov exceeds the limited authority he was given by the Attorney General. *See, e.g.*, *Manafort v. U. S. Dep't of Just.*, 311 F. Supp.3d 22, 25-26 (D.D.C. 2018) (dismissing civil action against DOJ because plaintiff, indicted after a Special Counsel investigation, had an adequate remedy at law: "The [civil] complaint requests 'an order and judgment setting aside the Appointment Order and declaring it invalid' and it asks for 'an order and judgment . . . setting aside all actions taken against Mr. Manafort pursuant to the Appointment Order,' which would include the pending criminal indictments;" "Plaintiffs claims about the legitimacy of the Appointment Order can be addressed in his criminal cases in accordance with the Federal Rules of Criminal Procedure . . . ."). Mr. Smirnov thus requests that this Court rule—in this criminal proceeding—that the prosecution of Mr. Smirnov violated the Appointments Clause.

---

> (b) If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she *shall* consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere.

*Id*. (emphasis added). But in the Appointment Order brandished against Mr. Smirnov, the text omits any mention of 1) the statutorily *mandated* "consultation" between the Special Counsel and the Attorney General, and 2) the additional requirement that the Attorney General—*i.e.*, the sole delegator of Mr. Weiss's authority—formally "*determine*" whether any expansion "beyond that specified in his . . . original jurisdiction" is "necessary."

### B. By pointing out the conflict of interest that is facially apparent in this case, Mr. Smirnov advanced a claim grounded in precedent and recent commentary.

The Government is incorrect when it suggests (Gov. Opp. at 20) that—by pointing out the obvious conflict of interest in this case—Mr. Smirnov lacked support for this proposition. In reply, therefore, we now provide an excerpt from a published article that relies upon both written opinions and government reports.

> The traditional purpose of Independent Counsels . . . and Special Prosecutors . . . (as in [*United States v. Nixon*, 418 U.S. 683 (1974)], was to prevent a particular conflict of interest*:* where the DOJ would investigate itself, the President, *as well as the President's family and close confidants*. There would be a conflict in such cases *because the DOJ* is ultimately responsible to the President . . . . [P]rosecutors *outside* the usual chain of responsibility, and who enjoyed unusual independence, were needed so that DOJ could *avoid internal conflicts*—the conflicts that arise where the prosecutor investigates itself and/or those to whom the prosecutor is responsible. For example, Attorney General Garland's decision to appoint a special counsel to investigate President Biden's document case, as well as Hunter Biden's criminal case, *fits into this paradigm*. [J]ack Smith explained this approach in his [Florida] opposition brief:
>
> > [T]he GAO, "an independent agency within the legislative branch" that serves Congress, *Bowsher v. Merck & Co*., 460 U.S. 824, 844 (1983), stated that it "agree[d] with the Department that the same statutory authorities that authorize the Attorney General . . . to delegate authority to a U.S. Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation."

Smith's brief also relied on *United States v. Stone*, [394 Fed. Supp.3d 1, 17 (D.D.C. 2019)]. *Stone* relied upon the same GAO report . . . [and] explained: "The [Ethics in Government Act] authorized the Attorney General to refer criminal matters involving certain high-level government officials . . . to a three-judge court, which would be responsible for the appointment of an *independent investigating attorney*."

Tillman and Blackman, *What We Did and Did Not Argue in United States v. Trump*, Harvard J. Pub. Policy, text at nn. 30-33 (July 16, 2024) (emphases added).[2]

### C. The Government's reliance on United States v. Nixon is misplaced, and this Court should—as did Judge Cannon in the Florida case—reject it and dismiss the Mr. Smirnov's indictment.

This Court should follow the lead of Judge Cannon and reject the Government's attempt (*see* Gov. Opp. at 16-17) to find binding support for the appointment of Special Counsel Weiss in *United States v. Nixon,* 418 U.S. 683 (1974).

---

[2]  Indeed, at the oral argument shortly proceeding the dismissal of the Florida case, the DOJ attorney representing Special Counsel Jack Smith highlighted to Judge Cannon these same "avoidance of conflict" concerns:

> It is inherent in the effort to, on the one hand, ensure that—whether we call it an independent counsel or a Special Counsel—has *adequate independence* when a situation presents itself that requires the avoidance of conflict or somebody who can operate *outside* of the typical Justice Department, sort of, operations because it's investigating the Justice Department itself *or it's investigating some sort of high-ranking or high-level political official*.

Tillman & Blackman, *supra* text at n. 33 (quoting Transcript in *United States v. Trump, et al.*) (June 21, 2024) (emphases added).

7

Whether—in 2024—*Nixon* furnished a valid basis for appointments such as Mr. Smith's in the Florida case turned (Judge Cannon explained) on whether the following passage from *Nixon* was a binding holding (as unsuccessfully urged by Smith) or nonbinding dicta (as urged by Trump):

> Under the authority of Art. II, § 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. § 516. *It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533.* Acting pursuant to those statutes, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure. The regulation gives the Special Prosecutor explicit power to contest the invocation of executive privilege in the process of seeking evidence deemed relevant to the performance of these specially delegated duties.

*Nixon*, 418 U.S. at 694–95 (quoted by Fla. Order at 53-54) (emphasis in original).

Judge Cannon ruled that the quoted passage was dicta and that—because he was presumptively a "principal officer" (not a "subordinate" or "inferior officer")— Smith's appointment "*violate[d] the Appointments Clause without question*." Fla. Order at 81 (citing Art. II. § 2, cl. 2) (emphasis added); *see also id*. at 54-55 ("The issue of the Attorney General's appointment authority was not raised, briefed, argued, or disputed before the *Nixon* Court," thus suggesting that *Nixon* Court's "passing remarks" were dicta), 57-59 (noting unique "decisional context"), 61-62 (unlike the Florida case or Mr. Smirnov's case, defendant in *Nixon* does not contest validity of appointment), 71-81 (noting, *inter alia*, that current regulations "impose almost no supervision or direction

8

over the Special Counsel" and that "while . . . Special Counsel Smith's position will end '[a]t the conclusion' of his 'work,' *see* 28 C.F.R. § 600.8(c), . . . that circumstance does not equate to a 'limited tenure' in a meaningful sense;" thus, "compelling reasons" suggest designating Smith as a "principal-officer" whose appointment as such "would violate the Appointments Clause without question").

Judge Cannon's analysis regarding *Nixon* is supported by the commentators.

> First, the *Nixon* Court repeatedly described the circumstances giving rise to the conflict as unique . . . . When [as in that case] the Court tells the parties . . . that the facts are "unique" and . . . does so multiple times, the implication is that other cases are, in fact, dissimilar and that the holding should *not* be extended to different facts at a subsequent date. *Nixon* was the proverbial ticket good for one ride—or perhaps, one president . . . .
>
> Second, the *Nixon* Court . . . expressly rel[ied] on several statutory provisions, and on regulations put into effect in 1973 . . . . [T]he latter regulations were superseded by the Ethics in Government Act (1978) . . . . The 1978 act . . . expired in 1999. [N]ew regulations were put into effect in 1999 by Attorney General Reno. The *Nixon*-Court-era regulations for special prosecutors and the modern . . . regulations for special counsels are *not* the same. For that reason alone, *Nixon* is not and cannot be controlling: *Nixon* relied upon federal regulations which are no longer in effect.
>
> Third, *Nixon* explained why the 1973 . . . regulations were significant[:]
>
>> The Attorney General will not . . . interfere with the Special Prosecutor's decisions or actions . . . . [T]he President will not exercise his Constitutional powers to effect the discharge of the Special Prosecutor . . . except for extraordinary improprieties . . . .

9

> Under the 1973 . . . regulations,. . . *Nixon* was predicated on a unique and an unmatched level of independence vested in special prosecutors. By contrast, today's special counsel, including Jack Smith, enjoy no such independence against removal. Thus, *Nixon* is not controlling.

Tillman & Blackman, *supra* text at nn. 11-13. Contrary to the Government's argument, therefore, the *Nixon* dicta cannot—under the regulations in effect in 2023—support Mr. Weiss's appointment.

### D. The correct remedy for the instant violation of the Appointments Clause is—as held in the Florida case—dismissal.

As an alternative to deeming dismissal the proper remedy for a violation of the Appropriations Clause, Mr. Smirnov further urges this Court to find that a violation of the *Appointments Clause* also warrants dismissal.[3]

[I]n reaching the same conclusion based on an Appointments Clause infirmity, Judge Cannon explained:

> The Supreme Court's decision in *Lucia v. SEC*, 585 U.S. 237 (2018), serves as the best comparator for remedy purposes. In *Lucia*, the petitioner . . . raised a timely challenge to the validity of the judge's appointment. *Id*. at 243–44. The Supreme Court conclude[ed] that the judge's appointment was constitutionally defective under the Appointments Clause. *Id*. at 251. Because the judge "heard and decided [the petitioner's] case without the kind of appointment the Clause requires," the Court ruled that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id*. at 251 (quoting *Ryder v. United States*, 515 U.S. 177, 183, 188 (1995)) (full

---

[3] Mr. Smirnov reasserts his Appropriations Clause arguments raised in the underlying Motion. *See* Def. Mot. at 17-19.

> citation). In other words, *Lucia* undid the unlawful action by granting petitioner a new hearing before a constitutionally appointed officer.
>
> Here, as in *Lucia*, the appropriate remedy is invalidation of the officer's *ultra vires* acts. Since November 2022, Special Counsel Smith has been exercising "power that [he] did not lawfully possess." *Collins v. Yellen*, 594 U.S. 220, 258 (2021) (full citation). All actions that flowed from his defective appointment—including his seeking of the Superseding Indictment . . .—were unlawful exercises of executive power. Because . . . Smith "cannot wield executive power except as Article II provides," his "[a]ttempts to do so are void" and must be unwound. *Id*. at 283 (Gorsuch, J., concurring) . . . . [T]he Court sees no alternative course to cure the unconstitutional problem.

Fla. Order at 83-84.

Because Mr. Weiss has also been "exercising power he did not possess" since the Attorney General signed Order No. 5730-2023 on August 11, 2023, dismissal is likewise compelled. *See* Fla. Order at 84, n.62 (invalidation of *ultra vires* acts and dismissal—and nothing less—are compelled, given that the constitutional violation at issue "goes to the *core* of [the] appointment") (emphasis added).

///

11

## II. CONCLUSION

The present Indictment (ECF No. 1, Feb. 14, 2024) was brought by an unauthorized Special Counsel with funds not appropriated by Congress. Thus, for the foregoing reasons and in *United States v. Donald J. Trump, et al.*, Case 9:23-cr-80101-AMC (July 15, 2024) (Cannon, J.), this Court should dismiss the Indictment with prejudice.

Dated this 9th day of August, 2024.

                                            Respectfully Submitted:

                                            CHESNOFF & SCHONFELD

                                            /s/ David Z. Chesnoff
                                            DAVID Z. CHESNOFF, ESQ.
                                            *Pro Hac Vice*
                                            RICHARD A. SCHONFELD, ESQ.
                                            California Bar No. 202182
                                            520 South Fourth Street
                                            Las Vegas, Nevada 89101
                                            Telephone: (702)384-5563
                                            dzchesnoff@cslawoffice.net
                                            rschonfeld@cslawoffice.net
                                            Attorneys for Defendant ALEXANDER SMIRNOV

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld