DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone: (771) 217-6090
    E-mail:    LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:    SFM@usdoj.gov; christopher.rigali2@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACCESS TO CIPA § 4 FILING<br><br>Hearing Date:  September 9, 2024<br>Hearing Time:  10:00 a.m.<br>Location:  Courtroom of the Hon. Otis D. Wright II |

      The United States of America, by and through its counsel of record, hereby submits this opposition to Defendant's Motion for Access to CIPA § 4 filing (ECF No. 98 ("Motion for Access")), pursuant to which Defendant seeks "attorneys-eyes-only" access to the Government's classified, *ex parte* motion for a protective order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA") and Federal Rule of Criminal Procedure 16(d)(1). For the reasons discussed in the attached Memorandum of Points and Authorities, the Motion for Access should be denied. Given the clarity of the law on this

issue and the absence of disputed facts, the Government submits that a hearing on the motion is unnecessary.

Dated: August 19, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
Assistant Special Counsel

/s/ Chris M. Rigali

CHRISTOPHER M. RIGALI
Assistant Special Counsel
United States Department of Justice

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Alexander Smirnov ("Defendant"), through his attorneys ("defense counsel"), has moved this Court for an order granting defense counsel access to the Government's previously filed "Classified *Ex Parte*, *In Camera* Motion and Memorandum of Law in Support for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Federal Rule of Criminal Procedure 16(d)(1)" (ECF No. 86).[1] Defendant originally did not file anything challenging the *ex parte* nature of the filing. The Court thereafter accepted the Government's filing on an *ex parte* basis, *see* ECF No. 94, at 1 ("The Court finds that the Government's Motion was properly filed *ex parte*, *in camera* for this Court's review, pursuant to Section 4 of [CIPA]."), and issued an order, pursuant to Section 4 of CIPA and Federal Rule of Criminal Procedure 16(d)(1), setting the terms of discovery, ECF No. 94. Defendant now seeks to undo the Court's prior ruling, seeking "attorneys-eyes-only" access to the Government's CIPA Section 4 Motion and the underlying classified materials referenced therein.[2] The Court should deny this request. The Ninth Circuit and other federal courts, including courts of appeal, have repeatedly affirmed the practice of proceeding *ex parte* under CIPA Section 4, noting that "an adversary hearing with defense knowledge [of the information the government seeks to withhold] would defeat the very purpose of the discovery rules."

---

[1] ECF No. 86 is the Notice of Manual filing that references the Government's electronic filing, with the Classified Information Security Officer, of its classified, *ex parte* filing. To avoid confusion, the Government refers to its substantive filing (its classified Motion, Memorandum of Law in Support, and related exhibits) as its "CIPA Section 4 Motion."

[2] Defendant's filing (the "Motion for Access") is somewhat confusing in the relief that it seeks. The Motion for Access at one point seeks attorneys-eyes-only access to the Government's CIPA Section 4 filing, *see* ECF No. 98; at another point seeks "attorneys'-eyes-only access to the paragraphs and pages of the submission that are *not* portion-marked by the Government as classified," *id.* at 7; and elsewhere seeks access to "the complete discovery provided or referenced in the Government's CIPA filings," *id.* at 10; *see also id.* at 3, 9. The Government's best reading of the Motion for Access is that defense counsel seek access to the Government's CIPA Section 4 Motion and any classified materials "provided [with] or referenced" in that filing. *Id.* at 10. Accordingly, the Government responds here to the request that it understands defense counsel is making.

*United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *see United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (similar); *see also United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020); *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008). Given the clarity of the law on this issue and the absence of disputed facts, a hearing on Defendant's Motion for Access is unnecessary.

## II.     BACKGROUND

On June 24, 2024, the Government filed a classified, *ex parte*, *in camera* motion for a protective order pursuant to CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1). *See* ECF No. 86 (Notice of Manual Filing). Defendant received notice of this manual filing, which indicated that the CIPA Section 4 Motion was filed on an *ex parte* basis. *See id.* Defendant made no written objection to the *ex parte* nature of the filing. More than three weeks after the Government made its filing, on July 17, 2024, this Court issued an order granting the Government's motion. ECF No. 94 (the "CIPA Section 4 Order"). The Court's CIPA Section 4 Order "f[ound] that the Government's Motion was properly filed *ex parte*, *in camera* for th[e] Court's review, pursuant to Section 4 of [CIPA]," *id.* at 1, concluded that the information referenced in the Government's CIPA Section 4 Motion implicated the state-secrets privilege, *id.* at 2, and, applying the Ninth Circuit's CIPA precedents, set the terms of discovery, *id.* at 2–3. Regarding the terms of discovery, the Court approved the provision of substitutions or summaries for certain, identified classified information, the application of particular redactions to identified FBI documents to be produced in unclassified discovery, and the deletion from discovery of "certain categories of classified material—material that is either not discoverable, not relevant and helpful to the defense, or is otherwise duplicative or cumulative of material being produced to the defense in unclassified discovery." *Id.*

While defense counsel have been approved for interim security clearances, the Government has been unable to produce the classified summaries/substitutions because there is no protective order in place to govern the dissemination and handling of classified

2

information. The parties reached an impasse in negotiating a CIPA Section 3 protective order and a limited number of disputed issues are now before the Court on the Government's motion for a protective order (ECF No. 96) and Defendant's opposition thereto (ECF No. 101); the Government will be filing a reply memorandum to address objections raised by Defendant in his opposition papers.[3]

### III. ARGUMENT

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. III, § 4. Section 4 further provides that the United States may demonstrate that the withholding of items of classified discovery or the use of such alternatives to making classified information available is warranted through an *ex parte*, *in camera* submission to the Court:

> The court may permit the United States to make a request for such authorization **in the form of a written statement to be inspected by the court alone**. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

*Id.* (emphasis added).

Recognizing that CIPA grants the Court express authority to proceed *ex parte* under Section 4, Defendant makes several arguments as to why the Court should not permit *ex parte* Section 4 practice in this case, which Defendant did not previously oppose. His core

---

[3] Given that defense counsel have declined to agree to terms for a protective order commonly used in CIPA cases and have forced the issue to be litigated before the Court, it is perplexing that they also complain about their lack of access to classified discovery because no protective order is in place. *See* ECF No. 98, at 6 n.2.

argument is that *ex parte* proceedings are disfavored in criminal cases and especially so where, as here, a court must "stand in a defendant's shoes" to make assessments about the type of information that would be relevant and helpful to the defense. ECF No. 98, at 7. Defense counsel, he argues, are better positioned than the Court to undertake this task, and they should be allowed to do so given that they will be granted security clearances for this case. *Id.* at 7–9. He also argues that in cases outside of the CIPA context—such as FOIA and habeas proceedings—parties have been "granted greater access to filings by the Defense Department and [U.S. Intelligence Community] agencies." *Id.* at 7–8. These arguments have been raised and rejected before, and this Court should follow the weight of authority in denying Defendant's motion for "attorneys-eyes-only" access to the Government's CIPA Section 4 Motion and the classified materials referenced therein.[4]

Section 4 of CIPA empowers courts to set the terms of discovery to protect the government's legitimate interest in safeguarding classified information while simultaneously ensuring a defendant's right to a fair trial. 18 U.S.C. App. III, § 4; *see Al-Farekh*, 956 F.l3d at 106 (the purpose of CIPA is "to protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial"); *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013) (CIPA "procedures endeavor to harmonize a defendant's right to a fair trial with the government's right to protect classified information"). Through Section 4, a key function of CIPA is to shield from the defense—who, but for the fact of the criminal litigation, would have no business obtaining access to classified information—classified information that is not relevant and helpful to the defense of the accused.

Perhaps not surprisingly, defendants and defense counsel in criminal prosecutions across the country have sought access to the government's *ex parte* CIPA filings and/or the classified materials discussed therein. In a number of these cases, defense counsel have argued that they should have access to the government's classified, *ex parte* filings

---

[4] Defendant also *suggests* that the Government may not have properly invoked the state-secrets privilege in moving under Section 4 of CIPA, but that is not accurate.

because they (defense counsel) have been granted security clearances. *See infra.* These efforts to obtain access have regularly failed, and for good reason.

As several federal courts of appeal (including the Ninth Circuit) have observed, "the right that section four confers on the government **would be illusory** if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view." *Campa*, 529 F.3d at 995 (emphasis added) (citing *United States v. Mejia*, 448 F.3d 436, 457–58 (D.C. Cir. 2006) and H.R. Rep. No. 96-831, pt. 1, at 27 n.22 (1980) ("[S]ince the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.")); *Sarkissian*, 841 F.2d at 965 (quoting the same language from the House Report).

The calculus is no different even though defense counsel in this case have been approved for interim clearances and will be given access to *some* classified information. In *United States v. Kotey*, the United States District Court for the Eastern District of Virginia observed that "[a]t least three circuit courts have addressed this question [of defense access to the government's classified, *ex parte* CIPA filings], and each circuit has persuasively rejected the argument raised by defendant." 545 F. Supp. 3d 331, 333 (E.D. Va. 2021). One of those circuits is the Ninth Circuit. In *United States v. Klimavicius-Viloria*, the Ninth Circuit concluded that while "[*e*]*x parte* hearings are generally disfavored . . . . [i]n a case involving classified documents, . . . *ex parte*, *in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of information." 144 F.3d 1249, 1261 (9th Cir. 1998). This conclusion was later reaffirmed in *Sedaghaty*, with the Ninth Circuit commenting that "broadside challenge[s] to the in camera and ex parte proceedings" pursuant to CIPA are "battle[s] already lost in the federal courts." 728 F.3d at 908. Notably, in *Sedaghaty*, the defendant argued "that he should have received

5

more fulsome notice of the subject of the [government's *ex parte*] filings **and that his security-cleared counsel should have had access to the classified documents in discovery**." *Id.* (emphasis added).  The Ninth Circuit rejected this argument: "[T]he simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings." *Id.* at 909 (citing *United States v. El-Mazain*, 664 F.3d 467, 568 (5th Cir. 2011)).  The court also rejected the defendant's argument about receiving a "more fulsome notice of the subject" of the government's *ex parte* filings, concluding that the notice defendant received was "constitutionally adequate—[defendant] has no due process right to receive a description of the materials in the government's possession that are not discoverable." *Sedaghaty*, 728 F.3d at 909.

Other federal appellate courts that have addressed this issue have gone even further. In *United States v. Asgari*, the Sixth Circuit reversed a district court's order requiring "the government to disclose to [cleared] defense counsel that material that [the court] had previously declared irrelevant." 940 F.3d 188, 189 (6th Cir. 2019).  The district court ordered this disclosure "in light of defense counsel's superior understanding of Asgari's defense strategy and counsel's purported [top secret/sensitive compartmented information] security clearance." *Id.* at 191.  In reversing, the Sixth Circuit held that "[n]othing in § 4 suggests that defense counsel has a role to play when the district court assesses the relevance or helpfulness of the classified information.  Just the opposite.  The statute refers to the district court's assessment of these factors through an ex parte hearing . . . that occurs without the defendant's knowledge . . . ." *Id.* at 192.  In so holding, the court specifically rejected two arguments that Defendant raises here:  that defense counsel are better positioned to assess the utility of the information at issue and that "the government's privilege is not in jeopardy if the disclosure is made to a defense counsel like this one, who has a high security clearance . . . ." *Id.*  Regarding the first of these arguments, the Sixth Circuit "appreciate[d]" the force of the point but concluded that "the text vests the district court alone with the responsibility to make the decision" regarding

relevance. *Id.* "Section 4 certainly does not tell the district court to outsource its statutory responsibility to defense counsel any time it has trouble deciding whether information is relevant." *Id.* Regarding the argument about disclosure to *cleared* defense counsel, the court found that this argument "does not move the needle either. . . . Whether defense counsel has a security clearance or not, top secret or not, are considerations that do not explain why we can read defense counsel's involvement into the § 4 relevance inquiry." *Id.*

In the Second Circuit, *ex parte* CIPA Section 4 practice is effectively "the rule." *United States v. Zazi*, No. 10-CR-60 (JG), 2011 WL 2532903, at *2 (E.D.N.Y. June 24, 2011). In *Al-Farekh*, the Second Circuit rejected the argument that *ex parte* Section 4 proceedings are not permitted where defense counsel have security clearances. 956 F.3d at 107. The court's analysis rested on both the text and the structure of CIPA:

> Starting with the text, the plain language of § 4 makes clear that a district court is required to decide in the first instance whether the Government's classified information is discoverable and the extent and form of any disclosure to the defendant. The structure of the CIPA statute reinforces our reading of § 4. Congress knew how to provide for the participation of defendants in certain *in camera* proceedings, as it did in § 6 of CIPA. Yet, notably, Congress did not require such participation in § 4 proceedings. Instead, § 4 simply provides that an *ex parte* motion by the Government may "be inspected by the court alone."

*Id.* The court also observed that, "[a]s a practical matter, because it may well be that the information in a § 4 motion is not discoverable at all, Al-Farekh's theory would permit a defendant represented by counsel with a security clearance to gain access to classified information that would otherwise be unavailable to the defendant. That possibility could result in the improper disclosure of information that, by its very nature, may put the national security of the United States at risk." *Id.* at 108–09.

All of these decisions adhere to the principle that "[p]ersons with an appropriate security clearance still may not have access to classified information if they do not have a 'need to know' that information." *Id.* at 109 n.19 (citations omitted); *see Kotey*, 545 F. Supp. 3d at 337; *Zazi*, No. 10-CR-60 JG, 2011 WL 2532903, at *3 ("Zazi's lawyers both possess top secret security clearances, which afford them access to the classified summaries the government will shortly provide, but those clearances do not mandate an adversary hearing or access to immaterial classified information for which counsel has no legitimate need."); *United States v. Libby*, 429 F. Supp. 2d 18, 24 & n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses."), *as amended*, 429 F. Supp. 2d 46 (D.D.C. 2006). "As the Second Circuit emphasized in *Al-Farekh*, 'defense counsel does not 'need to know' classified information that is neither helpful nor material to the defense of his or her client.'" *Kotey*, 545 F. Supp. 3d at 337 (quoting *Al-Farekh*, 956 F.3d at 109 n.19).

In this case, the Court, acting on the Government's classified, *ex parte* CIPA Section 4 Motion (which sat unopposed for more than three weeks), entered an order authorizing the Government to, among other things, provide substitution or summaries for certain, identified classified information and to withhold from discovery "certain categories of classified material—material that is either not discoverable, not relevant and helpful to the defense, or is otherwise duplicative or cumulative of material being produced to the defense in unclassified discovery." ECF No. 94. Given the nature and content of the Government's *ex parte* filing and the Court's order, granting the Motion for Access unquestionably would mean exposing to defense counsel classified national security information for which they have no "need to know" (because the information is not relevant and helpful to the defense of their client in this matter). As the Ninth Circuit has observed, granting this sort of access would undermine the entire purpose of the relief available to the government under CIPA Section 4.

Defendant's reliance on *United States v. Stillwell*, 986 F.3d 196 (2d Cir. 2011), is not helpful. That case involved an incredibly unusual situation in which a Department of Justice component filed an *ex parte* CIPA Section 4 motion with the district court *without the knowledge of the prosecutors actually prosecuting the case*. The prosecutors and the defendants only learned about this filing when the case was on appeal. Ultimately, the Second Circuit "issued an Order directing the U.S. Attorney"—once the material was disclosed to the U.S. Attorney's Office—"to disclose any material subject to Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, *Brady*, and *Giglio* to defense counsel." *Id.* at 199. Nothing in the court's opinion indicates that the government was compelled to turn over to defense counsel the original classified filing and related materials; to the contrary, the Second Circuit's order requiring disclosure of certain information to the defense "provided that such a disclosure could be in unclassified format through a so-called 'substitution' pursuant to CIPA Section 6." *Id.* at 199 n.9. Accordingly, this case simply does not support Defendant's assertion that, "[u]nder this precedent, Mr. Smirnov is entitled to review the redacted version of the government's Section 4 filing and, after full security clearances are granted for his attorneys, all the unredacted, classified discovery notwithstanding" this Court's CIPA Section 4 ruling. ECF No. 98, at 9. In this case, the CIPA filing at issue was filed by the prosecutors who are handling this case, and those prosecutors are aware of their discovery obligations.[5]

Finally, Defendant's reliance—in a footnote, nonetheless—on non-CIPA cases "where parties are granted greater access to filings by the Defense Department and [U.S. Intelligence Community] agencies that summarize sensitive information" is also unavailing. ECF No. 98, at 8. Other than citing to district court filings in various FOIA

---

[5] Defendant baldly asserts, as have defendants in other matters, *see*, *e.g.*, *United States v. Trump*, Case No. 9:23-cr-80101-AMC, ECF No. 237 at 1, ECF No. 238 at 1–2 (S.D. Fl. 2023), that "prosecutors filing such a 'CIPA motion' [pursuant to Section 4] seek permission to withhold *Brady* material," ECF No. 98, at 7. Of course, "*Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant . . . ." *Mejia*, 448 F.3d at 457. The Government is fully aware of its obligations under *Brady* not to use CIPA Section 4 as a vehicle to withhold exculpatory material from the defense, and as is plain from its CIPA Section 4 Motion, it is not seeking to do so here.

cases, *id.* at 8 & n.4, Defendant advances no argument whatsoever as to why those filings support his argument that, in a CIPA Section 4 proceeding in a criminal case, his attorneys should have access to classified information that is not relevant and helpful to his defense. "Section 4 of CIPA"—not FOIA—"governs the discovery of classified information by criminal defendants." *Al-Farekh*, 956 F.3d at 106; *see also Sedaghaty*, 728 F.3d at 904.

## IV.   CONCLUSION

The Court should deny the Motion for Access and do so without a hearing. The case law is clear that *ex parte* CIPA Section 4 practice is the norm in cases where the government's classified *ex parte* filing contains classified information that is not relevant and helpful to the defense, as is the case here.