UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:24-cr-00091-ODW-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| ALEXANDER SMIRNOV, | ) | Monday, August 26, 2024 |
| | ) | |
| Defendant. | ) | (11:19 a.m. to 12:12 p.m.) |

HEARING RE:

MOTION TO DISQUALIFY COUNSEL AS TO SPECIAL COUNSEL
AND MOTION TO DISMISS CASE [DKT.NO.93]

BEFORE THE HONORABLE OTIS D. WRIGHT, II,
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:                SEE PAGE 2

Court Reporter:           Recorded; CourtSmart

Courtroom Deputy:         Derek Davis

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES**</u>:


For Plaintiff:              AUSA LEO J. WISE
                           AUSA DEREK HINES
                           AUSA SEAN MULRYNE
                           U.S. Department of Justice
                           Special Counsel's Office
                           950 Pennsylvania Ave. NW, Room B-200
                           Washington, DC 20530

For Defendant:             RICHARD A. SCHONFELD, ESQ.
                           DAVID Z. CHESNOFF, ESQ.
                           Chesnoff & Schonfeld
                           520 South 4th St.
                           Las Vegas, NV 89101

                           NASER J. KHOURY, ESQ.
                           14427 Sylvan Street
                           Van Nuys, CA 91401

                           MARK A. BRYNE, ESQ.
                           Byrne & Nixon
                           700 North Brand Boulevard
                           Suite 1180
                           Glendale, CA 91203

1        **Los Angeles, CA; Monday, August 26, 2024; 11:19 a.m.**

2                          **(Call to Order)**

3          **THE CLERK:**  Calling item number 1, 24-CR-91-ODW,

4    United States of America versus Alexander Smirnov.  Counsel,

5    please state your appearances starting with the Government.

6          **MR. WISE:**  Good morning, Your Honor, Leo Wise, Derek

7    Hines and Sean Mulryne for the United States.

8          **THE COURT:**  Gentlemen, good morning.

9          **MR. WISE:**  Good morning, Your Honor.

10         **MR. CHESNOFF:**  May it please the court, Your Honor,

11   David Chesnoff, Richard Schonfeld, Naser Khoury and Mark Byrne

12   on behalf of Mr. Smirnov who's present.

13         **THE COURT:**  Thank you, gentlemen.

14         **MR. SCHONFELD:**  Thank you, Your Honor.

15         **THE COURT:**  All right.  We're on a motion by

16   Mr. Smirnov to disqualify the Government counsel and to dismiss

17   the indictment.

18         Let me tell you I'm not inclined to dismiss the

19   indictment.  I'm not inclined to disqualify Government counsel.

20   I've read your papers and I will hear any additional argument

21   that either side would like to make.  Let's begin with the

22   Government.

23         No, never mind.  Let's begin with the moving party.

24   Mr. Smirnov.

25         **MR. CHESNOFF:**  Thank you.  Your Honor, may I approach

1    that podium?

2         **THE COURT:**  Listen, gentlemen, make yourselves

3    comfortable.  You can remain seated right where you are, you

4    can use the lectern, whatever makes you happy.

5         **MR. CHESNOFF:**  Thank you, Your Honor.

6         **MR. SCHONFELD:**  Good morning, Your Honor, Richard

7    Schonfeld on behalf of Mr. Smirnov.

8         **THE COURT:**  Mr. Schonfeld, good morning.

9         **MR. SCHONFELD:**  Your Honor, as this Court is aware

10   we're moving to dismiss the indictment in this case as a result

11   of the special counsel acting in violation of the Appointments

12   Clause of the United States Constitution, as well as the

13   Appropriations Clause.

14         As to the Appointments Clause, there are three

15   subsets to the argument.  The first is that special counsel is

16   acting as an officer of the United States and were not vested

17   with that authority by Congress.

18         The second is that Mr. David Weiss, the special

19   counsel, is acting as United States Attorney in the District of

20   Delaware at the same time as acting as special counsel, which

21   cannot occur as a result of 28 C.F.R. 600.3.

22         The third, is that the Government has failed to

23   establish that the prosecution of Mr. Smirnov falls within the

24   parameters of the order appointing David Weiss as special

25   counsel.

5

1          As to the Appropriations Clause, we're moving to

2   dismiss the indictment, as Congress has not appropriated funds

3   for the purpose of special counsel license prosecution of

4   Mr. Smirnov.  And funding under the Independent Counsel Fund,

5   under 28 United States Code 591 does not apply to these

6   circumstances.

7          Before we get to the substance of the argument, it's

8   important to recognize the history of how David Weiss was

9   appointed in this case and we need not look further than the

10  order that was issued by Judge Scarsi in this district which I

11  will distinguish in terms of the result later on in my

12  argument.

13         In terms of the history, Mr. Weiss began

14  investigating Hunter Biden in 2018 while acting as the United

15  States Attorney for the District of Delaware.  As early as

16  summer of 2021, Hunter Biden, through his counsel, was in

17  discussion with United States Attorney's Office for the

18  District of Delaware, as well as Department of Justice, Tax

19  Division counsel regarding potential tax charges.

20         So there were two matters that Mr. Biden was trying

21  to resolve at that point in time.  One, was the Department of

22  Justice tax case; and two, was a firearms related charge where

23  venue did lie in the District of Delaware as a result of the

24  allegation that Mr. Biden when applying for the purchase of a

25  firearm, included false information related to the lack of drug

1  use.  That is the basis upon which the District of Delaware was

2  involved in that investigation and ultimate prosecution.

3         In July of 2023, Hunter Biden and the Government

4  reached an agreement on the resolution for tax charges, which

5  included a two count misdemeanor guilty plea, as well as a

6  diversion agreement related to the firearms count.  Those

7  agreements were lodged with the District Court in Delaware.

8         As part of the agreement, Hunter Biden agreed to

9  waive venue related to the tax charges so that it could proceed

10  to resolution in the District of Delaware.  On July 26th, 2023

11  when the parties appeared before the Court in Delaware, the

12  Judge did not accept those agreements.  The Judge asked the

13  parties to rework the agreements and the defendant ended up

14  pleading not guilty to the then pending tax charge in the

15  District of Delaware.

16         The parties were unable to reach an agreement.  And

17  then on August 11th, 2023 the Attorney General appointed David

18  Weiss as special counsel.  That same day, the Government moved

19  to dismiss the tax information in the District of Delaware

20  without prejudice.

21         Special Counsel Weiss then convened a grand jury and

22  pursued prosecution in this district, which led to an

23  indictment of Hunter Biden.

24         The significance of that procedural history is that

25  it becomes quite clear that David Weiss is, to the contrary of

1   independent counsel, he was appointed for the purpose of

2   pursuing the investigation in this district when otherwise he

3   would have no authority to do so.  And that's significant when

4   we look at 28 C.F.R. 600.3, which governs the appointment of

5   special counsel.

6         And what it says is specifically, the special counsel

7   shall be selected from outside the United States Government.

8   That did not occur in this case.

9         Now, I will get to the Appointments Clause.  I will

10  note that Judge Scarsi's order was entered on April 1st, 2024.

11  Since that time, and specifically on July 1st, 2024, the

12  Supreme Court issued its decision in Trump v United States,

13  which is found at 144 Supreme Court 2312.

14        In the concurring opinion of Mr. Justice Thomas in

15  that case he stated the following, I am not sure that any

16  office of the special counsel has been established by law, as

17  the Constitution requires.  By requiring that Congress create

18  federal offices by law, the Constitution imposes an important

19  check against the President.  He cannot create offices at his

20  pleasure.  If there is no law establishing the office that

21  special counsel occupies, then he cannot proceed with that

22  prosecution.

23        The same issue applies here.  Justice Thomas went on

24  to outline how the Constitution sets forth how an office may be

25  created and how it may be filled under the Appointments Clause.

8

1    He outlined, the default manner for appointing officers of the

2    United States is nomination by the President and confirmation

3    by Senate.  He acknowledged that there's a limited exception

4    for appointment of inferior offices, insofar as the Attorney

5    General may be authorized by law to appoint inferior officers

6    without senatorial confirmation.

7            However, he noted, that before the President or the

8    Attorney General can appoint any officer, the Constitution

9    requires that the underlying office be established by law.

10   Established by law refers to an office that Congress creates by

11   statute.  That is not what occurred in this case.

12           Justice Thomas continued, quote, by keeping the

13   ability to create offices out of the President's hands, the

14   founders ensured that no President could unilaterally create an

15   army of officer positions to then fill with his supporters,

16   instead our Constitution leaves it in the hands of peoples'

17   elected representatives to determine whether new executive

18   offices should exist.

19           In response to these arguments, the Government

20   asserts that because Special Counsel Weiss was and is the

21   United States Attorney in the District of Delaware he therefore

22   has the congressional and presidential approval that's

23   necessary.  And they also assert that the Attorney General can

24   then expand his duties.

25           However, that doesn't address the fact that they have

1    actually created an office.  They have multiple attorneys

2    working under that office and just Friday, August 23rd they

3    disclosed a report regarding funding for that office in the

4    millions of dollars that they've spent.

5            **THE COURT:**  Did I miss something?  Are we talking

6    about the Office of the Special Counsel?

7            **MR. SCHONFELD:**  Yes, Your Honor.  And that office, in

8    this instance has not --

9            **THE COURT:**  You started this off with a reference to

10   600.3, qualifications of the special counsel.

11           **MR. SCHONFELD:**  Yes, Your Honor.

12           **THE COURT:**  We have a Code of Federal Regulations

13   dealing with this person that you say has been established

14   contrary to the Constitution.

15           **MR. SCHONFELD:**  What's the question, Your Honor?

16           **THE COURT:**  You said the Office of the Special

17   Counsel is something that apparently has just been made up,

18   that there's nothing in the Constitution that creates such an

19   office.

20           **MR. SCHONFELD:**  What I'm saying, Your Honor, is that

21   in order for David Weiss to act as special counsel in this case

22   it required Congress to create the office of this special

23   counsel.  And then when we get to the Apportionments Clause, it

24   actually also required them to approve the funding of the

25   office, because the United States Treasury is the one who is

1     supposed to fund this prosecution.

2            **THE COURT:**  Okay.

3            **MR. SCHONFELD:**  Instead, what the Government has done

4     in this case is use the indefinite fund, where they are taking

5     money from DOJ coffers with unlimited resources and applying it

6     to this special prosecution which is a violation of the

7     Apportionments Clause.

8            And so getting to the Court's question, 28 C.F.R.

9     600.3 which are the regulations once an office of special

10    counsel has been properly created, require that special counsel

11    be from someone outside of the government.  And the purpose of

12    that as stated by both Justice Thomas as well as in the

13    opinions that have been rendered in multiple cases that we've

14    cited in our briefing, and Justice Thomas went through the

15    history of it as did Justice Cannon in the District of Florida,

16    is for purposes of having someone truly independent when you're

17    investigating government authorities.  And that is not what we

18    have here.

19           So this isn't simply an expansion of David Weiss'

20    authority as the United States Attorney in the District of

21    Delaware.  This is the creation of an office of special counsel

22    which was done improperly.

23           **THE COURT:**  So you're making this argument on behalf

24    of Hunter Biden?

25           **MR. SCHONFELD:**  No, Your Honor, but the way and I'm

11

1  going to get to that.  I might as well now.

2          The actual order of appointment in this case,

3  appointing David Weiss as special counsel was related

4  specifically to number one, the tax investigation and it cites

5  the case number for that from the District of Delaware --

6          **THE COURT:**  Against Hunter Biden.

7          **MR. SCHONFELD:**  Against Hunter Biden.  And number

8  two, the firearms charge against Hunter Biden.

9          And then the order says, and any investigations that

10  arise as a result therefrom.  Well what does Mr. Smirnov have

11  to do with someone failing to file their tax returns and what

12  does Mr. Smirnov have to do with someone putting a false

13  statement on an application for a firearm?  Nothing.

14          And when we look at the indictment in this case at

15  paragraph 23, it actually references the first contact that the

16  Government had with Mr. Smirnov related to these allegations.

17  And that was contact from the FBI in a district in

18  Pennsylvania.  It had nothing to do with the prosecution of

19  Hunter Biden.

20          And to put this into perspective, by hypothetical and

21  by way of example, what would have happened if the Judge in

22  Florida had accepted Hunter Biden's guilty plea agreement on

23  the misdemeanor tax charges and the diversion agreement --

24          **MR. CHESNOFF:**  Delaware.

25          **MR. SCHONFELD:**  Sorry, Delaware, the District of

12

1    Delaware.  What would have happened if the judge had accepted

2    those resolutions?  David Weiss never would have been appointed

3    as special counsel, which exemplifies that not only is he not

4    independent, but that wasn't processed pursuant to the

5    constitutional requirements of appointing special counsel as

6    outlined by Mr. Justice Thomas.

7            Justice Thomas stated quote, it is difficult to see

8    how the special counsel has an office established by law, as

9    required by the Constitution, when the Attorney General

10   appointed the special counsel.  He did not identify any statute

11   that clearly creates such an office.

12           And then he went to look at the statutes in that

13   case, which are the exact same statutes applied in this case.

14   Those are 28 United States Code Section 509, 510, 515 and 533.

15   So when we look at the order appointing special counsel in this

16   case those are the four statutes that are relied upon for

17   purposes of the appointment.

18           Justice Thomas recognized that Section 509 and 510

19   are generic provisions concerning the functions of the Attorney

20   General and his ability to delegate authority to any other

21   officer, employee or agency.  He found that not to be

22   applicable.

23           Section 515 contemplates an attorney specially

24   appointed by the Attorney General under law, thereby suggesting

25   that such an attorney's office must have already been created

1    by some other law.

2           And as for Section 533, Mr. Justice Thomas stated

3    that it provides quote, the Attorney General may appoint

4    officials to detect and prosecute crimes against the United

5    States, end quote.

6           He then stated it's unclear whether an official is

7    equivalent to an officer as used by the Constitution.

8    Regardless, this provision would be a curious place for

9    Congress to hide the creation of an office for a special

10   counsel.

11          While the courts generally disfavor relying upon an

12   opinion that wasn't official, being a concurring opinion and

13   not directly related to these issues, this is about as close as

14   it can get into viewing what at least one of the Supreme Court

15   Justices would do in these circumstances.

16          Similar findings were entered by Judge Cannon in the

17   Southern District of Florida in United States v Trump on July

18   15th, 2024.  So since the time that Judge Scarsi entered his

19   order on April 1st, we have both the concurring opinion by

20   Mr. Chief Justice Thomas and we have a very detailed and

21   lengthy order by Judge Cannon in the Southern District of

22   Florida, where she went through a very thorough analysis of the

23   same issues in this case.

24          In that order, Judge Cannon concluded, quote, none of

25   the statutes cited as legal authority for the appointment, 28

1    U.S.C. 509, 510, 515 and 533 applied.  The Court concludes that

2    none vests the Attorney General with the authority to appoint

3    special counsel.  And that's what Judge Cannon found.

4         Judge Cannon also addressed the special counsel

5    regulations, which is something that we started with here,

6    which also are cited in this appointment order.  The cited

7    sections are 28 CFR 600.4 and 600.10.  Curiously, the order in

8    this case, as well as the order in Judge Cannon's case left off

9    600.3 which require under DOJ regulations that the appointment

10   come from outside of the government.

11        The Government takes the position that the

12   regulations cannot be judicially enforced.  I would submit to

13   Your Honor that the cases of Accardi v Shaughnessy found at

14   74 Supreme Court 499, the case of Mine Reclamation, 30 F.3d at

15   1519 and the case of Andriasian v INS, 180 F.3d 1033 which is a

16   Ninth Circuit case from 1999 are all cases where regulations

17   have been enforced by the courts.

18        Judge Cannon concluded, distilled down for present

19   purposes, the special counsel regulations mandate that the

20   special counsel be selected from outside the department and

21   then they empower that outside attorney to exercise all

22   investigative and prosecutorial functions of any United States

23   attorney within his jurisdiction.  That is not what occurred

24   here.  Counsel Weiss was not chosen from outside of the

25   Government.

1          In addition to that, Your Honor, if we look at the

2    actual appointment order as I've referenced, and I'll keep this

3    part brief, this investigation does not fall within the purview

4    of what the Attorney General actually authorized counsel Weiss

5    to investigate.

6          This investigation was created as a result of counsel

7    Weiss being appointed for the purpose of following Hunter

8    Biden's prosecution from the District of Delaware to this

9    district and the investigation of Mr. Smirnov has nothing to do

10   with that investigation and the Government hasn't provided

11   evidence otherwise.

12        **THE COURT:**  But the investigation of Mr. Smirnov then

13   uncovered allegations of potential bribery against Mr. Hunter

14   Biden?

15        **MR. SCHONFELD:**  So the allegations against

16   Mr. Smirnov is that he made an alleged false statement related

17   to someone having told him that Hunter Biden was being bribed.

18   But that does not fall within the purview of the investigation

19   of either the tax charge or the investigation of the gun

20   charge.

21        **THE COURT:**  So during the -- well, the -- are you

22   saying that the FBI was -- should have just simply ignored it,

23   they're investigating taxes and perhaps a gun licensing

24   violation and then they get information regarding a much more

25   serious issue and you're saying they should have ignored that?

1        **MR. SCHONFELD:**  I'm not saying it should have been

2   ignored, Your Honor, but I'm not -- what I am saying is that

3   they don't fall from the same investigation, which is what was

4   required in order for Special Counsel Weiss to have the

5   authority to seek a grand jury indictment in this district.

6        **THE COURT:**  So when Weiss is undertaking this

7   investigation and he learns of serious criminal activity

8   regarding one of the people he's investigating, what should he

9   have done with that?

10        **MR. SCHONFELD:**  Well, Your Honor, the Court

11   respectfully is making an assumption that the information was

12   learned as a result of counsel Weiss investigating Hunter Biden

13   related to the tax case or the gun case.

14        And when you look at the language of the indictment

15   it suggests to the contrary, that the FBI had already initiated

16   this portion of the investigation that resulted in the

17   allegations against Mr. Smirnov.

18        I'm not suggesting that the U.S. Attorney's Office

19   for this district couldn't have brought charges or sought to

20   bring charges against Mr. Smirnov.  What I am saying is that it

21   didn't arise from the investigation of the tax case or the gun

22   case, which is the only authority that was vested in counsel

23   Weiss for purposes of prosecuting someone other than Hunter

24   Biden.  It had to arise --

25        **THE COURT:**  Uh-huh.

1          **MR. SCHONFELD:** -- from those investigations.

2          And the Government has not submitted any evidence to

3   establish that the investigation culminated as a result of

4   counsel Weiss' investigation of Hunter Biden related to the

5   taxes or the firearm.  And therefore, he acted beyond the

6   authority given to him by the Attorney General, which as

7   previously stated, still wasn't valid authority.

8          **THE COURT:**  But he's -- he is a United States

9   Attorney, correct?

10          **MR. SCHONFELD:**  Yes, Your Honor, in the District of

11   Delaware.

12          **THE COURT:**  And does he need any other authority to

13   investigate wrongdoing?

14          **MR. SCHONFELD:**  He does.  He needs additional

15   authority to investigate wrongdoing in another district, Your

16   Honor.  The U.S. Attorney, for example, the United States

17   Attorney for the Central District of California couldn't bring

18   a prosecution in the District of Delaware, and that's what's

19   occurred here.  And he's been appointed as special counsel and

20   special counsel, as we've already addressed, have special rules

21   that are required to be followed in order to be appointed in

22   that regard.

23          So they gave -- the Attorney General purports to have

24   given David Weiss the authority to pursue prosecution in this

25   district, which otherwise doesn't exist, unless someone is

18

1    appointed as special counsel and then they have the broader

2    territorial authority.  And as I've stated, this wasn't a

3    proper appointment of special counsel.

4            And so the remedy in terms of that -- those three

5    violations, Your Honor, is in fact dismissal.  And we don't

6    have to look further than the case of Lucia v Securities

7    Exchange Commission, which is found at 585 United States 237,

8    which is a 2018 Supreme Court decision.

9            In that case, the United States Supreme Court

10   determined that a Securities Exchange Commission Administrative

11   Law Judge that was able to reach a final adjudication violated

12   the Appointments Clause because an ALJ isn't supposed to have

13   that authority.  It's supposed to go to the Commission.  And

14   what the United States Supreme Court said in that case is that

15   the remedy is to vacate the judgment that had been entered by

16   the administrative law judge.

17           THE COURT:  Well, we haven't reached that point yet.

18   So right now you object to the way the prosecutor was appointed

19   and that can be remedied by simply making another appointment.

20           MR. SCHONFELD:  A proper appointment, yes, Your

21   Honor.

22           THE COURT:  All right.  And in terms of the funding,

23   another funding source will remedy that, right?

24           MR. SCHONFELD:  Well, Your Honor, before you get to

25   there --

1          **THE COURT:** Well, I need to find out some

2    intermediate remedies as opposed to jumping straight to

3    dismissal of the indictment.

4          **MR. SCHONFELD:** So the initial remedy, Your Honor, is

5    true, would be disqualification of special counsel. But what

6    I'm --

7          **THE COURT:** Which is what you asked for.

8          **MR. SCHONFELD:** Yes. But what I'm arguing to, Your

9    Honor, is that if you look at the holding in <u>Lucia v SEC</u>, in

10   that case it was an Appointments Clause problem, where an

11   administrative law judge was given too much authority beyond

12   what was permissible under the Constitution and the laws. And

13   the Supreme Court found that the remedy was to undo what had

14   been done illegally.

15         **THE COURT:** Okay.

16         **MR. SCHONFELD:** In this instance, going to the grand

17   jury without authority and securing an indictment, in order to

18   undo that, Your Honor, you would have to dismiss the indictment

19   and it can be without prejudice. But the remedy, if you follow

20   the analysis in <u>Lucia v SEC</u>, would in fact, be dismissal of the

21   indictment.

22         **THE COURT:** Uh-huh.

23         **MR. SCHONFELD:** Going to the Apportions Clause, the

24   irony here, Your Honor, is that special counsel is drawing

25   funds from what's called an indefinite fund within the

1    Department of Justice which was created to pay all necessary

2    expenses of investigations and prosecutions by quote,

3    independent counsel.

4            And when you go through the history that I just

5    outlined for the Court, counsel Weiss being appointed is the

6    polar opposite of independence.  He was appointed because

7    continuity, he had already been the prosecutor in the District

8    of Delaware, but no longer had venue in Delaware to prosecute

9    over the tax charges.  So it's the opposite of being

10   independent.

11           **THE COURT:**  What about that makes him lack

12   independence?

13           **MR. SCHONFELD:**  Because independent counsel is

14   supposed to be someone from outside of the government that has

15   checks and balances and has to report, but is truly independent

16   of the government.  Here you have someone who is already a

17   United States Attorney in Delaware who was already prosecuting

18   Hunter Biden for an alleged crime within his district, who is

19   then appointed so that he can prosecute him in another

20   district.  That's not independent, Your Honor.

21           **THE COURT:**  I think the independent requirement is

22   primarily to address conflicts of interest.  But go ahead.

23           **MR. SCHONFELD:**  Okay.  Your Honor, the Apportions

24   Clause sets forth a straight forward and explicit command.  No

25   money can be paid out of the Treasury unless it has been

21

1    appropriated by an act of Congress.  An appropriation must be

2    expressly stated.

3          **THE COURT:**  Is this addressing my question as to why

4    not another funding source solve this issue?

5          **MR. SCHONFELD:**  Well, it would -- first of all, it

6    would solve the appropriations issue --

7          **THE COURT:**  Uh-huh.

8          **MR. SCHONFELD:**  -- but it would have to be a

9    congressional funding source.  That's what's required under the

10   law for under the Appropriations Clause in order to fund the

11   special counsel's office.  Any time that you want to draw from

12   the Treasury, it has to be approved by Congress and that's

13   what's supposed to happen when a truly special counsel is

14   appointed.  And that's not what occurred in this case.  And

15   Judge Cannon analyzed this issue as well in terms of the funds

16   coming from the indefinite fund for independent counsels and

17   found that it was, in fact, in violation of the Appropriations

18   Clause.

19          In United States v Pisarski, which is a Ninth Circuit

20   case, what the Court did was enjoined expenditures on a case as

21   a result of no appropriations being permitted in the

22   prosecution.  And that's what would have to occur here, Your

23   Honor.  If the Court's going to grant a remedy for finding a

24   violation of the Appropriations Clause, it would be to enjoin

25   any further spending on this prosecution from the indefinite

 1    fund, and then it would require the Government to go to

 2    Congress and get approval, which is required under Treasury

 3    law.

 4            And in Pisarski what it was, Your Honor, is during

 5    the time where state law permitted medical marijuana

 6    dispensaries they came out with a DOJ mandate that you couldn't

 7    prosecute them as long as they were complying with state law.

 8    And some individuals were, in fact, prosecuted in violation of

 9    that mandate.

10            **THE COURT:**  Who were in fact complying with state

11    law.

12            **MR. SCHONFELD:**  They were in fact complying with the

13    state law.  And that's where the Ninth Circuit said that the

14    appropriate remedy because there were no appropriations for

15    purposes of funding that prosecution was to enjoin further

16    expenditures.  And that would be the remedy here that the Court

17    was inquiring about in terms of the funding of the prosecution.

18            Finally, Your Honor, I just want to address in

19    anticipation of one of the Government's arguments, the Nixon

20    case.  And I submit to Your Honor, that the Nixon case which

21    the Government relies upon for purposes of the ability to

22    appoint special counsel was in fact dicta.

23            And Judge Cannon in her order spent a lengthy portion

24    of the opinion analyzing how and why the Nixon case is dicta.

25    And in that order, she looked at the briefing in the Nixon case

 1    and she found that the issue of Appointments Clause and the

 2    Attorney General having any statutory authority to appoint

 3    special counsel was never raised, never addressed, and

 4    therefore, the passing reference to it in the Nixon case, is in

 5    fact, dicta and shouldn't bind this Court.

 6            And with that, Your Honor, I respectfully submit that

 7    the indictment should be dismissed and if the Court does not

 8    dismiss the indictment, then at a minimum, the Government

 9    should be enjoined from using the indefinite fund for purposes

10    of prosecuting this case.

11            **THE COURT:**  All right.  Thank you, sir.

12            **MR. WISE:**  Your Honor, may it please the Court.

13            Counsel spent a great deal of time talking about

14    Justice Thomas' solo concurrence in the presidential immunity

15    case, as if it were a decision of the Court.  It was not.  It

16    was, in fact, a decision that was not joined by a single other

17    member.  And it is only Justice Thomas that believes the Office

18    of Special Counsel must be created by statute.  That is not

19    what the Supreme Court has said.  That is not what any other

20    court has said.

21            And, of course, the Florida District Court opinion

22    which is nonprecedential, it is our position and I will

23    articulate why is wrong.  What these two opinions, neither of

24    which is binding on this Court, have in common is that their

25    analysis is rooted in separation of powers principles.  And in

24

1    the case of the Florida District Court it concluded incorrectly

2    that the appointment of the special counsel in that case

3    offended the principle -- those such principles and violated

4    the Appointments Clause because the special counsel in that

5    case was not appointed by the President and confirmed by the

6    Senate.

7           Here, of course, that is not the case.  Special

8    Counsel Weiss was nominated by a President and confirmed by the

9    United States Senate as United States Attorney for the District

10   of Delaware in the previous administration and asked to remain

11   in that position when the current administration took office.

12          That means that the Appointments Clause and the

13   separation of powers concerns articulated in the Florida

14   District Court opinion and by Justice Thomas are not implicated

15   in this case.

16          And it almost goes without saying that because the

17   Appointments Clause is not implicated here, the defendant's

18   motion to dismiss, which argues that Special Counsel Weiss's

19   appointment as special counsel violates the Appointments Clause

20   should be denied.

21          Neither Justice Thomas in his concurrence nor the

22   Florida District Court addressed in any way a special counsel

23   who had been nominated by a President and confirmed by the

24   Senate.  There is nothing in either opinion, neither of which

25   is binding on this Court that supports the defendant's motion.

1    It's simply apples and oranges.

2            And defendant's own citations to the Florida District

3    Court opinion makes that clear.  This is from their brief where

4    Judge Cannon wrote, if the political branches wish to grant the

5    Attorney General power to appoint Special Counsel Smith to

6    investigate and prosecute this action, with the full powers of

7    the United States Attorney, there is a valid means by which to

8    do so.  He can be appointed and confirmed through the default

9    method prescribed in the Appointments Clause as Congress has

10   directed for United States Attorneys throughout American

11   history or Congress can authorize his appointment through

12   enactment of positive statutory law, consistent with the

13   Appointments Clause.

14           Special Counsel Weiss, when he was appointed special

15   counsel had, to quote Judge Cannon, quote, the full powers of

16   the United States Attorney because he was and remains a United

17   States Attorney.  And he was given those powers, again to quote

18   Judge Cannon through the default method prescribed by the

19   Appointments Clause, namely he was nominated by a President and

20   confirmed by the Senate.

21           So that's where any parallels to Justice Thomas' solo

22   concurrence and the Florida District Court opinion and on that

23   basis alone, the defendant's motion should be denied.

24           But as to that latter phrase they quote, or Congress

25   can authorize this appointment through enactment of positive

1    statutory law consistent with the Appointments Clause.  That is

2    also satisfied.  Even if Special Counsel Weiss were not a

3    sitting United States Attorney at the time of his appointment,

4    Congress has authorized his appointment through the enactment

5    of positive statutory law consistent with the Appointments

6    Clause.

7         Special Counsel Weiss, like the special counsel in

8    the Florida case, and numerous other special counsels was

9    appointed prior -- who was appointed prior to him pursuant to

10   28 U.S.C. 509, 510, 515 and 533.  Those statues are expressly

11   cited in the Attorney General's August 11th, 2023 appointment

12   order for Special Counsel Weiss.

13        And every court, every court with the sole exception

14   of the Florida District Court that has ever addressed whether

15   those statutes confer on the Attorney General, the power to

16   appoint a prosecutor with the powers that Special Counsel Weiss

17   is currently exercising, regardless of the label you apply has

18   concluded they do.  And when I say every court has, that

19   includes the United States Supreme Court.

20        In United States v Nixon, the Supreme Court held that

21   under the authority of Article 2, Section 2 Congress has vested

22   in the Attorney General the power to conduct the criminal

23   litigation of the United States Government.  And then this is

24   the key, it has also vested in him the power to appoint

25   subordinate officers to assist him in the discharge of his

1    duties, citing the same statutes that are in the August 11th

2    appointment letter, namely 509, 510, 515 and 533.

3           And the Supreme Court in Nixon, not a solo

4    concurrence, but the Court went on to say, acting pursuant to

5    those statutes the Attorney General has delegated the authority

6    to represent the United States in these particular matters to a

7    special prosecutor with unique authority and tenure.  This is

8    binding precedent on all courts in the United States, including

9    the Florida District Court.

10          And the fundamental flaw in the Florida District

11   Court opinion was to conclude that the language I just quoted

12   was dicta, and therefore not binding.  But that conclusion is

13   incorrect.

14          As we argue in our opposition and this is the test

15   for whether something is a holding or dicta, whether the

16   Attorney General's statutory authority to promulgate the

17   regulations appointing the independent counsel was quote, a

18   necessary antecedent, was quote, a necessary antecedent to

19   determining whether the regulations were valid and therefore

20   was necessary to the decision that a judiciable controversy

21   existed.

22          That's why it's a holding and not dicta.  And we

23   cited three opinions from the United States District Court from

24   the District of Columbia, all that have specifically reached

25   that conclusion that this language was binding precedent and

1    not dicta.

2           Now, the bottom line, Your Honor, is no court has

3    ever found that the appointment of a Presidentially appointed

4    and Senate confirmed U.S. Attorney as special counsel violates

5    the Appointments Clause.

6           Judge Cannon didn't find that, Justice Thomas didn't

7    even address it.  And every Court that has examined whether 28

8    U.S.C. 509, 510, 515 and 533 confer on the Attorney General the

9    authority to appoint a special counsel with the powers that

10   Special Counsel Weiss has in this case, including the Supreme

11   Court has concluded they do.

12          The only exception, the only outlier is the Florida

13   District Court opinion and that decision, because it is based

14   on an incorrect reading of Nixon is wrong.

15          As to their second argument, DOJ regulations do not

16   require that Special Counsel Weiss be from outside the

17   government.  Defendant argues that 28 C.F.R. 600.3 requires

18   that Special Counsel Weiss be from outside the government.  But

19   that argument ignores the fact that Special Counsel Weiss was

20   not appointed pursuant to 600.3.  Instead, he was appointed

21   again pursuant to 28 U.S.C. -- these are statutes, not

22   regulations, 509, 510, 515, 533.

23          And more fundamentally their argument ignores,

24   doesn't even address the fact that the law recognizes two

25   distinct types of agency regulations as described by the

29

1    Supreme Court and we cite this in our brief in Chrysler Corp. v

2    Brown.  On the one hand, there are substantive rules and then

3    second, there are interpretive rules, general statements of

4    policy or rules of agency, organization, procedure or practice.

5            The first category, substantive rules affect

6    individual rights and obligations.  That's how the Supreme

7    Court described them and are binding, because they have the

8    force and effect of law.  And substantive rules must be

9    promulgated according to the procedural requirements imposed by

10   Congress, notably the notice and comment procedures set forth

11   in the Administrative Procedures Act.

12           Meanwhile, the second category, interpretive rules,

13   general statements of policy, or rules of agency organization,

14   procedure or practice are exempted from the notice and comment

15   requirements.

16           The Justice Department in promulgating the special

17   counsel regulations here was unambiguously clear that they are

18   not substantive rules.  Section 600.10 explicitly states that

19   the regulations are quote, not intended to, do not, and may not

20   be relied upon to create any rights, substantive or procedural,

21   enforceable at law or equity.

22           And the special counsel regulations were not subject

23   to notice and comment under the APA which they would have had

24   to have been if they were substantive rules.  Four courts have

25   already held that the special counsel regulations including

1  600.3 are not substantive rules, and therefore, do not create

2  judicially enforceable rights.

3       Judge Noreika in the Hunter Biden gun case in

4  Delaware, which is referred to as Biden 1 in our brief, Judge

5  Scarsi here in the Central District of California in the Hunter

6  Biden tax case, which is referred to as Biden 2, and two

7  decisions in the case against Paul Manafort in the District of

8  Columbia -- in the District Court for the District of Columbia,

9  which arose out of Special Counsel Mueller's investigation,

10  reached the same conclusion.

11       Defendant doesn't cite a single opinion of any court

12  that found 600.3 created a substantive rule.  And the cases he

13  cited Mine Reclamation Corp. v FERC, Andriasian v INS, and

14  Accardi all involved substantive rights, not the kind of

15  procedural, what are referred to as housekeeping rules that are

16  at issue here.

17       Now, on this point, the defendant argues that the

18  Supreme Court's decision in Nixon obligates the Attorney

19  General to only appoint special counsels from outside the

20  government.  But again, both Judges Scarsi in the Hunter Biden

21  tax case and Judge Berman Jackson in what we refer to as

22  Manafort 2 rejected that very argument.

23       And Nixon wasn't a case where a criminal defendant

24  was attempting to enforce an agency regulation against the

25  agency, let alone a non-substantive rule.  Nixon involved an

1    interagency dispute between the President and the special

2    prosecutor over the availability of executive privilege and the

3    validity of the special prosecutor's subpoena.

4           And as the district court -- the D.C. District Court

5    concluded in Manafort 1 the Supreme Court has quote, made clear

6    in the criminal context that a court need not enforce an

7    agency's internal rules when the agency was not required by the

8    Constitution or by statute to adopt any particular rules or

9    procedures.  And that's the United States Supreme Court's

10   decision in Suserous (phonetic) that we cite.

11          So again, bottom line where the Supreme Court has

12   addressed the kind of rule at issue in this case, in Suserous,

13   it has rejected the defendant's argument.  And even if, even if

14   which no court has ever said 600.3 was a substantive

15   enforceable rule that was somehow binding on the Attorney

16   General, he also had the authority which he used, which Nixon

17   blessed to appoint Special Counsel Weiss pursuant to 28 U.S.C.

18   509, 510, 515 and 533.

19          And Judge Scarsi in Biden 2 held that the regs on the

20   one hand, the 600.3 through .10 regs and these statutes, 509,

21   510, 515 and 533 are independent bases on which the special

22   counsel's authority rests.

23          The last point I will address is the defendant's

24   argument in his brief that this case somehow presents a

25   conflict of interest because the lies that the defendant told

32

1    in this case were directed at the current President and somehow

2    that could only be addressed by an outside counsel.  I think

3    the conduct of the Office of Special Counsel Weiss in this case

4    has demonstrated that we are independent and that we follow the

5    facts and the law wherever they lead.

6          We've sought indictments against Hunter Biden, the

7    son of the current President in two separate cases, a felony

8    gun charge in Delaware and a felony tax case here in the

9    Central District of California.  We have also sought an

10   indictment against the defendant in this case who lied and made

11   false accusations that Hunter Biden and the President accepted

12   bribes from a foreign company.

13         In the gun case and the tax case, defense counsel,

14   without any proof accused us of working at the direction of

15   congressional Republicans.  And the judges in both those cases

16   held that those claims were baseless.

17         And in this case, by contrast, defense counsel's

18   conflict argument means we must somehow be working at the

19   direction of the White House and they offer no basis for those

20   accusations either, because none exists.

21         The fact that both defendants, Hunter Biden and

22   Alexander Smirnov accused us of working for the political

23   opponents is proof that politics has nothing to do with either

24   of these cases.

25         As to their Appropriations Clause argument, which

33

1   they refer to as the independent counsel appropriation, that

2   doesn't exist.  This is referred to as indefinite appropriation

3   which funds investigations and prosecutions by independent

4   counsel appointed by the Lapsed Independent Counsel Act, and

5   then a phrase that counsel never uttered, although is in the

6   indefinite appropriation, or other law.

7           And for all of the reasons I gave, including the

8   Supreme Court's decision in <u>Nixon</u>, those statutes 509, 510, 515

9   and 533 are other law, under which the appropriation is proper.

10          Judge Noreika in Delaware and Judge Scarsi here in

11  the Central District of California have rejected the exact

12  argument they make here in regards to Special Counsel Weiss.

13  And a D.C. District Court has rejected this argument in regards

14  to the prosecution of Roger Stone, which we cite, which arose

15  out of the Mueller investigation.

16          And as we explained in our brief, the Attorney

17  General has drawn on several statutory provisions in Title 28,

18  again the other law, to delegate Special Counsel Weiss the

19  authority to pursue this prosecution and to name him as special

20  counsel.  And three Attorneys General have used this permanent

21  appropriations to fund special counsels that were appointed

22  either through the Ethics and Government Act, which has lapsed,

23  the old independent counsel statute, but also sitting United

24  States Attorneys at the same time, which also undercuts their

25  argument that 600.3 requires that a special counsel be outside

1    the government.

2          United States Attorney Fitzgerald was a sitting

3    United States Attorney.  United States Durham, United States

4    Attorney Durham was a sitting United States Attorney and there

5    were both named special counsel prior to Special Counsel Weiss.

6          As we also detail in our brief, the Government

7    Accountability Office has -- which is an arm of Congress has

8    audited the use of the permanent appropriation and found it to

9    be proper.  And as the law recognizes in Rutherford which we

10   cite, once an agency statutory construction has been fully

11   brought to the attention of the public and Congress, and the

12   latter has not sought to alter that interpretation, although it

13   has amended the statute in other respects, then presumably the

14   legislative intent has been correctly discerned.

15         Now again, as Your Honor zeroed in on, even assuming

16   the appropriations does not -- the appropriations isn't proper,

17   dismissal is not appropriate.  And here the errors, which there

18   are none, of which the defendant complains, does not require

19   dismissal, nor would dismissal be appropriate.

20         And to Your Honor's question about whether there

21   would be an intermediate remedy, just to briefly address that,

22   I'm a United States Attorney from the District of Maryland.

23   Mr. Hines is a United States Attorney from the Eastern District

24   of Pennsylvania.  Mr. Mulryne is a trial attorney with the

25   Criminal Divisions Office of Public Integrity and Mr. Rigali,

1  who's not here with us today, is a trial attorney in the

2  National Security Division.

3          We're all paid by the Department of Justice.  The

4  only funding mechanism that exists is for a reimbursement of

5  those funds.  But if we're just getting practical as Your Honor

6  asked, we're all drawing a paycheck from these offices anyway,

7  and the question is whether the indefinite appropriation would

8  be used to refund or backfill those payments.  But you're

9  looking at the prosecutors who brought this case and we were

10  all prosecutors with the Department of Justice before this case

11  began and we're all be prosecutors when we're done and our

12  paychecks are paid frankly back home by the districts or

13  offices we come from.

14          The last argument which I'll address briefly is their

15  argument that the appointment order somehow doesn't authorize

16  this case.  And in some ways, this is the easiest to dispense

17  with.

18          The appointment order is not limited to a tax case

19  and a gun case.  They're simply ignoring the plain language of

20  that order.  In that order, the Attorney General says in 2019,

21  United States Attorney David C. Weiss, along with federal law

22  enforcement partners, began investigating allegations of

23  certain criminal conduct.  It doesn't say just taxes, doesn't

24  say just a gun violation by, among others, among others, Robert

25  Hunter Biden.  That investigation includes and it cites the two

36

1    cases that were public as of the time of this filing, the gun

2    case in Delaware and the tax case in Delaware.

3            It then goes on to say the special counsel is

4    authorized to conduct the ongoing investigation described

5    above, which again is couched as certain criminal conduct by,

6    among others, Robert Hunter Biden, and as well as any matters

7    that arose from that investigation or may arise from the

8    special counsel's investigation, or that are within the scope

9    of 600.4.

10           Defense counsel has simply no idea what was within

11   the purview of investigators at the time this order was

12   entered.  Obviously there had been public charges brought in

13   the tax case and the gun case, but he's speaking as if he knows

14   that that is all that was being investigated and he spent some

15   time talking about the plea hearing in Delaware.  And, in fact,

16   as is on the public record, part of what led to that plea not

17   being pursued was a back and forth between the Court and the

18   parties that made it clear that the immunity provision was not

19   limited to only taxes and the gun, and in fact, there were

20   other investigations that were pending, including as the

21   indictment makes clear, an investigation into the allegations

22   that Mr. Smirnov had made against Robert Hunter Biden, that we

23   then learned were false and fraudulent.  And out of that

24   investigation, the charges against him were brought.

25           And so there's nothing in the appointment order that

1  gives support to their argument.  They try to contrast it and

2  say the Jack Smith appointment order is broader, that's simply

3  not true.  The Jack Smith appointment order, like this one,

4  references two public investigations, in that case the election

5  interference case and the classified documents case, but then

6  it includes the same language, exactly the same language that

7  is referenced here namely, as well as any matters that arose or

8  may arise directly from this investigation.

9          So it is simply not the case that this investigation

10  was ever so limited.  Further, defense counsel's statement that

11  a United States Attorney could not bring -- that Mr. Weiss

12  would not be authorized to bring this case here, simply

13  reflects a misunderstanding of the organization of the Justice

14  Department.

15          United States Attorneys routinely prosecute cases in

16  other districts.  For instance, when a U.S. Attorney's office

17  is recused and recusals happen in due course.  I worked for the

18  United States Attorney in Maryland when he brought a case in

19  the District of Columbia.  He was not a special counsel.  He

20  was given authority under 515, which is the mechanism by which

21  recusals are authorized and investigations outside of a

22  district can be authorized because that statute says that a

23  United States Attorney can bring a case in a district in which

24  they're not resident.  And that is an alternative basis that

25  the Attorney General cited again in the appointment order for

38

1    Special Counsel Weiss.

2         Counsel mentions the Lucia opinion, again back to my

3    original argument, Lucia involved an administrative law judge,

4    not a Presidentially appointed and Senate confirmed officer of

5    the Department of Justice.  Therefore, if there is an

6    appropriations clause issue in Lucia it tells us nothing about

7    the issue before this Court or the issue that has been

8    addressed in Judge Scarsi's courtroom, in Judge Noreika's

9    courtroom, in the District Court in D.C. in Stone and Manafort

10   where all of those appointments were found to be lawful and

11   valid.

12        Finally, counsel mentioned Pisarski.  They obviously

13   haven't moved to enjoined the prosecution in this case.  They

14   chose to move to dismiss and disqualify as Your Honor has

15   pointed out.  And from a practical standpoint, you know,

16   thankfully we're all getting paid one way or the other.  But if

17   there were some issue, it would be addressed not by the

18   draconian step of dismissing the indictment, it theoretically

19   could be addressed with a direction, for instance, that the

20   reimbursement not occur, which is a rounding error in the

21   budget of the Department of Justice that nowhere near the

22   remedy the defendant seeks in this case, which is not justified

23   by the facts or the law.  Thank you, Your Honor.

24        **THE COURT:**  Thank you, counsel.  All right.  On

25   behalf of Mr. Smirnov, is there any additional comments with

1    respect to elaborating on the conflict of interest issue?

2        **MR. SCHONFELD:**  Your Honor, in responding to the

3    Court's inquiry regarding the conflict of interest issue, I

4    think it needs to be noted regardless of whether the special

5    counsel office is pursuing prosecution of the President's son,

6    that's not the President.

7        And in this case, you have the President who appoints

8    the Attorney General.  You have the Attorney General who has

9    granted the authority to counsel David Weiss, who's the

10   prosecutor for the District of Delaware to then prosecute

11   Mr. Smirnov with the alleged victim being the President.

12   That's the conflict of interest issue.

13       **THE COURT:**  You completely lost me there.  I'm not

14   seeing a straight line here.

15       **MR. SCHONFELD:**  Okay.  From the President to the

16   Attorney General.  The Attorney General appoints David Weiss.

17   David Weiss prosecutes Mr. Smirnov.  And the victim allegedly

18   of Mr. Smirnov's crime is the President.  That's the conflict.

19       So the President has effectively appointed the

20   prosecutor to prosecute Mr. Smirnov, when the President is the

21   victim.  And that defeats the entire structure of the special

22   counsel's office as analyzed in all of the cases that we've

23   cited in the briefing, Your Honor.

24       **THE COURT:**  Are we forgetting all about the

25   prosecutions of Hunter Biden?

40

1        **MR. SCHONFELD:**  Hunter Biden is not the President,

2   Your Honor.  And we can't just say --

3        **THE COURT:**  All right.

4        **MR. SCHONFELD:**  -- because the special counsel is

5   also prosecuting Hunter Biden there's no conflict of interest

6   in them prosecuting Mr. Smirnov when the victim is the

7   President and the President appointed the Attorney General, who

8   appointed David Weiss.

9        **THE COURT:**  Okay.

10       **MR. SCHONFELD:**  Your Honor, if I could just have two

11  more minutes I want to address a couple of arguments the

12  Government --

13       **THE COURT:**  No, you addressed what I asked you to

14  address.  That's what I was interested in.

15       **MR. SCHONFELD:**  May I just briefly, Your Honor?

16       **THE COURT:**  Go ahead.

17       **MR. SCHONFELD:**  I would like to, if the Court would

18  permit, I can file this as a supplement, but this is the

19  special counsel's office statement of expenditures for October

20  1st, 2023 through March 31st, 2024, it just came out on Friday.

21       And the significance of that, Your Honor, is it

22  establishes that counsel David Weiss is not acting as the

23  United States Attorney for the District of Delaware.  The

24  Government pointed out in their response argument that you've

25  got four lawyers from different districts here prosecuting

1    Mr. Smirnov.  And I think that that is evidence in itself that

2    this is a function of a special counsel office, not a function

3    of expanded authority for the United States Attorney in the

4    District of Delaware.  And as a result of that, the

5    Appointments Clause clearly applies.

6          And when we look, although not binding authority,

7    Mr. Justice Thomas' concurring opinion the analysis is the

8    same, Your Honor.  And the analysis makes it clear that

9    Sections 509, 510, 515 and 533 don't apply.

10          And the last thing -- two more things I'd like to

11   say.  The last -- second to last, Your Honor, is that in the

12   order appointing special counsel in this case, there's express

13   references to 28 United States Code Section -- sorry, 28 CFR

14   Section 600.4 through 600.10.  Those are the regulations

15   related to special counsel.

16          At 600.3 that requires that special counsel be

17   appointed from outside of the government.  So on the one hand

18   the Government wants to rely upon the authority granted them

19   under 600.4 through 600.10, but on the other hand, they want

20   the Court to disregard 600.3 that requires the appointment be

21   from outside of the government.

22          The last issue, Your Honor, is the scope of the order

23   and the Government stated as they stood here that defense

24   counsel has quote, no idea what investigation existed and

25   culminated in the prosecution of Mr. Smirnov.  Well, we filed a

42

1    motion to dismiss.  And we have asserted that the prosecution

2    of Mr. Smirnoff is beyond the scope of what was authorized by

3    the Attorney General, if in fact, the order authorizing special

4    counsel is valid.

5              It's the Government's burden to establish that their

6    prosecution of Mr. Smirnov falls within the parameters, the

7    four corners of the order appointing counsel Weiss and they've

8    made no effort to do that.  Thank you, Your Honor.

9              **THE COURT:**  Thank you.

10             **MR. SCHONFELD:**  May I file this supplement just

11   electronically, Your Honor?

12             **THE COURT:**  If you wish.

13             **MR. SCHONFELD:**  Thank you very much.

14             **THE COURT:**  All right.  The Court's tentative stance

15   is the order of the Court.  The Government makes the better

16   argument here.  So the requested relief is denied.

17             Thank you, gentlemen.

18             **MR. WISE:**  Thank you, Your Honor.

19             **THE CLERK:**  This court is in recess.

20        **(Proceedings concluded at 12:12 p.m.)**

21                        * * * * *

22

23

24

25

<u>**CERTIFICATION**</u>

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

_____                    <u>**August 29, 2024**</u>

            Signed                                       Dated


                    *TONI HUDSON, TRANSCRIBER*