DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6090
    E-mail:     LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:     SFM@usdoj.gov; CMR@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT<br><br>Hearing Date:  September 23, 2024<br>Hearing Time:  10:00 a.m.<br>Location:       Courtroom of the Hon.<br>                   Otis D. Wright II |

       The United States of America, by and through its counsel of record, hereby submits this response in opposition to the defendant Alexander Smirnov's motion to dismiss Count Two of the indictment, ECF No. 107 ("Def. Mot.").

       This opposition is based upon the attached memorandum of points and authorities, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: August 30, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

*/s/ Sean F. Mulryne*

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

United States Department of Justice

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 14, 2024, the defendant Alexander Smirnov was indicted for making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001 (Count One), and for causing the creation of a false record in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two). The charges are based on false derogatory information that he provided to the Federal Bureau of Investigation about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1, in 2020, after Public Official 1 became a candidate for President of the United States.

The defendant has moved to dismiss Count Two pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense. But the defendant is wrong. Count Two satisfies federal criminal pleading requirements by using the language of the charged offense itself, 18 U.S.C. § 1519, which sets forth the offense's elements. Moreover, the defendant's generalized and threadbare attack on the 37-page indictment's highly detailed factual allegations plainly ignores what is obvious on the face of the indictment—that is, the indictment clearly charges that the defendant knowingly caused a false entry in an FBI document by providing false information to his FBI handler with the intent to impede, obstruct, and influence an actual FBI assessment. The three arguments that the defendant raises in his motion show that he clearly understands the charges he faces and that Count Two, therefore, is adequately pleaded. The arguments that the defendant makes in his motion to dismiss may be the arguments he advances at trial in his defense—*i.e.*, that he did not know his FBI handler was writing down the information the defendant told him; that he did not intend to cause the creation of a false FBI record; and that there was not an actual or contemplated investigation when he made his false statements—but they are not a basis to dismiss the indictment. Because the indictment's allegations go above and beyond what is required by law, the defendant's motion should be denied.

II.     **FACTS**

As alleged in the indictment, the defendant was a confidential human source ("CHS") with the Federal Bureau of Investigation ("FBI"). ECF No. 1 ("Indict.") ¶ 2.[1] As a CHS, the defendant was assigned a handling agent who was a special agent on an FBI squad that investigated violations of federal criminal law. *Id.* The defendant, the indictment alleges, "provided information to the Handler that was then used in various criminal investigations conducted by the FBI." *Id*. ¶ 3. The defendant "knew that information he provided was used in criminal investigations because, among other reasons, the Handler advised him that he might have to testify in court based on the information he provided on multiple occasions," and because the defendant "participated in a number of operations where he was authorized to engage in criminal activity as part of an on-going criminal investigation." *Id.*

Throughout the course of his relationship with the FBI, the defendant received numerous admonishments from his FBI handler that "he must provide truthful information to the FBI . . . ." *Id*. ¶ 4. In addition, when authorized to engage in illegal activity for investigative purposes, the defendant was further admonished that he could not "[p]articipate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or fabrication, alteration, or destruction of evidence, unless such illegal activity has been authorized)." *Id*. ¶ 5. On the multiple occasions when given this admonishment, the defendant signed an FBI form that contained the above-referenced statement. *Id.*

Despite those repeated admonishments to provide truthful information to the FBI and to not fabricate evidence, the defendant "provided false derogatory information to the FBI about Public Official 1, an elected official in the Obama-Biden Administration who

---

[1] The government hereby incorporates by reference the entire indictment in this case. *See* ECF No. 1. For the sake of clarity and brevity, the government is limiting its recitation of the indictment's allegations here to only some of those that it considers most pertinent in opposing the present motion.

2

left office in January 2017, and Businessperson 1, the son of Public Official 1, in 2020, after Public Official 1 became a candidate for President of the United States of America." *Id*. ¶ 6.

In March 2017, the defendant reported to his FBI handler that he had a phone call with the owner of Burisma Holdings, Limited, a Ukrainian industrial conglomerate, concerning Burisma's interest in acquiring a U.S. company and making an initial public offering on a U.S.-based stock exchange. *Id*. ¶ 6(a); *see also id.* ¶ 7. In reporting that conversation, the defendant noted that Businessperson 1, Public Official 1's son, was a member of Burisma's Board, a fact that was publicly known. *Id.* ¶ 6(a); *see also id.* ¶ 7. The FBI handler memorialized the defendant's information "in an official record of the FBI on a Form 1023 (hereafter the '2017 1023')." *Id*. ¶ 7. At no time in reporting that call to his FBI handler in 2017 did the defendant mention any allegations about a bribery payment between a Burisma official, Public Official 1, and/or Businessperson 1. *Id*.

However, three years later in June 2020, the defendant reported to his FBI handler, for the first time, two meetings in 2015 and/or 2016, during the Obama-Biden Administration, in which he claimed Burisma executives admitted to him that "they hired Businessperson 1 to 'protect us, through his dad, from all kinds of problems,' and later that they had paid $5 million each to Public Official 1 and Businessperson 1, when Public Official 1 was still in office, so that '[Businessperson 1] will take care of all those issues through his dad,' referring to a criminal investigation being conducted by the then-Ukrainian Prosecutor General into Burisma and to 'deal with [the then-Ukrainian Prosecutor General].'" *Id*. ¶ 6(b); *see also id*. ¶¶ 24, 26. The defendant also told his FBI handler about "two purported phone calls between himself and Burisma Official 1 wherein Burisma Official 1 stated that he had been forced to pay Public Official 1 and Businessperson 1 and that it would take investigators 10 years to find records of illicit payments to Public Official 1." *Id*. ¶ 6(c); *see also id*. ¶¶ 24, 35. Prior to those representations, the defendant had expressed bias against Public Official 1 in a series of

1  messages exchanged between himself and his handler. *See id.* ¶¶ 8–21.

2  The indictment alleges that the defendant knew that his statements about the purported bribery payments were false. For example, the indictment alleges—based on the defendant's communications and travel records among other facts and evidence—that the defendant did not have contacts with Burisma officials until 2017, "after the end of the Obama-Biden Administration and after the then-Ukrainian Prosecutor General had been fired in February 2016, in other words, when Public Official 1 had no ability to influence U.S. policy and when the Prosecutor General was no longer in office." *Id.* ¶ 6(d); *see also id.* ¶ 25 (timing of payments according to the defendant), ¶¶ 29–32. The indictment further alleges that specific meetings and events claimed by the defendant, including the purported bribery admissions made by Burisma officials, did not occur. *See, e.g., id.* ¶ 31(r) (no statements made by Burisma Official 2 during meeting at Burisma's headquarters regarding the hiring of Businessperson 1 to "'protect us, through his dad, from all kinds of problems'"); *id.* ¶¶ 33, 36 (no calls or meetings between Associate 1 and Burisma Official 1); *id.* ¶ 34 (no travel to Vienna by the defendant during relevant period). In several of the indictment's averments, specific claims made by the defendant are alleged to be "false, as [he/the Defendant] knew." *See, e.g., id.* ¶¶ 27–28.

## III. LEGAL STANDARD

In reviewing a motion to dismiss an indictment under Rule 12 for failure to state an offense, the Court is "bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). "Because it is a drastic step, dismissing an indictment is a disfavored remedy." *United States v. Rogers,* 751 F.2d 1074, 1076 (9th Cir. 1985); *see also United States v. Sulla*, No. CR 22-00058 JAO-KJM, 2023 WL 8789690, at *3 (D. Haw. Nov. 28, 2023) (describing the "bar for a sufficient indictment" under Rule 12 as "so low").

4

The "test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (citation omitted). For purposes of assessing a motion to dismiss an indictment, "[a]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (citation and internal quotation marks omitted)); *see also United States v. Lomeli-Avalos*, 211 F. App'x 651, 652 (9th Cir. 2006) (unpublished); *United States v. Tanabe*, No. CR 11-0941 SBA, 2012 WL 5868968, at *5 (N.D. Cal. Nov. 19, 2012).

A motion to dismiss an indictment can only be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

## IV.  ARGUMENT

In his motion to dismiss, the defendant argues that "the Indictment as to Count two is facially deficient as it fails to assert that: 1) Mr. Smirnov had knowledge that an FBI form 1023 would be created; 2) Mr. Smirnov acted with intent to falsify any such record; and most significant, 3) that there was an actual or contemplated investigation of Hunter Biden." Def. Mot. at 6.  Each of these arguments is meritless.

### A. The Indictment is Valid on its Face

First, putting aside these specific arguments, which will be addressed in turn, the defendant's motion to dismiss should be denied because the indictment satisfies Federal Rule of Criminal Procedure 7 and thus is valid on its face.  Rule 7(c)(1) requires only that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "In essence, a legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and to enable him to plead double jeopardy." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000).

5

"[T]he issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

Count Two charges the defendant with violating 18 U.S.C. § 1519. That statute creates criminal liability for one who

> knowingly . . . falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter or case[.]

18 U.S.C. § 1519. Further, Count Two charges the defendant with violating Section 1519 on an aiding and abetting theory, specifically citing 18 U.S.C. § 2. Section 2 of Title 18 criminalizes "caus[ing] an act to be done which if directly performed by him or another would be an offense against the United States." 18 U.S.C. § 2(b). Under this theory of liability, the defendant knowingly causing a false entry in an FBI Form 1023 is the same as making the false entry in the form himself. *See United States v. Moore*, 708 F.3d 639, 649 (5th Cir. 2013) (affirming conviction for aiding and abetting violation of 18 U.S.C. § 1519).

The Supreme Court has stated, "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013) (citation and internal quotation marks omitted); *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994). The Ninth Circuit has held that "[i]n order to prove a violation of § 1519, the Government must show that the defendant (1)

6

knowingly committed one of the enumerated acts in the statute, such as destroying or concealing; (2) towards 'any record, document, or tangible object'; (3) with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction." *United States v. Singh*, 979 F.3d 697, 715 (9th Cir. 2020); *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015).

Turning to the indictment itself, the specific charging language in Count Two is as follows:

> Between on or about June 26 and 30, 2020, in the Central District of California, the defendant, ALEXANDER SMIRNOV, did knowingly cause the making of a false entry in an FBI Form 1023, a record and document, with the intent to impede, obstruct, and influence a matter that the Defendant knew and contemplated was within the jurisdiction of the United States Department of Justice, a department and agency of the United States, in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.

Indict., Count Two. Thus, Count Two is valid on its face because it "set[s] forth the offense in the words of the statute itself," and those words "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence," thereby satisfying Rule 7. *Mancuso*, 718 F.3d at 790 (citation and internal quotation marks omitted). The defendant's motion should be denied on this basis alone.

### B. The Indictment Has Put the Defendant on Notice that He is Alleged to Have Knowingly Caused the Creation of a False FBI Form 1023

Notwithstanding the facial sufficiency of Count Two, the defendant's first argument—*i.e.*, that the indictment does not *allege* that he knew an FBI Form 1023 would be created—ignores the language in the indictment. Again, a legally sufficient indictment "apprise[s] a defendant of the charge against which he must defend," *Hinton*, 222 F.3d at

7

672, or, put another way, "fairly informs the defendant of the charge," *Buckley*, 689 F.2d at 897. That standard has clearly been met. Indeed, the defendant's own argument shows that the indictment has put him on notice that he is charged with knowing that the information he provided to the FBI handler caused the creation of a false FBI Form 1023.

First, Count Two expressly charges that the defendant "knowingly cause[d] the making of a false entry in an FBI Form 1023[.]" Indict., Count Two. This allegation alone puts the defendant on notice that he is charged with knowing that an FBI Form 1023 would be created. His argument can go no further in the face of that plain language.

Second, the indictment tells the defendant *how* the government intends to prove that he knew the information he provided to his FBI handler was being memorialized. Pleading such facts is not required but certainly puts to rest any question that the defendant is on notice that he has been charged by the grand jury with knowing that the information he provided to the FBI would be memorialized in writing. *See Mancuso*, 718 F.3d at 790 (indictment is sufficient on its face even where it "recite[s] the language of the statute, but fail[s] to allege how the violation was committed or with whom," because defendant is "not entitled at the time of his indictment to know all of the evidence the government would use to prove the charges against him"). Specifically, the indictment alleges that the defendant was a long-term CHS for more than 13 years; that he knew the information he provided was being used in criminal investigations because, among other reasons, his FBI handler told him on at least seven (7) occasions that he might have to testify in court based on the information he had provided to the FBI; and that the defendant also knew his information was being used in criminal investigations because he participated in operations with the FBI where he was authorized to engage in criminal activity as part of on-going criminal investigations. Indict. ¶ 3. From that evidence alone, a jury could conclude that he knew the information he was providing to the FBI was being written down, because how could his information be used in criminal investigations if it was not being reduced to writing? It could not. But that is not the question before the Court at the

8

pretrial phase. That is a question the jury will decide.

The indictment also alleges that the defendant first told the FBI handler about Businessperson 1 in 2017, *id.* ¶ 7, and that the handler then interviewed the defendant about Businessperson 1 three (3) years later in 2020, *id.* ¶¶ 23–26. Again, on this evidence alone, the jury could conclude that the defendant knew the handler was writing down what the defendant told him because the handler was returning to a statement the defendant had made three years earlier after hundreds of interactions with the handler in the interim, as the evidence at trial will show. And to be clear, this is not all of the evidence that will be presented at trial to show that the defendant knew that his false statements were being memorialized by the FBI handler.

### C. The Indictment Has Put the Defendant on Notice that He is Alleged to Have Acted with Intent to Falsify a Record

The defendant argues that the indictment fails to allege that "Mr. Smirnov acted with intent to falsify any such record." Def. Mot. at 6. That claim also ignores the plain language in the indictment. The indictment repeatedly alleges that the defendant acted with the intent to provide false information to the FBI that caused the creation of the false FBI Form 1023.

First, Count Two specifically and expressly alleges that the defendant "**knowingly** cause[d] the making of **a false entry** in an FBI Form 1023, a record and document, **with the intent** to impede, obstruct, and influence a matter that the Defendant knew and contemplated was within the jurisdiction of the United States Department of Justice[.]" Indict., Count Two (emphases added). This allegation alone is sufficient and contradicts the defendant's claim that the indictment does not allege that the defendant "acted with intent to falsify any such record." Def. Mot. at 6.

Second, the indictment alleges how the government intends to prove that the defendant knew the information he provided was false. *See* "Facts" section, *supra*. As stated above, the government was not required to do so, but in light of the detailed factual

9

allegations in the indictment, the defendant cannot claim ignorance of the charges against him. For example:

- The indictment alleges that the information provided by the defendant to his FBI handler in June 2020 concerning potential bribery involving Public Official 1, Businessperson 1, and Burisma officials was false, and the defendant knew it. *See, e.g.*, Indict. ¶¶ 27–28.

- The indictment alleges in detail that certain, relevant events that the defendant claimed to have occurred either did not occur or could not have occurred during the relevant time period as he represented, and therefore were false. *See, e.g.*, *id*. ¶¶ 6, 25–36.

- The indictment alleges that during a subsequent interview in September 2023, the defendant repeated some of his false claims, changed his story as to other of his claims, and promoted a new false narrative after he said he met with Russian officials. *Id*. ¶ 6(e); *see also id*. ¶¶ 45–55.

### D. The Indictment Put the Defendant on Notice that He is Charged with Causing the Creation of a False FBI Form 1023 in an Actual or Contemplated FBI Investigation

The defendant's final argument—*i.e.*, that the indictment fails to allege that there was an actual or contemplated investigation of Hunter Biden—is equally unavailing. Def. Mot. at 6. At the outset, the statute does not require that the government prove that there was an actual or contemplated investigation of *Hunter Biden* and that the defendant's false statements were in that specific investigation or in contemplation of that specific investigation. Rather, to establish a violation of Section 1519, the government must prove that the defendant caused the creation of the false FBI Form 1023 "with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction." *Singh*, 979 F.3d at 715.

The indictment pleads this element. Specifically, Count Two alleges that:

10

> Between on or about June 26 and 30, 2020, in the Central District of California, the defendant, ALEXANDER SMIRNOV, did knowingly cause the making of a false entry in an FBI Form 1023, a record and document, with the intent to impede, obstruct, and influence **a matter that the Defendant knew and contemplated was within the jurisdiction of the United States Department of Justice, a department and agency of the United States,** in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.

Indict. at 37 (emphasis added). On this basis alone, the motion to dismiss should be denied.

In addition to Count Two's plain language, the indictment specifically sets forth detailed information about the FBI investigation that prompted the defendant's FBI handler to contact the defendant in June 2020 to question him and seek further information pertaining to his previous representations concerning Businessperson 1 and Burisma. Specifically, as alleged in the indictment, the defendant's representations made to his FBI handler in June 2020 about the purported bribery payments involving Burisma, Public Official 1, and Businessperson 1 arose because the FBI handler contacted the defendant "at the request of the FBI's Pittsburgh Field Office (hereafter 'FBI Pittsburgh')." *Id*. ¶ 22. The indictment further alleges:

> In the first half of 2020, the United States Attorney's Office for the Western District of Pennsylvania (hereafter "USAO WDPA") had been tasked by the Deputy Attorney General of the United States to assist in the "receipt, processing, and preliminary analysis of new information provided by the public that may be relevant to matters relating to Ukraine." As part of

11

        that process, FBI Pittsburgh opened an assessment, 58A-PG-3250958, and in the course of that assessment identified the 2017 1023 in FBI holdings and shared it with USAO WDPA. USAO WDPA then asked FBI Pittsburgh to reach out to the Handler to ask for any further information about the reference in his 2017 1023 that stated, "During this call, there was a brief, non-relevant discussion about former [Public Official 1]'s son, [Businessperson 1], who is currently on the Board of Directors for Burisma Holdings [No Further Information]."

*Id.* According to the indictment, FBI Pittsburgh contacted the defendant's FBI handler regarding the 2017 1023 form on June 26, 2020, and the handler, in turn, spoke by phone with the defendant that same day. *Id.* ¶ 23. The information provided by the defendant, including the purported bribery payments between Burisma, Public Official 1, and Businessperson 1, as well as the purported meetings and phone calls with Burisma officials that were not reported back in 2017, "was memorialized on a Form 1023 (hereafter the '2020 1023'), an official record of the FBI, which was finalized on June 30, 2020." *Id.* The creation of the 2020 1023 form serves as the basis for Count Two as charged in the indictment.

      In addition, as described above, the indictment alleges that the defendant knew, based on his experience as a CHS since 2010, that information he provided his FBI handler was used in various FBI criminal investigations. *Id.* ¶ 3. Section 1519 is "particularly broad regarding the investigation element," as "the mere fact that the defendant contemplates an investigation satisfies this element." *Singh*, 979 F.3d at 719. Given his lengthy experience as a CHS who knew that his information was used in various FBI criminal investigations and who had been advised that he could testify in court based on that information, the defendant certainly knew that the information he provided his FBI handler regarding potential bribery involving Public Official 1, Businessperson 1, and

foreign business officials could influence a contemplated, if not actual, investigation.[2]

## V.   CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motion to dismiss Count Two of the indictment in this case.

---

[2] The defendant points to the reference of "'brief, non-relevant discussion about former [Public Official 1]'s son'" in paragraph 24 of the indictment in support of his assertion that the indictment does not sufficiently allege that there was an actual or contemplated investigation at the time the defendant made false statements and caused a false record in 2020. *See* Def. Mot. at 4. But the "brief, non-relevant discussion" referenced in that paragraph pertains to the FBI handler's characterization of the defendant's report made in 2017 about Businessperson 1, which made no reference to bribery allegations involving Businessperson 1, Public Official 1, and/or Burisma. *See* Indict. ¶ 7 (indictment's recitation of the defendant's representations memorialized in 2017 Form 1023). That the handler did not consider the defendant's representations concerning Businessperson 1 as relevant in the context of the Burisma related report that the defendant made to the handler in 2017 has no bearing or import on the fact that FBI Pittsburgh, in 2020, opened an assessment and sought further information from the defendant, through his FBI handler, specifically concerning Burisma and Businessperson 1. *See id.* ¶¶ 22–23. It is the false statements and false report related to that 2020 inquiry by FBI Pittsburgh that is charged here, not the statements the defendant made to his handler in 2017, which omitted his false information that he later described in 2020.