# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA, ) ) ) CRIMINAL ACTION

v. ) NO. 23-mj-274 (MN) )

ROBERT HUNTER BIDEN, ) CRIMINAL ACTION ) NO. 23-61 (MN)

Defendant. )

Wednesday, July 26, 2023
10:00 a.m.
Initial Appearance
Plea Hearing

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE MARYELLEN NOREIKA
United States District Court Judge

APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF DELAWARE
BY: BENJAMIN L. WALLACE, ESQ.
BY: DEREK E. HINES, ESQ.
BY: LEO J. WISE, ESQ.

Counsel for the United States

APPEARANCES CONTINUED:

CLARK SMITH VILLAZOR LLP
BY: CHRISTOPHER J. CLARK, ESQ.

-and-

BERGER HARRIS, LLP
BY: RICHARD I.G. JONES, JR., ESQ.

Counsel for the Defendant

-----------

THE COURT: All right. Good morning, everyone. Please be seated. All right. Hold on. Let me just start by reminding everyone that there is no recording of these proceedings that is permitted. For those of you in the back, you are certainly permitted to watch, but we will not have any disruptions. Any disruption or attempt to disrupt will result in the Court's security personnel or the U.S. Marshals escorting you out.

All right. With that.

MR. WISE: Good morning, Your Honor. Leo Wise, Derek Hines, and Benjamin Wallace on behalf of the United States. Now is the time the Court has set for an initial appearance on the criminal information filed in the United States versus Robert Hunter Biden, 23-cr-61-MN charging the

Defendant with a firearm offense, and for the entry of a guilty plea to the criminal information filed in the separate matter, United States versus Robert Hunter Biden, 23-mj-274-MN, charging the Defendant with two counts of failure to pay taxes. The parties are ready to proceed. I ask permission to pass up an executed version of the plea agreement in the tax case at this time.

THE COURT: You may. Thank you.

MR. WISE: And my understanding, Your Honor, is that we're going -- Your Honor first will conduct the initial appearance on the firearm charge and then turn to the plea hearing on the tax charge.

THE COURT: No. Hold on. Let me just take a look. All right.

Good morning, Mr. Clark, Mr. Biden.

MR. CLARK: Good morning, Your Honor.

THE COURT: Just so that we don't have you feeling that you need to pop up and down, I am fine if you want to when I'm asking questions stay seated so you don't have to just keep popping up.

MR. CLARK: We won't do it any other time.

THE COURT: All right. Thank you. Okay. So we do have two cases here, one is a criminal action based on a felony information related to a gun charge, and the other is Criminal Action 23-274 based on the misdemeanor involving

the tax charges. This is the Defendant's first appearance. I had planned to conduct the initial appearance on the two cases at the same time. Is there any objection to that?

MR. WISE: None, Your Honor. Thank you.

MR. CLARK: None, Your Honor.

THE COURT: I thought it might be more efficient and save some time.

THE COURT: Mr. Biden, in Criminal Action 23-61, the United States Attorney for the District of Delaware has filed a felony information which charges you with possession of a firearm by a person who is an unlawful user of or addicted to a controlled substance in violation of 18 United States Code Sections 922(g)(3) and 924(a)(2).

And in Criminal Action 23-274, the United States Attorney for the District of Delaware has filed a misdemeanor information which charges you with two counts of willful failure to pay tax in violation of 26 United States Code Section 7203. Do you understand that those are the charges that are pending here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the maximum penalties for the gun charge are ten years of imprisonment, a fine of $250,000, three years of supervised release, and a special assessment of $100?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that the maximum penalties for each of Counts I and II of the tax case are twelve months of imprisonment, a $100,000 fine or twice the gross gain or loss from the offense, whichever is greater, one year of supervised release, restitution and a $25 special assessment as well as costs of prosecution?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, Mr. Biden, you have the right to be represented by an attorney in these matters, that means if you can afford to, you can hire an attorney of your own choice. If you can't afford to, you may ask the court to appointment an attorney to represent you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. You are presently represented by Mr. Clark. Do you wish to continue that representation?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, Mr. Biden, you have the right to a preliminary hearing in these cases. At that hearing, the government would have to produce sufficient evidence to show that it has probable cause to believe that you committed the crimes with which you are being charged. At that hearing you would have the right to introduce evidence and to cross-examine any adverse witnesses who

would be testifying against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, I understand that you intend to plead guilty to the tax charges. Do I have that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you understand that if you plead guilty to those charges, you will be waiving your right to a preliminary hearing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I also understand that the plan for the gun charge is a Diversion Agreement. Counsel, do we need to do anything regarding a preliminary hearing at this point in light of the planned Diversion Agreement?

MR. WISE: No, Your Honor.

MR. CLARK: We're in agreement with that, Your Honor.

THE COURT: All right. Mr. Biden, you are not required to make any statements to the authorities. If you had already made statements to the authorities, you may stop and not make any more. If you start to make a statement and you change your mind, you may stop at any time. And any statement that you do make may be used against you. Do you understand all of that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, pursuant to the Due Process Act, I confirm that the government has a continuing obligation pursuant to Brady v. Maryland and its progeny to produce all exculpatory evidence and I order that it do so at the appropriate time. The consequences for violating a Brady obligation and/or my order could include, but are not limited to, contempt proceedings, sanctions, referral to disciplinary counsel, adverse jury instructions, exclusion of evidence and dismissal of the charges. Does the government understand that?

MR. WISE: Yes, Your Honor.

THE COURT: Has all Brady material been produced?

MR. WISE: Yes, Your Honor.

THE COURT: Mr. Clark, any concerns about that?

MR. CLARK: None whatsoever, Your Honor.

THE COURT: Thank you.

Pretrial release, what is the government's position?

MR. WISE: The conditions that have been recommended we agree with.

THE COURT: Any concerns about that, Mr. Clark?

MR. CLARK: No, Your Honor, we're in accordance.

THE COURT: You can't help yourself, you're just going to keep jumping up.

MR. CLARK: I was taught at a hard school.

THE COURT: I know. I couldn't even think if I wasn't standing.

I understand that pretrial release -- I agree that pretrial release is appropriate subject to the following conditions which I will read into the record. The Defendant must not violate federal, state, or local law while on release.

The Defendant must cooperate in the collection of a DNA sample if it is authorized by 34 United States Code Section 40702.

The Defendant must advise the court or the pretrial services officer or some supervising officer in writing before making any change in residence or telephone number.

The Defendant must appear in court as required and if convicted must surrender as directed to serve a sentence that the Court may impose.

I also impose the following additional conditions.

Sir, you must submit to supervision by and report to supervision to the probation office in the district in which you are residing. You must continue or actively seek employment. You must communicate in writing all international travel plans and provide supporting

documentation if requested to both the District of Delaware and the district in which you are residing. You must not possess a firearm, destructive device or other weapon. You must not use alcohol. You must not use or unlawfully possess a narcotic drug or other controlled substance defined in 21 United States Code, Section 802, unless prescribed by a licensed medical practitioner. I will clarify, however, that marijuana is not legal under federal law and you are prohibited from using marijuana regardless of whether it is legal or not in the state in which you are or it is prescribed by a medical practitioner.

You must submit to testing for a prohibited substance if required by the pretrial services officer or supervising officer. Testing may be done with random frequency and may include urine testing, the wearing of a sweat patch, remote alcohol testing system and/or any form of prohibited substance screening or testing. You must not obstruct, attempt to obstruct or tamper with the efficiency or accuracy of prohibited substance screening or testing.

Just give me a minute here.

And you must participate in a program of inpatient or outpatient substance abuse, therapy, or counseling if directed by the pretrial services officer or the supervising officer. Do you understand those conditions, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Any objection or comments on the conditions imposed?

MR. CLARK: None from the defense, Your Honor.

MR. WISE: Nor from the United States, Your Honor.

THE COURT: All right. Mr. Biden, violating any of the conditions of release may result in the immediate issuance of a warrant for your arrest, revocation of your release, an order for detention, forfeiture of any bond or prosecution for contempt of court, and it could result in imprisonment, a fine, or both. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Anything I left out or anything I need to address with respect to the initial appearances?

MR. WISE: Not from the United States, Your Honor.

MR. CLARK: No, Your Honor.

THE COURT: Now, we have two cases and two agreements and I understand that the Diversion Agreement is not something that is typically before the Court, but you all did send it to me so I do want to talk about that a little bit. There are some provisions in those agreements that are not standard and are different from what I normally see, so I think we need to walk through these documents and

get some understanding of what is being proposed so that I can give due consideration to the determination that you all are asking me to make. So I want to start with Criminal Action 23-274 involving the tax charges.

All right. Now, Mr. Biden, you told me that you intend to enter a plea of guilty in those cases, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So it is my responsibility to make sure that that plea is a voluntary and knowing plea. And in order to do that, I first need to ask you a series of questions. Before I ask you those questions, I am going to have you placed under oath to answer those questions truthfully. And it's important that you do answer those questions truthfully because if you don't, any false answers may be used against you in a separate prosecution for perjury. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Buckson, will you please swear in the Defendant.

COURT CLERK: Will you please rise and raise your right hand. Please state and spell your full name for the record.

THE DEFENDANT: Robert Hunter Biden. R-O-B-E-R-T, H-U-N-T-E-R, B-I-D-E-N.

ROBERT HUNTER BIDEN, was duly sworn under oath.

THE COURT: Thank you, sir. You may be seated. All right. Now, sir, if at any time you want to confer with your counsel when I'm asking you questions, you may, just let me know. All right?

THE DEFENDANT: Thank you, Your Honor.

THE COURT: How old are you?

THE DEFENDANT: Fifty-three years old, Your Honor.

THE COURT: How far did you go in school?

THE DEFENDANT: Law school, Your Honor.

THE COURT: When did you graduate from law school?

THE DEFENDANT: 1996.

THE COURT: You're member of the bar?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any particular?

THE DEFENDANT: District of Columbia and Connecticut, Your Honor.

THE COURT: Thank you. And you speak and understand English?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you currently or have you recently been under the care of a physician or psychiatrist?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you ever been hospitalized or

treated for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: I have attended treatment facilities for addiction, Your Honor.

THE COURT: Okay. So that was included in my question which is treatment for addiction to drugs.

THE DEFENDANT: Yes, Your Honor.

THE COURT: So I need you to tell me about that. How many times have you, to the best of your recollection, been treated whether inpatient or outpatient?

THE DEFENDANT: Beginning in 2003 with the inpatient, Your Honor, I have been to I believe close to six inpatient over the course of twenty years.

THE COURT: All right.

THE DEFENDANT: And I have also been in outpatient programs also during that time.

MR. CLARK: Just to be clear, it's numerous, Your Honor.

THE COURT: I'm not going to walk through every single one, but I just want to make sure I have some understanding.

All right. Now, sir, each time that you were treated in an inpatient facility, what was it for?

THE DEFENDANT: For addiction to alcohol primarily originally, Your Honor.

THE COURT: Okay. And have you ever been in an inpatient treatment program where you were treated for something else other than alcoholism?

THE DEFENDANT: Drugs, also, Your Honor.

THE COURT: Okay. And I'm just not sure how these programs work. I'm sorry. Is it for any particular drug that you're treated or is it just sort of --

THE DEFENDANT: No.

THE COURT: Everything.

THE DEFENDANT: Everything, Your Honor.

THE COURT: Okay. And when was the most recent time that you were in treatment? Well, are you currently in treatment for your alcohol or drug issues?

THE DEFENDANT: No, I'm not, Your Honor.

THE COURT: When was the last time that you were in treatment?

THE DEFENDANT: I believe the fall of 2018.

MR. CLARK: I think that's right, Your Honor.

THE COURT: Okay.

THE DEFENDANT: Your Honor, sorry.

THE COURT: That's okay. So the fall of 2018, and was that inpatient or outpatient?

THE DEFENDANT: Inpatient, and then also outpatient.

THE COURT: Okay. And when you -- did you

complete that program or did you leave that program prior to completion?

THE DEFENDANT: I completed that program, the inpatient portion of it, Your Honor.

THE COURT: Okay. And after you completed that program, did you then continue to use drugs for some period of time?

THE DEFENDANT: I did, Your Honor.

THE COURT: All right. So when was the last time -- so the fall of 2018 was the last time that you received any treatment, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. When was the last time that you used, ingested, or were under the influence of any drug, legal or illegal medication or alcoholic beverage of any kind?

THE DEFENDANT: June of 2019, Your Honor.

THE COURT: All right. And so just to be clear, you are not presently under the influence of any drug, legal or illegal, medication or alcoholic beverage of any kind, is that correct?

THE DEFENDANT: No, Your Honor.

THE COURT: Well, let's just be clear because, you know, people might look at this transcript. I said is that correct and you said no.

THE DEFENDANT: I'm sorry, yes, Your Honor, excuse me.

THE COURT: And sir, do you understand what's going on and why we're here today?

THE DEFENDANT: Yes, I do understand.

THE COURT: Counsel, do you have any doubt as to your client's competence?

MR. CLARK: None whatsoever.

THE COURT: Any concerns from the government?

MR. WISE: No, Your Honor.

THE COURT: Based on the information that I received, Mr. Biden, I find that you are competent and capable of proceeding here today.

So now I want to talk about the misdemeanor information which contains the tax charges that you are pleading guilty to. Have you received a copy of the information pending against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you fully discussed those charges and the case in general with Mr. Clark?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you fully satisfied with the counsel, representation, and advice you received from him in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have the right to have the information read out loud at this hearing, but you can also waive that reading. Would you like me to ask the government to read it or do you waive that?

THE DEFENDANT: I waive that, Your Honor.

THE COURT: Okay. Next, the Memorandum of Plea Agreement which was handed up to me. First, let me ask counsel, what provision of the rules is this plea agreement being presented under?

MR. WISE: It's presented under Rule 11(c)(1)(B), Your Honor, of the Federal Rules of Criminal Procedure.

THE COURT: All right. And so just so we're clear, and Mr. Clark, you agree with that?

MR. CLARK: I do, Your Honor.

THE COURT: All right. Just so we're clear, this is not a plea under Rule 11(c)(1)(C), what is often called a C plea which binds me to impose a specific sentence if I accept the plea, is that correct?

MR. WISE: It is, Your Honor.

MR. CLARK: We agree, Your Honor.

THE COURT: So in your view, what is my role here under Rule 11(c)(1)(B)?

MR. WISE: Your Honor has two roles as Your Honor has already begun to determine that the plea is

knowing and voluntary under Rule 11(B), and to apprise the Defendant that you are not bound by the recommendation of the United States in this case pursuant to Rule 11(c)(3)(B).

THE COURT: That's it?

MR. WISE: That's it.

THE COURT: All right. Now, is it my role to accept or reject this plea?

MR. WISE: It is not, Your Honor.

THE COURT: Now, let me just ask you this. Would my role be different if this were a plea under Rule 11(c)(1)(A)?

MR. WISE: Yes, Your Honor, it would.

THE COURT: How would you say it's different?

MR. WISE: Both Rule 11(c)(1)(A) pleas and 11(c)(1)(C) pleas require the Court to either accept, reject or defer on the plea agreement itself, not on the plea which is governed by like I said a separate provision of the rule which is 11(B), but in terms of the Court's role vis-a-vis the agreement is to accept, reject or defer.

THE COURT: All right. And I do want to talk about that a little bit further, but when we talk about the plea, but you can sit down for now.

Now, wait, let me ask you this. If it's a 11(c)(1)(A) plea, what is your understanding of the factors that I need to look at?

MR. WISE: So the rule itself is silent on the factors, but the case law suggest that the factors -- that the rejecting or accepting the plea would relate to the Court's traditional role at sentencing, so if, for instance, the Court thought that the charge bargain which is what 11(c)(1)(A) does, if the Court thought the charge bargain did not adequately reflect the seriousness of the offense which would affect the Court's ability to sentence, then there is case law that says under those circumstances the Court could reject the charge bargain that was contained in the (c)(1)(A) plea.

THE COURT: When you say the charge bargain, you mean the bargain by which the Defendant pleads guilty and the government agrees not to bring other charges or to drop charges that have already been brought?

MR. WISE: Exactly, Your Honor.

THE COURT: All right. And in looking at an 11(c)(1)(A) plea, would I need to consider or are those factors that you just sort of talked about, is that usually referred to as in the interest of justice?

MR. WISE: They are, Your Honor.

THE COURT: All right. You can be seated.

So yesterday I received from third parties a letter with almost 900 pages of attachments in one case, and a memorandum of law with hundreds of more pages of exhibits

in the other. I have not had time to review those submissions. I understand that there is some objection to them and I will give the Defendant and the government if it wishes an opportunity to respond to those if they choose. But even though I have not been able to review the third-party submissions, I do understand that they request that I reject the plea agreement based on information that the filers submit cast doubt on the investigation performed or the charges brought or both.

So let me ask you this. If I were to think that the facts presented in those submissions or even the facts that have been presented to me in this case and the attached agreements suggest that the investigation was lacking or that more serious charges should have been brought, is it within my power to ask or direct the United States Attorney or the Attorney General of the United States to redo the investigation or bring different or more serious charges?

MR. WISE: I don't believe so, Your Honor, no.

MR. CLARK: We agree, Your Honor, it would raise obviously massive separation of powers questions if that was to be taken.

THE COURT: Okay. And isn't that decision about what charges to bring for the prosecutor as part of the Executive Branch?

MR. WISE: It is, Your Honor.

MR. CLARK: We concur, Your Honor.

THE COURT: All right. So if there were a failure in the investigation or the charges brought were inappropriate, how would that get addressed in our form of government?

MR. WISE: Through the political process, Your Honor.

MR. CLARK: In particular, Your Honor, the Executive Branch is charged fully with investigating, making prosecutorial discretion decisions, and indeed that's where the term prosecutorial discretion comes from, it is vested in the Executive Branch.

THE COURT: All right. Okay. Let's walk through some of the provisions of the plea, Memorandum of Plea Agreement. Do you have it in front of you, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's six pages long and has an attached Exhibit 1 which is four pages long as well as a sealed attachment referenced as Attachment A. Attachment A is a document that is not public, but it is a standard document that is filed in all cases in this district and is not filed only in connection with this case. The Memorandum of Plea Agreement has three signatures on the final page. Is one of those signatures yours?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And when did you sign it?

THE DEFENDANT: This morning, Your Honor.

THE COURT: And before you signed it, did you have an opportunity to read it and discuss it with your attorney?

THE DEFENDANT: I did, Your Honor.

THE COURT: Are you satisfied with the advice and counsel you received regarding the plea agreement.

THE DEFENDANT: I am, Your Honor.

THE COURT: All right. Let's have a side-bar up here.

(Sealed Attachment A side-bar discussion under separate cover.)

(End of sealed Attachment A discussion.)

THE COURT: All right. Let's go back on the unsealed portion of the record.

So I'm now going to ask the prosecutor to read the essential terms of the plea agreement. Sir, I'll ask you to listen carefully to what he says because when he's finished, I'm going to ask you if the agreement as recited by him reflects the deal that you believe you reached with the government.

Mr. Wise.

MR. WISE: Thank you, Your Honor.

Paragraph 1 provides that the Defendant waives

any challenge to the information based on venue and agrees to plead guilty in the United States District Court for the District of Delaware to Counts I and II of the information which charge him with willful failure to pay tax in violation of Title 26 United States Code Section 7203.

Paragraph 2 describes how the Defendant understands that the maximum penalties for each of Counts I and II are as Your Honor previously indicated, twelve months of imprisonment, a $100,000 fine or twice the gross gain or loss from the offense, whichever is greater, one year of supervised release, restitution and a $25 special assessment per count and the cost of prosecution which the parties stipulate is zero.

Paragraph 3 describes the essential elements that the government would have to prove if the case went to trial and those are one, that the Defendant had a duty to pay tax. Two, that the tax was not paid at the time required by law. And three, that the failure to pay was willful. The Defendant knowingly and voluntarily and intelligently admits his guilt to each of these elements and further admits to the information contained in the statement of facts which is attached to the memorandum as Exhibit 1.

Paragraph 4 provides that the Defendant is pleading guilty to Counts I and II because he is in fact guilty.

Paragraph 5 contains certain stipulations under the sentencing guidelines. Paragraph 5A provides that the amount of loss as to Counts I and II, so a combined loss is no less than $1,199,524 and no greater than $1,593,329.

Subparagraph B provides that the conduct set forth in the statement of facts which is Attachment A to the Diversion Agreement filed, which will be filed today does not constitute relevant conduct pursuant to United States Sentencing Guideline 1(b)(1.3). Paragraph C provides that provided that the United States does not subsequently learn of conduct by the Defendant inconsistent with the acceptance of responsibility, that it will not oppose a two level decrease pursuant to U.S. Sentencing Guideline 3(e)(1.1)(a) for acceptance. And further, that should it be determined that the Defendant's offense level is 16 or greater prior to the application of the two level reduction for acceptance that the United States will move to reduce the sentence, the guideline by one additional level pursuant to U.S. Sentencing Guideline 3(e)(1.1)(b) for a total reconduction of three levels.

It is understood and agreed by the parties that these stipulations are not binding upon either the probation office or the Court.

Second, that the Court may make factual and legal determinations that differ from these stipulations

that may result in an increase or decrease in the sentencing guideline range and the sentence that may be imposed.

Paragraph 6 provides that for reasons to be articulated at or near the time of sentencing, the United States will recommend a sentence of probation.

Paragraph 7 provides that the United States retains the right to defend the rulings of the District Court in any subsequent proceeding.

Paragraph 8 outlines at length the sentencing procedure which I believe the Court will review with the Defendant in more detail.

Paragraph 9 contains a broad appellant waiver which I also understand the Court will review with the Defendant in greater detail.

Paragraph 10 provides that the Defendant agrees to pay a $50 special assessment at the day of sentencing.

Paragraph 11 provides that the memorandum expressly incorporates Attachment A which is attached and filed under seal and that the government as Your Honor has said routinely files such an attachment even though it may or may not continue additional terms. To the extent it does, however, the parties acknowledge and agree to be bound by it.

Paragraph 12 addresses restitution under the Mandatory Victim Restitution Act. And the Defendant agrees

to the entry of the restitution order for the full amount of the victims loses attributable to his activities as ordered by the Court which is expected to be zero because the self assessed tax due at the time of filing and associated interest and penalties have been paid to the Internal Revenue Service by a third party on behalf of the Defendant. However, the Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw his guilty plea. The parties further understand that should the Internal Revenue Service determine there are additional taxes due and owing for the tax years 2014 through 2019, they are not subject to the terms of this agreement and for the purposes of this memorandum the sole victim of Counts I and II is the United States Treasury.

And finally paragraph 13 provides that it is further agreed by the parties that the memorandum and Exhibit A together with the sealed attachment supersedes all prior promises, representations and statements of the parties, that the memorandum may be modified only in writing signed by all the parties and that any and all promises, representations, and statements made prior to or after this memorandum are null and void and have no affect whatsoever unless they comport with the subsequent written modifications and provisions of this paragraph.

THE COURT: Thank you. I did have a couple of

initial questions.

Paragraph 5A says that the amount of losses no less than 1,100 -- well, actually before we ask that, because I'm going to ask how it relates to the facts, why don't you go through Exhibit 1 you referenced, why don't you put Exhibit 1 on the record.

MR. WISE: Yes, Your Honor.

At all times relevant to the instant Information, the Defendant, Robert Hunter Biden, hereafter Biden, was an attorney and businessman with lucrative domestic and international business interests. From 2017 to 2019, he served on the board of a Ukrainian energy company and a Chinese private equity fund. He further negotiated and executed contracts for business and legal services that paid millions of dollars of compensation to him and/or his domestic corporations, Owasco, PC and Owasco, LLC. Through at least early 2017, he also was employed by a prestigious multi-national law firm in an "of counsel" capacity. For this work, he earned substantial income, totaling more than $2.3 million in 2017 and $2.1 million in 2018.

Biden also has a well-documented and long-standing struggle with substance abuse. Following the death of his brother in 2015, Biden relapsed and over time progressed from alcohol to abusing illegal drugs, including crack cocaine in 2016. This contributed to the collapse of

his marriage, with his divorce finalized in March 2017, as well as the collapse of his most significant professional relationship in Fall 2017. Nonetheless, in 2017, despite his addiction, Biden successfully entered into business ventures and landed legal clients, earning millions of dollars. By his own telling in a memoir published in 2021, Biden's substance abuse worsened in 2018, a year that included a move to Los Angeles and what he has described as a "spring and summer of nonstop debauchery." Even during this period, however, Biden continued to earn money and exercise control over his personal and corporate finances.

Federal income tax returns and payments are due on or about April 15th of each year for the prior calendar year. Biden, like many other taxpayers, routinely requested an automatic extension to file his returns, pushing the due date for a tax return to on or about October 15th. An extension of time to file a return, however, does not extend the deadline for payment of taxes, which remain due on the April filing date.

During calendar year 2017, Biden earned substantial income, including: just under $1 million from a company he formed with the CEO of a Chinese business conglomerate; $666,666 from his domestic business interests; approximately $664,000 from a Chinese infrastructure investment company; $500,000 in director's fees from a

Ukrainian energy company; $70,000 relating to a Romanian business; and $48,000 from the multi-national law firm.

Throughout tax year 2017, Biden worked with a DC and Maryland based accountant to prepare his individual and corporate tax returns. In 2018, this accountant (who died in 2019) prepared Biden's 2017 corporate and individual income tax returns and throughout the fall repeatedly attempted to provide them to Biden for review and signature. These efforts included directly contacting Biden, reaching out to his administrative assistant, and sending copies to his former business partner. The former business partner reviewed the returns and sent several emails to Biden in which he commented on their substance and reminded Biden of his filing obligations. The former business partner left the final returns for Biden at Biden's office. Despite these actions, Biden neither signed nor submitted the individual or corporate income tax returns to the Internal Revenue Service.

Not only did the accountant timely prepare Biden's individual and corporate tax returns, the accountant repeatedly encouraged Biden to timely pay the taxes associated with the 2017 tax returns. Beginning in April 2018 and continuing into October 2018, the accountant advised Biden to make his tax payments, noting approximately $600,000 owed by Biden personally and an additional $204,000

owed by Owasco, PC. Biden told the accountant he could pay $25,000 in April 2018 towards his taxes, but no such payment was made to the Internal Revenue Service. His large tax liability stemmed in part from the fact that over the course of 2017, Biden began withdrawing substantial funds outside of Owasco, PC's established payroll system, which had been created, in part, to ensure that Biden had sufficient withholdings to timely pay any outstanding tax liability. The end of year liability should not have come as a surprise. At the time of those withdrawals, Biden's business partner advised him that these transfers, made without withholding, would result in a significant tax liability at year end.

Despite his large outstanding tax liability and profligate spending, on or about April 17, 2018, the due date for 2017 tax payments, Biden did, in fact, have the funds available to pay his outstanding 2017 tax liability for both his personal and corporate returns. On or about March 22, 2018, Biden received a $1 million payment into his Owasco, LLC bank account as payment for legal fees for Patrick Ho, and $939,000 remained available as of tax day. Over the next six months Biden would spend almost the entirety of this balance on personal expenses, including large cash withdrawals, transfers to his personal account, travel, and entertainment.

Biden continued to earn handsomely and spend wildly in 2018. He received a little over $2.6 million in business and consulting fees from the company he formed with the CEO of a Chinese business conglomerate and the Ukrainian energy company. However, without the structure of a stable business partner and still in the throes of addiction, Biden essentially ignored his tax obligations, withholding only approximately $38,465, less than six percent of the taxes owed. Tax returns and filings for tax year 2018 were due on April 15th, 2019. On that date, Biden traded emails with his DC accountant and his attorney about seeking an extension. The accountant advised Biden of his obligation to make a tax payment on that date, irrespective of the extension to file a return. Ultimately, the extension was filed, making the return due on October 15, 2019. Biden, however, paid nothing. As with tax year 2017, at the time his 2018 tax payment was due, Biden continued to have substantial income and the ability to pay his tax liability, having received payments totaling approximately $758,000 during March and April 2019. By late May, Biden had spent almost the entire sum on personal expenses, including large cash withdrawals, payments to or on behalf of his children, credit card balances, and car payments for his Porsche.

After numerous programs and trips to rehab, Biden got sober in May 2019, the same month he married his

current wife. He has remained sober since. Biden remained in California and spent much of 2019 painting and developing plans for his memoir, which he began working on through the fall and into the winter. During summer 2019, he was sued in two different domestic-relations lawsuits, both seeking payment of support obligations. He still did not, however, make preparations to file or actually file either his 2018 individual or corporate income tax returns on or about October 15, 2019, the extension due date.

In or around November 2019, Biden engaged a California accountant to prepare his individual and corporate income tax returns for 2017 and 2018. The California accountant began gathering materials and started preparing Biden's 2017 and 2018 returns in early 2020. By that time, the domestic relations lawsuits had progressed, and having failed to do so previously, Biden was under court order to provide his tax returns or face potential sanctions including imprisonment. On or about January 27, 2020, Biden signed a representation letter for the California accountants, averring that he was providing the accountants with truthful and accurate information and acknowledging his responsibility for the accuracy of those tax returns. Over the days that followed, Biden participated in a series of meetings with the California accountants and identified business and personal expenses in connection with his tax

returns. During this process, Biden miscategorized certain personal expenses as legitimate business expenses, resulting in a reduction in his tax liability. At the same time, the California accountants overreported Biden's income, which partially offset this reduction.

Or on about February 18th, 2020, Biden filed his individual and corporate income tax returns with the Internal Revenue Service for tax years 2017 and 2018. On his 2017 Form 1040, Biden reported $2,376,436 in total income and a self-assessed tax due of $710,598, of which $125,909 was timely paid, leaving a balance due and owing of $581,713. On his 2017 Form 1120 for Owasco, PC, Biden reported gross receipts of $2,698,041 and a self-assessed tax due and owing of $13,630. On his 2018 Form 1040, Biden reported $2,187,286 in total income and a self-assessed tax of $659,366, of which $38,465 was timely paid, leaving a balance due and owing of $620,901. No additional payments were included at the time of filing. On his 2018 Form 1120 for Owasco, PC, Biden reported gross receipts of $2,659,014 and a self-assessed tax due and owing of $4,247.

Approximately a year-and-a-half later, on or about October 18th, 2021, a third party paid the Internal Revenue Service $955,800 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2017 and $956,632 to cover Biden's self-assessed

individual tax liability with interest and penalties for tax year 2018.

In addition, in or around February of 2020, Biden's California accountants discovered that Biden's 2016 Form 1040 had not been filed. The return was originally prepared in or around October 2017 and showed $15,520 in taxes due and owing. Though it was delivered to Biden at Biden's office, this return was not filed with the Internal Revenue Service. After learning in 2020 that the Form 1040 for 2016 remained unfiled, Biden filed a Form 1040 on June 12, 2020. For tax year 2016, Biden reported $1,580,283 in total income and self-assessed tax due of $492,895, of which $447,234 was timely paid, leaving a balance due and owing of $45,661. Biden did not include a payment with this return. On or about October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by a third party.

Finally, after seeking an extension, Biden timely filed his 2019 Form 1040 on or about October 15th, 2020. He did not, however, pay his estimated tax due when filing for an extension as required by law. For tax year 2019, Biden reported $1,045,850 in total income and a self-assessed tax due and owing of $197,372. On October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by the same third party.

THE COURT: All right. Thank you. Now I did have a few questions.

Paragraph 5A says that the amount of loss as to Counts I and II including the relevant conduct as defined in sentencing guideline is no less than $1,199,524, and no greater than $1,593,329. Is that the combined loss or the loss for each count?

MR. WISE: Combined loss, Your Honor.

THE COURT: All right. In Exhibit 1, there are references to taxes paid by a third party on Mr. Biden's behalf of $955,800, and $956,632, as well as $492,000 in 2016 and $197,000 for 2019. Just looking at 2017 and 2018 which are the subject of this case, those numbers add up to more than $1.9 million. Can you help me square that with the relevant conduct.

MR. WISE: So the amount that was paid by the third party includes significant penalties and interests which we have not included in the loss stipulation that's in paragraph 5A. The paragraph 5A is the taxes and there is a dispute as to what the taxes were based on the business deductions and that's something that the parties will address in their sentencing memorandum, but this number is loss without inclusion of the penalties and interest.

THE COURT: Is that standard?

MR. WISE: Yes, Your Honor.

THE COURT: Did you want to say something?

MR. CLARK: I was going to say it's a relevant guideline, Your Honor, for a failure to pay case omits penalties and interests from the calculation of the tax table loss. And there is a dispute about where in the range it goes, but the explanation, penalties and interest are not properly included under this guideline for this offense.

THE COURT: And if it were tax evasion, would those be included?

MR. CLARK: It's my understanding that they would be, Your Honor.

MR. WISE: Yes, Your Honor.

THE COURT: Okay. Paragraph 5b refers to the Diversion Agreement. That's the Diversion Agreement contemplated in the Criminal Action 23-61, the felony gun charge?

MR. WISE: Yes, Your Honor.

THE COURT: All right. Paragraph 12 refers to restitution, and says the self-assessed tax due at the time of filing and the associated interest and patents have been paid to the Internal Revenue Service by a third party on behalf of the Defendant. What does self-assessed mean?

MR. WISE: It means the amount when the returns were prepared that, the return prepared determine what was owed based on the income that was reported and deductions

and credit.

MR. CLARK: I think, Your Honor, based on that and all this process, these numbers are based on payout numbers that were obtained from the IRS. Self assessment is a process by which a return filer writes a return, says this is how much tax I owe. There was a lot of process here between the IRS and these returns and at the end of the day a payout number was obtained by the IRS and that number was paid.

THE COURT: So this isn't -- that's what I'm trying to figure out, is there someone still looking into that to see if the self-assessed number is accurate, or do you know that it's zero?

MR. WISE: So the self-assessed number again is the amount on the return plus the interest and penalties that were derived through the payoff. As the statement of facts addresses, there is a dispute as to what was self-assessed or what the self-assessed number would be for tax year 2018 and that will be addressed in the sentencing memoranda.

MR. CLARK: To be clear, the dispute is we think it's lower. As the statement of facts recites, there was actually an overstatement of Mr. Biden's income that year. I mean, my understanding is all of the monies that the IRS takes a position Mr. Biden owes as a result of every tax

year being discussed have been paid based on their calculation, if that answers Your Honor's question.

MR. WISE: So our position, Your Honor, is there are additional -- there are deductions that were taken that were improper and so that's why for the loss purposes, putting aside what the payoff number was in our sentencing memorandum, we will address those. The IRS in arriving at the payoff number didn't --

THE COURT: Well, I'm just asking because you said it's expected to be zero, why is it expected to be zero if you're telling me that the numbers might be wrong?

MR. WISE: Because that is the payoff amount that the IRS gave to the Defendant which is sort of a process that produces that that is separate from the criminal investigation and essentially divorced from it. That's why the agreement doesn't bind the IRS if they then make a decision essentially for additional restitution that could occur.

THE COURT: Why do you say it's expected to be zero?

MR. WISE: Because as of the payoff number that was given, there is no at this moment restitution owed to the IRS.

THE COURT: All right. So those are my initial questions. I may have some more as we go through this, but

that's what I had at this moment.

Mr. Biden, does the written agreement as summarized by Mr. Wise accurately reflect the agreement you have reached with the government?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone threatened you or forced you into entering this written agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone made you any promises that are not contained in the written agreement?

MR. CLARK: Your Honor, with the exception of the Diversion Agreement --

THE COURT: We're not making an exception. I want to know, has anyone made you any promises that are not contained in the written Memorandum of Plea Agreement?

MR. CLARK: Yes, there are promises from the government in the Diversion Agreement, Your Honor.

THE COURT: And sir, are you relying on the promises made in the Diversion Agreement in connection with your agreement to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if the Diversion Agreement were not valid or unenforceable for any reason, would you enter into the Memorandum of Plea Agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. So we're going to discuss that agreement in a bit, but for now let me say -- by the way, I didn't get a copy of paragraph 15 of the agreement, but the parties provided me with a copy of that agreement prior to this hearing, so that's what I'm going to quote from at the moment.

Paragraph 15 of the Diversion Agreement states the United States agrees not to criminally prosecute Biden outside of the terms of this agreement for any federal crimes encompassed by the attached statement of facts, Attachment A to the Diversion Agreement, and the statement of facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

And just so we're clear, I think you already answered this, sir, but are you relying on that promise in connection with your agreement to accept the Memorandum of Plea Agreement and plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If that provision were not valid or not enforceable, would you accept the Memorandum of Plea Agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: If you had no immunity from the

government, perhaps even a different prosecutor and the government could bring a felony tax evasion charge or drug charges against you, would you still enter the plea agreement and plead guilty to these tax charges?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. So I need some help here because you all told me this was a plea under Rule 11(c)(1)(B) and not (c)(1)(A), but yet I have this provision that I would think is normally in a plea agreement. So tell me, how do these agreements relate? Are they part of a package deal?

MR. WISE: So, Your Honor, the United State's position is that the agreements stand alone by their own terms and both agreements include their last paragraph that says that with this one caveat --

THE COURT: This is a big caveat, though, if you're telling me Rule 11(c)(1)(B) doesn't give me any authority to look at this, (c)(1)(A) refers to, you know, having an agreement not to prosecute. That's why I'm looking at this. I'm not saying that you're wrong, but I need to understand this.

MR. WISE: Sure. So Your Honor, again, our view is the plea agreement stands alone. There is no charge bargaining in the plea agreement, period. And that's what they have agreed to. The Diversion Agreement --

THE COURT: But he would not agree, just so I understand, sir, you would not agree to that plea agreement if you didn't get some immunity from other charges, is that right?

MR. CLARK: Speaking for my client, that's correct, Your Honor.

THE COURT: I didn't mean that to be a rhetorical question. So you're trying to tell me that that's separate, but I think -- and I understand why he's saying no, I wouldn't -- that isn't separate to me, I need them both.

MR. WISE: That's the intention with the agreement he signed.

THE COURT: So the intention of the agreement he signed was that it would be completely separate and if that Diversion Agreement were not valid or unenforceable and he were on the hook for other charges that he would still be pleading guilty?

MR. WISE: That's right, because that's what the final paragraph of the plea agreement says he's agreeing to, that the plea agreement stands on its own without any additional promises outside the four corners of that agreement.

THE COURT: Do you guys need to talk about this for a few minutes?

MR. CLARK: Yes.

THE COURT: How about I give you guys an opportunity so we can make sure we're on the same page because part of my charge here is to make sure that the Defendant knows what he's pleading to.

MR. CLARK: We appreciate it, Your Honor.

COURT CLERK: All rise.

(A brief recess was taken.)

THE COURT: All right. Please be seated. Where are we?

MR. CLARK: Your Honor, I want to apologize for maybe my unartful phrasing for some of the issues that came up a minute ago. Perhaps I can explain the Defendant's position and that may clarify things. There are two agreements in this case. They are both very important to the Defendant. One is a plea agreement that the Court has before it and my client is ready to enter a plea to that plea agreement without contingency, without reservation, and without connection. There is another agreement which is a Diversion Agreement which --

THE COURT: Right. So let me just ask you, if that Diversion Agreement were not valid or were unenforceable for some reason, would he enter this plea?

MR. CLARK: He is ready to live by the terms of that agreement --

THE COURT: If that Diversion Agreement did not exist, he would be willing to live by the terms of the plea and plead guilty? I have concerns about that Diversion Agreement so I'm asking you, if it were not valid, if it were unenforceable, would he plead to the memorandum of plea?

MR. CLARK: Based on our understanding of the Diversion Agreement, which is a bilateral agreement between the Defendant and the government which the government has reaffirmed to me it will stand by, then yeah, he would enter the plea.

THE COURT: So you're not answering my question. You're saying well, we think it's valid and enforceable. I'm asking you, if it were not, go with me here, if that agreement were not valid and enforceable, if that agreement did not exist and he could not rely on it, would he enter the memoranda of plea?

MR. CLARK: You're asking for a hypothetical from me, Your Honor.

THE COURT: Yes, I'm asking that because --

MR. CLARK: Yes, my client would resolve this case on these terms in the hypothetical situation that exist without that Diversion Agreement. I want to be clear that it is the parties' position that there is a Diversion Agreement between the parties which is binding. But take

that out of today's proceeding and my client is ready to enter a plea under the plea agreement.

THE COURT: All right. Let me ask you those questions again, Mr. Biden. If the Diversion Agreement were not valid and enforceable for any reason, would you enter the Memorandum of Plea Agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And are you relying on the promise in the Diversion Agreement not to prosecute you in connection with your agreement to accept the Memorandum of Plea Agreement and plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: And so if you had no immunity from the government through that Diversion Agreement and the government could bring felony tax evasion charges or drug charges against you, would you still enter the plea agreement and plead guilty to these tax charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, I want to talk a little bit about this agreement not to prosecute. The agreement not to prosecute includes -- is in the gun case, but it also includes crimes related to the tax case. So we looked through a bunch of diversion agreements that we have access to and we couldn't find anything that had anything similar to that.

So let me first ask, do you have any precedent for agreeing not to prosecute crimes that have nothing to do with the case or the charges being diverted?

MR. WISE: I'm not aware of any, Your Honor.

THE COURT: Do you have any authority that says that that's appropriate and that the probation officer should agree to that as terms, or the chief of probation should agree to that as terms of a Diversion Agreement?

MR. WISE: Your Honor, I believe that this is a bilateral agreement between the parties that the parties view in their best interest. I don't believe that the role of probation would include weighing whether the benefit of the bargain is valid or not from the perspective of the United States or the Defendant.

THE COURT: So have you ever seen -- I think I just asked you this, but have you ever seen a Diversion Agreement where the agreement not to prosecute is so broad that it encompasses crimes in a different case?

MR. WISE: No. And I would say, Your Honor, I don't think it is broad in the sense that --

THE COURT: We're going to talk about that. You can sit down.

All right. Now, is an agreement not to bring charges or an agreement to drop charges typically something that is included in a Memorandum of Plea Agreement?

MR. WISE: It can be.

THE COURT: And if it were included in the Memorandum of Plea Agreement, would that make this plea agreement one pursuant to Rule 11(c)(1)(A)?

MR. WALLACE: It would.

THE COURT: In your view, that would change the analysis of what I needed to do in evaluating whether to accept this plea or not, right?

MR. WISE: It would.

THE COURT: And so let's just understand this. If it were that, then my role would be to accept or reject the plea, right?

MR. WISE: It would.

THE COURT: What happens if I accept the plea, we go forward to sentencing?

MR. WISE: Yes.

THE COURT: And what happens if I reject the plea?

MR. WISE: Then we -- this is one of the issues with charge bargaining.

THE COURT: Because there is a waiver of venue.

MR. WISE: Well, there is a waiver of venue, but also, and this has been addressed by some courts outside of this circuit, because of the separation of powers, if the Court were to reject a (c)(1)(A) on its view that the

charges should be different --

THE COURT: Well, what if I were to reject the (c)(1)(A) plea on the grounds that it includes an agreement not to prosecute, that as we're going to talk about in a few minutes, I don't really understand the scope of.

MR. WISE: So --

THE COURT: I mean, forget all the investigation, what charges were brought, I think that the parties have made clear that we live in a system of separation of powers, those powers are given to the Executive Branch. Right?

MR. WISE: Right.

THE COURT: So I don't mean to violate the separation of powers or do anything unconstitutional. I'm trying to figure out what my role is and what the appropriate rule is that applies to this.

MR. WISE: Right.

THE COURT: Okay. And so I am trying to understand if I were to reject the plea, I'm not saying I am going to, I have not -- for anyone in the back, I have not made that determination, but if I were to reject the plea, just tell me what happens.

MR. WISE: So then we have two charges against the Defendant and they're misdemeanors, so he doesn't need to be indicted and we go forward and there is a trial on

those charges, and there is a possibility that there could be additional charges brought.

THE COURT: Related to the tax issues?

MR. WISE: Yes.

THE COURT: Do you agree with that, Mr. Clark, what would happen? Again, I want to make sure I'm not saying that's my decision.

MR. CLARK: I understand, Your Honor. I don't necessarily disagree. I'm not aware of any additional charges that could validly be brought with regard to the tax charges. Again, without getting into the whole investigation, but I do think there is some context that's important here. The U.S. Attorney's Office and me spent five years in meeting after meeting, hours, ten hour long meetings going through my client's taxes on a line-by-line basis, and this is the disposition the parties came to after a five-year investigation that was pursued with unbelievable diligence and doggedness. And so first of all, I don't think there are any other charges to be brought. I think, you know, we thought that just like in any compromise situation, we had valid arguments with regard to these charges, but my client undertook to plead guilty to them because it was the right disposition for all the parties after extensive negotiation, and so yeah, I think we would have two filed informations and the Court and the parties

would figure out how to proceed on those informations and that would be the rest of the process.

THE COURT: All right. So you said there might be additional charges. Are you at liberty to tell us what you're thinking those might be or is that just a hypothetical that there might be?

MR. WISE: It was a hypothetical response to your question.

THE COURT: Is there an ongoing investigation here?

MR. WISE: There is.

THE COURT: May I ask then why if there is we're doing this piecemeal?

MR. WISE: Your Honor may ask, but I'm not in a position where I can say.

THE COURT: Okay. So you can sit down.

I think what I'm concerned about here is that you seem to be asking for the inclusion of the Court in this agreement, yet you're telling me that I don't have any role in it, and you're leaving provisions of the plea agreement out and putting them into an agreement that you are not asking me to sign off on. So I need you to help me understand why this isn't in the written plea agreement.

MR. CLARK: If I may, Your Honor. I mean, the original conception here was something like a deferred

prosecution, non-prosecution agreement, which generally the Court doesn't necessarily weigh in on. I don't think it was the -- we are not asking the Court to rule in any way on the Diversion Agreement. The diversion as far as I understand it has been approved by probation, there is a -- you've arraigned the Defendant on the instrument and I believe that process will go forward.

THE COURT: We have to talk about the Diversion Agreement because you have included me into the Diversion Agreement, so we are going to talk about that. But I am just still, you know, normally -- so we have two agreements, we have a plea agreement where you're saying Judge, we're all here in front of you for him to plead. You're saying I don't even get to accept it, I guess I'm supposed to rubber stamp it under Rule (c)(1)(B). But then it would be a plea under Rule (c)(1)(A) if the provision that you have put in the Diversion Agreement which you do not have anyplace for me to sign and it is not in my purview under the statute to sign, you put that provision over there. So I am concerned that you're taking provisions out of the agreement, of a plea agreement that would normally be in there. So can you -- I don't really understand why that is.

MR. WISE: So the bargain that was reached by the parties was the Plea Agreement that is in front of Your Honor, which is a (c)(1)(B) as I mentioned, where there is

only a recommended sentence, that is -- that is the Plea Agreement --

THE COURT: Well, it's not, because you do reference -- you reference the Diversion Agreement in the Plea Agreement.

MR. WISE: Not in the Plea Agreement.

THE COURT: You do. I asked you if paragraph 5B referred to the Diversion Agreement and you said yes.

MR. WISE: Only insofar as it's not relevant conduct.

THE COURT: You reference it in the Plea Agreement, right?

MR. WISE: But it doesn't incorporate it.

THE COURT: And in the Diversion Agreement, you reference the Memorandum of Plea Agreement, right?

MR. WISE: Only part of it.

THE COURT: And you say that the -- in the Diversion Agreement when you say there is not going to be any prosecution, you say that's not just prosecution on the gun charge which is the subject of the Diversion Agreement, you say also no prosecution with respect to anything in the statement of facts attached to the memorandum of plea, right.

MR. WISE: Yes.

THE COURT: All right. Okay. So I don't really

understand, though, why that's not part of the Plea Agreement.

MR. WISE: Because by the terms of the Plea Agreement, the only function, the Diversion Agreement -- well, it has no function but the parties negotiated that their view, and it's their view, probation can take a different view, Your Honor can take a different view, their view is the firearms offense should not be considered relevant conduct for calculating the guidelines related to the tax offense, that is all that 5(b) says. It does not incorporate the paragraph 15 or any part of the Diversion Agreement, it simply says our view is the Diversion Agreement, the firearm offense should not be considered relevant conduct in calculating the guidelines.

I think practically how this would work, Your Honor, is if Your Honor takes the plea and signs the Diversion Agreement which is what puts it into force as of today, and at some point in the future we were to bring charges that the Defendant thought were encompassed by the factual statement in the Diversion Agreement or the factual statement in the Plea Agreement, they could move to dismiss those charges on the grounds that we had contractually agreed not to bring charges encompassed within the factual statement of the Diversion Agreement or the factual statement of the tax charges.

MR. CLARK: That's my understanding, Your Honor, we would be enforcing a contract with the Department of Justice.

THE COURT: I don't understand how you have an agreement not to pursue other charges in the case, the misdemeanor case, and you say that is not part of his Plea Agreement.

MR. WISE: Because the Plea Agreement does not include that.

THE COURT: All right. So let's talk a little bit more about this. To the extent that the agreement -- you can sit down.

To the extent that the agreement not to prosecute is promised, do the parties have some understanding what the scope of that agreement is?

MR. WISE: Yes, Your Honor.

THE COURT: No, tell me, like specifically what does it include. You said that there is an investigation, I don't know what that is, but you must know that if there are particular charges that could be brought based on the facts that are there.

MR. WISE: So I can tell you what I think we can't charge. I can't tell you what the ongoing investigation is. So, for instance, I think based on the terms of the agreement, we cannot bring tax evasion charges

for the years described in the factual statement to the Plea Agreement. And I think we cannot bring for the firearms charges based on the firearm identified in the factual statement to the Diversion Agreement.

THE COURT: All right. So there are references to foreign companies, for example, in the facts section. Could the government bring a charge under the Foreign Agents Registration Act?

MR. WISE: Yes.

THE COURT: I'm trying to figure out if there is a meeting of the minds here and I'm not sure that this provision isn't part of the Plea Agreement and so that's why I'm asking.

MR. CLARK: Your Honor, the Plea Agreement --

THE COURT: I need you to answer my question if you can. Is there a meeting of the minds on that one?

MR. CLARK: As stated by the government just now, I don't agree with what the government said.

THE COURT: So I mean, these are contracts. To be enforceable, there has to be a meeting of the minds. So what do we do now?

MR. WISE: Then there is no deal.

THE COURT: All right. I guess then the question is where does that leave us? So what do we need to do? Do you guys need some time to talk? Do you need me to

set a date -- do we need to talk about a preliminary hearing since we didn't really need to do one with the agreement?

MR. CLARK: We'll waive the preliminary hearing. As far as I'm concerned, the Plea Agreement is null and void. You know, we'll have -- we are going to have to discuss things with the government.

THE COURT: All right. So I think we're on the clock now. So what should we do? Do you want me to set a date for pretrial motions? Do you want to exclude a little bit of time so that you have some time to talk? What do you want to do?

MR. CLARK: I think we would need thirty days after the trial clock to figure out what's going on.

THE COURT: All right. I agree. I know that this has come as a little bit of a curve ball, but I think that having you guys talk some more makes sense, and we will exclude the time up through -- so the thirty days takes us to the Friday before Labor Day. Do you want that or do you want the following week?

MR. CLARK: I think that's fine, Your Honor.

THE COURT: So we'll exclude up through September 1st, you guys can get me a status report then. I think it does make sense in the interest of justice to do so. We'll get a status report and then we'll figure out where we are.

MR. CLARK: Your Honor, can we ask you to take ten minutes and see whether we can somehow make any headway on this?

THE COURT: Okay.

MR. CLARK: Thank you, Your Honor.

COURT CLERK: All rise.

(A brief recess was taken.)

THE COURT: All right. Please be seated. Where are we?

MR. CLARK: Your Honor, we have had some discussion between the parties to try to clarify the understanding and I just want to kind of summarize where we are and if the government's counsel wants to correct me. The parties have taken the position that the Diversion Agreement is a separate agreement from the Plea Agreement. The Diversion Agreement is a bilateral contract between the parties. Your Honor has asked the parties what their understanding of the paragraph 15 of the Diversion Agreement is. I think there was some space between us and at this point, we are prepared to agree with the government that the scope of paragraph 15 relates to the specific areas of federal crimes that are discussed in the statement of facts which in general and broadly relate to gun possession, tax issues, and drug use.

THE COURT: So are you going to rewrite that?

MR. CLARK: The government says that's what it means and Your Honor asked for what the parties agree.

THE COURT: I'm just looking at the language of that. So you're comfortable with that's what it means even though the language of that seems substantially broader?

MR. CLARK: Your Honor, I just put on the record what I have --

THE COURT: You didn't just answer yes so that also -- so yes, you are comfortable that that provision means that it only relate and for what period of time?

MR. WISE: It would be the period of time in the statement of fact, both statement of facts.

THE COURT: Help me out with that.

MR. WISE: '14 to '19 for the tax offenses and the drug -- and the admission of drug use in that period and then the firearms is obviously specifically identified in the time period in which that was possessed.

THE COURT: All right. So the defense agrees that the agreement not to prosecute only includes the time period from 2014 to 2019, it only includes tax charges in that time period, drug charges in that time period, and the particular -- the firearms charges that relate to this particular firearm?

MR. CLARK: Yes, Your Honor.

THE COURT: All right. So you can be seated.

Let me just take a look here. I mean, part of the issue that I'm having is understanding, you know, regardless of whether this is a plea under subsection B or subsection A, it has to be a knowing plea and I'm already faced with the Defendant under oath saying both that he would not enter the Memorandum of Plea Agreement if the Diversion Agreement were not valid, and that he would. And so I'm a little bit confused about that. So I think we can work through that. But let's take a look at some of the rest of this.

All right. Sir, other than what we have just discussed, are there any other promises that have been made to you to entice you to enter the Memorandum of Plea Agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that this is the time to tell me of any promises not in the record or of any threats that have been made because after today you won't be able to withdraw your plea based on information that you could have shared with me here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the plea -- terms of the Plea Agreement are merely recommendations to me, that I can reject those recommendations without permitting you to withdraw your plea and impose a sentence that is harsher or longer or more severe than the one that

you may anticipate?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you pleading guilty of your own free will because you are, in fact, guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now I want to walk through some of the specific provisions of the agreement. First, venue. Do you have the agreement in front of you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So paragraph 1 states that you waive any challenge to the information based on venue. Do you understand that absent that waiver, you could challenge this Court being the appropriate Court to hear these charges?

THE DEFENDANT: Yes, Your Honor.

THE COURT: By entering this plea you are giving up that challenge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss that provision with your counsel?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Again, are you satisfied with the advice that you received?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, next, in paragraph 2, Mr. Wise

went over the maximum penalties for Counts I and II when he summarized the essential terms and I mentioned those to you earlier when we were doing the initial plea. Do you understand what the maximum penalties are for each of the counts that's pending against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you need me to go through them one more time or are you okay?

THE DEFENDANT: No, Your Honor, thank you.

THE COURT: Paragraph 3. Paragraph 3 list the essential elements of Counts I and II that the government would have to prove. Specifically for each count the government would have to prove beyond a reasonable doubt that the Defendant, you, had a duty to pay a tax. Two, the tax was not paid at the time required by law. And three, that your failure to pay was willful. Do you understand that if I accept your guilty plea, the government will not have to prove anything?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Paragraph 3 also references the statement of facts attached to the Plea Agreement as Exhibit 1. Mr. Wise read those into the record and that is something that is not common in my experience. I just want to ask you about some of those. I'm not going to go through all of those facts but I want to ask them because it is part

of the Plea Agreement that is being presented to me and particularly given our earlier discussion about the fact that those facts are incorporated into the agreement not to prosecute.

All right. So, do you have those in front of you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So in the very first paragraph of Exhibit 1, it says towards the end, it says through at least early 2017 -- I think before that, in the first paragraph, in the second sentence it says from 2017 to 2019, you served on the board of Ukrainian energy company and a Chinese private equity fund. Can you tell me what those companies were?

THE DEFENDANT: The Ukrainian energy company was Burisma, and the Chinese private equity fund was Bohai, Harvest and Rosemont.

THE COURT: And some of this I'm asking just so I understand because there are other references to Ukrainian companies and Chinese companies and I can't tell if they're the same company or not, so that's part of why I'm asking you. Later in that paragraph, it says through at least 2017 you were employed by a prestigious multi-national law firm in an of counsel position. It says through at least 2017. What were the years, do you remember like how long you

worked there?

THE DEFENDANT: Your Honor, I think I was at Boise Schiller 2010, maybe, was when I started, but I am not positive of that. That's what I believe.

THE COURT: Okay. And were you in an of counsel position that whole time?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, it says then that you -- for the work you did, you earned 2.3 million in 2017 and 2.1 million in 2018. Now, you left Boise Schiller in 2017, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So, can you tell me how -- I'm trying to understand the 2018 $2.1 million.

MR. CLARK: My understanding, Your Honor, is that sentence picks up the work described in the last couple of sentences, not just the work for Boise Schiller.

THE COURT: Well, Mr. Biden actually knows.

THE DEFENDANT: Yeah, exactly, Your Honor, I believe what the government intended for that sentence was that it was the total income, not just as it relates to my capacity for Boise Schiller.

THE COURT: So for all your work --

THE DEFENDANT: For this work, it's all of the things that are listed above there.

THE COURT: All right. Thank you. Okay. In the next paragraph, it says you have a well-documented and long-standing struggle with abuse and you did tell me already, I'm not going to ask you again about your efforts to treat that. But when we talk about well-documented, is there a particular thing that we're looking at for where it's documented or is that just based on your discussions?

THE DEFENDANT: Well, I believe the government is referring to a book that I wrote about my struggles with addiction in that period of time in my life. And quite possibly other news outlets and interviews and things that have been done.

THE COURT: Okay. In that paragraph, it refers sort of towards the middle, it refers to your struggles with addiction led to the collapse of your most significant professional relationship. Is that referring to the law firm or something else?

THE DEFENDANT: My business relationship, my business relationships, all of my business relationships, ultimately including the law firm. I had a business that was Rosemont Seneca advisors, and I had a long-standing business partner from the inception of that company that I started. And others that all collapsed during that period of time.

THE COURT: So one of the businesses was

Rosemont Seneca. Were there others that collapsed? The one reference here to Owasco.

THE DEFENDANT: Virtually everything collapsed. Owasco is the holding company for all of the other companies below there.

THE COURT: Okay. And who was your business partner?

THE DEFENDANT: A gentleman named Eric Schwerin.

THE COURT: All right. The fourth paragraph says during the calendar year 2017, you earned substantial income including just under a million dollars from a company you formed with a CEO of a Chinese business conglomerate. Is that the same or a different Chinese company from the one you referenced earlier?

THE DEFENDANT: I started a company called Hudson West, Your Honor, and my partner was associated with a Chinese energy company called CEFC.

THE COURT: Who was your partner?

THE DEFENDANT: I don't know how to spell his name, Yi Jianming is the chairman of that company.

THE COURT: Is that company still in existence?

THE DEFENDANT: No.

THE COURT: Okay. Then it says you made $666,666 from your domestic business interest. Is that the Rosemont Seneca one?

THE DEFENDANT: Yes, Your Honor, I believe that's what it refers to.

THE COURT: $664,000 from a Chinese infrastructure investment company. Is that one of the companies we've already talked about?

THE DEFENDANT: I believe so, yes, Your Honor.

THE COURT: Which one is that?

THE WITNESS: I believe CEFC.

THE COURT: Okay. $500,000 in director's fees from the Ukrainian energy company. That's the one that you already told me about?

THE DEFENDANT: Same, Burisma.

THE COURT: Burisma.

Okay. 48,000 from the law firm.

THE DEFENDANT: Yes.

THE COURT: That's the Boise Schiller?

THE DEFENDANT: Yes, it is.

THE COURT: All right. Okay. The bottom of that first page, the final paragraph says that the accountant sent copies of the tax documents, copies of the tax documents to your former business partner. Is that Mr. Schwerin?

THE DEFENDANT: I believe that's who it's referring to, yes, Your Honor.

THE COURT: All right. On the next page, at the end of the second paragraph, starting four lines from the bottom in the middle of the line, the paragraph talks about your tax liability. And it says the end of year liability should not have come as a surprise. Do you see that?

THE DEFENDANT: I'm sorry, I'm just trying --

THE COURT: That's okay. Take your time.

THE DEFENDANT: Yes, I see that here.

THE COURT: It says it should not have come as a surprise. It wasn't a surprise, is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you knew --

THE DEFENDANT: Well, I don't -- I didn't write this, Your Honor, so the characterization --

MR. CLARK: Can we elaborate the time there, Your Honor?

THE COURT: Yes.

MR. CLARK: So essentially there was a tax treatment that was undertaken in that year, and it changed the tax treatment at the very end of the year for a particular asset. And so I think the point is, and I didn't write this either, there was substantial influx of income during that year. There was an issue with this last minute tax treatment change, and so there were expressions at times of surprise at that. I think the government's point is you knew you made a lot of money, it shouldn't have come as a surprise.

THE COURT: My only concern is when I read this as a lawyer, it shouldn't have come as a surprise, that doesn't preclude Mr. Biden from saying yes, it did.

MR. CLARK: Your Honor's characterization is exactly right.

THE COURT: You're saying it actually was a surprise?

MR. CLARK: In that year.

THE COURT: You guys are okay with that?

MR. WISE: Yes, Your Honor.

THE COURT: All right. But you did know that you owed tax money, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And your business partner, Mr. Schwerin, told you that no withholdings had been made?

THE DEFENDANT: Yes, Your Honor, I believe that to be the case.

THE COURT: All right. In the third paragraph, which is actually the second full paragraph, it says on or about March 22nd, 2018, you received a million dollar payment into your Owasco bank account as payment for legal fees for Patrick Ho.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Who is that payment received from,

was that the law firm?

THE DEFENDANT: Received from Patrick Ho, Your Honor.

THE COURT: Mr. Ho himself?

THE DEFENDANT: Yes.

THE COURT: Were you doing legal work for him separate and apart from the law firm?

THE DEFENDANT: Yes, Your Honor. Well --

MR. CLARK: That wasn't through Boise Schiller, Your Honor, Mr. Biden was engaged as an attorney.

THE COURT: Right. So that's why I asked. You were doing work for him --

THE DEFENDANT: My own law firm, not as counsel.

THE COURT: So you had your own law firm as well?

THE DEFENDANT: I think Owasco PT acted as a -- acted as a law firm entity, yeah.

THE COURT: Okay.

THE DEFENDANT: I believe that's the case, but I don't know that for a fact.

THE COURT: Okay. The final paragraph on the second page of the exhibit says that you received a little bit more than $2.6 million in business and consulting fees from the company you formed with the CEO of the Chinese business conglomerate and the Ukrainian energy company, and

-- I guess originally I was asking if that was in addition to the money you had received from the -- if that was in addition to the money you had received from the law firm, but I think we clarified earlier that --

THE DEFENDANT: Yes, Your Honor.

THE COURT: So I guess what I'm confused about is -- so is that $2.6 million, that was in 2018?

MR. CLARK: That's our understanding, Your Honor.

THE COURT: But it says in the first paragraph of the exhibit for the work that you did for the Ukrainian company and the Chinese company and your domestic businesses, it was $2.1 million.

MR. CLARK: Your Honor, I think actually for this one, and again, we didn't write this, but we don't dispute its accuracy, I think this may summarize a chain of payments that was made over a couple of years.

MR. WISE: Your Honor, as I read that, the reference in the first paragraph is to -- is income and it's more than -- the language is more than 2.1 million in 2018, and by contrast the paragraph Your Honor just pointed out, it's talking about fees he generated at about 2.6 million, I think there were expenses that were business expenses that would be taken from those fees that would get you to a lower income number that's north of 2.1 million.

THE COURT: Okay. In the first full paragraph on the third one, it says after numerous programs and trips to rehab, you got sober in May of 2019. Do you see that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: When I asked you earlier when you last used or were under the influence of a controlled substance or a medication, you said June of 2019. What was it that you did in June of 2019?

THE DEFENDANT: I was married on May of -- May 17th of 2019, and that is my sobriety date.

THE COURT: When I asked you earlier --

THE DEFENDANT: I was being conservative, Your Honor. I think in between that date to be technically and completely honest from the day that I got married until June 1st, I did have a drink or two.

THE COURT: Okay.

THE DEFENDANT: So I count my sobriety date at least in the program that you attend as June 1st, so that's why I did that.

THE COURT: You said the program you attend. I thought you -- are you attending a --

THE DEFENDANT: No, a separate program that required anonymity, Your Honor.

THE COURT: Okay. But I am just trying to make sure that we don't --

THE DEFENDANT: No, no, I'm not saying that there are any programs that I'm involved in right now, I'm saying meetings that I go to, the sobriety date is often quoted.

MR. CLARK: He draws a distinction between treatment and a program.

THE COURT: Okay.

THE DEFENDANT: And it's not --

THE COURT: And I appreciate that, whether we call it a treatment or something, you are doing something to support your sobriety, is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. All right. Then that paragraph says that you did not make preparations to file or actually file your 2018 individual or corporate income tax when it was due in 2019. Is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And it was due according to this in October of 2019. Right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you were sober at that time?

THE DEFENDANT: I was, Your Honor.

THE COURT: But you didn't file your taxes.

THE DEFENDANT: Yes, Your Honor, in putting my life back together, it was a flood, an enormous amount of

problems and by the time I was able to find someone to be able to help me, I was already past the deadline in which I should not have gone past.

THE COURT: At the end of the next paragraph, it says that in 2020, during the process of putting together your 2017 and 2018 tax returns, you mischaracterized certain personal expenses as legitimate business expenses. What's that referencing?

MR. CLARK: Your Honor, it may be better if I explain it because Mr. Biden is actually not that close to the facts. In essence, in a very compressed time frame, Mr. Biden was asked to identify for all of these tax years that were being done from his credit cards and other bank accounts what's a business expense and what is a personal expense. And he was asked to go through charts and mark them. And there are situations in which he made an error with regard to marking business expenses or personal expenses. In several instances, most of them relate to one account, which was a business line of credit account, which he and his accountants treated as business expenses but that he never reviewed the actual records for because the accountants couldn't get the records. So we concede that he made mistakes, erroneous mistakes in categorizing some of these business and personal expenses. And that's what it refers to.

THE COURT: Do you know the approximate amount of money of these mistakes?

MR. CLARK: That's what the discussion of the dispute was. We see it in not minimizing, around $30,000 over the entirety of all the filings. I think the government thinks it's higher. But that's part of what we're going to shake out at sentencing. It is not massive amounts of money from the perspective of these tax returns. And as this points out I think in the next sentence, during the same year that these errors were made, Mr. Biden's accountants erroneously overreported his income by several hundred thousand dollars. And so there is -- there are errors going both ways in that year, some of them are these mistakes, and that mistake by his accountants.

THE COURT: And just so I understand, are these things that he made these mistakes and gave them to his accountant and then they were corrected or he made these mistakes, gave them to his accountant and then those mistakes ended up in the filing that were ultimately made to the Internal Revenue Service?

MR. CLARK: It was the latter, the accountants didn't catch the mistakes.

THE COURT: And again, sir, this was done after you were already sober?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. In the next paragraph, there are more references to self-assessed tax. Is that the same as we discussed previously, the amount of tax that he determined he owed?

MR. WISE: Yes, Your Honor.

THE COURT: And at the top of the last page, and also in I guess the last paragraph, or maybe even all those paragraphs, there is a reference to a third party who paid your tax liability. Is it the same person who paid all of the outstanding liability?

THE DEFENDANT: Yes, Your Honor. I took a loan from that individual.

THE COURT: You took a loan?

THE DEFENDANT: Yes.

THE COURT: Do you make payments on that loan?

THE DEFENDANT: Not currently, Your Honor, but it's a normal typical loan with terms and a time frame.

THE COURT: Okay. All right. Let's talk now about the paragraph 9, the appellant waiver provision. Mr. Biden, your agreement contains an appellant waiver provision in paragraph 9. This waiver limits your ability to appeal your sentence. Have you discussed this waiver with your attorney?

THE DEFENDANT: Yes. Yes, I have Your Honor.

THE COURT: Are you satisfied with the advice

and counsel you have received with respect to the waiver?

THE DEFENDANT: Yes, I am, Your Honor.

THE COURT: Now, I can read the waiver to you if you would like me to or you can tell me that you're confident that you understand it. Do you want me to review it with you?

THE DEFENDANT: I'm confident that I understand it, Your Honor.

THE COURT: Do you understand that it is a broad waiver provision and it leaves you with narrow appellant rights should you disagree with your conviction or your sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that it leaves you little ability to challenge your conviction or sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that it is unlikely that the conditions that would allow you to appeal will occur and you will likely have no relief should you receive a sentence that is different than the one that you anticipate?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I find the Defendant has knowingly and voluntarily waived his appellant rights.

Now, as Mr. Wise said earlier, I want to talk to you a little about the sentencing process in federal court. It's not required in a misdemeanor case, but I am going to ask the United States Probation Office to prepare a presentence investigation report to the Court before sentencing. You and the government will have a chance to review and challenge the facts in that report. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's been my responsibility under the statute, 18 United States Code Section 3553(a) to impose a sentence that is sufficient but not greater than necessary to provide punishment and afford deterrents. Under the current law I have to follow a three-step process. First, I have to consider the sentencing guidelines that's been calculated by the probation office and any objections to those guidelines. Then, I have to rule on any motions for a departure from those guidelines and explain how those motions if granted would impact the guidelines. And finally, I have to consider all of the factors in the statute including personal factors that would help me to determine what an appropriate sentence is. And that sentence may, again, vary either upwards or downwards from the guidelines.

The government has agreed not to oppose a

sentence of probation, but it's important that you understand that without reviewing the presentence report, I can't predict for you today whether I will agree that that's an appropriate sentence or not. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that parole has been abolished and that to the extent that you were given any period of imprisonment, you would not be released on parole from that imprisonment?

THE DEFENDANT: I understand that, Your Honor.

THE COURT: Do you understand that if you're sentenced to a term of incarceration followed by a period of supervised release or a period -- if you were given a period of probation, if you are found in violation of the conditions of your supervised release or your probation that that may be revoked and you would have to serve additional time in prison if you were imprisoned or if you were on probation that you might have to serve time in prison?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that your sentence may include payment of a fine or payment of restitution, and it will include a mandatory special assessment for each offense to which you plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you discussed with your counsel

what the sentencing guideline calculation might be for the offenses to which you are pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that if I impose a sentence that is harsher or longer or more severe than the one that you may anticipate, you will still be bound by your plea and will not have the right to withdraw it on that basis?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now I want to talk about some of the rights that you waive if you plead guilty. Do you understand that you have the right to plead not guilty to this offense, to persist in your plea of not guilty and to have a trial by jury on the offense during which you would also have the right to the assistance of counsel and the right to see and hear all of the witnesses and have them cross-examined on your behalf?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The standard of proving guilt is beyond a reasonable doubt and it is the highest standard of proof in our justice system. If the government failed to establish your guilt beyond a reasonable doubt, you would be acquited of the charges against you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that at trial you would have the right on your own part to decline to testify or to put on any evidence at all and that if you decided not to testify or to put on any evidence, that could not be used against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if the case were to go to trial, it would be the government's burden to prove to the jury, again, beyond a reasonable doubt, each of the essential elements of the offenses charge and the jury would have unanimously agree as to your guilt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you further understand that by entering a plea of guilty, there will be no trial and you will have waived and given up your right to trial by jury as well as the rights associated with that trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm going to ask the prosecutor to summarize for us what the government would be prepared to prove if the case were to go to trial.

MR. WISE: Your Honor, I have read in its entirety the factual statement that we would be prepared to prove.

THE COURT: All right. Do you want to tell me how that meets the essential elements?

81

MR. WISE: Yes, Your Honor.

THE COURT: I mean, I can figure it out, but I think it's probably worthwhile you telling me.

MR. WISE: The first element, the Defendant had a duty to pay a tax. The Defendant earned substantial income as the factual statement points out. And we can go with -- as Your Honor has pointed out, there are several places in the factual statement where it identified where he obviously earned, looking at the first paragraph, 2.3 million in 2017 and 2.1 million in 2018, he therefore had a duty to pay a tax on that income. That is the highest level of summary.

The tax was not paid at the time required by law. Again, even when he received an extension, the tax was due in April of 2018 for calendar year 2017 and in April of 2019 for calendar year 2018. And finally, the failure to pay was willful. And the Plea Agreement statement of facts describes that despite his addiction issues, he was able to generate significant amounts of income and made financial decisions about how to spend that money, and that those decisions did not include meeting his obligations to pay his taxes.

THE COURT: All right. Mr. Biden, is there anything you wish to challenge or amend in the government's recitation of proof?

82

THE DEFENDANT: No, Your Honor.

THE COURT: Do you disagree with any of the government's factual recitations?

THE DEFENDANT: No, Your Honor.

THE COURT: Mr. Clark, do you have any objections or concerns with the government's recitation of proof?

MR. CLARK: I do not, Your Honor.

THE COURT: All right. Now at this point I would normally ask Mr. Biden how he pleads, but as we've already discussed, the Diversion Agreement is out there in a felony case, it is cross-referenced in the Memorandum of Plea Agreement. The Plea Agreement is cross-referenced in the Diversion Agreement, so before I ask him how he pleads, I need to understand -- well, ask him how he pleads or decide if I can accept the Plea Agreement, I need to understand the Diversion Agreement.

So the felony gun charge here is a bit unusual, and we don't usually make diversion agreements public. I don't usually see a diversion agreement as the parties up here have hinted, but in fact you all did send it to me and it is referenced in the agreement that is before me in the tax case.

So it's a little bit unique in that I have a copy of the Diversion Agreement and that the Diversion

83

Agreement contains what I view to be some nonstandard terms like the broad immunity and a term that invokes the Court or involves the Court as part of that agreement.

So given all that, Mr. Wise, why don't you go ahead and summarize the terms of the Diversion Agreement given that the parties have agreed to make it public.

MR. WISE: Yes, Your Honor. The first under Roman numeral one, the parties to the Diversion Agreement are the United States of America by and through the United States Attorney's Office for the District of Delaware and Robert Hunter Biden.

Roman two describes the terms and conditions of the agreement. Paragraph 1 provides that it's for a two-year period, twenty-four months beginning on the date of approval of this agreement, and that would be when the chief probation officer, Ms. Brey signs it, unless there is a breach as set forth in paragraphs 13 and 14.

Paragraph 2 provides that this 24-month period will be known as the diversion period.

Paragraph 3 provides that Biden shall waive indictment in relation to the information filed in the gun case, which again is 23cr61 which charges him with one count of knowingly possessing a firearm while an unlawful user or person addicted to a controlled substance in violation of Title 18 United States Code Section 922(g)(3) and 924(a)(2).

84

And the relevant year for the conduct is 2018.

Paragraph 4 provides that if Biden complies with his obligations under the agreement, then the United States within thirty days after the expiration of the diversion period will file a motion with the Court seeking the dismissal of the information.

Paragraph 5, Biden agrees that the United States has probable cause to bring the charge in the Information and that the charge is not frivolous or made in bad faith. He also agrees at a future time the United States should move to dismiss the information pursuant to this agreement, he will not be a prevailing party with regard to the Information and he waives any possible claims to attorney fees or litigation expenses arising out of the investigation or prosecution of this case.

Paragraph 6 provides that in light of the fact that Biden has accepted responsibility for the actions referred to in the statement of facts as Attachment A to this agreement and taken into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety and in consideration for the other terms in the agreement, the United States shall divert this matter in the manner set forth in this agreement pursuant to the terms and conditions also set forth in the agreement.

Paragraph 7 provides that Biden agrees to waive

all defenses based on statute of limitations with respect to charges in the information and any other federal firearm charges that could be brought with respect to the conduct set forth in the statement of fact which again is Attachment A. And he agrees that the applicable statute of limitation period for any charges arising under the firearms purchase shall be tolled during the diversion period. He agrees not to assert any speedy trial rights under the Sixth Amendment or Federal Rule of Criminal Procedure 48(b) B or any local rule here in the District of Delaware.

Paragraph 8 provides that it is the intent of this agreement for Biden to agree to be subject to the jurisdiction of and venue in the United States District Court for the District of Delaware with respect to the charge set forth in the information and for any federal charges arising out of the firearms purchase set forth in the statement of facts.

Paragraph 9 and its subparagraph are the commitments and undertakings of Biden and that includes not purchasing, possessing, attempting to purchase firearms as that term is defined in the relevant statute during the diversion period, consent to a permanent entry in the National Instant Criminal Background Check System such that he will be denied via NICS if he attempts to legally purchase another firearm.

And then paragraph C, I'm not going to read the entire paragraph, but it's a provision that the gun in question is forfeited to the United States.

Starting at paragraph 10 --

THE COURT: Could I ask to you pause for one second. I forgot my glasses and I'm going to ask someone in the back to get my glasses, but I didn't want her to open the door and freak people out.

All right. Apologies, go ahead.

MR. WISE: Starting at paragraph 10, or in paragraph 10 and subparagraph are additional conditions applicable to the diversion period and these include that Biden is subject to supervision as directed by U.S. Probation and Pretrial Services; that he continue to actively seek employment; that he refrain from unlawfully possessing controlled substance; that he refrain from using alcohol; that he submit to substance abuse testing and participate in substance abuse treatment as directed by the U.S. Probation and Pretrial Services Office in this district; that he submits to fingerprinting by the FBI and it describes what will be done with that fingerprint and how it will be preserved for a time; that he communicate in writing all international travel plans and provide documentation, if requested, to U.S. Probation and Pretrial and that he not commit a violation of any federal, state or

local law.

Paragraph 11, in paragraph 11 Biden acknowledges and agrees to the statement of facts that are Attachment A to this agreement and he agrees that they're truthful and accurate.

Paragraph 12, Biden agrees that neither he nor anyone else at his direction will make any statement in litigation or otherwise repudiating or contradicting the statement of fact. If the United States believes such a contrary statement has been made, and such statement constitutes a knowing material breach, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14.

Starting in paragraph 13, it lays out the procedure if there is a breach. First, paragraph 13. Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

Paragraph 14 provides that if the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for supervision of this agreement. Upon notice to Biden the United States may seek a determination on a preponderance of the evidence presented to such

District Judge. Biden shall have the right to present evidence to rebut any such claim. If after that process the judge overseeing such process makes a final determination that Biden has committed a knowing material breach of this agreement, then the United States may elect from two remedies that are specified in the agreement depending on the nature and seriousness testify breach.

Remedy 1, which is a sub A of paragraph 14 is the United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2. Remedy 2 is the United States may prosecute Biden for any federal criminal violation in which the United States has knowledge including crimes relating to the conduct set forth in the statement of facts, which is Attachment A, and that includes obstruction of justice and any such prosecution is not time barred by any statute of limitation on the date of signing of this agreement, notwithstanding the statute of limitation between the signing and the commencement of such prosecution.

And finally, the United States does not require to offer Remedy 1 before proceeding to Remedy 2 if in its sole determination the nature and the serious of the breach warrants termination of the agreement.

Paragraph 15 is the agreement not to prosecute. The language, the United States agrees not to criminally prosecute Biden outside the terms of this agreement for any federal crimes encompassed by the attached statement of facts, Attachment A, and the statement of facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This Agreement does not provide any protection against prosecution for any further conduct by Biden or by any of his affiliated businesses. Obviously this paragraph has been orally modified by counsel for Mr. Biden and we would -- I'm not going to attempt to paraphrase it. I don't want to make the record muddy. The statement by counsel is obviously as Your Honor acknowledged a modification of this provision, and that we believe is binding.

Paragraph 16, starting paragraph 16, there are general terms and conditions, the parties consented to the public disclosure of this agreement, and shall be publicly filed. The parties stipulate and agree that the conduct set forth in the statement of facts does not constitute relevant conduct for the offenses, to the tax offenses, which Your Honor has identified as a similar provision in the Plea Agreement, that the firearms offense is not relevant conduct for the tax charge.

Paragraph 18 this agreement may be executed in counterparts, each of which constitutes an original and all

of which constitutes one and the same agreement.

And paragraph 19 is an incorporation agreement like in the Plea Agreement, this agreement sets forth all of the terms of the agreement between the United States and Biden. It constitutes a complete and final agreement between the United States and Biden in this matter. There are no other agreements written or otherwise modifying the terms, conditions or obligations of this agreement. No future modifications or additions of this agreement in whole or in part shall be valid unless they are set forth in writing or signed by the United States, and Biden and Biden's counsel.

THE COURT: All right. Thank you.

Mr. Clark, any corrections you want to make?

MR. CLARK: No, Your Honor.

THE COURT: The information charges Mr. Biden with violation of 18 United States Code 922(g)(3). Does anyone have any concerns about the constitutionality of that charge in light of the recent Third Circuit *Range* case?

MR. WISE: No, Your Honor.

MR. CLARK: Your Honor, I note our -- that's one of the reasons the parties I think are in the disposition we are in. We don't waive in a later prosecution any challenges on that.

THE COURT: I completely understand that. That

was kind of why I was asking the government the question.

So if 922(g)(3), which makes it unlawful for a drug user addict to possess a gun were found by some court to be unconstitutional, what happens to the Diversion Agreement?

MR. WISE: Your Honor, the Diversion Agreement is a contract between the parties so it's in effect until it's either breached or a determination, period.

MR. CLARK: I can tell you our intention would be to abide by the agreement and only raise such constitutional determining at such time that somebody tried to bring any charges on this, otherwise it's an agreement between the parties. We are going to honor the agreement.

THE COURT: I have had one or two cases involving a person struggling with addiction who bought a gun, we usually see a felony charge for false statement. The Defendant has admitted that his statement was false, but he wasn't charged. Again, I'm not trying to get into the purview of the prosecutor, and I understand the separation of powers, it's in your discretion, but I just want to ask, does the government have any concern about not bringing the false statement charge in light of our discussion of 922(g)(3) and the constitutionality of that charge.

MR. WISE: No, Your Honor.

THE COURT: Paragraph 7 says that the statute of

limitations is waived. Can you just tell me when would the statute of limitation be waived on a charge for false statement if the Diversion Agreement were not in place?

MR. CLARK: When would it run, Your Honor?

THE COURT: I understand it's tolled by the agreement. I have concerns about the agreement, that's why I'm asking these questions, so if the agreement weren't there.

MR. CLARK: It would be October 2023.

MR. WISE: October 12th, 2023.

THE COURT: All right. Thank you.

All right. Now I have reviewed the case law and I have reviewed the statute and I had understood that the decision to offer the defendant, any defendant a pretrial diversion rest squarely with the prosecutor and consistent with that, you all have told me repeatedly that's a separate agreement, there is no place for me to sign off on it, and as I think I mentioned earlier, usually I don't see those agreements. But you all did send it to me and as we've discussed, some of it seems like it could be relevant to the plea.

One provision in particular stands out to me, and that is paragraph 14. That paragraph says if the United States believes that a knowing material breach of this agreement has occurred, it may seek a determination by the

United States District Judge for the District of Delaware with responsibility for the supervision of this agreement. It then goes on to say that if I do find a breach, then the government can either give the Defendant time to remedy the breach or prosecute him for the crime that is the subject of the information or any other that falls within the language of the agreement. Do I have that understanding correct?

MR. CLARK: That's my understanding of the provision, Your Honor.

THE COURT: So can you tell me what's contemplated by that, how it would work?

MR. WISE: So, Your Honor, obviously the Diversion Agreement covers offenses related to firearms, so if there was a breach, then he could be charged with -- the offenses related to that firearm as well as perjury, obstruction of justice, and any prosecution not barred by the statute of limitations related to that.

MR. CLARK: I think Your Honor may be asking the functionality of your involvement. And the concept was along the lines of a VOSR where a situation is brought to the Court and the Court would make a factual determination in the first instance that there was a violation of supervised -- I mean, diversion is not supervised release, but in some senses it can be, and so the idea was that the Court would determine whether or not there was a violation

and then the government would move on to a remedy.

THE COURT: First it got my attention because you keep telling me that I have no role, I shouldn't be reading this thing, I shouldn't be concerned about what's in these provisions, but you have agreed that I will do that, but you didn't ask me for sign off, so do you have any precedent for that?

MR. WISE: Your Honor, no. No, I don't have precedent.

THE COURT: As I read it, tell me if I'm reading this correctly, that under the agreement as you all have drafted it the only way that charges could ever be brought is if I have the hearing that you all agreed that I have to have, right?

MR. WISE: Yes.

THE COURT: So if I don't have a hearing or make a finding, no criminal charges can be pursued for the gun charge or any other federal charge within the scope of the agreement not to be prosecuted, right?

MR. WISE: I believe that's right, Your Honor.

THE COURT: So is there some requirement that you have that I have to make that finding that you all agreed that I would without asking?

MR. WISE: Is there some --

THE COURT: Requirement that says I have to make

that finding?

MR. WISE: No.

THE COURT: And you don't have any precedent for that, right?

MR. WISE: No, Your Honor.

THE COURT: Do you have any authority that any Court has ever accepted that or said that they would do that?

MR. WISE: No, Your Honor, this was crafted to suit the facts and circumstances.

THE COURT: I'm concerned that that provision makes me a gatekeeper to criminal charges and puts me in the middle of a decision as to whether to bring a charge. And we already talked about separation of powers and that choice as to whether to bring charges is not -- that's the executive branch, not the judicial branch, so is this even constitutional?

MR. CLARK: I believe it is, Your Honor, because what the structure makes clear is that Your Honor is just finding facts.

THE COURT: But no charges -- usually in these agreements, right, Mr. Clark, the prosecutor says we think he breached, and I don't mean to point it out, I'm not saying you're going to breach.

MR. CLARK: I understand.

THE COURT: We're doing a hypothetical.

MR. CLARK: I understand the question.

THE COURT: The prosecutor says there is a breach, Judge, we got to move forward on the information. You then come forward and you're like, Judge, he didn't breach, review this, okay, so that's the standard. The government has -- the executive branch has already made a determination we are going to proceed with the charges. Now, the government cannot make the decision to proceed with charges absent involving the Court.

MR. CLARK: Respectfully, Your Honor, I don't think that's the way it's structured and I do think the way it's structured may get some way past your concern. What it is is that it's not that the government has decided to bring charges, it's that the government believes there is a breach. In paragraph 14, the government brings the breach to Your Honor and says we need a determination of whether there is a breach. So it's not a question that we've decided what to opt into, we've decided what to do, we want your -- it's Your Honor, we believe there is a factual dispute between the parties, not a breach, we would like you to make a factual determination.

THE COURT: Why can't you do that in the normal way? As I read this, the government has no discretion to bring charges if it believes that a breach has occurred

unless I opine.

MR. CLARK: Can we approach and discuss one issue with Your Honor?

THE COURT: You mean because it's confidential?

MR. CLARK: Yeah.

THE COURT: Okay. You're going to have to make -- you're going to have to make a showing as to why. As I understand, once we're in court in the Third Circuit, it's essentially strict scrutiny, so can you explain to me why this is something that cannot go on the record?

MR. CLARK: It relates to the plea discussions between the parties generally which aren't discussed publicly.

THE COURT: I will allow you to have -- we will have a discussion on the sealed portion, but you're going to have to convince me that it needs to be maintained as sealed. All right? Because I can't -- it's hard for me to say that in the abstract if you're saying that's a plea discussion.

MR. CLARK: Your Honor, let me try to handle it separately. There was a desire because of there being as Your Honor has seen a tremendous amount of political drag with this Defendant that the normal mechanism that might take place would have the protection of the Court not in the discretion to bring a charge, but in finding a breach, and

so that that wouldn't be something that would become more politicized, but rather would be something that the parties could rely on, someone we consider a neutral arbiter to determine the breach, not the charge.

THE COURT: I understand. Look, I knew why you brought it, okay, I could see why you would want that provision in here, but I don't -- you are putting me -- the government, the executive branch has the discretion to bring charges. Here, the government does not have discretion to continue to pursue this charge or any other charge unless you include the Court. And that seems like it's getting outside of my lane in terms of what I am allowed to do. And thus, I have concerns about the constitutionality of this provision. That gives me concerns about the constitutionality of this agreement because there doesn't seem to be a separate severability, and that gives me concerns about whether the Defendant has the protection from prosecution that he thinks he's getting if this agreement turns out to be not worth the paper it's written on.

MR. CLARK: Your Honor, all --

THE COURT: My concern is, and part of what I have to do is knowing and voluntary, and I can't let him -- I'm not convinced this is a plea under subsection B, but even if it is, and all I have to say is, is it knowing and voluntary. I can't let him plead to something if he thinks

he has protection and he doesn't.

MR. CLARK: Absolutely, Your Honor. I think the analogy to a VOSR is not a bad analogy. The government comes to the Court and it says Your Honor, we believe there has been a violation of supervised release. Unless you, Judge, make a factual finding that that's happened, we can't do what we would normally do with regards to this Defendant. Right? And again, it's the fact and then the discretion. Right? And so here it's very analogous to that process which is not a violation of separation of powers. I understand what your Your Honor is saying.

THE COURT: I think I might need a little bit more on this because it is confusing to me. But let me -- or concerning I should say more than confusing.

Let me ask you this, if that provision violates the constitution, what happens to the Diversion Agreement?

MR. CLARK: If that provision violates the constitution, the diversion -- first of all, I'm not aware of a manner in which we can challenge the Diversion Agreement, but if it did, I think we would say that, if it's unconstitutional, right --

THE COURT: The way I'm seeing it is the government decides -- not to be politicized, the government decides we're going to bring a charge and you say no, that's prohibited by the Diversion Agreement, and the government

says that Diversion Agreement is unconstitutional. You don't have the protection of it. So I'm not going to not voice my concerns when I think that there are -- you know, you telling me we're not going to challenge it, that really doesn't --

MR. CLARK: No, I'm not saying that, Your Honor. Under those circumstances we would have a contractual dispute about this contract between the government and us and that would get litigated like any other contractual dispute would get litigated. That's what this is.

THE COURT: But what if it is unconstitutional, what happens to the Diversion Agreement?

MR. CLARK: I think it's valid but for this provision.

THE COURT: Is there a severability provision?

MR. CLARK: There isn't, but there is nothing that says it is a unitary contract either, it's kind of half and half. There is no merger clause or severability clause, so in my -- it's a toss up on that, right, Your Honor.

THE COURT: So if I say that I am not going to do what is requested, what you all have agreed that I am going to do, what happens to the Diversion Agreement?

MR. CLARK: If you're saying it right now in a binding manner --

THE COURT: I'm just asking you, I'm not making

a finding, I'm asking you because I'm trying to exercise due deliberation and consideration and make sure that we don't make a misstep.

So Mr. Wise, if I say I'm not doing it, your contract has an impossibility in there because nothing can happen, I understand Mr. Clark might say that's fine, Your Honor, but the government, what happens if I say I'm not going to do that, you can agree I'm going to do it, but I'm not?

MR. WISE: So in negotiating these terms we obviously agreed to -- as Your Honor has pointed out, the executive branch has the authority to bring charges, we have agreed to a limitation, if you will, that is predicated on the Court taking certain action. If the Court declines to take the action contemplated by the agreement, we would have to examine whether there were other ways to seek the enforcement of the agreement.

MR. CLARK: And there is a way to modify the agreement obviously between the parties, Your Honor, so by written modification we could modify that provision if Your Honor said I won't participate.

THE COURT: All right. So what are you talking about?

MR. CLARK: I'm saying that if Your Honor said I've determined that this isn't proper, I'm not going to

participate, we would work on provision, paragraph 19 which says that, you know, we can modify or add to the agreement with the written consent of the parties and we would come up with an alternative dispute resolution system.

I personally, Your Honor, I mean, again, I don't mean to hang everything on a VOSR analogy, I have done many of them in my life, I don't think it is unconstitutional, I think it's very fair question from the Court, I don't think it is, but I think if the Court were to determine it was not appropriate, we would modify the contract and you would determine on another dispute resolution.

MR. WISE: The analogy that I would offer, Your Honor, VOSR's statutory framework is many U.S. Attorney's offices' practice around the country have proffer agreements or Queen for a day agreements where a defendant -- a defendant, a witness, a target will sit down, make certain statements pursuant to an agreement and some of those agreements have provisions that in the event that the government believes there is a breach that they lied, they will go to a judicial officer for a determination and if that is the case and the agreement is deemed void, then charges, for instance, 1001 charges making a false statement to a law enforcement officer could be brought. So I think that's a similar -- and those agreements unlike VOSR are not governed by an elaborate statutory scheme, they're contracts

between United States and individuals, but it contemplates a role for a judicial officer that then affects the ability of the government to bring charges.

THE COURT: I take your points on the analogy to the VOSR, but I know, I asked if there is any precedent for this, I was told no. I was asked if there is any authority for this, I was told no. And I get the analogy, but I don't think that I can on the fly make the analogy that you're asking me to make or even, you know, you're telling me that this is -- so that this is appropriate. So I am not sure -- I'm not sure what to do with that. It may be that you're correct, that that's an appropriate analogy, but it may be that you are not.

MR. CLARK: May I propose something, Your Honor? You don't have to -- there is no action again, not to -- I know you don't necessarily want to hear that all the time, that you have to take with a regular Diversion Agreement. Can I propose that Your Honor can take time with regard to this provision, inform the parties, and if you find that the provision is improper, and we can even brief it to you, I'll commit with the government that we'll work under paragraph 19 to implement another procedure. But again, I don't think that needs to hold up today's disposition.

THE COURT: The problem that I have, I'm not sure that it doesn't. Again, you all are telling me just

rubber stamp the agreement, Your Honor, because all we're doing is recommending a plea. But it seems like the argument you're making is form over substance. What's funny to me is you put me right smack in the middle of the Diversion Agreement that I should have no role in, you plop meet right in there and then on the thing that I would normally have the ability to sign off on or look at in the context of a Plea Agreement, you just take it out and you say Your Honor, don't pay any attention to that provision not to prosecute because we put it in an agreement that's beyond your ability.

So this is what I am going to do. These agreements are not straightforward and they contain some atypical provisions. I am not criticizing you for coming up with those, I think that you have worked hard to come up with creative ways to deal with this. But I am not in a position where I can decide to accept or reject the Plea Agreement, so I need to defer it.

First, I don't know which rule this falls under. I am not convinced that it is actually a plea under subsection B, which you all suggest is me rubber stamping the plea if it's a knowing plea. But even if it were, I have testimony under oath both that the Defendant is concerned about ensuring that he has immunity from additional charges, and also that well, he doesn't need that

in terms of the Plea Agreement. So I need to think about that.

Additionally, I need some understanding as to why this is a plea under B and that my concern about the form over substance of the agreement not to prosecute is not valid, or why I should do this. So I would like some briefing, additional briefing on why subsection B is the appropriate section, and if I were to determine that this actually is a plea under subsection A, it would be helpful to me to have your views on what it is that makes this plea acceptable, because I'm not saying that it is not, but nobody seems to really have given me that what I would need if I were to determine that as I read this as a whole, I think that that really is what is in front of me. So I need that.

And then I would like as you offered, Mr. Clark, you guys can go back and work on whether or not you can take out that provision and come up with something else that's acceptable, and while you do that, you might, though I'm not trying to tell you how to negotiate the Diversion Agreement, you might fix that one paragraph that you have orally modified today.

I would like to understand why that provision, if you want it to go forward is appropriate, and why I am not doing something that gets me outside of my lane in terms

of my branch of government if I were to do what is being requested.

Does that make sense?

MR. CLARK: That makes sense, Your Honor. I think that the parties have been very eager to resolve this matter, and it has been pending for an extended period of time.

THE COURT: It hasn't been pending for that long a period of time, I know that when you guys first called, you said you would send me the agreements on a Tuesday or a Thursday and you wanted to have the hearing within a few days. I couldn't accommodate that schedule, but the fact is, this is a -- this is our normal course of timing of things and so I understand, and I certainly understand why you want to get this resolved, but I am not in a position where I can do that now. So if you guys want to tell me when you're thinking you can get me the papers that I'm asking for.

MR. WISE: Your Honor, we would -- what I would anticipate is we'll need to order the transcript from today's proceeding to address some of the issues you have raised to make sure we're precisely addressing what you're asking us to, so I think building in a little bit of time to get the transcript and then a reasonable amount of time after that to submit, I would say at least fourteen days.

MR. CLARK: Fine with us, Your Honor.

MR. WISE: I would also say, Your Honor, we're not asking the Court to rubber stamp anything.

THE COURT: It certainly sounds like it. Tell me again what you think my role is for a plea under 11(b)(1)(B).

MR. WISE: It's not what I think the Court's role --

THE COURT: I agree, I read the rule, the rule says I couldn't accept or reject, you're saying it's not a rubber stamp, so what is it I do?

MR. WISE: You don't take action on the Plea Agreement. What Rule 11(c) says is for Rule (c)(1)(B) the Court must advised the Defendant that the Defendant has no right to withdraw the plea if the Court does not follow the recommendation or request. So the rule does not contemplate the Court taking any position on the agreement if it's a (c)(1)(B), rather the rule requires the Court to give that advisement, and that is the extent of the Court's role. And this has been briefed not in this circuit, but in other circuits and we can certainly include that, that's not my view --

THE COURT: I certainly understand what -- if it's a plea under subsection (c)(1)(B), I am not going to just agree with you as to the limits of my role. My problem

is I am not -- I am not sure, and I need to understand the propriety, it may very well be that it is appropriate, but as I said, it did catch my attention, you throw me in there, Judge, you're the gatekeeper and then you take me out of the other aspects of the -- you throw me into the Diversion Agreement and then you take me out of the Memorandum of Plea Agreement.

So I cannot accept the Plea Agreement today. I mean, based on what you just said, Mr. Wise, Mr. Clark, if you want, I can accept a guilty plea while I defer my decision on the Plea Agreement, which the Supreme Court said is appropriate in the *Hyde* case, 520 U.S. 670 (1997), if your client wants to plead guilty pending my determination on the Plea Agreement.

MR. CLARK: We're pleading guilty pursuant to the Plea Agreement, Your Honor, so that would not be something that we would do.

THE COURT: Does that mean that I need to take a plea of not guilty?

MR. CLARK: I believe you do, Your Honor.

THE COURT: All right. So Mr. Biden, I know you want to get this over with, and I'm sorry, but I do want to make sure that I am careful in my view of this. So I do need some more information. And part of that is making sure that your plea gets you what you think it gets and part of

it is making sure that I do justice as I'm required to do in this court. So I need some additional information. I'm not saying I'm not going to reject the plea, I'm not saying I'm going to accept the Plea Agreement. I need more information.

So at this point I'm just going to ask you, without the Plea Agreement, without me saying that I would agree to the Plea Agreement, how do you plead to the charges that we have been discussing?

THE DEFENDANT: Not guilty, Your Honor.

THE COURT: Thank you.

So I will look forward to the parties' submissions. And after we have a chance to review those, we will either issue an order as to what we're planning to do with the plea or we'll have a status conference or we'll get back here.

Do we need to do anything else? I know that we talked about we were on the clock now. Can we exclude the time, that gives me some time to look at these for thirty days or not?

MR. CLARK: I would imagine the Court can exclude the time for briefing, yeah.

MR. WISE: We agree, Your Honor.

THE COURT: So we will do that. And after we see it, we will take a look and get back to you.

Mr. Biden, I need you to just stick around for a minute after we adjourn. I need you -- my deputy is going to ask you to sign the release order that we talked about, and then I need you to go downstairs to the marshals for processing and to catch up with probation.

All right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Anything else that we need to talk about while we are here today?

MR. WISE: Not on behalf of the United States.

MR. CLARK: No, Your Honor.

THE COURT: Thank you.

(Court adjourned at 1:14 p.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court

## $

**$1,045,850** [1] - 34:22
**$1,199,524** [2] - 24:4, 35:5
**$1,580,283** [1] - 34:11
**$1,593,329** [2] - 24:4, 35:6
**$100** [1] - 4:24
**$100,000** [2] - 5:3, 23:9
**$125,909** [1] - 33:11
**$13,630** [1] - 33:14
**$15,520** [1] - 34:6
**$197,000** [1] - 35:12
**$197,372** [1] - 34:23
**$2,187,286** [1] - 33:15
**$2,376,436** [1] - 33:9
**$2,659,014** [1] - 33:19
**$2,698,041** [1] - 33:13
**$204,000** [1] - 29:25
**$25** [2] - 5:6, 23:11
**$25,000** [1] - 30:2
**$250,000** [1] - 4:23
**$30,000** [1] - 74:4
**$38,465** [2] - 31:8, 33:16
**$4,247** [1] - 33:20
**$447,234** [1] - 34:13
**$45,661** [1] - 34:14
**$48,000** [1] - 29:2
**$492,000** [1] - 35:11
**$492,895** [1] - 34:12
**$50** [1] - 25:16
**$500,000** [2] - 28:25, 66:9
**$581,713** [1] - 33:12
**$600,000** [1] - 29:25
**$620,901** [1] - 33:17
**$659,366** [1] - 33:16
**$664,000** [2] - 28:24, 66:3
**$666,666** [2] - 28:23, 65:24
**$70,000** [1] - 29:1
**$710,598** [1] - 33:10
**$758,000** [1] - 31:19
**$939,000** [1] - 30:21
**$955,800** [2] - 33:23, 35:11
**$956,632** [2] - 33:25, 35:11

## '

**'14** [1] - 58:14
**'19** [1] - 58:14

## /

**/s** [1] - 110:17

## 1

**1** [16] - 21:18, 22:25, 23:22, 27:5, 27:6, 28:21, 30:19, 35:9, 40:12, 60:10, 61:22, 62:9, 83:13, 88:8, 88:23, 89:6
**1(b)(1.3)** [1] - 24:9
**1,100** [1] - 27:3
**1.9** [1] - 35:14
**10** [4] - 25:15, 86:4, 86:10, 86:11
**1001** [1] - 102:22
**1040** [6] - 33:9, 33:14, 34:5, 34:9, 34:10, 34:19
**10:00** [1] - 1:9
**11** [3] - 25:17, 87:2
**11(B** [2] - 18:1, 18:18
**11(b)(1)(B)** [1] - 107:6
**11(c** [1] - 107:13
**11(c)(1)(A** [6] - 18:11, 18:14, 18:24, 19:6, 19:18, 47:4
**11(c)(1)(B** [4] - 17:11, 17:23, 41:8, 41:17
**11(c)(1)(C** [2] - 17:17, 18:15
**11(c)(3)(B)** [1] - 18:3
**1120** [2] - 33:12, 33:18
**12** [4] - 25:24, 34:11, 36:18, 87:6
**12th** [1] - 92:10
**13** [4] - 26:15, 83:17, 87:14, 87:15
**14** [6] - 83:17, 87:13, 87:19, 88:8, 92:23, 96:16
**15** [8] - 31:15, 32:9, 40:3, 40:7, 53:11, 57:18, 57:21, 89:1
**15th** [4] - 28:13, 28:16, 31:10, 34:19
**16** [3] - 24:15, 89:15
**17** [1] - 30:15
**17th** [1] - 71:10
**18** [7] - 4:12, 34:15, 34:23, 77:11, 83:25, 89:24, 90:17
**18th** [2] - 33:6, 33:22
**19** [3] - 90:2, 102:1, 103:22
**1996** [1] - 12:13
**1997** [1] - 108:12
**1:14** [1] - 110:13
**1st** [3] - 56:22, 71:15, 71:18

## 2

**2** [6] - 23:6, 60:25, 83:18, 88:13, 88:23
**2.1** [7] - 27:20, 63:10, 63:14, 70:13, 70:20, 70:25, 81:10
**2.3** [3] - 27:20, 63:9, 81:10
**2.6** [4] - 31:2, 69:23, 70:7, 70:22
**2003** [1] - 13:11
**2010** [1] - 63:3
**2014** [2] - 26:11, 58:20
**2015** [1] - 27:23
**2016** [5] - 27:25, 34:4, 34:10, 34:11, 35:12
**2017** [32] - 27:11, 27:17, 27:20, 28:1, 28:3, 28:20, 29:3, 29:6, 29:22, 30:5, 30:16, 30:17, 31:16, 32:12, 32:14, 33:8, 33:9, 33:12, 33:25, 34:6, 35:12, 62:10, 62:11, 62:22, 62:24, 63:9, 63:11, 65:10, 73:6, 81:10, 81:15
**2018** [34] - 14:17, 14:21, 15:10, 27:20, 28:7, 29:5, 29:23, 30:2, 30:15, 30:19, 31:2, 31:9, 31:17, 32:7, 32:12, 32:14, 33:8, 33:14, 33:18, 34:2, 35:12, 37:19, 63:10, 63:14, 68:21, 70:7, 70:20, 72:15, 73:6, 81:10, 81:15, 81:16, 84:1
**2019** [24] - 15:17, 26:12, 27:12, 29:6, 31:10, 31:15, 31:20, 31:25, 32:2, 32:4, 32:9, 32:10, 34:19, 34:22, 35:12, 58:20, 62:12, 71:3, 71:7, 71:8, 71:10, 72:16, 72:19, 81:16
**2020** [8] - 32:14, 32:18, 33:6, 34:3, 34:9, 34:11, 34:20, 73:5
**2021** [4] - 28:6, 33:22, 34:15, 34:24
**2023** [3] - 1:8, 92:9, 92:10
**21** [1] - 9:6
**22** [1] - 30:19
**22nd** [1] - 68:21
**23-274** [3] - 3:25, 4:14, 11:4
**23-61** [2] - 4:8, 36:15
**23-61(MN** [1] - 1:6
**23-cr-61-MN** [1] - 2:25
**23-mj-274(MN** [1] - 1:5
**23-mj-274-MN** [1] - 3:4
**23cr61** [1] - 83:22
**24-month** [1] - 83:18
**26** [3] - 1:8, 4:17, 23:5
**27** [1] - 32:18

## 3

**3** [5] - 23:14, 61:10, 61:20, 83:20
**3(e)(1.1)(a** [1] - 24:13
**3(e)(1.1)(b** [1] - 24:19
**34** [1] - 8:10
**3553(a** [1] - 77:11

## 4

**4** [2] - 23:23, 84:2
**40702** [1] - 8:11
**48(b** [1] - 85:9
**48,000** [1] - 66:14

## 5

**5** [2] - 24:1, 84:7
**5(b** [1] - 53:10
**520** [1] - 108:12
**5A** [5] - 24:2, 27:2, 35:3, 35:19
**5b** [1] - 36:13
**5B** [1] - 52:7

## 6

**6** [2] - 25:3, 84:16
**670** [1] - 108:12

## 7

**7** [3] - 25:6, 84:25, 91:25
**7203** [2] - 4:18, 23:5

## 8

**8** [2] - 25:9, 85:11
**802** [1] - 9:6
**844** [1] - 1:11

## 9

**9** [4] - 25:12, 75:19, 75:21, 85:18
**900** [1] - 19:24
**922(g)(3** [4] - 4:13, 83:25, 91:2, 91:23
**922(g)(3)** [1] - 90:17
**924(a)(2)** [2] - 4:13, 83:25

## A

**a.m** [1] - 1:9
**abide** [2] - 87:16, 91:10
**ability** [7] - 19:8, 31:18, 75:21, 76:15, 103:2, 104:7, 104:11
**able** [5] - 20:5, 59:18, 73:1, 73:2, 81:18
**abolished** [1] - 78:7
**absent** [2] - 60:12, 96:10
**absolutely** [1] - 99:2
**abstract** [1] - 97:18
**abuse** [6] - 9:22, 27:22, 28:7, 64:3, 86:17, 86:18
**abusing** [1] - 27:24
**accept** [18] - 17:19, 18:7, 18:15, 18:19, 40:18, 40:22, 45:10, 47:8, 47:11, 47:14, 51:14, 61:17, 82:16, 104:17, 107:10, 108:8, 108:10, 109:4
**acceptable** [2] - 105:11, 105:19
**acceptance** [3] - 24:11, 24:14, 24:16
**accepted** [2] - 84:17, 95:7
**accepting** [1] - 19:3
**access** [1] - 45:24
**accommodate** [1] - 106:12
**accordance** [1] - 7:23
**according** [1] - 72:18
**account** [5] - 30:20, 30:24, 68:22, 73:19
**accountant** [13] - 29:4, 29:5, 29:19, 29:20, 29:23, 30:1, 31:11, 31:12, 32:11, 32:13, 66:20, 74:17, 74:18
**accountants** [10] - 32:20, 32:24, 33:4, 34:4, 73:20, 73:22,

74:11, 74:14, 74:21
**accounts** [1] - 73:14
**accrued** [2] - 34:16, 34:24
**accuracy** [3] - 9:19, 32:22, 70:16
**accurate** [4] - 32:21, 37:12, 87:5, 110:15
**accurately** [1] - 39:3
**acknowledge** [1] - 25:22
**acknowledged** [1] - 89:13
**acknowledges** [1] - 87:2
**acknowledging** [1] - 32:21
**acknowledgment** [1] - 84:20
**acquited** [1] - 79:23
**Act** [3] - 7:2, 25:25, 55:8
**acted** [2] - 69:16, 69:17
**action** [5] - 3:23, 101:14, 101:15, 103:15, 107:12
**ACTION** [2] - 1:4, 1:6
**Action** [5] - 3:25, 4:8, 4:14, 11:4, 36:15
**actions** [2] - 29:16, 84:17
**actively** [2] - 8:24, 86:15
**activities** [1] - 26:2
**actual** [1] - 73:21
**add** [2] - 35:13, 102:2
**addict** [1] - 91:3
**addicted** [2] - 4:12, 83:24
**addiction** [10] - 13:1, 13:4, 13:6, 13:24, 28:4, 31:6, 64:10, 64:15, 81:18, 91:15
**addition** [3] - 34:3, 70:1, 70:3
**additional** [17] - 8:19, 24:18, 25:21, 26:11, 29:25, 33:17, 38:4, 38:17, 42:22, 49:2, 49:9, 50:4, 78:16, 86:11, 104:25, 105:7, 109:2
**additionally** [1] - 105:3
**additions** [1] - 90:9
**address** [4] - 10:15, 35:22, 38:7, 106:21
**addressed** [3] - 21:4, 37:19, 47:23
**addresses** [2] - 25:24, 37:17
**addressing** [1] - 106:22
**adequately** [1] - 19:7
**adjourn** [1] - 110:2
**adjourned** [1] - 110:13
**administrative** [1] - 29:10
**admission** [1] - 58:15
**admits** [2] - 23:20, 23:21
**admitted** [1] - 91:17
**adverse** [2] - 5:25, 7:8
**advice** [4] - 16:23, 22:7, 60:23, 75:25
**advise** [1] - 8:12
**advised** [4] - 29:24, 30:11, 31:12, 107:14
**advisement** [1] - 107:19
**advisors** [1] - 64:21
**affect** [2] - 19:8, 26:22
**affects** [1] - 103:2
**affiliated** [2] - 40:15, 89:9
**afford** [3] - 5:10, 5:11, 77:13
**Agents** [1] - 55:7
**ago** [1] - 43:13
**agree** [24] - 7:21, 8:4, 17:14, 17:21, 20:19, 25:22, 42:1, 42:2, 46:7, 46:8, 49:5, 55:18, 56:14, 57:20, 58:2, 78:3, 80:11, 85:12, 89:18, 101:8, 107:9, 107:25, 109:8, 109:23
**agreed** [12] - 24:21, 26:16, 41:25, 53:23, 77:25, 83:6, 94:5, 94:13, 94:23, 100:21, 101:11, 101:13
**agreeing** [2] - 42:20, 46:2
**agreement** [124] - 3:7, 6:16, 17:8, 18:16, 18:19, 20:7, 22:8, 22:18, 22:20, 26:13, 38:16, 39:2, 39:3, 39:7, 39:10, 39:20, 40:2, 40:4, 40:5, 40:9, 40:13, 40:18, 41:4, 41:9, 41:19, 41:23, 41:24, 42:2, 42:13, 42:14, 42:20, 42:21, 42:23, 43:16, 43:18, 43:19, 43:25, 44:8, 44:15, 45:2, 45:10, 45:17, 45:20, 45:21, 46:10, 46:17, 46:23, 46:24, 47:4, 48:3, 50:19, 50:20, 50:21, 50:23, 51:1, 51:12, 51:20, 51:21, 54:5, 54:11, 54:13, 54:15, 54:25, 56:2, 57:15, 58:19, 60:7, 60:8, 62:3, 75:20, 82:20, 82:22, 83:3, 83:13, 83:15, 84:3, 84:11, 84:19, 84:22, 84:23, 84:24, 85:12, 87:4, 87:23, 88:5, 88:6, 88:19, 88:25, 89:1, 89:3, 89:17, 89:24, 90:1, 90:2, 90:3, 90:4, 90:5, 90:8, 90:9, 91:10, 91:12, 91:13, 92:6, 92:7, 92:17, 92:25, 93:2, 93:7, 94:11, 94:19, 98:15, 98:18, 101:15, 101:17, 101:19, 102:2, 102:17, 102:21, 104:1, 104:10, 105:5, 107:17
**Agreement** [123] - 6:12, 6:14, 10:20, 17:7, 21:15, 21:23, 24:7, 36:14, 39:12, 39:15, 39:17, 39:19, 39:22, 39:24, 40:7, 40:11, 40:13, 40:19, 40:23, 41:25, 42:16, 43:20, 43:22, 44:1, 44:4, 44:8, 44:23, 44:25, 45:4, 45:6, 45:9, 45:11, 45:14, 46:8, 46:17, 46:25, 47:3, 51:4, 51:9, 51:10, 51:17, 51:24, 52:2, 52:4, 52:5, 52:6, 52:8, 52:12, 52:14, 52:15, 52:18, 52:20, 53:2, 53:4, 53:12, 53:13, 53:17, 53:20, 53:21, 53:24, 54:7, 54:8, 55:2, 55:4, 55:12, 55:14, 56:4, 57:15, 57:16, 57:18, 59:6, 59:13, 59:22, 61:21, 62:1, 81:17, 82:11, 82:13, 82:14, 82:16, 82:17, 82:25, 83:1, 83:5, 83:8, 87:18, 87:20, 89:6, 89:7, 89:22, 90:3, 91:5, 91:6, 92:3, 93:13, 99:16, 99:20, 99:25, 100:1, 100:12, 100:22, 103:17, 104:5, 104:8, 104:18, 105:1, 105:20, 107:13, 108:6, 108:7, 108:8, 108:11, 108:14, 108:16, 109:4, 109:7, 109:8
**agreements** [20] - 10:20, 10:23, 20:13, 41:10, 41:13, 41:14, 43:15, 45:23, 51:11, 82:19, 87:17, 90:7, 92:19, 95:22, 102:14, 102:15, 102:18, 102:24, 104:13, 106:10
**agrees** [16] - 19:14, 23:1, 25:15, 25:25, 40:8, 58:18, 84:7, 84:10, 84:25, 85:5, 85:7, 87:3, 87:4, 87:6, 87:16, 89:2
**ahead** [2] - 83:5, 86:9
**alcohol** [6] - 9:4, 9:16, 13:24, 14:13, 27:24, 86:17
**alcoholic** [2] - 15:15, 15:20
**alcoholism** [1] - 14:3
**alleged** [1] - 87:12
**allow** [2] - 76:18, 97:14
**allowed** [1] - 98:12
**almost** [3] - 19:24, 30:22, 31:21
**alone** [2] - 41:13, 41:23
**alternative** [1] - 102:4
**amend** [1] - 81:24
**Amendment** [1] - 85:8
**AMERICA** [1] - 1:3
**America** [1] - 83:9
**amount** [14] - 24:3, 26:1, 26:8, 27:2, 35:3, 35:16, 36:23, 37:15, 38:12, 72:25, 74:1, 75:3, 97:22, 106:24
**amounts** [2] - 74:8, 81:19
**analogous** [1] - 99:9
**analogy** [8] - 99:3, 102:6, 102:12, 103:4, 103:7, 103:8, 103:12
**analysis** [1] - 47:7
**Angeles** [1] - 28:8
**anonymity** [1] - 71:23
**answer** [4] - 11:12, 11:13, 55:15, 58:8
**answered** [1] - 40:17
**answering** [1] - 44:12
**answers** [2] - 11:14, 38:2
**anticipate** [4] - 60:1, 76:21, 79:6, 106:20
**anyplace** [1] - 51:17
**apart** [1] - 69:7
**apologies** [1] - 86:9
**apologize** [1] - 43:11
**appeal** [2] - 75:22, 76:18
**appear** [1] - 8:16
**appearance** [4] - 2:24, 3:11, 4:1, 4:2
**Appearance** [1] - 1:9
**appearances** [1] - 10:15
**APPEARANCES** [2] - 1:16, 2:1
**appellant** [5] - 25:12, 75:19, 75:20, 76:10, 76:24
**applicable** [2] - 85:5, 86:12
**application** [1] - 24:16
**applies** [1] - 48:16
**appointment** [1] - 5:12
**appreciate** [2] - 43:6, 72:9
**apprise** [1] - 18:1
**approach** [1] - 97:2
**appropriate** [14] - 7:5, 8:5, 46:6, 48:16, 60:13, 77:22, 78:4, 102:10, 103:10, 103:12, 105:8, 105:24, 108:2, 108:12
**approval** [1] - 83:15
**approved** [1] - 51:5
**approximate** [1] - 74:1
**April** [9] - 28:13, 28:19, 29:23, 30:2, 30:15, 31:10, 31:20, 81:15
**arbiter** [1] - 98:3
**areas** [1] - 57:21
**argument** [1] - 104:3
**arguments** [1] - 49:21
**arising** [3] - 84:14, 85:6, 85:16
**arraigned** [1] - 51:6
**arrest** [1] - 10:9

**arriving** [1] - 38:7
**articulated** [1] - 25:4
**aside** [1] - 38:6
**aspects** [1] - 108:5
**assert** [1] - 85:8
**assessed** [16] - 26:4, 33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:12, 37:14, 37:18, 75:2
**assessment** [6] - 4:24, 5:6, 23:11, 25:16, 37:4, 78:22
**asset** [1] - 67:20
**assistance** [1] - 79:15
**assistant** [1] - 29:10
**associated** [5] - 26:4, 29:22, 36:20, 65:16, 80:16
**attached** [10] - 20:12, 21:18, 23:22, 25:18, 40:10, 40:12, 52:22, 61:21, 89:4, 89:5
**attachment** [4] - 21:19, 25:20, 26:17
**Attachment** [11] - 21:19, 22:12, 22:14, 24:6, 25:18, 40:11, 84:18, 85:4, 87:3, 88:17, 89:5
**attachments** [1] - 19:24
**attempt** [3] - 2:17, 9:18, 89:11
**attempted** [1] - 29:8
**attempting** [1] - 85:20
**attempts** [1] - 85:24
**attend** [2] - 71:18, 71:20
**attended** [1] - 13:3
**attending** [1] - 71:21
**attention** [3] - 94:2, 104:9, 108:3
**attorney** [9] - 5:9, 5:10, 5:12, 22:5, 27:10, 31:11, 69:10, 75:23, 84:13
**Attorney** [4] - 4:9, 4:15, 20:15, 20:16
**Attorney's** [3] - 49:13, 83:10, 102:13
**ATTORNEY'S** [1] - 1:18
**attributable** [1] - 26:2
**atypical** [1] - 104:14
**authorities** [2] - 6:19, 6:20
**authority** [5] - 41:18, 46:5, 95:6, 101:12, 103:6
**authorized** [1] - 8:10
**automatic** [1] - 28:15
**available** [2] - 30:17, 30:21
**averring** [1] - 32:20
**aware** [3] - 46:4, 49:9, 99:18

## B

**B-I-D-E-N** [1] - 11:24
**Background** [1] - 85:23
**bad** [2] - 84:9, 99:3
**balance** [4] - 30:23, 33:11, 33:17, 34:13
**balances** [1] - 31:23
**ball** [1] - 56:15
**bank** [3] - 30:20, 68:22, 73:13
**bar** [3] - 12:14, 22:10, 22:12
**bargain** [7] - 19:5, 19:6, 19:10, 19:12, 19:13, 46:13, 51:23
**bargaining** [2] - 41:24, 47:20
**barred** [2] - 88:18, 93:16
**based** [20] - 3:23, 3:25, 16:11, 20:7, 23:1, 29:4, 35:20, 36:25, 37:2, 37:3, 38:1, 44:7, 54:20, 54:24, 55:3, 59:18, 60:11, 64:7, 85:1, 108:9
**basis** [2] - 49:16, 79:8
**become** [1] - 98:1
**BEFORE** [1] - 1:13
**began** [3] - 30:5, 32:3, 32:13
**beginning** [3] - 13:11, 29:22, 83:14
**begun** [1] - 17:25
**behalf** [7] - 2:22, 26:6, 31:22, 35:11, 36:22, 79:17, 110:10
**believes** [6] - 87:9, 87:20, 92:24, 96:15, 96:25, 102:19
**below** [1] - 65:5
**benefit** [1] - 46:12
**Benjamin** [1] - 2:22
**BENJAMIN** [1] - 1:19
**BERGER** [1] - 2:5
**best** [2] - 13:9, 46:11
**better** [1] - 73:9
**between** [19] - 37:7, 44:8, 44:25, 46:10, 57:11, 57:16, 57:19, 71:13, 72:5, 88:20, 90:4, 90:6, 91:7, 91:13, 96:21, 97:12, 100:8, 101:19, 103:1
**beverage** [2] - 15:15, 15:20
**beyond** [5] - 61:13, 79:20, 79:22, 80:9, 104:11
**Biden** [100] - 2:25, 3:3, 3:15, 4:8, 5:8, 5:19, 6:18, 10:7, 11:5, 11:23, 16:12, 27:9, 27:10, 27:21, 27:23, 28:4, 28:10, 28:14, 28:20, 29:3, 29:8, 29:9, 29:12, 29:13, 29:15, 29:16, 29:21, 29:24, 29:25, 30:1, 30:5, 30:7, 30:16, 30:19, 30:22, 31:1, 31:6, 31:10, 31:12, 31:15, 31:17, 31:20, 31:25, 32:1, 32:10, 32:16, 32:18, 32:23, 33:1, 33:6, 33:9, 33:12, 33:14, 33:19, 34:7, 34:10, 34:11, 34:14, 34:18, 34:22, 37:25, 39:2, 40:8, 40:15, 45:4, 63:18, 68:4, 69:10, 73:10, 73:12, 75:20, 81:23, 82:10, 83:11, 83:20, 84:2, 84:7, 84:17, 84:25, 85:12, 85:19, 86:13, 87:2, 87:6, 87:15, 87:24, 88:1, 88:4, 88:9, 88:11, 88:13, 89:3, 89:8, 89:10, 90:5, 90:6, 90:11, 90:16, 108:21, 110:1
**BIDEN** [2] - 1:6, 11:25
**Biden's** [17] - 28:7, 29:6, 29:15, 29:20, 30:10, 32:14, 33:4, 33:23, 33:25, 34:4, 34:8, 35:10, 37:23, 74:10, 84:19, 90:12
**big** [1] - 41:16
**bilateral** [3] - 44:8, 46:10, 57:16
**bind** [1] - 38:16
**binding** [4] - 24:22, 44:25, 89:14, 100:24
**binds** [1] - 17:18
**bit** [13] - 10:23, 18:21, 40:2, 45:20, 54:11, 56:10, 56:15, 59:7, 69:23, 82:18, 82:24, 99:12, 106:23
**board** [2] - 27:12, 62:12
**Bohai** [1] - 62:16
**Boise** [6] - 63:3, 63:10, 63:17, 63:22, 66:16, 69:9
**bond** [1] - 10:10
**book** [1] - 64:9
**bottom** [2] - 66:18, 67:2
**bought** [1] - 91:15
**bound** [3] - 18:2, 25:22, 79:7
**Brady** [3] - 7:3, 7:6, 7:12
**branch** [6] - 95:16, 96:7, 98:8, 101:12, 106:1
**Branch** [4] - 20:24, 21:9, 21:12, 48:11
**breach** [26] - 83:17, 87:11, 87:13, 87:15, 87:18, 87:20, 88:4, 88:7, 88:10, 88:11, 88:24, 92:24, 93:3, 93:5, 93:14, 95:24, 96:4, 96:6, 96:16, 96:18, 96:21, 96:25, 97:25, 98:4, 102:19
**breached** [2] - 91:8, 95:23
**Brey** [1] - 83:16
**brief** [3] - 43:8, 57:7, 103:20
**briefed** [1] - 107:20
**briefing** [3] - 105:7, 109:22
**bring** [22] - 19:14, 20:17, 20:23, 41:2, 45:15, 46:23, 53:18, 53:23, 54:25, 55:2, 55:7, 84:8, 91:12, 95:13, 95:15, 96:14, 96:25, 97:25, 98:8, 99:24, 101:12, 103:3
**bringing** [1] - 91:21
**brings** [1] - 96:16
**broad** [5] - 25:12, 46:17, 46:20, 76:9, 83:2
**broader** [1] - 58:5
**broadly** [1] - 57:23
**brother** [1] - 27:23
**brought** [14] - 19:15, 20:9, 20:14, 21:3, 48:8, 49:2, 49:10, 49:19, 54:20, 85:3, 93:20, 94:12, 98:6, 102:23
**Buckson** [1] - 11:18
**building** [1] - 106:23
**bunch** [1] - 45:23
**burden** [1] - 80:8
**Burisma** [3] - 62:16, 66:12, 66:13
**business** [35] - 27:11, 27:14, 28:4, 28:22, 28:23, 29:2, 29:11, 29:14, 30:11, 31:3, 31:4, 31:6, 32:25, 33:2, 35:20, 64:18, 64:19, 64:20, 64:22, 65:6, 65:12, 65:24, 66:21, 68:15, 69:23, 69:25, 70:23, 73:7, 73:14, 73:17, 73:19, 73:20, 73:24
**businesses** [4] - 40:15, 64:25, 70:13, 89:9
**businessman** [1] - 27:10
**BY** [4] - 1:19, 1:20, 2:3, 2:6

## C

**c)(1)(A** [6] - 19:11, 41:8, 41:18, 47:25, 48:3, 51:16
**c)(1)(B** [4] - 51:25, 107:13, 107:18, 107:24
**c)(1)(B)** [1] - 51:15
**calculated** [1] - 77:16
**calculating** [2] - 53:9, 53:14
**calculation** [3] - 36:4, 38:2, 79:1
**calendar** [5] - 28:13, 28:20, 65:10, 81:15, 81:16
**California** [7] - 32:2, 32:11, 32:13, 32:19, 32:24, 33:4, 34:4
**candid** [1] - 84:19
**cannot** [5] - 54:25, 55:2, 96:9, 97:10, 108:8
**capable** [1] - 16:13
**capacity** [2] - 27:18, 63:22
**car** [1] - 31:23
**card** [1] - 31:23
**cards** [1] - 73:13
**care** [1] - 12:23

**careful** [1] - 108:23
**carefully** [1] - 22:19
**case** [34] - 3:7, 5:3, 16:20, 16:24, 18:3, 19:2, 19:9, 19:24, 20:12, 21:22, 23:15, 35:13, 36:3, 43:15, 44:22, 45:21, 45:22, 46:3, 46:18, 54:5, 54:6, 68:18, 69:19, 77:3, 80:7, 80:20, 82:12, 82:23, 83:22, 84:15, 90:19, 92:12, 102:21, 108:12
**cases** [7] - 3:23, 4:3, 5:20, 10:19, 11:6, 21:21, 91:14
**cash** [2] - 30:24, 31:22
**cast** [1] - 20:8
**catch** [3] - 74:22, 108:3, 110:5
**categorizing** [1] - 73:23
**caveat** [2] - 41:15, 41:16
**CEFC** [2] - 65:17, 66:8
**CEO** [4] - 28:22, 31:4, 65:12, 69:24
**certain** [5] - 24:1, 33:1, 73:6, 101:14, 102:16
**certainly** [5] - 2:16, 106:14, 107:4, 107:21, 107:23
**certify** [1] - 110:15
**chain** [1] - 70:16
**chairman** [1] - 65:20
**challenge** [9] - 23:1, 60:11, 60:13, 60:17, 76:15, 77:7, 81:24, 99:19, 100:4
**challenges** [1] - 90:24
**chance** [2] - 77:6, 109:13
**change** [4] - 6:22, 8:14, 47:6, 67:23
**changed** [1] - 67:18
**characterization** [2] - 67:13, 68:5
**charge** [37] - 3:11, 3:12, 3:24, 4:22, 6:12, 19:5, 19:6, 19:10, 19:12, 23:4, 36:16, 41:2, 41:23, 43:4, 47:20, 52:20, 54:23, 55:7, 80:10, 82:18, 84:8, 84:9, 85:15, 89:23, 90:19, 91:16, 91:22, 91:23, 92:2, 94:18, 95:13, 97:25, 98:4, 98:10, 99:24
**charged** [4] - 5:23, 21:9, 91:18, 93:14
**charges** [73] - 4:1, 4:10, 4:16, 4:19, 6:4, 6:8, 7:9, 11:4, 16:15, 16:20, 19:14, 19:15, 20:9, 20:14, 20:17, 20:23, 21:3, 41:3, 41:4, 42:3, 42:17, 45:15, 45:16, 45:17, 46:3, 46:24, 48:1, 48:8, 48:23, 49:1, 49:2, 49:10, 49:11, 49:19, 49:22, 50:4, 53:19, 53:22, 53:23, 53:25, 54:5, 54:20, 54:25, 55:3, 58:20, 58:21, 58:22, 60:14, 79:23, 83:22, 85:2, 85:3, 85:6, 85:16, 90:16, 91:12, 94:12, 94:17, 95:12, 95:15, 95:21, 96:8, 96:10, 96:15, 96:25, 98:9, 101:12, 102:22, 103:3, 104:25, 109:8
**charging** [2] - 2:25, 3:4
**charts** [1] - 73:15
**Check** [1] - 85:23
**chief** [2] - 46:7, 83:15
**children** [1] - 31:22
**Chinese** [13] - 27:13, 28:22, 28:24, 31:4, 62:13, 62:16, 62:20, 65:12, 65:13, 65:17, 66:3, 69:24, 70:12
**choice** [2] - 5:11, 95:14
**choose** [1] - 20:4
**CHRISTOPHER** [1] - 2:3
**Circuit** [2] - 90:19, 97:8
**circuit** [2] - 47:24, 107:20
**circuits** [1] - 107:21
**circumstances** [3] - 19:9, 95:10, 100:7
**claim** [1] - 88:2
**claims** [1] - 84:13
**clarified** [1] - 70:4
**clarify** [3] - 9:8, 43:14, 57:11
**Clark** [13] - 3:15, 5:16, 7:15, 7:22, 16:20, 17:14, 49:5, 82:5, 90:14, 95:22, 101:6, 105:16, 108:9
**CLARK** [91] - 2:3, 2:3, 3:16, 3:21, 4:5, 6:16, 7:16, 7:23, 8:1, 10:4, 10:18, 13:17, 14:18, 16:8, 17:15, 17:21, 20:19, 21:1, 21:8, 36:2, 36:10, 37:2, 37:21, 39:11, 39:16, 42:5, 43:1, 43:6, 43:11, 43:24, 44:7, 44:18, 44:21, 49:8, 50:24, 54:1, 55:14, 55:17, 56:3, 56:12, 56:20, 57:1, 57:5, 57:10, 58:1, 58:6, 58:24, 63:15, 67:14, 67:17, 68:5, 68:9, 69:9, 70:8, 70:14, 72:5, 73:9, 74:3, 74:21, 82:8, 90:15, 90:21, 91:9, 92:4, 92:9, 93:8, 93:18, 95:18, 95:25, 96:2, 96:11, 97:2, 97:5, 97:11, 97:20, 98:20, 99:2, 99:17, 100:6, 100:13, 100:16, 100:23, 101:18, 101:24, 103:14, 106:4, 107:1, 108:15, 108:20, 109:21, 110:11
**clause** [2] - 100:18
**clear** [10] - 13:17, 15:18, 15:23, 17:14, 17:16, 37:21, 40:16, 44:23, 48:9, 95:19
**CLERK** [3] - 11:20, 43:7, 57:6
**client** [6] - 42:5, 43:17, 44:21, 45:1, 49:22, 108:13
**client's** [2] - 16:7, 49:15
**clients** [1] - 28:5
**clock** [3] - 56:8, 56:13, 109:18
**close** [2] - 13:12, 73:10
**cocaine** [1] - 27:25
**Code** [8] - 4:13, 4:18, 8:10, 9:6, 23:5, 77:11, 83:25, 90:17
**collapse** [3] - 27:25, 28:2, 64:15
**collapsed** [3] - 64:23, 65:1, 65:3
**collection** [1] - 8:9
**Columbia** [1] - 12:17
**combined** [3] - 24:3, 35:6, 35:8
**comfortable** [2] - 58:4, 58:9
**coming** [1] - 104:14
**commencement** [1] - 88:21
**commented** [1] - 29:13
**comments** [1] - 10:3
**commit** [2] - 86:25, 103:21
**commitments** [1] - 85:19
**committed** [2] - 5:23, 88:4
**common** [1] - 61:23
**communicate** [2] - 8:24, 86:22
**companies** [6] - 55:6, 62:14, 62:20, 65:4, 66:5
**company** [23] - 27:12, 28:22, 28:25, 29:1, 31:3, 31:5, 62:12, 62:15, 62:21, 64:22, 65:4, 65:11, 65:13, 65:15, 65:17, 65:20, 65:21, 66:4, 66:10, 69:24, 69:25, 70:12
**compensation** [1] - 27:15
**competence** [1] - 16:7
**competent** [1] - 16:12
**complete** [2] - 15:1, 90:5
**completed** [2] - 15:3, 15:5
**completely** [3] - 42:15, 71:14, 90:25
**completion** [1] - 15:2
**complies** [1] - 84:2
**comport** [1] - 26:23
**compressed** [1] - 73:11
**compromise** [1] - 49:20
**concede** [1] - 73:22
**concept** [1] - 93:19
**conception** [1] - 50:25
**concern** [5] - 68:2, 91:21, 96:13, 98:21, 105:4
**concerned** [6] - 50:17, 51:19, 56:4, 94:4, 95:11, 104:24
**concerning** [1] - 99:14
**concerns** [11] - 7:15, 7:22, 16:9, 44:3, 82:6, 90:18, 92:6, 98:13, 98:14, 98:17, 100:3
**concur** [1] - 21:1
**conditions** [13] - 7:20, 8:6, 8:20, 9:25, 10:3, 10:8, 76:18, 78:15, 83:12, 84:24, 86:11, 89:16, 90:8
**conduct** [18] - 3:10, 4:2, 24:5, 24:8, 24:11, 35:4, 35:15, 40:15, 52:10, 53:9, 53:14, 84:1, 85:3, 88:16, 89:8, 89:18, 89:20, 89:22
**confer** [1] - 12:2
**conference** [1] - 109:15
**confident** [2] - 76:5, 76:7
**confidential** [1] - 97:4
**confirm** [1] - 7:2
**confused** [2] - 59:8, 70:6
**confusing** [2] - 99:13, 99:14
**conglomerate** [4] - 28:23, 31:4, 65:12, 69:25
**Connecticut** [1] - 12:18
**connection** [6] - 21:22, 32:25, 39:19, 40:18, 43:19, 45:10
**consent** [2] - 85:22, 102:3
**consented** [1] - 89:16
**consequences** [1] - 7:5
**conservative** [1] - 71:12
**consider** [4] - 19:18, 77:15, 77:20, 98:3
**consideration** [4] - 11:2, 84:19, 84:21, 101:2
**considered** [2] - 53:8, 53:13
**consistent** [1] - 92:15
**constitute** [3] - 24:8, 87:18, 89:19
**constitutes** [4] - 87:11, 89:25, 90:1, 90:5
**constitution** [2] - 99:16, 99:18
**constitutional** [2] - 91:11, 95:17
**constitutionality** [4] - 90:18, 91:23, 98:13,

98:15
**consulting** [2] - 31:3, 69:23
**contacting** [1] - 29:9
**contain** [1] - 104:13
**contained** [4] - 19:10, 23:21, 39:10, 39:15
**contains** [5] - 16:15, 24:1, 25:12, 75:20, 83:1
**contemplate** [1] - 107:16
**contemplated** [3] - 36:15, 93:11, 101:15
**contemplates** [1] - 103:1
**contempt** [2] - 7:7, 10:11
**context** [2] - 49:12, 104:8
**contingency** [1] - 43:18
**continue** [6] - 5:16, 8:23, 15:6, 25:21, 86:14, 98:10
**CONTINUED** [1] - 2:1
**continued** [3] - 28:10, 31:1, 31:17
**continuing** [2] - 7:2, 29:23
**contract** [7] - 54:2, 57:16, 91:7, 100:8, 100:17, 101:5, 102:10
**contracts** [3] - 27:14, 55:19, 102:25
**contractual** [2] - 100:7, 100:9
**contractually** [1] - 53:22
**contradicting** [1] - 87:8
**contrary** [1] - 87:10
**contrast** [1] - 70:21
**contributed** [1] - 27:25
**control** [1] - 28:11
**controlled** [5] - 4:12, 9:5, 71:6, 83:24, 86:16
**convicted** [1] - 8:17
**conviction** [2] - 76:11, 76:15
**convince** [1] - 97:16
**convinced** [2] - 98:23, 104:20
**cooperate** [1] - 8:9
**copies** [3] - 29:10, 66:20
**copy** [4] - 16:16, 40:3, 40:4, 82:25
**corners** [1] - 42:22
**corporate** [10] - 28:11, 29:5, 29:6, 29:17, 29:20, 30:18, 32:8, 32:12, 33:7, 72:15
**corporations** [1] - 27:16
**correct** [9] - 11:6, 15:21, 15:25, 17:19, 42:6, 57:13, 72:11, 93:7, 103:12
**corrected** [1] - 74:17
**corrections** [1] - 90:14
**correctly** [1] - 94:11
**cost** [1] - 23:12
**costs** [1] - 5:6
**Counsel** [2] - 1:21, 2:7
**counsel** [19] - 6:12, 7:8, 12:3, 16:6, 16:23, 17:8, 22:8, 27:18, 57:13, 60:20, 62:24, 63:5, 69:13, 76:1, 78:25, 79:15, 89:10, 89:12, 90:12
**counseling** [1] - 9:23
**count** [5] - 23:12, 35:7, 61:12, 71:17, 83:22
**counterparts** [1] - 89:25
**country** [1] - 102:14
**Counts** [9] - 5:2, 23:3, 23:7, 23:24, 24:3, 26:14, 35:4, 61:1, 61:11
**counts** [3] - 3:4, 4:16, 61:5
**couple** [3] - 26:25, 63:16, 70:17
**course** [3] - 13:13, 30:4, 106:13
**COURT** [311] - 1:1, 2:12, 3:8, 3:13, 3:17, 3:22, 4:6, 4:8, 4:21, 5:1, 5:8, 5:15, 5:19, 6:3, 6:7, 6:11, 6:18, 7:1, 7:12, 7:15, 7:17, 7:22, 7:24, 8:2, 10:2, 10:7, 10:14, 10:19, 11:8, 11:18, 11:20, 12:1, 12:6, 12:9, 12:11, 12:14, 12:16, 12:19, 12:22, 12:25, 13:5, 13:8, 13:14, 13:19, 14:1, 14:5, 14:9, 14:11, 14:15, 14:19, 14:21, 14:25, 15:5, 15:9, 15:13, 15:18, 15:23, 16:3, 16:6, 16:9, 16:11, 16:19, 16:22, 17:1, 17:6, 17:13, 17:16, 17:22, 18:4, 18:6, 18:9, 18:13, 18:20, 19:12, 19:17, 19:22, 20:22, 21:2, 21:13, 21:17, 22:1, 22:3, 22:7, 22:10, 22:15, 26:25, 35:1, 35:9, 35:24, 36:1, 36:8, 36:13, 36:18, 37:10, 38:9, 38:19, 38:24, 39:6, 39:9, 39:13, 39:18, 39:22, 40:1, 40:21, 40:25, 41:6, 41:16, 42:1, 42:7, 42:14, 42:24, 43:2, 43:7, 43:9, 43:21, 44:1, 44:12, 44:20, 45:3, 45:8, 45:13, 45:19, 46:5, 46:15, 46:21, 47:2, 47:6, 47:10, 47:14, 47:17, 47:21, 48:2, 48:7, 48:13, 48:18, 49:3, 49:5, 50:3, 50:9, 50:12, 50:16, 51:8, 52:3, 52:7, 52:11, 52:14, 52:17, 52:25, 54:4, 54:10, 54:17, 55:5, 55:10, 55:15, 55:19, 55:23, 56:7, 56:14, 56:21, 57:4, 57:6, 57:8, 57:25, 58:3, 58:8, 58:13, 58:18, 58:25, 59:15, 59:21, 60:3, 60:6, 60:10, 60:16, 60:19, 60:22, 60:25, 61:7, 61:10, 61:20, 62:8, 62:18, 63:5, 63:8, 63:13, 63:18, 63:23, 64:1, 64:13, 64:25, 65:6, 65:9, 65:18, 65:21, 65:23, 66:3, 66:7, 66:9, 66:13, 66:16, 66:18, 66:25, 67:6, 67:8, 67:11, 67:16, 68:2, 68:7, 68:10, 68:12, 68:15, 68:19, 68:25, 69:4, 69:6, 69:11, 69:14, 69:18, 69:21, 70:6, 70:10, 71:1, 71:5, 71:11, 71:16, 71:20, 71:24, 72:7, 72:9, 72:13, 72:18, 72:21, 72:23, 73:4, 74:1, 74:15, 74:23, 75:1, 75:6, 75:13, 75:15, 75:18, 75:25, 76:3, 76:9, 76:14, 76:17, 76:23, 77:10, 78:6, 78:11, 78:20, 78:25, 79:4, 79:10, 79:19, 80:1, 80:7, 80:13, 80:18, 80:24, 81:2, 81:23, 82:2, 82:5, 82:9, 86:5, 90:13, 90:16, 90:25, 91:14, 91:25, 92:5, 92:11, 93:10, 94:2, 94:10, 94:16, 94:21, 94:25, 95:3, 95:6, 95:11, 95:21, 96:1, 96:3, 96:23, 97:4, 97:6, 97:14, 98:5, 98:21, 99:12, 99:22, 100:11, 100:15, 100:20, 100:25, 101:22, 103:4, 103:24, 106:8, 107:4, 107:9, 107:23, 108:18, 108:21, 109:11, 109:24, 110:8, 110:12
**court** [9] - 5:12, 8:12, 8:16, 10:11, 32:16, 77:2, 91:3, 97:8, 109:2
**Court** [50] - 1:14, 2:23, 8:18, 10:21, 18:15, 19:5, 19:6, 19:10, 23:2, 24:23, 24:24, 25:8, 25:10, 25:13, 26:3, 43:16, 47:25, 49:25, 50:18, 51:2, 51:3, 60:13, 77:5, 83:2, 83:3, 84:5, 85:14, 93:21, 93:25, 95:7, 96:10, 97:24, 98:11, 99:4, 101:14, 102:8, 102:9, 107:3, 107:14, 107:15, 107:17, 107:18, 108:11, 109:21, 110:13, 110:17, 110:18
**Court's** [6] - 2:18, 18:18, 19:4, 19:8, 107:7, 107:19
**courts** [1] - 47:23
**cover** [3] - 22:13, 33:23, 33:25
**covers** [1] - 93:13
**crack** [1] - 27:25
**crafted** [1] - 95:9
**created** [1] - 30:7
**creative** [1] - 104:16
**credit** [4] - 31:23, 37:1, 73:13, 73:19
**crime** [1] - 93:5
**crimes** [8] - 5:23, 40:10, 45:22, 46:2, 46:18, 57:22, 88:15, 89:4
**Criminal** [8] - 3:25, 4:8, 4:14, 11:3, 17:11, 36:15, 85:9, 85:23
**CRIMINAL** [2] - 1:4, 1:6
**criminal** [7] - 2:24, 3:2, 3:23, 38:15, 88:14, 94:17, 95:12
**criminally** [2] - 40:8, 89:2
**criticizing** [1] - 104:14
**cross** [4] - 5:25, 79:17, 82:12, 82:13
**cross-examine** [1] - 5:25
**cross-examined** [1] - 79:17
**cross-referenced** [2] - 82:12, 82:13
**current** [3] - 32:1, 77:14, 84:21
**curve** [1] - 56:15

## D

**Dale** [1] - 110:17
**date** [14] - 28:16, 28:19, 30:16, 31:10, 31:13, 32:9, 56:1, 56:9, 71:10, 71:13, 71:17, 72:3, 83:14, 88:19
**days** [7] - 32:23, 56:12, 56:17, 84:4, 106:12, 106:25, 109:20
**DC** [2] - 29:3, 31:11
**deadline** [2] - 28:18, 73:2
**deal** [4] - 22:21, 41:11, 55:22, 104:16
**death** [1] - 27:23
**debauchery** [1] - 28:9
**decide** [2] - 82:16, 104:17
**decided** [4] - 80:3, 96:14, 96:19
**decides** [2] - 99:23, 99:24
**decision** [7] - 20:22, 38:17, 49:7, 92:14, 95:13, 96:9, 108:11

**decisions** [3] - 21:10, 81:20, 81:21
**decline** [1] - 80:2
**declines** [1] - 101:14
**decrease** [2] - 24:13, 25:1
**deductions** [3] - 35:21, 36:25, 38:4
**deemed** [1] - 102:21
**defend** [1] - 25:7
**DEFENDANT** [144] - 4:20, 4:25, 5:7, 5:14, 5:18, 6:2, 6:6, 6:10, 6:25, 10:1, 10:13, 11:7, 11:17, 11:23, 12:5, 12:7, 12:10, 12:13, 12:15, 12:17, 12:21, 12:24, 13:3, 13:7, 13:11, 13:15, 13:24, 14:4, 14:8, 14:10, 14:14, 14:17, 14:20, 14:23, 15:3, 15:8, 15:12, 15:17, 15:22, 16:1, 16:5, 16:18, 16:21, 16:25, 17:5, 21:16, 21:25, 22:2, 22:6, 22:9, 39:5, 39:8, 39:21, 39:25, 40:20, 40:24, 41:5, 45:7, 45:12, 45:18, 59:14, 59:20, 60:2, 60:5, 60:9, 60:15, 60:18, 60:21, 60:24, 61:6, 61:9, 61:19, 62:7, 62:15, 63:2, 63:7, 63:12, 63:19, 63:24, 64:8, 64:18, 65:3, 65:8, 65:15, 65:19, 65:22, 66:1, 66:6, 66:12, 66:15, 66:17, 66:23, 67:5, 67:7, 67:10, 67:12, 68:14, 68:17, 68:24, 69:2, 69:5, 69:8, 69:13, 69:16, 69:19, 70:5, 71:4, 71:9, 71:12, 71:17, 71:22, 72:1, 72:8, 72:12, 72:17, 72:20, 72:22, 72:24, 74:25, 75:11, 75:14, 75:16, 75:24, 76:2, 76:7, 76:13, 76:16, 76:22, 77:9, 78:5, 78:10, 78:19, 78:24, 79:3, 79:9, 79:18, 79:25, 80:6, 80:12, 80:17, 82:1, 82:4, 109:10, 110:7
**Defendant** [47] - 1:7, 2:7, 3:1, 3:4, 8:7, 8:9, 8:12, 8:16, 11:19, 18:2, 19:13, 20:3, 22:25, 23:6, 23:16, 23:19, 23:23, 24:11, 25:11, 25:14, 25:15, 25:25, 26:6, 26:7, 27:9, 36:22, 38:13, 43:5, 43:16, 44:9, 46:14, 48:24, 51:6, 53:19, 59:5, 61:14, 76:24, 81:4, 81:5, 91:17, 93:4, 97:23, 98:17, 99:7, 104:23, 107:14
**defendant** [4] - 92:14, 102:15, 102:16
**Defendant's** [3] - 4:1, 24:15, 43:13
**defense** [2] - 10:4, 58:18
**defenses** [1] - 85:1
**defer** [4] - 18:16, 18:19, 104:18, 108:10
**deferred** [1] - 50:25
**defined** [3] - 9:6, 35:4, 85:21
**DELAWARE** [2] - 1:2, 1:18
**Delaware** [10] - 1:12, 4:9, 4:15, 9:1, 23:3, 83:10, 85:10, 85:14, 87:22, 93:1
**deliberation** [1] - 101:2
**delivered** [1] - 34:7
**denied** [1] - 85:24
**Department** [1] - 54:2
**departure** [1] - 77:18
**deputy** [1] - 110:2
**Derek** [1] - 2:22
**DEREK** [1] - 1:19
**derived** [1] - 37:16
**described** [3] - 28:8, 55:1, 63:16
**describes** [5] - 23:6, 23:14, 81:18, 83:12, 86:21
**desire** [1] - 97:21
**despite** [4] - 28:3, 29:15, 30:14, 81:18
**destructive** [1] - 9:3
**detail** [2] - 25:11, 25:14
**detention** [1] - 10:10
**determination** [15] - 11:2, 48:21, 87:12, 87:21, 87:24, 88:3, 88:24, 91:8, 92:25, 93:21, 96:8, 96:17, 96:22, 102:20, 108:13
**determinations** [1] - 24:25
**determine** [10] - 17:25, 26:10, 36:24, 77:22, 93:25, 98:4, 102:9, 102:11, 105:8, 105:13
**determined** [3] - 24:14, 75:4, 101:25
**determines** [1] - 88:10
**determining** [1] - 91:11
**deterrents** [1] - 77:13
**developing** [1] - 32:2
**device** [1] - 9:3
**died** [1] - 29:5
**differ** [1] - 24:25
**different** [12] - 10:24, 18:10, 18:13, 20:17, 32:5, 41:1, 46:18, 48:1, 53:7, 65:13, 76:20
**diligence** [1] - 49:18
**direct** [1] - 20:15
**directed** [4] - 8:17, 9:23, 86:13, 86:18
**direction** [1] - 87:7
**directly** [1] - 29:9
**director's** [2] - 28:25, 66:9
**disagree** [3] - 49:9, 76:11, 82:2
**disciplinary** [1] - 7:8
**disclosure** [1] - 89:17
**discovered** [1] - 34:4
**discretion** [8] - 21:10, 21:11, 91:20, 96:24, 97:25, 98:8, 98:9, 99:8
**discuss** [5] - 22:4, 40:2, 56:6, 60:19, 97:2
**discussed** [10] - 16:19, 38:1, 57:22, 59:11, 75:3, 75:22, 78:25, 82:11, 92:20, 97:12
**discussing** [1] - 109:9
**discussion** [8] - 22:12, 22:14, 57:11, 62:2, 74:3, 91:22, 97:15, 97:19
**discussions** [2] - 64:7, 97:11
**dismiss** [2] - 53:21, 84:11
**dismissal** [2] - 7:9, 84:6
**disposition** [4] - 49:16, 49:23, 90:22, 103:23
**dispute** [11] - 35:20, 36:5, 37:17, 37:21, 70:16, 74:4, 96:21, 100:8, 100:10, 102:4, 102:11
**disrupt** [1] - 2:17
**disruption** [1] - 2:17
**disruptions** [1] - 2:17
**distinction** [1] - 72:5
**DISTRICT** [3] - 1:1, 1:2, 1:18
**district** [5] - 8:23, 9:2, 12:17, 21:21, 86:20
**District** [17] - 1:14, 4:9, 4:15, 9:1, 23:2, 23:3, 25:7, 83:10, 85:10, 85:13, 85:14, 87:22, 88:1, 93:1, 110:18
**diversion** [12] - 45:23, 51:4, 82:19, 82:20, 83:19, 84:4, 85:7, 85:22, 86:12, 92:15, 93:23, 99:18
**Diversion** [67] - 6:12, 6:14, 10:20, 24:7, 36:14, 39:12, 39:17, 39:19, 39:22, 40:7, 40:11, 41:25, 42:16, 43:20, 43:22, 44:1, 44:3, 44:8, 44:23, 44:24, 45:4, 45:9, 45:14, 46:8, 46:16, 51:4, 51:8, 51:9, 51:17, 52:4, 52:8, 52:14, 52:18, 52:20, 53:4, 53:11, 53:12, 53:17, 53:20, 53:24, 55:4, 57:14, 57:16, 57:18, 59:6, 82:11, 82:14, 82:17, 82:25, 83:5, 83:8, 91:4, 91:6, 92:3, 93:13, 99:16, 99:19, 99:25, 100:1, 100:12, 100:22, 103:17, 104:5, 105:20, 108:5
**divert** [1] - 84:22
**diverted** [1] - 46:3
**divorce** [1] - 28:1
**divorced** [1] - 38:15
**DNA** [1] - 8:10
**document** [2] - 21:20, 21:21
**documentation** [2] - 9:1, 86:24
**documented** [4] - 27:21, 64:2, 64:5, 64:7
**documents** [3] - 10:25, 66:20, 66:21
**doggedness** [1] - 49:18
**dollar** [1] - 68:21
**dollars** [4] - 27:15, 28:6, 65:11, 74:12
**domestic** [7] - 27:11, 27:16, 28:23, 32:5, 32:15, 65:24, 70:12
**domestic-relations** [1] - 32:5
**done** [6] - 9:14, 64:12, 73:13, 74:23, 86:21, 102:6
**door** [1] - 86:8
**doubt** [6] - 16:6, 20:8, 61:13, 79:20, 79:22, 80:9
**down** [6] - 3:18, 18:22, 46:22, 50:16, 54:12, 102:16
**downstairs** [1] - 110:4
**downwards** [1] - 77:23
**drafted** [1] - 94:12
**drag** [1] - 97:22
**draws** [1] - 72:5
**drink** [1] - 71:15
**drop** [2] - 19:14, 46:24
**drug** [13] - 9:5, 14:7, 14:13, 15:14, 15:19, 41:2, 45:15, 57:24, 58:15, 58:21, 84:20, 91:3
**drugs** [5] - 13:2, 13:6, 14:4, 15:6, 27:24
**Due** [1] - 7:1
**due** [26] - 11:2, 26:4, 26:11, 28:12, 28:15, 28:18, 30:15, 31:9, 31:15, 31:17, 32:9, 33:10, 33:11, 33:14, 33:17, 33:20, 34:7, 34:12, 34:13, 34:20, 34:23, 36:19, 72:16, 72:18, 81:15, 101:1
**duly** [1] - 11:25
**during** [15] - 13:16, 28:9, 28:20, 31:20, 32:4, 33:1, 64:23, 65:10, 67:22, 73:5, 74:9, 79:14, 85:7, 85:21, 88:11
**duty** [4] - 23:16, 61:14, 81:5, 81:11

## E

**eager** [1] - 106:5
**early** [3] - 27:17, 32:14, 62:10
**earn** [2] - 28:10, 31:1
**earned** [6] - 27:19, 28:20, 63:9, 65:10, 81:5, 81:9
**earning** [1] - 28:5
**effect** [1] - 91:7
**efficiency** [1] - 9:18
**efficient** [1] - 4:6
**efforts** [2] - 29:9, 64:4
**either** [9] - 18:15, 24:22, 32:7, 67:21, 77:23, 91:8, 93:4, 100:17, 109:14
**elaborate** [2] - 67:14, 102:25
**elect** [2] - 88:5, 88:12
**element** [1] - 81:4
**elements** [5] - 23:14, 23:20, 61:11, 80:10, 80:25
**emails** [2] - 29:12, 31:10
**employed** [2] - 27:17, 62:23
**employment** [2] - 8:24, 86:15
**encompassed** [4] - 40:10, 53:19, 53:23, 89:4
**encompasses** [1] - 46:18
**encouraged** [1] - 29:21
**end** [9] - 22:14, 30:9, 30:13, 37:7, 62:9, 67:1, 67:3, 67:19, 73:4
**ended** [1] - 74:19
**energy** [8] - 27:12, 29:1, 31:5, 62:12, 62:15, 65:17, 66:10, 69:25
**enforceable** [5] - 40:22, 44:13, 44:15, 45:5, 55:20
**enforcement** [2] - 101:17, 102:23
**enforcing** [1] - 54:2
**engaged** [2] - 32:10, 69:10
**English** [1] - 12:20
**enormous** [1] - 72:25
**ensure** [1] - 30:7
**ensuring** [1] - 104:24
**enter** [12] - 11:6, 39:23, 41:3, 43:17, 43:23, 44:10, 44:16, 45:2, 45:5, 45:16, 59:5, 59:12
**entered** [1] - 28:4
**entering** [3] - 39:7, 60:16, 80:14
**entertainment** [1] - 30:25
**entice** [1] - 59:12
**entire** [2] - 31:21, 86:2
**entirety** [3] - 30:23, 74:5, 80:22
**entity** [1] - 69:17
**entry** [3] - 3:1, 26:1, 85:22
**equity** [3] - 27:13, 62:13, 62:16
**Eric** [1] - 65:8
**erroneous** [1] - 73:23
**erroneously** [1] - 74:11
**error** [1] - 73:16
**errors** [2] - 74:10, 74:13
**escorting** [1] - 2:19
**ESQ** [5] - 1:19, 1:19, 1:20, 2:3, 2:6
**essence** [1] - 73:11
**essential** [6] - 22:18, 23:14, 61:2, 61:11, 80:10, 80:25
**essentially** [5] - 31:7, 38:15, 38:17, 67:17, 97:9
**establish** [1] - 79:22
**established** [1] - 30:6
**estimated** [1] - 34:20
**evaluating** [1] - 47:7
**evasion** [4] - 36:8, 41:2, 45:15, 54:25
**event** [1] - 102:18
**evidence** [8] - 5:22, 5:25, 7:4, 7:9, 80:3, 80:4, 87:25, 88:2
**exactly** [3] - 19:16, 63:19, 68:6
**examine** [2] - 5:25, 101:16
**examined** [1] - 79:17
**example** [1] - 55:6
**exception** [2] - 39:11, 39:13
**exclude** [5] - 56:9, 56:17, 56:21, 109:18, 109:22
**exclusion** [1] - 7:8
**exculpatory** [1] - 7:4
**excuse** [1] - 16:2
**executed** [3] - 3:6, 27:14, 89:24
**executive** [4] - 95:16, 96:7, 98:8, 101:12
**Executive** [4] - 20:24, 21:9, 21:12, 48:11
**exercise** [2] - 28:11, 101:1
**Exhibit** [10] - 21:18, 23:22, 26:17, 27:5, 27:6, 35:9, 40:12, 61:22, 62:9, 89:6
**exhibit** [2] - 69:22, 70:11
**exhibits** [1] - 19:25
**exist** [3] - 44:2, 44:16, 44:22
**existence** [1] - 65:21
**expected** [4] - 26:3, 38:10, 38:19
**expense** [2] - 73:14, 73:15
**expenses** [14] - 30:23, 31:21, 32:25, 33:2, 70:23, 73:7, 73:17, 73:18, 73:20, 73:24, 84:14
**experience** [1] - 61:23
**expiration** [1] - 84:4
**explain** [4] - 43:13, 73:10, 77:18, 97:9
**explanation** [1] - 36:6
**expressions** [1] - 67:23
**expressly** [1] - 25:18
**extend** [1] - 28:17
**extended** [1] - 106:6
**extension** [9] - 28:15, 28:17, 31:12, 31:14, 32:9, 34:18, 34:21, 81:14
**extensive** [1] - 49:24
**extent** [5] - 25:21, 54:11, 54:13, 78:7, 107:19

## F

**face** [1] - 32:17
**faced** [1] - 59:4
**facilities** [1] - 13:4
**facility** [1] - 13:23
**fact** [13] - 23:24, 30:4, 30:16, 58:12, 60:4, 62:2, 69:20, 82:21, 84:16, 85:4, 87:9, 99:8, 106:12
**factors** [6] - 18:24, 19:2, 19:19, 77:20, 77:21
**facts** [29] - 20:11, 23:22, 24:6, 27:4, 37:17, 37:22, 40:10, 40:12, 52:22, 54:20, 55:6, 57:22, 58:12, 61:21, 61:25, 62:3, 73:11, 77:7, 81:17, 84:18, 85:17, 87:3, 88:16, 89:5, 89:19, 95:10, 95:20
**factual** [15] - 24:24, 53:20, 53:23, 53:24, 55:1, 55:3, 80:22, 81:6, 81:8, 82:3, 93:21, 96:20, 96:22, 99:6
**failed** [3] - 32:16, 79:21, 88:11
**failure** [9] - 3:5, 4:17, 21:3, 23:4, 23:18, 36:3, 61:16, 81:16, 87:16
**fair** [1] - 102:8
**faith** [1] - 84:9
**fall** [5] - 14:17, 14:21, 15:10, 29:7, 32:4
**Fall** [1] - 28:3
**falls** [2] - 93:6, 104:19
**false** [6] - 11:14, 91:16, 91:17, 91:22, 92:2, 102:22
**far** [3] - 12:9, 51:4, 56:4
**FBI** [1] - 86:20
**February** [2] - 33:6, 34:3
**federal** [12] - 8:7, 9:8, 28:12, 40:9, 57:22, 77:2, 85:2, 85:15, 86:25, 88:14, 89:4, 94:18
**Federal** [2] - 17:11, 85:9
**fees** [9] - 28:25, 30:20, 31:3, 66:9, 68:23, 69:23, 70:22, 70:24, 84:14
**felony** [8] - 3:24, 4:10, 36:15, 41:2, 45:15, 82:12, 82:18, 91:16
**few** [4] - 35:2, 42:25, 48:4, 106:11
**fifty** [1] - 12:7
**fifty-three** [1] - 12:7
**figure** [7] - 37:11, 48:15, 50:1, 55:10, 56:13, 56:24, 81:2
**file** [9] - 28:15, 28:17, 31:14, 32:7, 72:14, 72:15, 72:23, 84:5
**filed** [20] - 2:24, 3:2, 4:10, 4:15, 21:21, 21:22, 24:7, 25:19, 31:15, 33:6, 34:5, 34:8, 34:10, 34:19, 40:13, 49:25, 83:21, 89:6, 89:18
**filer** [1] - 37:5
**filers** [1] - 20:8
**files** [1] - 25:20
**filing** [7] - 26:4, 28:19, 29:14, 33:18, 34:21, 36:20, 74:19
**filings** [2] - 31:9, 74:5
**final** [7] - 21:23, 29:15, 42:20, 66:19, 69:21, 88:3, 90:5
**finalized** [1] - 28:1
**finally** [5] - 26:15, 34:18, 77:20, 81:16, 88:22
**finances** [1] - 28:11
**financial** [1] - 81:19
**fine** [9] - 3:18, 4:23, 5:3, 10:12, 23:9, 56:20, 78:21, 101:6, 107:1
**fingerprint** [1] - 86:21
**fingerprinting** [1] - 86:20
**finished** [1] - 22:20
**firearm** [11] - 3:1, 3:11, 4:11, 9:3, 53:13, 55:3, 58:23, 83:23, 85:2, 85:25, 93:15
**firearms** [9] - 53:8, 55:2, 58:16, 58:22, 85:6, 85:16, 85:20, 89:22, 93:13
**firm** [12] - 27:18, 29:2, 62:23, 64:17, 64:20, 66:14, 69:1, 69:7, 69:13, 69:14, 69:17, 70:3
**first** [23] - 3:10, 4:1, 11:10, 17:7, 46:1, 49:18, 60:8, 62:8, 62:11, 66:19, 70:10, 70:19, 71:1, 77:14, 81:4, 81:9, 83:7, 87:15, 93:22, 94:2, 99:18, 104:19, 106:9
**five** [2] - 49:14, 49:17
**five-year** [1] - 49:17
**fix** [1] - 105:21
**flood** [1] - 72:25
**fly** [1] - 103:8
**follow** [2] - 77:14, 107:15
**followed** [2] - 32:23,

78:12
**following** [4] - 8:6, 8:19, 27:22, 56:19
**FOR** [1] - 1:2
**force** [1] - 53:17
**forced** [1] - 39:6
**foregoing** [1] - 110:15
**foreign** [1] - 55:6
**Foreign** [1] - 55:7
**forfeited** [1] - 86:3
**forfeiture** [1] - 10:10
**forget** [1] - 48:7
**forgot** [1] - 86:6
**form** [4] - 9:16, 21:4, 104:3, 105:5
**Form** [8] - 33:9, 33:12, 33:14, 33:18, 34:5, 34:9, 34:10, 34:19
**formed** [4] - 28:22, 31:3, 65:12, 69:24
**former** [4] - 29:11, 29:14, 66:21
**forth** [13] - 24:6, 83:17, 84:23, 84:24, 85:4, 85:15, 85:16, 87:13, 87:17, 88:16, 89:19, 90:3, 90:10
**forward** [7] - 47:15, 48:25, 51:7, 96:4, 96:5, 105:24, 109:12
**four** [4] - 21:18, 42:22, 67:1, 83:14
**fourteen** [1] - 106:25
**fourth** [1] - 65:9
**frame** [2] - 73:11, 75:17
**framework** [1] - 102:13
**freak** [1] - 86:8
**free** [1] - 60:4
**frequency** [1] - 9:15
**Friday** [1] - 56:18
**frivolous** [1] - 84:9
**front** [6] - 21:15, 51:13, 51:24, 60:8, 62:5, 105:14
**full** [4] - 11:21, 26:1, 68:20, 71:1
**fully** [6] - 16:19, 16:22, 21:9, 34:16, 34:25, 87:16
**function** [2] - 53:4, 53:5
**functionality** [1] - 93:19
**fund** [3] - 27:13, 62:13, 62:16
**funds** [2] - 30:5, 30:17
**funny** [1] - 104:3
**future** [4] - 40:14, 53:18, 84:10, 90:9

## G

**gain** [2] - 5:4, 23:9
**gatekeeper** [2] - 95:12, 108:4
**gathering** [1] - 32:13
**General** [1] - 20:16
**general** [3] - 16:20, 57:23, 89:16
**generally** [2] - 51:1, 97:12
**generate** [1] - 81:19
**generated** [1] - 70:22
**gentleman** [1] - 65:8
**given** [9] - 38:22, 48:10, 62:2, 78:8, 78:13, 80:15, 83:4, 83:6, 105:12
**glasses** [2] - 86:6, 86:7
**governed** [2] - 18:17, 102:25
**government** [57] - 5:21, 7:2, 7:10, 16:9, 17:3, 19:14, 20:3, 21:5, 22:22, 23:15, 25:19, 39:4, 39:17, 41:1, 41:2, 44:9, 45:14, 45:15, 55:7, 55:17, 55:18, 56:6, 57:20, 58:1, 61:11, 61:13, 61:17, 63:20, 64:8, 74:6, 77:6, 77:25, 79:21, 80:19, 91:1, 91:21, 93:4, 94:1, 96:7, 96:9, 96:14, 96:15, 96:16, 96:24, 98:8, 98:9, 99:3, 99:23, 99:25, 100:8, 101:7, 102:19, 103:3, 103:21, 106:1
**government's** [7] - 7:18, 57:13, 67:24, 80:8, 81:24, 82:3, 82:6
**graduate** [1] - 12:11
**granted** [1] - 77:19
**greater** [7] - 5:5, 23:10, 24:4, 24:15, 25:14, 35:6, 77:12
**gross** [4] - 5:4, 23:9, 33:13, 33:19
**grounds** [3] - 26:8, 48:3, 53:22
**guess** [5] - 51:14, 55:23, 70:1, 70:6, 75:7
**Guideline** [3] - 24:9, 24:13, 24:19
**guideline** [6] - 24:18, 25:2, 35:5, 36:3, 36:7, 79:1
**guidelines** [8] - 24:2, 53:9, 53:14, 77:15, 77:17, 77:18, 77:19, 77:24
**guilt** [4] - 23:20, 79:19, 79:22, 80:11
**guilty** [32] - 3:2, 6:4, 6:8, 11:6, 16:16, 19:13, 23:2, 23:24, 23:25, 26:9, 39:20, 40:19, 41:4, 42:18, 44:3, 45:11, 45:17, 49:22, 60:3, 60:4, 61:17, 78:23, 79:2, 79:11, 79:12, 79:13, 80:14, 108:10, 108:13, 108:15, 108:19, 109:10
**gun** [13] - 3:24, 4:22, 6:12, 36:15, 45:21, 52:20, 57:23, 82:18, 83:21, 86:2, 91:3, 91:16, 94:17
**guys** [9] - 42:24, 43:2, 55:25, 56:16, 56:22, 68:10, 105:17, 106:9, 106:16

## H

**half** [3] - 33:21, 100:17, 100:18
**hand** [1] - 11:21
**handed** [1] - 17:7
**handle** [1] - 97:20
**handsomely** [1] - 31:1
**hang** [1] - 102:6
**hard** [3] - 8:1, 97:17, 104:15
**HARRIS** [1] - 2:5
**harsher** [2] - 59:25, 79:5
**Harvest** [1] - 62:17
**Hawkins** [1] - 110:17
**headway** [1] - 57:2
**hear** [3] - 60:13, 79:16, 103:16
**hearing** [13] - 3:12, 5:20, 5:21, 5:24, 6:9, 6:13, 17:2, 40:5, 56:1, 56:3, 94:13, 94:16, 106:11
**Hearing** [1] - 1:10
**help** [7] - 7:24, 35:14, 41:6, 50:22, 58:13, 73:2, 77:21
**helpful** [1] - 105:9
**hereafter** [1] - 27:9
**hereby** [1] - 110:15
**higher** [1] - 74:6
**highest** [2] - 79:20, 81:11
**himself** [1] - 69:4
**Hines** [1] - 2:22
**HINES** [1] - 1:19
**hinted** [1] - 82:21
**hire** [1] - 5:10
**historical** [1] - 84:20
**ho** [1] - 69:4
**Ho** [3] - 30:21, 68:23, 69:2
**hold** [3] - 2:13, 3:13, 103:23
**holding** [1] - 65:4
**honest** [1] - 71:14
**honor** [1] - 91:13
**Honor** [254] - 2:21, 3:9, 3:10, 3:16, 4:4, 4:5, 4:20, 4:25, 5:7, 5:14, 5:18, 6:2, 6:6, 6:10, 6:15, 6:17, 6:25, 7:11, 7:14, 7:16, 7:23, 10:1, 10:4, 10:6, 10:13, 10:17, 10:18, 11:7, 11:17, 12:5, 12:8, 12:10, 12:15, 12:18, 12:21, 12:24, 13:4, 13:7, 13:12, 13:18, 13:25, 14:4, 14:10, 14:14, 14:18, 14:20, 15:4, 15:8, 15:12, 15:17, 15:22, 16:1, 16:10, 16:18, 16:21, 16:25, 17:5, 17:11, 17:15, 17:20, 17:21, 17:24, 17:25, 18:8, 18:12, 19:16, 19:21, 20:18, 20:19, 20:25, 21:1, 21:7, 21:8, 21:16, 21:25, 22:2, 22:6, 22:9, 22:24, 23:8, 25:19, 27:7, 35:8, 35:25, 36:3, 36:11, 36:12, 36:17, 37:2, 38:3, 39:5, 39:8, 39:11, 39:17, 39:21, 39:25, 40:20, 40:24, 41:5, 41:12, 41:22, 42:6, 43:6, 43:11, 44:19, 45:7, 45:12, 45:18, 46:4, 46:9, 46:19, 49:8, 50:14, 50:24, 51:25, 53:7, 53:16, 54:1, 54:16, 55:14, 56:20, 57:1, 57:5, 57:10, 57:17, 58:2, 58:6, 58:24, 59:14, 59:20, 60:2, 60:5, 60:9, 60:15, 60:18, 60:21, 60:24, 61:6, 61:9, 61:19, 62:7, 63:2, 63:7, 63:12, 63:15, 63:19, 65:16, 66:1, 66:6, 66:24, 67:10, 67:13, 67:15, 68:11, 68:14, 68:17, 68:24, 69:3, 69:8, 69:10, 70:5, 70:9, 70:14, 70:18, 70:21, 71:4, 71:13, 71:23, 72:12, 72:17, 72:20, 72:22, 72:24, 73:9, 74:25, 75:5, 75:11, 75:16, 75:24, 76:2, 76:8, 76:13, 76:16, 76:22, 77:9, 78:5, 78:10, 78:19, 78:24, 79:3, 79:9, 79:18, 79:25, 80:6, 80:12, 80:17, 80:21, 81:1, 81:7, 82:1, 82:4, 82:8, 83:7, 89:13, 89:21, 90:15, 90:20, 90:21, 91:6, 91:24, 92:4, 93:9, 93:12, 93:18, 94:8, 94:20, 95:5, 95:9, 95:18, 95:19, 96:11, 96:17, 96:20, 97:3, 97:20, 97:22, 98:20, 99:2, 99:4, 99:11, 100:6, 100:19, 101:7, 101:11, 101:19, 101:21, 101:24, 102:5, 102:13, 103:14, 103:18, 104:1, 104:9, 106:4, 106:19, 107:1, 107:2, 108:16, 108:20, 109:10, 109:23, 110:7, 110:11
**Honor's** [2] - 38:2, 68:5
**HONORABLE** [1] - 1:13
**hook** [1] - 42:17
**hospitalized** [1] - 12:25
**hour** [1] - 49:14
**hours** [1] - 49:14
**Hudson** [1] - 65:16
**hundred** [1] - 74:12

hundreds [1] - 19:25
HUNTER [3] - 1:6, 11:24, 11:25
Hunter [5] - 2:25, 3:3, 11:23, 27:9, 83:11
Hyde [1] - 108:12
hypothetical [5] - 44:18, 44:22, 50:6, 50:7, 96:1

I

I.G [1] - 2:6
idea [1] - 93:24
identified [5] - 32:24, 55:3, 58:16, 81:8, 89:21
identify [1] - 73:12
ignored [1] - 31:7
II [9] - 5:2, 23:3, 23:8, 23:24, 24:3, 26:14, 35:4, 61:1, 61:11
illegal [3] - 15:15, 15:20, 27:24
illness [1] - 13:1
imagine [1] - 109:21
immediate [1] - 10:8
immunity [5] - 40:25, 42:3, 45:13, 83:2, 104:24
impact [1] - 77:19
implement [1] - 103:22
important [4] - 11:13, 43:15, 49:13, 78:1
impose [6] - 8:18, 8:19, 17:18, 59:24, 77:11, 79:5
imposed [2] - 10:3, 25:2
impossibility [1] - 101:5
imprisoned [1] - 78:17
imprisonment [7] - 4:22, 5:3, 10:12, 23:9, 32:18, 78:8, 78:9
improper [2] - 38:5, 103:20
IN [1] - 1:1
inappropriate [1] - 21:4
incarceration [1] - 78:12
inception [1] - 64:22
include [13] - 7:6, 9:15, 34:14, 41:14, 46:12, 54:9, 54:18, 78:21, 78:22, 81:21, 86:12, 98:11, 107:21
included [10] - 13:5, 28:8, 29:9, 33:18, 35:18, 36:7, 36:9, 46:25, 47:2, 51:9
includes [8] - 35:17, 45:21, 45:22, 48:3, 58:19, 58:20, 85:19, 88:17
including [10] - 27:24, 28:21, 30:23, 31:21, 32:18, 35:4, 64:20, 65:11, 77:21, 88:15
inclusion [2] - 35:23, 50:18
income [26] - 27:19, 28:12, 28:21, 29:7, 29:17, 31:18, 32:8, 32:12, 33:4, 33:7, 33:10, 33:15, 34:12, 34:22, 36:25, 37:23, 63:21, 65:11, 67:21, 70:19, 70:25, 72:15, 74:11, 81:6, 81:11, 81:19
inconsistent [1] - 24:11
incorporate [2] - 52:13, 53:11
incorporated [1] - 62:3
incorporates [1] - 25:18
incorporation [1] - 90:2
increase [1] - 25:1
indeed [1] - 21:10
indicated [1] - 23:8
indicted [1] - 48:25
indictment [1] - 83:21
individual [11] - 29:4, 29:6, 29:17, 29:20, 32:8, 32:11, 33:7, 33:24, 34:1, 72:15, 75:12
individuals [1] - 103:1
influence [3] - 15:14, 15:19, 71:6
influx [1] - 67:21
inform [1] - 103:19
information [27] - 2:24, 3:2, 3:24, 4:10, 4:16, 16:11, 16:15, 16:17, 17:2, 20:7, 23:1, 23:3, 23:21, 32:21, 59:18, 60:11, 83:21, 84:6, 84:11, 85:2, 85:15, 90:16, 93:6, 96:4, 108:24, 109:2, 109:5
Information [3] - 27:9, 84:8, 84:13
informations [2] - 49:25, 50:1
infrastructure [2] - 28:24, 66:4
ingested [1] - 15:14
Initial [1] - 1:9
initial [7] - 2:23, 3:11, 4:2, 10:15, 27:1, 38:24, 61:3
inpatient [9] - 9:22, 13:10, 13:12, 13:13, 13:23, 14:2, 14:22, 14:23, 15:4
insofar [1] - 52:9
instance [4] - 19:4, 54:24, 93:22, 102:22
instances [1] - 73:18
Instant [1] - 85:23
instant [1] - 27:8
instructions [1] - 7:8
instrument [1] - 51:6
intelligently [1] - 23:20
intend [2] - 6:4, 11:6
intended [1] - 63:20
intent [1] - 85:11
intention [3] - 42:12, 42:14, 91:9
interest [13] - 19:20, 26:5, 33:24, 34:1, 34:16, 34:24, 35:23, 36:6, 36:20, 37:15, 46:11, 56:23, 65:24
interests [4] - 27:11, 28:23, 35:17, 36:4
Internal [9] - 26:5, 26:10, 29:17, 30:3, 33:8, 33:22, 34:8, 36:21, 74:20
international [3] - 8:25, 27:11, 86:23
interviews [1] - 64:11
introduce [1] - 5:24
investigating [1] - 21:9
investigation [13] - 20:8, 20:13, 20:17, 21:3, 38:15, 48:8, 49:12, 49:17, 50:9, 54:18, 54:24, 77:5, 84:14
investment [2] - 28:25, 66:4
invokes [1] - 83:2
involved [1] - 72:2
involvement [1] - 93:19
involves [1] - 83:3
involving [4] - 3:25, 11:4, 91:15, 96:10
irrespective [1] - 31:13
IRS [8] - 37:4, 37:7, 37:8, 37:24, 38:7, 38:13, 38:16, 38:23
issuance [1] - 10:9
issue [4] - 59:1, 67:22, 97:3, 109:14
issues [7] - 14:13, 43:12, 47:19, 49:3, 57:24, 81:18, 106:21
itself [2] - 18:16, 19:1

J

January [1] - 32:18
Jianming [1] - 65:20
JONES [1] - 2:6
JR [1] - 2:6
judge [1] - 88:3
Judge [9] - 1:14, 51:12, 87:22, 88:1, 93:1, 96:4, 96:5, 99:6, 108:4
judicial [3] - 95:16, 102:20, 103:2
July [1] - 1:8
jumping [1] - 7:25
June [6] - 15:17, 34:11, 71:7, 71:8, 71:15, 71:18
jurisdiction [1] - 85:13
jury [5] - 7:8, 79:14, 80:9, 80:10, 80:15
justice [6] - 19:20, 56:23, 79:21, 88:17, 93:16, 109:1
Justice [1] - 54:3

K

keep [3] - 3:20, 7:25, 94:3
kind [6] - 13:2, 15:16, 15:20, 57:12, 91:1, 100:17
King [1] - 1:11
knowing [11] - 11:9, 18:1, 59:4, 87:11, 87:16, 87:20, 88:4, 92:24, 98:22, 98:24, 104:22
knowingly [3] - 23:19, 76:24, 83:23
knowledge [1] - 88:15
known [1] - 83:19
knows [2] - 43:5, 63:18

L

Labor [1] - 56:18
lacking [1] - 20:13
landed [1] - 28:5
lane [2] - 98:12, 105:25
language [5] - 58:3, 58:5, 70:20, 89:2, 93:6
large [4] - 30:3, 30:14, 30:24, 31:21
last [10] - 14:15, 15:9, 15:10, 15:13, 41:14, 63:16, 67:22, 71:6, 75:6, 75:7
late [1] - 31:20
latter [1] - 74:21
law [27] - 8:7, 9:9, 12:10, 12:11, 19:2, 19:9, 19:25, 23:18, 27:18, 29:2, 34:21, 61:15, 62:23, 64:16, 64:20, 66:14, 69:1, 69:7, 69:13, 69:14, 69:17, 70:3, 77:14, 81:14, 87:1, 92:12, 102:23
lawsuits [2] - 32:5, 32:15
lawyer [1] - 68:3
lays [1] - 87:14
learn [1] - 24:10
learning [1] - 34:9
least [6] - 27:17, 62:10, 62:22, 62:24, 71:18, 106:25
leave [2] - 15:1, 55:24
leaves [2] - 76:10, 76:14
leaving [4] - 33:11, 33:16, 34:13, 50:20
led [1] - 64:15
left [3] - 10:14, 29:14, 63:10
legal [10] - 9:8, 9:10, 15:15, 15:19, 24:25, 27:14, 28:5, 30:20, 68:22, 69:6
legally [1] - 85:24
legitimate [2] - 33:2, 73:7
length [1] - 25:9
LEO [1] - 1:20
Leo [1] - 2:21
less [4] - 24:4, 27:3, 31:8, 35:5
letter [2] - 19:24, 32:19
level [5] - 24:12,

24:15, 24:16, 24:18, 81:12
**levels** [1] - 24:20
**liability** [16] - 30:4, 30:8, 30:9, 30:13, 30:14, 30:17, 31:18, 33:3, 33:24, 34:1, 34:15, 34:24, 67:3, 75:9, 75:10
**liberty** [1] - 50:4
**licensed** [1] - 9:7
**lied** [1] - 102:19
**life** [3] - 64:10, 72:25, 102:7
**light** [4] - 6:14, 84:16, 90:19, 91:22
**likely** [1] - 76:19
**limitation** [5] - 85:5, 88:19, 88:20, 92:2, 101:13
**limitations** [3] - 85:1, 92:1, 93:17
**limited** [1] - 7:7
**limits** [2] - 75:21, 107:25
**line** [4] - 49:15, 67:2, 73:19
**line-by-line** [1] - 49:15
**lines** [2] - 67:1, 93:20
**list** [1] - 61:10
**listed** [1] - 63:25
**listen** [1] - 22:19
**litigated** [2] - 100:9, 100:10
**litigation** [2] - 84:14, 87:8
**live** [3] - 43:24, 44:2, 48:9
**LLC** [2] - 27:16, 30:20
**LLP** [2] - 2:3, 2:5
**loan** [4] - 75:11, 75:13, 75:15, 75:17
**local** [3] - 8:7, 85:9, 87:1
**long-standing** [3] - 27:22, 64:3, 64:21
**look** [11] - 3:14, 15:24, 18:25, 41:18, 59:1, 59:9, 98:5, 104:7, 109:12, 109:19, 109:25
**looked** [1] - 45:23
**looking** [7] - 19:17, 35:12, 37:11, 41:20, 58:3, 64:6, 81:9
**Los** [1] - 28:8
**loses** [1] - 26:2
**loss** [12] - 5:4, 23:10, 24:3, 35:3, 35:6, 35:7, 35:8, 35:18, 35:23, 36:5, 38:5
**losses** [1] - 27:2
**loud** [1] - 17:2
**lower** [2] - 37:22, 70:24
**lucrative** [1] - 27:10

## M

**maintained** [1] - 97:16
**mandatory** [1] - 78:22
**Mandatory** [1] - 25:25
**manner** [3] - 84:23, 99:19, 100:24
**March** [4] - 28:1, 30:19, 31:20, 68:21
**marijuana** [2] - 9:8, 9:9
**mark** [1] - 73:15
**marking** [1] - 73:17
**marriage** [1] - 28:1
**married** [3] - 31:25, 71:9, 71:14
**Marshals** [1] - 2:19
**marshals** [1] - 110:4
**MARYELLEN** [1] - 1:13
**Maryland** [2] - 7:3, 29:4
**massive** [2] - 20:20, 74:7
**material** [5] - 7:12, 87:11, 87:20, 88:4, 92:24
**materials** [1] - 32:13
**matter** [4] - 3:3, 84:22, 90:6, 106:6
**matters** [1] - 5:9
**maximum** [5] - 4:21, 5:2, 23:7, 61:1, 61:4
**mean** [17] - 19:13, 36:22, 37:24, 42:7, 48:7, 48:13, 50:24, 55:19, 59:1, 81:2, 93:23, 95:23, 97:4, 102:5, 102:6, 108:9, 108:18
**means** [5] - 5:10, 36:23, 58:2, 58:4, 58:10
**mechanism** [1] - 97:23
**medical** [2] - 9:7, 9:11
**medication** [3] - 15:15, 15:20, 71:7
**meet** [1] - 104:6
**meeting** [6] - 49:14, 55:11, 55:16, 55:20, 81:21
**meetings** [3] - 32:24, 49:15, 72:3
**meets** [1] - 80:25
**member** [1] - 12:14
**memoir** [2] - 28:6, 32:3
**memoranda** [2] - 37:20, 44:17
**memorandum** [11] - 19:25, 23:22, 25:17, 26:13, 26:16, 26:19, 26:22, 35:22, 38:7, 44:5, 52:22
**Memorandum** [18] - 17:6, 21:14, 21:22, 39:15, 39:24, 40:12, 40:18, 40:22, 45:6, 45:10, 46:25, 47:3, 52:15, 59:6, 59:12, 82:12, 89:6, 108:6
**mental** [1] - 13:1
**mentioned** [3] - 51:25, 61:2, 92:18
**merely** [1] - 59:22
**merger** [1] - 100:18
**middle** [4] - 64:14, 67:2, 95:13, 104:4
**might** [13] - 4:6, 15:24, 38:11, 50:3, 50:5, 50:6, 78:18, 79:1, 97:23, 99:12, 101:6, 105:19, 105:21
**million** [19] - 27:20, 28:21, 30:19, 31:2, 35:14, 63:9, 63:10, 63:14, 65:11, 68:21, 69:23, 70:7, 70:13, 70:20, 70:22, 70:25, 81:10
**millions** [2] - 27:15, 28:5
**mind** [1] - 6:22
**minds** [3] - 55:11, 55:16, 55:20
**minimizing** [1] - 74:4
**minute** [4] - 9:20, 43:13, 67:22, 110:2
**minutes** [3] - 42:25, 48:5, 57:2
**miscategorized** [1] - 33:1
**mischaracterized** [1] - 73:6
**misdemeanor** [5] - 3:25, 4:16, 16:14, 54:6, 77:3
**misdemeanors** [1] - 48:24
**misstep** [1] - 101:3
**mistake** [1] - 74:14
**mistakes** [8] - 73:23, 74:2, 74:14, 74:16, 74:18, 74:19, 74:22
**modification** [2] - 89:13, 101:20
**modifications** [2] - 26:24, 90:9
**modified** [3] - 26:19, 89:10, 105:22
**modify** [4] - 101:18, 101:20, 102:2, 102:10
**modifying** [1] - 90:7
**moment** [3] - 38:22, 39:1, 40:6
**money** [8] - 28:10, 67:25, 68:13, 70:2, 70:3, 74:2, 74:8, 81:20
**monies** [1] - 37:24
**month** [1] - 31:25
**months** [4] - 5:3, 23:8, 30:22, 83:14
**morning** [5] - 2:12, 2:21, 3:15, 3:16, 22:2
**most** [4] - 14:11, 28:2, 64:15, 73:18
**motion** [1] - 84:5
**motions** [3] - 56:9, 77:17, 77:19
**move** [6] - 24:17, 28:8, 53:21, 84:11, 94:1, 96:4
**MR** [188] - 2:21, 3:9, 3:16, 3:21, 4:4, 4:5, 6:15, 6:16, 7:11, 7:14, 7:16, 7:20, 7:23, 8:1, 10:4, 10:5, 10:16, 10:18, 13:17, 14:18, 16:8, 16:10, 17:10, 17:15, 17:20, 17:21, 17:24, 18:5, 18:8, 18:12, 18:14, 19:1, 19:16, 19:21, 20:18, 20:19, 20:25, 21:1, 21:6, 21:8, 22:24, 27:7, 35:8, 35:16, 35:25, 36:2, 36:10, 36:12, 36:17, 36:23, 37:2, 37:14, 37:21, 38:3, 38:12, 38:21, 39:11, 39:16, 41:12, 41:22, 42:5, 42:12, 42:19, 43:1, 43:6, 43:11, 43:24, 44:7, 44:18, 44:21, 46:4, 46:9, 46:19, 47:1, 47:5, 47:9, 47:13, 47:16, 47:19, 47:22, 48:6, 48:12, 48:17, 48:23, 49:4, 49:8, 50:7, 50:11, 50:14, 50:24, 51:23, 52:6, 52:9, 52:13, 52:16, 52:24, 53:3, 54:1, 54:8, 54:16, 54:22, 55:9, 55:14, 55:17, 55:22, 56:3, 56:12, 56:20, 57:1, 57:5, 57:10, 58:1, 58:6, 58:11, 58:14, 58:24, 63:15, 67:14, 67:17, 68:5, 68:9, 68:11, 69:9, 70:8, 70:14, 70:18, 72:5, 73:9, 74:3, 74:21, 75:5, 80:21, 81:1, 81:4, 82:8, 83:7, 86:10, 90:15, 90:20, 90:21, 91:6, 91:9, 91:24, 92:4, 92:9, 92:10, 93:8, 93:12, 93:18, 94:8, 94:15, 94:20, 94:24, 95:2, 95:5, 95:9, 95:18, 95:25, 96:2, 96:11, 97:2, 97:5, 97:11, 97:20, 98:20, 99:2, 99:17, 100:6, 100:13, 100:16, 100:23, 101:10, 101:18, 101:24, 102:12, 103:14, 106:4, 106:19, 107:1, 107:2, 107:7, 107:12, 108:15, 108:20, 109:21, 109:23, 110:10, 110:11
**muddy** [1] - 89:12
**multi** [3] - 27:18, 29:2, 62:23
**multi-national** [3] - 27:18, 29:2, 62:23
**must** [16] - 8:7, 8:9, 8:12, 8:16, 8:17, 8:21, 8:23, 8:24, 9:2, 9:4, 9:12, 9:17, 9:21, 54:19, 107:14

## N

**name** [2] - 11:21, 65:20
**named** [1] - 65:8
**narcotic** [2] - 9:5, 13:1
**narrow** [1] - 76:10
**National** [1] - 85:23
**national** [3] - 27:18, 29:2, 62:23

nature [2] - 88:7, 88:24
near [1] - 25:4
necessarily [3] - 49:9, 51:2, 103:16
necessary [1] - 77:12
need [43] - 3:18, 6:13, 10:15, 10:25, 11:10, 13:8, 18:25, 19:18, 41:6, 41:21, 42:10, 42:24, 48:24, 50:22, 55:15, 55:24, 55:25, 56:1, 56:2, 56:12, 61:7, 82:15, 82:16, 96:17, 99:12, 104:18, 104:25, 105:1, 105:3, 105:12, 105:14, 106:20, 108:1, 108:18, 108:24, 109:2, 109:4, 109:17, 110:1, 110:2, 110:4, 110:8
needed [1] - 47:7
needs [2] - 97:16, 103:23
negotiate [1] - 105:20
negotiated [2] - 27:13, 53:5
negotiating [1] - 101:10
negotiation [1] - 49:24
neutral [1] - 98:3
never [1] - 73:21
news [1] - 64:11
next [8] - 17:6, 30:22, 60:25, 64:2, 66:25, 73:4, 74:9, 75:1
NICS [1] - 85:24
NO [2] - 1:5, 1:6
nobody [1] - 105:12
non [1] - 51:1
non-prosecution [1] - 51:1
none [5] - 4:4, 4:5, 7:16, 10:4, 16:8
nonetheless [1] - 28:3
nonstandard [1] - 83:1
nonstop [1] - 28:9
NOREIKA [1] - 1:13
normal [4] - 75:17, 96:23, 97:23, 106:13
normally [7] - 10:24, 41:9, 51:11, 51:21, 82:10, 99:7, 104:7
north [1] - 70:25
note [1] - 90:21
notes [1] - 110:15
nothing [4] - 31:16, 46:2, 100:16, 101:5
notice [1] - 87:24
noting [1] - 29:24
notwithstanding [1] - 88:20
November [1] - 32:10
null [2] - 26:22, 56:4
number [11] - 8:15, 35:22, 37:8, 37:12, 37:14, 37:18, 38:6, 38:8, 38:21, 70:25
numbers [4] - 35:13, 37:3, 37:4, 38:11
numeral [1] - 83:8
numerous [3] - 13:17, 31:24, 71:2

O

oath [4] - 11:12, 11:25, 59:5, 104:23
objection [3] - 4:3, 10:2, 20:2
objections [2] - 77:16, 82:6
obligation [3] - 7:3, 7:6, 31:12
obligations [6] - 29:14, 31:7, 32:6, 81:21, 84:3, 90:8
obstruct [2] - 9:18
obstruction [2] - 88:17, 93:16
obtained [2] - 37:4, 37:8
obviously [8] - 20:20, 58:16, 81:9, 89:9, 89:13, 93:12, 101:11, 101:19
occur [2] - 38:18, 76:19
occurred [3] - 87:21, 92:25, 96:25
October [12] - 28:16, 29:23, 31:15, 32:9, 33:22, 34:6, 34:15, 34:19, 34:23, 72:19, 92:9, 92:10
OF [3] - 1:2, 1:3, 1:18
offense [13] - 3:1, 5:4, 19:7, 23:10, 24:15, 36:7, 53:8, 53:10, 53:13, 78:23, 79:13, 79:14, 89:22
offenses [7] - 58:14, 79:2, 80:10, 89:20, 93:13, 93:15
offer [3] - 88:23, 92:14, 102:12
offered [1] - 105:16
office [5] - 8:22, 24:23, 29:15, 34:8, 77:16
Office [4] - 49:13, 77:4, 83:10, 86:19
OFFICE [1] - 1:18
officer [11] - 8:13, 9:13, 9:14, 9:23, 9:24, 46:6, 83:16, 102:20, 102:23, 103:2
offices' [1] - 102:14
Official [1] - 110:17
offset [1] - 33:5
often [2] - 17:17, 72:3
old [2] - 12:6, 12:7
omits [1] - 36:3
once [1] - 97:8
one [37] - 3:23, 5:5, 13:20, 19:24, 21:24, 23:10, 23:16, 24:18, 41:15, 43:16, 47:4, 47:19, 55:16, 56:2, 59:25, 61:8, 64:25, 65:1, 65:13, 65:25, 66:4, 66:7, 66:10, 70:15, 71:2, 73:18, 76:20, 79:6, 83:8, 83:22, 86:5, 90:1, 90:21, 91:14, 92:22, 97:2, 105:21
ongoing [2] - 50:9, 54:23
open [1] - 86:7
opine [1] - 97:1
opportunity [3] - 20:4, 22:4, 43:3
oppose [2] - 24:12, 77:25
opt [1] - 96:19
orally [2] - 89:10, 105:21
order [10] - 7:4, 7:6, 10:10, 11:10, 26:1, 26:8, 32:17, 106:20, 109:14, 110:3
ordered [1] - 26:2
original [2] - 50:25, 89:25
originally [3] - 13:25, 34:5, 70:1
otherwise [3] - 87:8, 90:7, 91:12
outlets [1] - 64:11
outlines [1] - 25:9
outpatient [5] - 9:22, 13:10, 13:16, 14:22, 14:24
outside [7] - 30:5, 40:9, 42:22, 47:23, 89:3, 98:12, 105:25
outstanding [4] - 30:8, 30:14, 30:17, 75:10
overreported [2] - 33:4, 74:11
overseeing [1] - 88:3
overstatement [1] - 37:23
Owasco [11] - 27:16, 30:1, 30:6, 30:20, 33:12, 33:19, 65:2, 65:4, 68:22, 69:16
owe [1] - 37:6
owed [7] - 29:25, 30:1, 31:9, 36:25, 38:22, 68:13, 75:4
owes [1] - 37:25
owing [8] - 26:11, 33:11, 33:14, 33:17, 33:20, 34:7, 34:14, 34:23
own [8] - 5:11, 28:6, 41:13, 42:21, 60:3, 69:13, 69:14, 80:2

P

p.m [1] - 110:13
package [1] - 41:11
page [6] - 21:23, 43:3, 66:19, 66:25, 69:22, 75:6
pages [4] - 19:24, 19:25, 21:17, 21:18
paid [19] - 23:17, 26:5, 27:15, 31:16, 33:11, 33:16, 33:22, 34:13, 34:16, 34:25, 35:10, 35:16, 36:21, 37:9, 38:1, 61:15, 75:8, 75:9, 81:13
painting [1] - 32:2
paper [1] - 98:19
papers [1] - 106:17
paragraph [93] - 22:25, 23:6, 23:14, 23:23, 24:1, 24:2, 24:9, 25:3, 25:6, 25:9, 25:12, 25:15, 25:17, 25:24, 26:15, 26:24, 27:2, 35:3, 35:19, 36:13, 36:18, 40:3, 40:7, 41:14, 42:20, 52:7, 53:11, 57:18, 57:21, 60:10, 60:25, 61:10, 61:20, 62:9, 62:11, 62:22, 64:2, 64:13, 65:9, 66:19, 67:1, 67:2, 68:19, 68:20, 69:21, 70:10, 70:19, 70:21, 71:1, 72:14, 73:4, 75:1, 75:7, 75:19, 75:21, 81:9, 83:13, 83:18, 83:20, 84:2, 84:7, 84:16, 84:25, 85:11, 85:18, 86:1, 86:2, 86:4, 86:10, 86:11, 87:2, 87:6, 87:13, 87:14, 87:15, 87:19, 88:8, 89:1, 89:9, 89:15, 89:24, 90:2, 91:25, 92:23, 96:16, 102:1, 103:22, 105:21
paragraphs [2] - 75:8, 83:17
paraphrase [1] - 89:11
parole [2] - 78:6, 78:9
part [20] - 20:23, 30:4, 30:7, 41:10, 43:4, 52:16, 53:1, 53:11, 54:6, 55:12, 59:1, 61:25, 62:21, 74:6, 80:2, 83:3, 90:10, 98:21, 108:24, 108:25
partially [1] - 33:5
participate [4] - 9:21, 86:18, 101:21, 102:1
participated [1] - 32:23
particular [9] - 12:16, 14:6, 21:8, 54:20, 58:22, 58:23, 64:6, 67:20, 92:22
particularly [1] - 62:2
parties [41] - 3:5, 19:23, 23:12, 24:21, 25:22, 26:9, 26:16, 26:19, 26:20, 35:21, 40:4, 44:25, 46:10, 48:9, 49:16, 49:23, 49:25, 51:24, 53:5, 54:14, 57:11, 57:14, 57:17, 58:2, 82:20, 83:6, 83:8, 89:16, 89:18, 90:22, 91:7, 91:13, 96:21, 97:12, 98:2, 101:19, 102:3, 103:19, 106:5
parties' [2] - 44:24, 109:12
partner [11] - 29:11, 29:14, 30:11, 31:6, 64:22, 65:7, 65:16, 65:18, 66:21, 68:15
party [10] - 20:6, 26:6, 33:22, 34:17, 34:25,

35:10, 35:17, 36:21, 75:8, 84:12
**pass** [1] - 3:6
**past** [3] - 73:2, 73:3, 96:13
**patch** [1] - 9:16
**patents** [1] - 36:20
**Patrick** [3] - 30:21, 68:23, 69:2
**pause** [1] - 86:5
**pay** [20] - 3:5, 4:17, 23:4, 23:17, 23:18, 25:16, 29:21, 30:1, 30:8, 30:17, 31:18, 34:20, 36:3, 61:14, 61:16, 81:5, 81:11, 81:17, 81:21, 104:9
**payment** [13] - 28:18, 30:2, 30:19, 30:20, 31:13, 31:17, 32:6, 34:14, 68:22, 68:25, 78:21
**payments** [9] - 28:12, 29:24, 30:16, 31:19, 31:22, 31:23, 33:17, 70:17, 75:15
**payoff** [5] - 37:16, 38:6, 38:8, 38:12, 38:21
**payout** [2] - 37:3, 37:8
**payroll** [1] - 30:6
**PC** [4] - 27:16, 30:1, 33:12, 33:19
**PC's** [1] - 30:6
**penalties** [15] - 4:22, 5:2, 23:7, 26:5, 33:24, 34:1, 34:16, 34:24, 35:17, 35:23, 36:4, 36:6, 37:15, 61:1, 61:4
**pending** [6] - 4:19, 16:17, 61:5, 106:6, 106:8, 108:13
**people** [2] - 15:24, 86:8
**per** [1] - 23:12
**percent** [1] - 31:8
**perform** [1] - 87:16
**performed** [1] - 20:8
**perhaps** [2] - 41:1, 43:13
**period** [29] - 15:6, 28:10, 41:24, 58:10, 58:11, 58:15, 58:17, 58:20, 58:21, 64:10, 64:23, 78:8, 78:12, 78:13, 83:14, 83:18, 83:19, 84:5, 85:6, 85:7, 85:22, 86:12, 88:9, 88:12, 91:8,

106:6, 106:9
**perjury** [2] - 11:16, 93:15
**permanent** [1] - 85:22
**permission** [1] - 3:6
**permitted** [2] - 2:15, 2:16
**permitting** [1] - 59:24
**persist** [1] - 79:13
**person** [4] - 4:11, 75:9, 83:24, 91:15
**personal** [12] - 28:11, 30:18, 30:23, 30:24, 31:21, 32:25, 33:2, 73:7, 73:14, 73:17, 73:24, 77:21
**personally** [2] - 29:25, 102:5
**personnel** [1] - 2:18
**perspective** [2] - 46:13, 74:8
**phrasing** [1] - 43:12
**physician** [1] - 12:23
**picks** [1] - 63:16
**piecemeal** [1] - 50:13
**place** [3] - 92:3, 92:17, 97:24
**placed** [1] - 11:12
**places** [1] - 81:8
**plan** [1] - 6:11
**planned** [2] - 4:2, 6:14
**planning** [1] - 109:14
**plans** [3] - 8:25, 32:3, 86:23
**plea** [89] - 3:2, 3:6, 3:12, 11:6, 11:9, 17:8, 17:17, 17:18, 17:19, 17:25, 18:7, 18:10, 18:16, 18:22, 18:24, 19:3, 19:11, 19:18, 20:7, 21:14, 22:8, 22:18, 26:9, 41:3, 41:7, 41:9, 41:23, 41:24, 42:2, 42:20, 42:21, 43:16, 43:17, 43:18, 43:23, 44:2, 44:6, 44:11, 44:17, 45:2, 45:16, 47:3, 47:8, 47:12, 47:14, 47:18, 48:3, 48:19, 48:21, 50:20, 50:23, 51:12, 51:15, 51:21, 52:22, 53:16, 59:3, 59:4, 59:18, 59:21, 59:24, 60:16, 61:3, 61:17, 79:7, 79:13, 80:14, 92:21, 97:11, 97:18, 98:23, 104:2, 104:20, 104:22, 105:4,

105:9, 105:10, 107:5, 107:15, 107:24, 108:10, 108:19, 108:25, 109:3, 109:15
**Plea** [53] - 1:10, 17:6, 21:15, 21:23, 39:15, 39:24, 40:12, 40:19, 40:22, 45:6, 45:11, 46:25, 47:3, 51:24, 52:1, 52:5, 52:6, 52:11, 52:15, 53:1, 53:3, 53:21, 54:6, 54:8, 55:1, 55:12, 55:14, 56:4, 57:15, 59:6, 59:12, 59:22, 61:21, 62:1, 81:17, 82:13, 82:16, 89:6, 89:21, 90:3, 104:8, 104:17, 105:1, 107:12, 108:6, 108:8, 108:11, 108:14, 108:16, 109:4, 109:7, 109:8
**plead** [18] - 6:4, 6:8, 23:2, 39:20, 40:19, 41:4, 44:3, 44:5, 45:11, 45:17, 49:22, 51:13, 78:23, 79:11, 79:12, 98:25, 108:13, 109:8
**pleading** [7] - 16:16, 23:24, 42:18, 43:5, 60:3, 79:2, 108:15
**pleads** [4] - 19:13, 82:10, 82:14, 82:15
**pleas** [2] - 18:14, 18:15
**plop** [1] - 104:5
**plus** [3] - 34:15, 34:24, 37:15
**point** [8] - 6:14, 53:18, 57:20, 67:20, 67:24, 82:9, 95:23, 109:6
**pointed** [3] - 70:21, 81:7, 101:11
**points** [3] - 74:9, 81:6, 103:4
**political** [2] - 21:6, 97:22
**politicized** [2] - 98:2, 99:23
**pop** [1] - 3:18
**popping** [1] - 3:20
**Porsche** [1] - 31:23
**portion** [3] - 15:4, 22:16, 97:15
**position** [13] - 7:19, 37:25, 38:3, 41:13, 43:14, 44:24, 50:15,

57:14, 62:24, 63:6, 104:17, 106:15, 107:17
**positive** [1] - 63:4
**possess** [3] - 9:3, 9:5, 91:3
**possessed** [1] - 58:17
**possessing** [3] - 83:23, 85:20, 86:16
**possession** [2] - 4:10, 57:23
**possibility** [1] - 49:1
**possible** [1] - 84:13
**possibly** [1] - 64:11
**potential** [1] - 32:17
**power** [1] - 20:15
**powers** [8] - 20:20, 47:24, 48:10, 48:14, 91:20, 95:14, 99:10
**practically** [1] - 53:15
**practice** [1] - 102:14
**practitioner** [2] - 9:7, 9:11
**precedent** [5] - 46:1, 94:7, 94:9, 95:3, 103:5
**precisely** [1] - 106:22
**preclude** [1] - 68:4
**predicated** [1] - 101:13
**predict** [1] - 78:3
**preliminary** [5] - 5:20, 6:9, 6:13, 56:1, 56:3
**preparations** [2] - 32:7, 72:14
**prepare** [4] - 29:4, 29:19, 32:11, 77:4
**prepared** [7] - 29:6, 34:6, 36:24, 57:20, 80:19, 80:22
**preparing** [1] - 32:14
**preponderance** [1] - 87:25
**prescribed** [2] - 9:7, 9:11
**present** [1] - 88:1
**presented** [6] - 17:9, 17:10, 20:11, 20:12, 62:1, 87:25
**presentence** [2] - 77:5, 78:2
**presently** [2] - 5:15, 15:19
**preserved** [1] - 86:22
**prestigious** [2] - 27:17, 62:23
**Pretrial** [3] - 86:14, 86:19, 86:24
**pretrial** [8] - 7:18, 8:4, 8:5, 8:13, 9:13, 9:23,

56:9, 92:14
**prevailing** [1] - 84:12
**previously** [3] - 23:8, 32:16, 75:3
**primarily** [1] - 13:25
**prison** [2] - 78:17, 78:18
**private** [3] - 27:13, 62:13, 62:16
**probable** [2] - 5:22, 84:8
**Probation** [4] - 77:4, 86:14, 86:19, 86:24
**probation** [15] - 8:22, 24:22, 25:5, 46:6, 46:7, 46:12, 51:5, 53:6, 77:16, 78:1, 78:14, 78:15, 78:18, 83:16, 110:5
**problem** [2] - 103:24, 107:25
**problems** [1] - 73:1
**Procedure** [2] - 17:12, 85:9
**procedure** [3] - 25:10, 87:15, 103:22
**procedures** [1] - 87:13
**proceed** [4] - 3:5, 50:1, 96:8, 96:9
**proceeding** [6] - 16:13, 25:8, 45:1, 88:23, 106:21, 110:15
**proceedings** [2] - 2:15, 7:7
**Process** [1] - 7:2
**process** [14] - 21:6, 33:1, 37:3, 37:5, 37:6, 38:14, 50:2, 51:7, 73:5, 77:2, 77:14, 88:2, 88:3, 99:9
**processing** [1] - 110:5
**produce** [2] - 5:21, 7:4
**produced** [1] - 7:13
**produces** [1] - 38:14
**professional** [2] - 28:2, 64:16
**proffer** [1] - 102:14
**profligate** [1] - 30:15
**progeny** [1] - 7:3
**program** [10] - 9:21, 14:2, 15:1, 15:3, 15:6, 71:18, 71:20, 71:22, 72:6
**programs** [5] - 13:16, 14:6, 31:24, 71:2, 72:2
**progressed** [2] - 27:24, 32:15

prohibited [5] - 9:9, 9:12, 9:17, 9:19, 99:25
promise [2] - 40:17, 45:8
promised [1] - 54:14
promises [10] - 26:18, 26:20, 39:9, 39:14, 39:16, 39:19, 42:22, 59:11, 59:16, 87:17
proof [3] - 79:21, 81:25, 82:7
proper [1] - 101:25
properly [1] - 36:7
propose [2] - 103:14, 103:18
proposed [1] - 11:1
propriety [1] - 108:2
prosecute [17] - 40:8, 41:19, 45:9, 45:20, 45:21, 46:2, 46:17, 48:4, 54:14, 58:19, 62:4, 88:13, 89:1, 89:3, 93:5, 104:10, 105:5
prosecuted [1] - 94:19
prosecution [17] - 5:6, 10:11, 11:15, 23:12, 40:14, 51:1, 52:19, 52:21, 84:15, 88:18, 88:21, 89:8, 90:23, 93:16, 98:18
prosecutor [8] - 20:23, 22:17, 41:1, 80:18, 91:19, 92:15, 95:22, 96:3
prosecutorial [2] - 21:10, 21:11
protection [6] - 40:14, 89:7, 97:24, 98:17, 99:1, 100:2
prove [7] - 23:15, 61:12, 61:13, 61:18, 80:9, 80:20, 80:23
provide [7] - 8:25, 29:8, 32:17, 40:14, 77:13, 86:23, 89:7
provided [2] - 24:10, 40:4
provides [18] - 22:25, 23:23, 24:2, 24:5, 24:9, 25:3, 25:6, 25:15, 25:17, 26:15, 83:13, 83:18, 83:20, 84:2, 84:16, 84:25, 85:11, 87:19
providing [1] - 32:20
proving [1] - 79:19
provision [31] - 17:8, 18:17, 40:21, 41:8, 51:16, 51:19, 55:12, 58:9, 60:19, 75:19, 75:21, 76:10, 86:2, 89:14, 89:21, 92:22, 93:9, 95:11, 98:7, 98:14, 99:15, 99:17, 100:14, 100:15, 101:20, 102:1, 103:19, 103:20, 104:9, 105:18, 105:23
provisions [9] - 10:23, 21:14, 26:24, 50:20, 51:20, 60:7, 94:5, 102:18, 104:14
psychiatrist [1] - 12:23
PT [1] - 69:16
public [4] - 21:20, 82:19, 83:6, 89:17
publicly [2] - 89:17, 97:13
published [1] - 28:6
punishment [1] - 77:13
purchase [4] - 85:6, 85:16, 85:20, 85:25
purchasing [1] - 85:20
purposes [2] - 26:13, 38:5
pursuant [12] - 7:1, 7:3, 18:3, 24:8, 24:13, 24:18, 47:4, 84:11, 84:23, 87:13, 102:17, 108:15
pursue [2] - 54:5, 98:10
pursued [2] - 49:17, 94:17
purview [2] - 51:18, 91:19
pushing [1] - 28:15
put [8] - 27:6, 51:16, 51:19, 58:6, 80:3, 80:4, 104:4, 104:10
puts [2] - 53:17, 95:12
putting [5] - 38:6, 50:21, 72:24, 73:5, 98:7

## Q

Queen [1] - 102:15
questions [12] - 3:19, 11:11, 11:12, 11:14, 12:3, 20:20, 27:1, 35:2, 38:25, 45:4, 92:7
quite [1] - 64:10
quote [1] - 40:6
quoted [1] - 72:4

## R

raise [3] - 11:20, 20:19, 91:10
raised [1] - 106:22
random [1] - 9:14
Range [1] - 90:19
range [2] - 25:2, 36:5
rather [2] - 98:2, 107:18
reached [3] - 22:21, 39:4, 51:23
reaching [1] - 29:9
read [15] - 8:6, 17:2, 17:4, 22:4, 22:17, 61:22, 68:2, 70:18, 76:3, 80:21, 86:1, 94:10, 96:24, 105:13, 107:9
reading [3] - 17:3, 94:4, 94:10
ready [4] - 3:5, 43:17, 43:24, 45:1
reaffirmed [1] - 44:10
really [7] - 48:5, 51:22, 52:25, 56:2, 100:4, 105:12, 105:14
reason [3] - 39:23, 43:23, 45:5
reasonable [5] - 61:13, 79:20, 79:22, 80:9, 106:24
reasons [2] - 25:3, 90:22
rebut [1] - 88:2
receipts [2] - 33:13, 33:19
receive [1] - 76:20
received [18] - 15:11, 16:12, 16:16, 16:23, 19:23, 22:8, 30:19, 31:2, 31:19, 60:23, 68:21, 68:25, 69:2, 69:22, 70:2, 70:3, 76:1, 81:14
recent [2] - 14:11, 90:19
recently [1] - 12:23
recess [2] - 43:8, 57:7
recitation [2] - 81:25, 82:6
recitations [1] - 82:3
recited [1] - 22:20
recites [1] - 37:22
recollection [1] - 13:9
recommend [1] - 25:5
recommendation [2] - 18:2, 107:16
recommendations [2] - 59:22, 59:23
recommended [2] - 7:21, 52:1
recommending [1] - 104:2
reconduction [1] - 24:19
record [9] - 8:6, 11:22, 22:16, 27:6, 58:6, 59:16, 61:22, 89:12, 97:10
recording [1] - 2:14
records [2] - 73:21, 73:22
redo [1] - 20:16
reduce [1] - 24:17
reduction [3] - 24:16, 33:3, 33:5
reference [7] - 52:4, 52:11, 52:15, 65:2, 70:19, 75:8
referenced [6] - 21:19, 27:5, 65:14, 82:12, 82:13, 82:22
references [5] - 35:10, 55:5, 61:20, 62:19, 75:2
referencing [1] - 73:8
referral [1] - 7:7
referred [3] - 19:20, 52:8, 84:18
referring [3] - 64:9, 64:16, 66:24
refers [7] - 36:13, 36:18, 41:18, 64:13, 64:14, 66:2, 73:25
reflect [2] - 19:7, 39:3
reflects [1] - 22:21
refrain [2] - 86:15, 86:16
regard [5] - 49:10, 49:21, 73:17, 84:12, 103:18
regarding [3] - 6:13, 22:8, 87:12
regardless [2] - 9:9, 59:2
regards [1] - 99:7
Registration [1] - 55:8
regular [1] - 103:17
rehab [2] - 31:24, 71:3
reject [15] - 18:7, 18:15, 18:19, 19:10, 20:7, 47:11, 47:17, 47:25, 48:2, 48:19, 48:21, 59:23, 104:17, 107:10, 109:3
rejecting [1] - 19:3
relapsed [1] - 27:23
relate [6] - 19:3, 41:10, 57:23, 58:10, 58:22, 73:18
related [7] - 3:24, 45:22, 49:3, 53:9, 93:13, 93:15, 93:17
relates [4] - 27:4, 57:21, 63:21, 97:11
relating [2] - 29:1, 88:15
relation [1] - 83:21
relations [2] - 32:5, 32:15
relationship [3] - 28:3, 64:16, 64:18
relationships [2] - 64:19
release [14] - 4:23, 5:5, 7:18, 8:4, 8:5, 8:8, 10:8, 10:10, 23:11, 78:13, 78:15, 93:23, 99:5, 110:3
released [1] - 78:8
relevant [13] - 24:8, 27:8, 35:4, 35:15, 36:2, 52:9, 53:9, 53:14, 84:1, 85:21, 89:19, 89:22, 92:20
relief [1] - 76:19
rely [2] - 44:16, 98:3
relying [3] - 39:18, 40:17, 45:8
remain [1] - 28:18
remained [4] - 30:21, 32:1, 34:10
remedies [1] - 88:6
remedy [5] - 88:8, 88:10, 88:11, 93:4, 94:1
Remedy [4] - 88:13, 88:23
remember [1] - 62:25
reminded [1] - 29:13
reminding [1] - 2:14
remote [1] - 9:16
repeatedly [3] - 29:7, 29:21, 92:16
report [6] - 8:22, 56:22, 56:24, 77:5, 77:7, 78:2
reported [7] - 33:9, 33:13, 33:15, 33:19, 34:11, 34:22, 36:25
Reporter [1] - 110:17
represent [1] - 5:12
representation [3] - 5:17, 16:23, 32:19
representations [2] - 26:18, 26:21

represented [2] - 5:9, 5:16
repudiating [1] - 87:8
request [2] - 20:6, 107:16
requested [5] - 9:1, 28:14, 86:24, 100:21, 106:2
require [2] - 18:15, 88:22
required [10] - 6:19, 8:16, 9:13, 23:18, 34:21, 61:15, 71:23, 77:3, 81:13, 109:1
requirement [2] - 94:21, 94:25
requires [1] - 107:18
reservation [1] - 43:18
residence [1] - 8:14
residing [2] - 8:23, 9:2
resolution [2] - 102:4, 102:11
resolve [2] - 44:21, 106:5
resolved [1] - 106:15
respect [6] - 10:15, 52:21, 76:1, 85:1, 85:3, 85:14
respectfully [1] - 96:11
respond [1] - 20:4
response [1] - 50:7
responsibility [7] - 11:8, 24:12, 32:22, 77:10, 84:17, 87:23, 93:2
rest [3] - 50:2, 59:9, 92:15
restitution [9] - 5:5, 23:11, 25:24, 26:1, 26:8, 36:19, 38:17, 38:22, 78:21
Restitution [1] - 25:25
result [6] - 2:18, 10:8, 10:11, 25:1, 30:12, 37:25
resulting [1] - 33:2
retains [1] - 25:7
return [11] - 28:16, 28:17, 31:14, 31:15, 34:5, 34:8, 34:15, 36:24, 37:5, 37:15
returns [22] - 28:12, 28:15, 29:5, 29:7, 29:12, 29:15, 29:17, 29:20, 29:22, 30:18, 31:9, 32:8, 32:12, 32:14, 32:17, 32:22, 33:1, 33:7, 36:23, 37:7, 73:6, 74:8
Revenue [9] - 26:6, 26:10, 29:18, 30:3, 33:8, 33:23, 34:9, 36:21, 74:20
review [9] - 20:1, 20:5, 25:10, 25:13, 29:8, 76:5, 77:7, 96:6, 109:13
reviewed [4] - 29:12, 73:21, 92:12, 92:13
reviewing [1] - 78:2
revocation [1] - 10:9
revoked [1] - 78:16
rewrite [1] - 57:25
rhetorical [1] - 42:8
RICHARD [1] - 2:6
rights [5] - 76:11, 76:25, 79:11, 80:16, 85:8
rise [3] - 11:20, 43:7, 57:6
Robert [5] - 2:25, 3:3, 11:23, 27:9, 83:11
ROBERT [3] - 1:6, 11:24, 11:25
role [16] - 17:22, 18:6, 18:10, 18:18, 19:4, 46:11, 47:11, 48:15, 50:19, 94:3, 103:2, 104:5, 107:5, 107:8, 107:19, 107:25
roles [1] - 17:24
Roman [2] - 83:8, 83:12
Romanian [1] - 29:1
Rosemont [4] - 62:17, 64:21, 65:1, 65:25
routinely [2] - 25:20, 28:14
rubber [5] - 51:14, 104:1, 104:21, 107:3, 107:11
rule [11] - 18:17, 19:1, 48:16, 51:3, 77:17, 85:10, 104:19, 107:9, 107:16, 107:18
Rule [15] - 17:10, 17:17, 17:23, 18:1, 18:3, 18:10, 18:14, 41:7, 41:17, 47:4, 51:15, 51:16, 85:9, 107:13
rules [1] - 17:8
Rules [1] - 17:11
rulings [1] - 25:7
run [1] - 92:4

**S**

sample [1] - 8:10
sanctions [2] - 7:7, 32:17
satisfied [4] - 16:22, 22:7, 60:22, 75:25
save [1] - 4:7
schedule [1] - 106:12
scheme [1] - 102:25
Schiller [6] - 63:3, 63:10, 63:17, 63:22, 66:16, 69:9
school [4] - 8:1, 12:9, 12:10, 12:12
Schwerin [3] - 65:8, 66:22, 68:16
scope [4] - 48:5, 54:15, 57:21, 94:18
screening [2] - 9:17, 9:19
scrutiny [1] - 97:9
seal [1] - 25:19
sealed [5] - 21:19, 22:14, 26:17, 97:15, 97:17
Sealed [1] - 22:12
seated [7] - 2:13, 3:19, 12:1, 19:22, 43:9, 57:8, 58:25
second [6] - 24:24, 62:11, 67:1, 68:20, 69:22, 86:6
Section [6] - 4:18, 8:11, 9:6, 23:5, 77:11, 83:25
section [2] - 55:6, 105:8
Sections [1] - 4:13
security [1] - 2:18
see [13] - 10:25, 37:12, 57:2, 67:4, 67:7, 71:3, 74:4, 79:16, 82:20, 91:16, 92:18, 98:6, 109:25
seeing [1] - 99:22
seek [7] - 8:24, 86:15, 87:12, 87:21, 87:24, 92:25, 101:16
seeking [4] - 31:11, 32:5, 34:18, 84:5
seem [2] - 50:18, 98:16
self [17] - 26:3, 33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:4, 37:12, 37:14, 37:18, 75:2
self-assessed [15] - 33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:12, 37:14, 37:18, 75:2
send [4] - 10:22, 82:21, 92:19, 106:10
sending [1] - 29:10
Seneca [3] - 64:21, 65:1, 65:25
sense [5] - 46:20, 56:16, 56:23, 106:3, 106:4
senses [1] - 93:24
sent [2] - 29:12, 66:20
sentence [23] - 8:18, 17:18, 19:8, 24:17, 25:2, 25:5, 52:1, 59:24, 62:11, 63:16, 63:20, 74:9, 75:22, 76:12, 76:15, 76:20, 77:12, 77:22, 77:23, 78:1, 78:4, 78:20, 79:5
sentenced [1] - 78:12
sentences [1] - 63:17
Sentencing [3] - 24:9, 24:13, 24:19
sentencing [16] - 19:4, 24:2, 25:1, 25:4, 25:9, 25:16, 35:5, 35:22, 37:19, 38:6, 47:15, 74:7, 77:2, 77:6, 77:15, 79:1
separate [13] - 3:3, 11:15, 18:17, 22:13, 38:14, 42:9, 42:10, 42:15, 57:15, 69:7, 71:22, 92:16, 98:16
separately [1] - 97:21
separation [7] - 20:20, 47:24, 48:10, 48:14, 91:19, 95:14, 99:10
September [1] - 56:22
series [2] - 11:10, 32:23
serious [3] - 20:14, 20:17, 88:24
seriousness [2] - 19:7, 88:7
serve [4] - 8:17, 26:8, 78:16, 78:18
served [2] - 27:12, 62:12
Service [9] - 26:6, 26:10, 29:18, 30:3, 33:8, 33:23, 34:9, 36:21, 74:20
services [4] - 8:13, 9:13, 9:23, 27:14
Services [2] - 86:14, 86:19
set [15] - 2:23, 24:5, 56:1, 56:8, 83:17, 84:23, 84:24, 85:4, 85:15, 85:16, 87:13, 87:17, 88:16, 89:18, 90:10
sets [1] - 90:3
severability [3] - 98:16, 100:15, 100:18
several [4] - 29:12, 73:18, 74:11, 81:7
severe [2] - 59:25, 79:5
shake [1] - 74:7
shall [7] - 83:20, 84:22, 85:7, 87:18, 88:1, 89:17, 90:10
shared [1] - 59:19
show [1] - 5:22
showed [1] - 34:6
showing [1] - 97:7
side [2] - 22:10, 22:12
side-bar [2] - 22:10, 22:12
sign [8] - 22:1, 50:22, 51:18, 51:19, 92:17, 94:6, 104:7, 110:3
signature [1] - 29:8
signatures [2] - 21:23, 21:24
signed [7] - 22:3, 26:20, 29:16, 32:19, 42:13, 42:15, 90:11
significant [5] - 28:2, 30:12, 35:17, 64:15, 81:19
signing [2] - 88:19, 88:21
signs [2] - 53:16, 83:16
silent [1] - 19:1
similar [3] - 45:25, 89:21, 102:24
simply [1] - 53:12
single [1] - 13:20
sit [5] - 18:22, 46:22, 50:16, 54:12, 102:16
situation [3] - 44:22, 49:21, 93:20
situations [1] - 73:16
six [4] - 13:12, 21:17, 30:22, 31:8
Sixth [1] - 85:8
smack [1] - 104:4
SMITH [1] - 2:3
sober [5] - 31:25, 32:1, 71:3, 72:21,

74:24
**sobriety** [5] - 71:10, 71:17, 72:3, 72:11, 84:21
**sole** [2] - 26:13, 88:24
**someone** [4] - 37:11, 73:1, 86:6, 98:3
**sorry** [5] - 14:6, 14:20, 16:1, 67:5, 108:22
**sort** [4] - 14:7, 19:19, 38:13, 64:14
**sounds** [1] - 107:4
**space** [1] - 57:19
**speaking** [1] - 42:5
**special** [5] - 4:24, 5:6, 23:11, 25:16, 78:22
**specific** [4] - 17:18, 57:21, 60:7, 88:9
**specifically** [3] - 54:17, 58:16, 61:12
**specified** [2] - 88:6, 88:12
**speedy** [1] - 85:8
**spell** [2] - 11:21, 65:19
**spend** [3] - 30:22, 31:1, 81:20
**spending** [1] - 30:15
**spent** [3] - 31:20, 32:2, 49:13
**spring** [1] - 28:9
**square** [1] - 35:14
**squarely** [1] - 92:15
**stable** [1] - 31:5
**stamp** [4] - 51:15, 104:1, 107:3, 107:11
**stamping** [1] - 104:21
**stand** [2] - 41:13, 44:10
**standard** [6] - 10:24, 21:20, 35:24, 79:19, 79:20, 96:6
**standing** [4] - 8:3, 27:22, 64:3, 64:21
**stands** [3] - 41:23, 42:21, 92:22
**start** [3] - 2:13, 6:21, 11:3
**started** [4] - 32:13, 63:3, 64:23, 65:15
**starting** [5] - 67:1, 86:4, 86:10, 87:14, 89:15
**state** [4] - 8:7, 9:10, 11:21, 86:25
**State's** [1] - 41:12
**statement** [41] - 6:21, 6:23, 23:21, 24:6, 37:16, 37:22, 40:10, 40:11, 52:22, 53:20, 53:21, 53:24, 53:25, 55:1, 55:4, 57:22, 58:12, 61:21, 80:22, 81:6, 81:8, 81:17, 84:18, 85:4, 85:17, 87:3, 87:7, 87:9, 87:10, 88:16, 89:4, 89:5, 89:12, 89:19, 91:16, 91:17, 91:22, 92:3, 102:22
**statements** [5] - 6:19, 6:20, 26:18, 26:21, 102:17
**states** [2] - 40:7, 60:10
**STATES** [3] - 1:1, 1:3, 1:18
**States** [58] - 1:14, 1:21, 2:23, 2:25, 3:3, 4:9, 4:13, 4:14, 4:17, 8:10, 9:6, 10:5, 10:16, 18:3, 20:15, 20:16, 23:2, 23:5, 24:8, 24:10, 24:17, 25:5, 25:6, 26:14, 40:8, 46:14, 77:4, 77:11, 83:9, 83:10, 83:25, 84:3, 84:7, 84:10, 84:22, 85:13, 86:3, 87:9, 87:12, 87:19, 87:22, 87:24, 88:5, 88:9, 88:10, 88:12, 88:13, 88:15, 88:22, 89:2, 90:4, 90:6, 90:11, 90:17, 92:24, 93:1, 103:1, 110:10
**status** [3] - 56:22, 56:24, 109:15
**statute** [12] - 51:18, 77:11, 77:21, 85:1, 85:5, 85:21, 88:18, 88:20, 91:25, 92:2, 92:13, 93:17
**statutory** [2] - 102:13, 102:25
**stay** [1] - 3:19
**stemmed** [1] - 30:4
**stenographic** [1] - 110:15
**step** [1] - 77:14
**stick** [1] - 110:1
**still** [9] - 31:6, 32:6, 37:11, 41:3, 42:17, 45:16, 51:11, 65:21, 79:6
**stipulate** [2] - 23:13, 89:18
**stipulation** [1] - 35:18
**stipulations** [3] - 24:1, 24:22, 24:25
**stop** [2] - 6:20, 6:22
**straightforward** [1] - 104:13
**Street** [1] - 1:11
**strict** [1] - 97:9
**structure** [2] - 31:5, 95:19
**structured** [2] - 96:12, 96:13
**struggle** [2] - 27:22, 64:3
**struggles** [2] - 64:9, 64:14
**struggling** [1] - 91:15
**sub** [1] - 88:8
**subject** [7] - 8:5, 26:12, 35:13, 52:20, 85:12, 86:13, 93:5
**submissions** [4] - 20:2, 20:6, 20:11, 109:13
**submit** [5] - 8:21, 9:12, 20:8, 86:17, 106:25
**submits** [1] - 86:20
**submitted** [1] - 29:16
**subparagraph** [3] - 24:5, 85:18, 86:11
**subsection** [7] - 59:3, 98:23, 104:21, 105:7, 105:9, 107:24
**subsequent** [2] - 25:8, 26:23
**subsequently** [1] - 24:10
**substance** [16] - 4:12, 9:5, 9:13, 9:17, 9:19, 9:22, 27:22, 28:7, 29:13, 71:7, 83:24, 86:16, 86:17, 86:18, 104:3, 105:5
**substantial** [7] - 27:19, 28:21, 30:5, 31:18, 65:10, 67:21, 81:5
**substantially** [1] - 58:5
**successfully** [1] - 28:4
**sued** [1] - 32:4
**sufficient** [3] - 5:21, 30:7, 77:12
**suggest** [3] - 19:2, 20:13, 104:21
**suit** [1] - 95:10
**sum** [1] - 31:21
**summarize** [4] - 57:12, 70:16, 80:19, 83:5
**summarized** [2] - 39:3, 61:2
**summary** [1] - 81:12
**summer** [2] - 28:9, 32:4
**supersedes** [1] - 26:17
**supervised** [8] - 4:23, 5:5, 23:11, 78:13, 78:15, 93:23, 99:5
**supervising** [3] - 8:13, 9:14, 9:24
**supervision** [5] - 8:21, 8:22, 86:13, 87:23, 93:2
**support** [2] - 32:6, 72:11
**supporting** [1] - 8:25
**supposed** [1] - 51:14
**Supreme** [1] - 108:11
**surprise** [8] - 30:10, 67:4, 67:9, 67:24, 68:1, 68:3, 68:8
**surrender** [1] - 8:17
**swear** [1] - 11:19
**sweat** [1] - 9:16
**sworn** [1] - 11:25
**System** [1] - 85:23
**system** [5] - 9:16, 30:6, 48:9, 79:21, 102:4

## T

**table** [1] - 36:5
**talks** [1] - 67:2
**tamper** [1] - 9:18
**target** [1] - 102:16
**taught** [1] - 8:1
**tax** [99] - 3:7, 3:12, 4:1, 4:17, 5:2, 6:4, 11:4, 16:15, 23:4, 23:17, 26:4, 26:11, 28:12, 28:16, 29:3, 29:5, 29:7, 29:17, 29:20, 29:22, 29:24, 30:3, 30:8, 30:12, 30:14, 30:16, 30:17, 30:21, 31:7, 31:9, 31:13, 31:16, 31:17, 31:18, 32:8, 32:12, 32:17, 32:22, 32:25, 33:3, 33:7, 33:8, 33:10, 33:14, 33:15, 33:20, 33:24, 34:1, 34:11, 34:12, 34:20, 34:21, 34:23, 36:4, 36:8, 36:19, 37:6, 37:19, 37:25, 41:2, 41:4, 45:15, 45:17, 45:22, 49:3, 49:10, 53:10, 53:25, 54:25, 57:23, 58:14, 58:20, 61:14, 61:15, 66:20, 66:21, 67:3, 67:17, 67:19, 67:23, 68:13, 72:15, 73:6, 73:12, 74:8, 75:2, 75:3, 75:9, 81:5, 81:11, 81:13, 81:14, 82:23, 89:20, 89:23
**taxes** [13] - 3:5, 26:11, 28:18, 29:21, 30:2, 31:8, 34:7, 35:10, 35:19, 35:20, 49:15, 72:23, 81:22
**taxpayers** [1] - 28:14
**technically** [1] - 71:13
**telephone** [1] - 8:14
**ten** [3] - 4:22, 49:14, 57:2
**term** [4] - 21:11, 78:12, 83:2, 85:21
**termination** [1] - 88:25
**terms** [30] - 18:18, 22:18, 25:21, 26:12, 40:9, 41:14, 43:24, 44:2, 44:22, 46:7, 46:8, 53:3, 54:25, 59:22, 61:2, 75:17, 83:1, 83:5, 83:12, 84:21, 84:23, 87:17, 89:3, 89:16, 90:4, 90:8, 98:12, 101:10, 105:1, 105:25
**testify** [3] - 80:2, 80:4, 88:7
**testifying** [1] - 6:1
**testimony** [1] - 104:23
**testing** [7] - 9:12, 9:14, 9:15, 9:16, 9:17, 9:19, 86:17
**THE** [455] - 1:1, 1:2, 1:13, 2:12, 3:8, 3:13, 3:17, 3:22, 4:6, 4:8, 4:20, 4:21, 4:25, 5:1, 5:7, 5:8, 5:14, 5:15, 5:18, 5:19, 6:2, 6:3, 6:6, 6:7, 6:10, 6:11, 6:18, 6:25, 7:1, 7:12, 7:15, 7:17, 7:22, 7:24, 8:2, 10:1, 10:2, 10:7, 10:13, 10:14, 10:19, 11:7, 11:8, 11:17, 11:18, 11:23, 12:1, 12:5, 12:6, 12:7, 12:9, 12:10, 12:11, 12:13, 12:14, 12:15, 12:16, 12:17, 12:19, 12:21, 12:22, 12:24, 12:25, 13:3, 13:5, 13:7, 13:8,

13:11, 13:14, 13:15, 13:19, 13:24, 14:1, 14:4, 14:5, 14:8, 14:9, 14:10, 14:11, 14:14, 14:15, 14:17, 14:19, 14:20, 14:21, 14:23, 14:25, 15:3, 15:5, 15:8, 15:9, 15:12, 15:13, 15:17, 15:18, 15:22, 15:23, 16:1, 16:3, 16:5, 16:6, 16:9, 16:11, 16:18, 16:19, 16:21, 16:22, 16:25, 17:1, 17:5, 17:6, 17:13, 17:16, 17:22, 18:4, 18:6, 18:9, 18:13, 18:20, 19:12, 19:17, 19:22, 20:22, 21:2, 21:13, 21:16, 21:17, 21:25, 22:1, 22:2, 22:3, 22:6, 22:7, 22:9, 22:10, 22:15, 26:25, 35:1, 35:9, 35:24, 36:1, 36:8, 36:13, 36:18, 37:10, 38:9, 38:19, 38:24, 39:5, 39:6, 39:8, 39:9, 39:13, 39:18, 39:21, 39:22, 39:25, 40:1, 40:20, 40:21, 40:24, 40:25, 41:5, 41:6, 41:16, 42:1, 42:7, 42:14, 42:24, 43:2, 43:9, 43:21, 44:1, 44:12, 44:20, 45:3, 45:7, 45:8, 45:12, 45:13, 45:18, 45:19, 46:5, 46:15, 46:21, 47:2, 47:6, 47:10, 47:14, 47:17, 47:21, 48:2, 48:7, 48:13, 48:18, 49:3, 49:5, 50:3, 50:9, 50:12, 50:16, 51:8, 52:3, 52:7, 52:11, 52:14, 52:17, 52:25, 54:4, 54:10, 54:17, 55:5, 55:10, 55:15, 55:19, 55:23, 56:7, 56:14, 56:21, 57:4, 57:8, 57:25, 58:3, 58:8, 58:13, 58:18, 58:25, 59:14, 59:15, 59:20, 59:21, 60:2, 60:3, 60:5, 60:6, 60:9, 60:10, 60:15, 60:16, 60:18, 60:19, 60:21, 60:22, 60:24, 60:25, 61:6, 61:7, 61:9, 61:10, 61:19, 61:20, 62:7, 62:8, 62:15, 62:18, 63:2, 63:5, 63:7, 63:8, 63:12, 63:13, 63:18, 63:19, 63:23, 63:24, 64:1, 64:8, 64:13, 64:18, 64:25, 65:3, 65:6, 65:8, 65:9, 65:15, 65:18, 65:19, 65:21, 65:22, 65:23, 66:1, 66:3, 66:6, 66:7, 66:8, 66:9, 66:12, 66:13, 66:15, 66:16, 66:17, 66:18, 66:23, 66:25, 67:5, 67:6, 67:7, 67:8, 67:10, 67:11, 67:12, 67:16, 68:2, 68:7, 68:10, 68:12, 68:14, 68:15, 68:17, 68:19, 68:24, 68:25, 69:2, 69:4, 69:5, 69:6, 69:8, 69:11, 69:13, 69:14, 69:16, 69:18, 69:19, 69:21, 70:5, 70:6, 70:10, 71:1, 71:4, 71:5, 71:9, 71:11, 71:12, 71:16, 71:17, 71:20, 71:22, 71:24, 72:1, 72:7, 72:8, 72:9, 72:12, 72:13, 72:17, 72:18, 72:20, 72:21, 72:22, 72:23, 72:24, 73:4, 74:1, 74:15, 74:23, 74:25, 75:1, 75:6, 75:11, 75:13, 75:14, 75:15, 75:16, 75:18, 75:24, 75:25, 76:2, 76:3, 76:7, 76:9, 76:13, 76:14, 76:16, 76:17, 76:22, 76:23, 77:9, 77:10, 78:5, 78:6, 78:10, 78:11, 78:19, 78:20, 78:24, 78:25, 79:3, 79:4, 79:9, 79:10, 79:18, 79:19, 79:25, 80:1, 80:6, 80:7, 80:12, 80:13, 80:17, 80:18, 80:24, 81:2, 81:23, 82:1, 82:2, 82:4, 82:5, 82:9, 86:5, 90:13, 90:16, 90:25, 91:14, 91:25, 92:5, 92:11, 93:10, 94:2, 94:10, 94:16, 94:21, 94:25, 95:3, 95:6, 95:11, 95:21, 96:1, 96:3, 96:23, 97:4, 97:6, 97:14, 98:5, 98:21, 99:12, 99:22, 100:11, 100:15, 100:20, 100:25, 101:22, 103:4, 103:24, 106:8, 107:4, 107:9, 107:23, 108:18, 108:21, 109:10, 109:11, 109:24, 110:7, 110:8, 110:12

**therapy** [1] - 9:22
**therefore** [1] - 81:10
**thinking** [2] - 50:5, 106:17
**thinks** [3] - 74:6, 98:18, 98:25
**third** [12] - 19:23, 20:6, 26:6, 33:22, 34:17, 34:25, 35:10, 35:17, 36:21, 68:19, 71:2, 75:8
**Third** [2] - 90:19, 97:8
**third-party** [1] - 20:6
**thirty** [4] - 56:12, 56:17, 84:4, 109:20
**thousand** [1] - 74:12
**threatened** [1] - 39:6
**threats** [1] - 59:17
**three** [7] - 4:23, 12:7, 21:23, 23:18, 24:20, 61:15, 77:14
**three-step** [1] - 77:14
**throes** [1] - 31:6
**throughout** [2] - 29:3, 29:7
**throw** [2] - 108:3, 108:5
**Thursday** [1] - 106:11
**timely** [7] - 29:19, 29:21, 30:8, 33:11, 33:16, 34:13, 34:19
**timing** [1] - 106:13
**Title** [2] - 23:5, 83:25
**today** [9] - 16:4, 16:13, 24:7, 53:18, 59:17, 78:3, 105:22, 108:8, 110:9
**today's** [3] - 45:1, 103:23, 106:21
**together** [3] - 26:17, 72:25, 73:5
**tolled** [2] - 85:7, 92:5
**took** [2] - 75:11, 75:13
**top** [1] - 75:6
**toss** [1] - 100:19
**total** [6] - 24:19, 33:9, 33:15, 34:12, 34:22, 63:21
**totaling** [2] - 27:19, 31:19
**towards** [3] - 30:2, 62:9, 64:14
**traded** [1] - 31:10
**traditional** [1] - 19:4
**transcript** [4] - 15:24, 106:20, 106:24, 110:15
**transfers** [2] - 30:11, 30:24
**travel** [3] - 8:25, 30:25, 86:23
**Treasury** [1] - 26:14
**treat** [1] - 64:5
**treated** [6] - 13:1, 13:10, 13:23, 14:2, 14:7, 73:20
**treatment** [13] - 13:3, 13:6, 14:2, 14:12, 14:13, 14:16, 15:11, 67:18, 67:19, 67:23, 72:6, 72:10, 86:18
**tremendous** [1] - 97:22
**trial** [11] - 23:16, 48:25, 56:13, 79:14, 80:1, 80:8, 80:14, 80:15, 80:16, 80:20, 85:8
**tried** [1] - 91:11
**trips** [2] - 31:24, 71:2
**true** [1] - 110:15
**truthful** [2] - 32:21, 87:4
**truthfully** [2] - 11:13, 11:14
**try** [2] - 57:11, 97:20
**trying** [11] - 37:11, 42:8, 48:15, 48:18, 55:10, 63:14, 67:5, 71:24, 91:18, 101:1, 105:20
**Tuesday** [1] - 106:10
**turn** [1] - 3:11
**turns** [1] - 98:19
**twelve** [2] - 5:3, 23:8
**twenty** [2] - 13:13, 83:14
**twenty-four** [1] - 83:14
**twice** [2] - 5:4, 23:9
**two** [21] - 3:4, 3:23, 4:2, 4:16, 10:19, 17:24, 23:17, 24:12, 24:16, 32:5, 43:14, 48:23, 49:25, 51:11, 61:14, 71:15, 83:12, 83:14, 88:5, 91:14
**two-year** [1] - 83:14
**typical** [1] - 75:17
**typically** [2] - 10:21, 46:24

## U

**U.S** [10] - 2:18, 24:13, 24:18, 49:13, 86:13, 86:19, 86:24, 102:13, 108:12, 110:18
**Ukrainian** [9] - 27:12, 29:1, 31:4, 62:12, 62:15, 62:19, 66:10, 69:25, 70:11
**ultimately** [3] - 31:14, 64:20, 74:19
**unanimously** [1] - 80:11
**unanticipated** [1] - 26:7
**unartful** [1] - 43:12
**unbelievable** [1] - 49:17
**unconstitutional** [6] - 48:14, 91:4, 99:21, 100:1, 100:11, 102:7
**under** [47] - 9:8, 11:12, 11:25, 12:23, 15:14, 15:19, 17:9, 17:10, 17:17, 17:23, 18:1, 18:10, 19:9, 22:12, 24:1, 25:19, 25:24, 28:21, 32:16, 36:7, 41:7, 45:2, 51:15, 51:16, 51:18, 55:7, 59:3, 59:5, 65:11, 71:6, 77:10, 77:13, 83:7, 84:3, 85:6, 85:8, 94:11, 98:23, 100:7, 103:21, 104:19, 104:20, 104:23, 105:4, 105:9, 107:5, 107:24
**understood** [2] - 24:21, 92:13
**undertaken** [1] - 67:18
**undertakings** [1] - 85:19
**undertook** [1] - 49:22
**unenforceable** [4] - 39:23, 42:16, 43:23, 44:5
**unfiled** [1] - 34:10
**unique** [1] - 82:24
**unitary** [1] - 100:17
**UNITED** [3] - 1:1, 1:3, 1:18
**United** [59] - 1:14, 1:21, 2:22, 2:24, 3:3, 4:9, 4:12, 4:14, 4:17, 8:10, 9:6, 10:5, 10:16, 18:3, 20:15, 20:16, 23:2, 23:5,

24:8, 24:10, 24:17, 25:4, 25:6, 26:14, 40:8, 41:12, 46:14, 77:4, 77:11, 83:9, 83:25, 84:3, 84:7, 84:10, 84:22, 85:13, 86:3, 87:9, 87:11, 87:19, 87:21, 87:24, 88:5, 88:9, 88:10, 88:12, 88:13, 88:14, 88:22, 89:2, 90:4, 90:6, 90:11, 90:17, 92:23, 93:1, 103:1, 110:10
**unlawful** [3] - 4:11, 83:23, 91:2
**unlawfully** [2] - 9:4, 86:15
**unless** [7] - 9:6, 26:23, 83:16, 90:10, 97:1, 98:10, 99:5
**unlike** [1] - 102:24
**unlikely** [1] - 76:18
**unsealed** [1] - 22:16
**unusual** [1] - 82:18
**up** [22] - 3:6, 3:18, 3:20, 7:25, 17:7, 22:10, 35:13, 43:13, 56:17, 56:21, 60:17, 63:16, 74:19, 80:15, 82:20, 100:19, 102:3, 103:23, 104:14, 104:15, 105:18, 110:5
**upwards** [1] - 77:23
**urine** [1] - 9:15
**user** [3] - 4:11, 83:23, 91:3

**V**

**valid** [14] - 39:23, 40:21, 42:16, 43:22, 44:4, 44:13, 44:15, 45:5, 46:13, 49:21, 59:7, 90:10, 100:13, 105:6
**validly** [1] - 49:10
**vary** [1] - 77:23
**ventures** [1] - 28:5
**venue** [6] - 23:1, 47:21, 47:22, 60:8, 60:12, 85:13
**version** [1] - 3:6
**versus** [2] - 2:25, 3:3
**vested** [1] - 21:11
**via** [1] - 85:24
**victim** [1] - 26:14
**Victim** [1] - 25:25
**victims** [1] - 26:2
**view** [14] - 17:22, 41:22, 46:11, 47:6, 47:25, 53:6, 53:7, 53:8, 53:12, 83:1, 107:22, 108:23
**views** [1] - 105:10
**VILLAZOR** [1] - 2:3
**violate** [2] - 8:7, 48:13
**violates** [2] - 99:15, 99:17
**violating** [2] - 7:5, 10:7
**violation** [12] - 4:12, 4:17, 23:5, 78:14, 83:24, 86:25, 88:14, 90:17, 93:22, 93:25, 99:5, 99:10
**virtually** [1] - 65:3
**vis** [2] - 18:18
**vis-a-vis** [1] - 18:18
**voice** [1] - 100:3
**void** [3] - 26:22, 56:5, 102:21
**voluntarily** [2] - 23:19, 76:24
**voluntary** [4] - 11:9, 18:1, 98:22, 98:25
**VOSR** [5] - 93:20, 99:3, 102:6, 102:24, 103:5
**VOSR's** [1] - 102:13

**W**

**wait** [1] - 18:23
**waive** [9] - 17:3, 17:4, 17:5, 56:3, 60:11, 79:11, 83:20, 84:25, 90:23
**waived** [4] - 76:24, 80:15, 92:1, 92:2
**waiver** [11] - 25:12, 47:21, 47:22, 60:12, 75:19, 75:20, 75:21, 75:22, 76:1, 76:3, 76:10
**waives** [2] - 22:25, 84:13
**waiving** [1] - 6:8
**walk** [4] - 10:25, 13:19, 21:13, 60:6
**Wallace** [1] - 2:22
**WALLACE** [2] - 1:19, 47:5
**wants** [2] - 57:13, 108:13
**warrant** [1] - 10:9
**warrants** [1] - 88:25
**watch** [1] - 2:16
**ways** [3] - 74:13, 101:16, 104:16
**weapon** [1] - 9:3
**wearing** [1] - 9:15
**Wednesday** [1] - 1:8
**week** [1] - 56:19
**weigh** [1] - 51:2
**weighing** [1] - 46:12
**well-documented** [3] - 27:21, 64:2, 64:5
**West** [1] - 65:16
**whatsoever** [3] - 7:16, 16:8, 26:22
**whichever** [2] - 5:4, 23:10
**whole** [4] - 49:11, 63:6, 90:9, 105:13
**wife** [1] - 32:1
**wildly** [1] - 31:2
**willful** [5] - 4:17, 23:4, 23:19, 61:16, 81:17
**willing** [1] - 44:2
**Wilmington** [1] - 1:12
**winter** [1] - 32:4
**wise** [6] - 22:23, 61:22, 77:1, 83:4, 101:4, 108:9
**WISE** [99] - 1:20, 2:21, 3:9, 4:4, 6:15, 7:11, 7:14, 7:20, 10:5, 10:16, 16:10, 17:10, 17:20, 17:24, 18:5, 18:8, 18:12, 18:14, 19:1, 19:16, 19:21, 20:18, 20:25, 21:6, 22:24, 27:7, 35:8, 35:16, 35:25, 36:12, 36:17, 36:23, 37:14, 38:3, 38:12, 38:21, 41:12, 41:22, 42:12, 42:19, 46:4, 46:9, 46:19, 47:1, 47:9, 47:13, 47:16, 47:19, 47:22, 48:6, 48:12, 48:17, 48:23, 49:4, 50:7, 50:11, 50:14, 51:23, 52:6, 52:9, 52:13, 52:16, 52:24, 53:3, 54:8, 54:16, 54:22, 55:9, 55:22, 58:11, 58:14, 68:11, 70:18, 75:5, 80:21, 81:1, 81:4, 83:7, 86:10, 90:20, 91:6, 91:24, 92:10, 93:12, 94:8, 94:15, 94:20, 94:24, 95:2, 95:5, 95:9, 101:10, 102:12, 106:19, 107:2, 107:7, 107:12, 109:23, 110:10
**Wise** [3] - 2:21, 39:3, 60:25
**wish** [2] - 5:16, 81:24
**wishes** [1] - 20:4
**withdraw** [5] - 26:9, 59:18, 59:24, 79:7, 107:15
**withdrawals** [3] - 30:10, 30:24, 31:22
**withdrawing** [1] - 30:5
**withholding** [2] - 30:12, 31:7
**withholdings** [2] - 30:8, 68:16
**WITNESS** [1] - 66:8
**witness** [1] - 102:16
**witnesses** [2] - 5:25, 79:16
**worsened** [1] - 28:7
**worth** [1] - 98:19
**worthwhile** [1] - 81:3
**write** [3] - 67:12, 67:21, 70:15
**writes** [1] - 37:5
**writing** [5] - 8:14, 8:24, 26:19, 86:23, 90:11
**written** [10] - 26:23, 39:2, 39:7, 39:10, 39:15, 50:23, 90:7, 98:19, 101:20, 102:3
**wrote** [1] - 64:9

**Y**

**year** [32] - 5:5, 23:10, 28:7, 28:13, 28:14, 28:20, 29:3, 30:9, 30:13, 31:9, 31:16, 33:21, 33:25, 34:2, 34:11, 34:21, 37:19, 37:23, 38:1, 49:17, 65:10, 67:3, 67:18, 67:19, 67:22, 68:9, 74:10, 74:13, 81:15, 81:16, 83:14, 84:1
**year-and-a-half** [1] - 33:21
**years** [11] - 4:22, 4:23, 12:7, 13:13, 26:11, 33:8, 49:14, 55:1, 62:25, 70:17, 73:12
**yesterday** [1] - 19:23
**Yi** [1] - 65:20
**yourself** [1] - 7:24

**Z**

**zero** [6] - 23:13, 26:3, 37:13, 38:10, 38:20

