DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone: (771) 217-6090
    E-mail:    LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:    SFM@usdoj.gov; CMR@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S FIFTH MOTION IN LIMINE TO EXCLUDE IRRELEVANT FACTUAL ISSUES; MEMORANDUM IN SUPPORT<br><br>Hearing Date:  November 25, 2024<br>Hearing Time:  10:00 a.m.<br>Location:     Courtroom of the Hon. Otis D. Wright II |

      Plaintiff, the United States of America, by and through its counsel of record, hereby submits this Fifth Motion In Limine to Exclude Irrelevant Factual Issues. As addressed in this motion, the United States moves to exclude the defendant from introducing evidence, argument, or questioning at trial related, directly or indirectly, to (1) the defendant's potential punishment; (2) his pretrial detention status or medical condition involving his eyes; (3) claims that the United States government directed the defendant to meet with

Burisma officials in 2017 or foreign intelligence officials in December 2023; (4) claims that the defendant's FBI Handling Agent used a "personal phone" to communicate with him; and (5) assertions that the defendant is "loyal" to the United States or a "servant of the United States." These topics and issues are irrelevant under Federal Rule of Evidence 401 and are unduly prejudicial under Federal Rule of Evidence 403. Moreover, several of these issues, such as the defendant's pretrial detention and eye issues, have been addressed previously and properly by this Court and have no role at trial. Other issues, such as claims involving U.S. government-directed meetings and the Handling Agent's use of a personal phone, are unfounded in fact and unsupported by evidence. Therefore, defense counsel should be excluded from raising each of these topics and issues before the jury.

This motion is based on the attached memorandum of points and authorities and the declaration of Leo J. Wise, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: November 1, 2024                    Respectfully submitted,

                                           DAVID C. WEISS
                                           Special Counsel

                                           _/s/_____

                                           LEO J. WISE
                                           Principal Senior Assistant Special Counsel

                                           DEREK E. HINES
                                           Senior Assistant Special Counsel

                                           SEAN F. MULRYNE
                                           CHRISTOPHER M. RIGALI
                                           Assistant Special Counsels

                                           United States Department of Justice

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The United States, by and through undersigned counsel, respectfully moves this Court to exclude evidence, argument, or questioning at trial related to (1) the defendant's potential punishment; (2) his pretrial detention status and medical condition involving his eyes; (3) claims that the United States government directed the defendant to meet with Burisma officials in 2017 or foreign intelligence officials in December 2023; (4) claims that the defendant's FBI Handling Agent used a "personal phone" to communicate with him; and (5) assertions that the defendant is "loyal" to the United States or a "servant of the United States." As set forth below, all of these topics and issues are irrelevant and unduly prejudicial to this case, and either have been previously addressed by this Court, are unfounded in fact or evidence, and/or are otherwise improper evidence or argument for the jury's consideration.

## I.    Potential Punishment

"It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (internal citations and quotations omitted). "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id*. Moreover, "punishment should never be considered by the jury in any way." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); Ninth Cir. Model Crim. Jury Instr. 6.22 (2022) ("The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.").

The defense should be precluded from presenting or referencing, either directly or indirectly, the potential penalties or punishment the defendant faces in this case. *See United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their

verdict."). The potential penalty that the defendant faces if he is convicted does not have any tendency to make the existence of a fact more or less probable in any of the elements necessary to prove the charges in the indictment. *See* Fed. R. Evid. 401. Evidence or argument relating to the potential consequences of a guilty verdict is "irrelevant to the jury's task" of determining if the defendant is guilty of the crimes charged, *Shannon*, 512 U.S. at 579, and it invites the threat of jury nullification, as described further below. Therefore, facts and argument related to any potential penalty or punishment during any stage of the trial must be excluded from trial.

## II.    Pretrial Detention & Eye Issues

The defendant has been detained in this case since he was re-arrested pursuant to this Court's issuance of an arrest warrant on February 22, 2024. *See* ECF Nos. 15, 16. He has unsuccessfully litigated his pretrial detention status before this Court, *see, e.g.*, ECF Nos. 38, 75, and the Ninth Circuit, *see, e.g.*, Case Nos. 24-1133, 24-4040, on multiple occasions. Similarly, the defendant's eye issues have been the subject of extensive and prolonged litigation before this Court, in which his claims and requests have been rejected repeatedly. *See, e.g.*, ECF Nos. 56, 63, 67, 69, 90; *see also* Case No. 24-1133 (9th Cir.). The defendant should be excluded at trial from presenting or referencing, either directly or indirectly, his detention status or eye issues. The fact that the defendant has been detained pending trial and, in particular, defense counsel's opinions about that fact, and the defendant's eye issues, for which he has received requisite treatment, have no bearing on the charges or allegations set forth in the indictment, and neither has any tendency to make the existence of a fact more or less probable in any of the elements necessary to prove those charges at trial. *See* Fed. R. Evid. 401.

Moreover, the government believes that any attempts to present these matters at trial would be for an improper purpose: nullification. Efforts to seek jury nullification—for example, by characterizing this case or the treatment of the defendant as unfair or unjust,

or by drawing attention to his medical maladies or the potential punishment he may face—are barred under the law.  In *United States v. Thomas*, the Second Circuit held:

> We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent. . . . A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty" . . . . Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

116 F.3d 606, 615-16 (2d Cir. 1997) (internal quotations and citation omitted).  The Ninth Circuit has confirmed that defendants are not entitled to jury instructions concerning jury nullification.  *See, e.g.*, *United States v. Navarro-Vargas*, 408 F.3d 1184, 1198 (9th Cir. 2005); *United States v. Powell*, 955 F.2d 1206, 1212-13 (9th Cir. 1991).  Having no right to seek jury nullification, a defendant has no right to present evidence relevant only to such a defense.  *See Zal v. Steppe*, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).

Here, any probative value of the defendant's detention status at trial—of which there is none—would be substantially outweighed by unfair prejudice.  *See* Fed. R. Evid. 403; *see also* Advisory Committee's Note on Fed. R. Evid. 403 ("unfair prejudice" includes "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").  Evidence or argument related to his detention status would serve only to invite nullification, confuse the jury, and potentially inflame their passions, likely manifesting as either sympathy or condemnation toward him.[1]  *See* Ninth Cir. Model Crim. Jury Instr. 6.1 (2022) ("You must decide the case solely on the evidence

---

[1]  Defense counsel also has claimed that the defendant's pretrial detention has inhibited their ability to adequately prepare the defendant's defense.  *See, e.g.*, ECF No. 76.  Those claims have been rejected by this Court, *see, e.g.*, ECF Nos. 38, at 11-12; 76; 78, and should be barred from presentation at trial because they are entirely inconsequential to the charges and allegations in this case or the jury's trial role.  Such claims, if presented at trial, would confuse the jury and risk eliciting their sympathies in furtherance of possible nullification.

and the law. . . . do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, . . . ."); *cf. United States v. Mejia*, 529 F.2d 995, 996 (9th Cir. 1976) (reversing conviction where government presented evidence of defendant's duty to report to jail because evidence "was of little or no probative value" and was "highly prejudicial").

Likewise, evidence or argument at trial concerning the defendant's eye issues would have no probative value but also would create a substantial likelihood of unfair prejudice and possible nullification. *See* Fed. R. Evid. 403. Indeed, courts have often excluded evidence concerning medical conditions at trial due to such risk of unfair prejudice. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (evidence of defendant's son's cerebral palsy "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 940 (10th Cir. 1994) (evidence of plaintiff's epileptic seizures was not relevant and "would carry the potential of an inappropriate appeal to the jury's sympathy"); *United States v. Crown*, 2000 U.S. Dist. LEXIS 7443, at *11 (S.D.N.Y. May 31, 2000) (evidence of defendant's HIV/AIDS condition was not relevant and "would likely appeal to the jury's sympathy, and thus constitute an improper influence on the jury members' consideration of the factual and legal issues bearing on the merits of the case").

## III.   U.S. Government-Directed Meetings with Burisma or Foreign Intelligence

The defendant has represented to this Court (through counsel) that he met with foreign agents and officials at the direction of the United States government, and the prosecution anticipates that defense counsel may attempt to argue or insinuate the same during trial.[2] Specifically, when asked for his position on the present motion to exclude

---

[2]   During the defendant's initial hearing before this Court on February 26, 2024, defense counsel stated in part: "[The defendant] has connections with foreign agents or foreign representatives at the direction of the Government. That's what he was doing for them. They had him do that." ECF No. 38, at 22:10-13. However, when asked by the Court if "[a]ll his foreign contacts are or were at the behest of the Government," *id.*, at 22:24-25, defense counsel conceded that not all of his purported contacts were at the government's

*(footnote cont'd on next page)*

at trial any argument or evidence that he met with individuals associated with Burisma in 2017 or foreign intelligence in December 2023 at the U.S. government's direction, the defendant (through counsel) noted his opposition via email. The government, therefore, moves now to exclude such argument or evidence because it belies the salient facts and is unsupported by evidence, nor is it relevant in any way to the charges or allegations set forth in the indictment and to be presented to the jury. Therefore, any reference or argument concerning such unfounded claims should be excluded.[3]

Simply put, the evidence gathered and produced in this case does not demonstrate that a United States government official directed the defendant to meet with any Burisma official in 2017 or any foreign intelligence official in December 2023. And the defense has provided no evidence to suggest otherwise.[4] Furthermore, it is well-established that, during trial, attorneys cannot testify about facts not in evidence. *See, e.g.*, *United States v. Wright*, 625 F.3d 583, 610 (9th Cir. 2010) (improper vouching occurs when counsel suggests that witness testimony is supported by information outside that presented to jury); *see also Leonard v. United States*, 277 F.2d 834, 841 (9th Cir. 1960) (opening statements "should be limited to a statement of facts which the [party] intends or in good faith expects to prove"). Therefore, absent any relevant and admissible evidence at trial, the defense should be barred from referencing or arguing this claim, either directly or indirectly, before the jury.

---

direction: "I wouldn't represent that to you, Your Honor, because he obviously knows people in different places and that's what's made him valuable, his ability to know people. So but I would not suggest that everybody that he knows overseas is as a result of his contacts with the Government." *Id.*, at 23:1-6.

[3] The government, to the extent necessary and appropriate, further addresses this issue as part of its CIPA Section 6 filing, which was submitted on October 30, 2024.

[4] The government requested reciprocal discovery from the defendant in April. To date, the government has received no such discovery (other than an expert notice), let alone any related to this issue.

Moreover, even if the defense purported to have evidence concerning such U.S. government-directed contacts, that evidence would not be relevant to this case and should be excluded at trial. Specifically, whether the defendant met with a Burisma official or foreign intelligence official at the government's behest in 2017 or 2023, respectively, does not make it more or less probable that he committed the crime at issue—that is, he lied to federal law enforcement in 2020 about meetings and contacts that he never had with Burisma officials that he claimed occurred in 2015 or 2016. *See* Fed. R. Evid. 401. The introduction of the defendant's claims about U.S. government-directed foreign contacts, even assuming *arguendo* admissible evidence, would create a mini-trial over the nature and scope of the defendant's myriad foreign relationships, interactions, and dealings, few of which have any connection at all with this case. *See* Fed. R. Evid. 403.

## IV.    Use of "Personal Phone" by FBI Handling Agent

During the detention hearing before the Magistrate Judge in the District of Nevada on February 20, 2024, the defendant represented (through counsel) that his FBI Handling Agent communicated with him via a personal phone. Specifically, defense counsel stated:

> I can tell you, Your Honor, that there will be a vehement defense to the argument that in fact [the defendant] was not truthful. He had this personal relationship with the handler. It was so personal, Your Honor, that he wouldn't even call him on his FBI phone; he would call him on his personal phone. So we're going to dig down once we start defending this case and we're going to find out who knew that when.

2:24-mj-166-DJA (D. Nev.), ECF No. 20, at 27:10-17.

There is no evidence to support this claim. During the investigation, the prosecution obtained the official phones used by the Handling Agent to communicate with the defendant as well as the defendant's cell phones and iCloud data. The prosecution has produced all discoverable information related to those devices and data to the defense. Based on the investigation, there is no evidence to suggest that any phones (personal or otherwise) were used by the Handling Agent to communicate with the defendant beyond

what was produced by the prosecution in discovery.[5]  Consequently, the defense, absent any relevant and admissible evidence, has no basis in fact to argue to the contrary, and should be barred from referencing or presenting this claim, either directly or indirectly, before the jury.  *See Wright*, 625 F.3d at 610; *Leonard*, 277 F.2d at 841.  To present this claim without a factual predicate rooted in admissible evidence invites jury confusion and a substantial risk of unfair prejudice insofar as it could erroneously lead the jury to believe that potentially contradictory or exculpatory evidence exists where none does.  *See* Fed. R. Evid. 403.

## V.    Defendant as "Loyal" to and "Servant of the United States"

When asked for his position on the prosecution's proposed motion to exclude at trial any argument or evidence that the defendant was "loyal" to or a "servant of the United States," the latter being a phrase defense counsel used with the government, the defendant (through counsel) noted his opposition via email.[6]  The government, therefore, moves to exclude any references, comments, or suggestions, directly or indirectly, at trial about the defendant's loyalty to the United States, his patriotism, or any characterization of him as a "servant to the United States."  Such claims or assertions are not relevant to the charges or allegations set forth in the indictment, and do not have any tendency to make the existence of a fact more or less probable in any of the elements necessary to prove those charges at trial.  *See* Fed. R. Evid. 401.  Those descriptions and characterizations—loyal, patriot, servant—are not only amorphous, ill-defined, and open to (mis)interpretation, but they also are inconsequential as to whether the defendant lied on a particular occasion, in 2020, with respect to a particular matter (*e.g.*, bribery of a high-ranking U.S. government

---

[5]  As mentioned in footnote 4, the defense has not produced any relevant discovery to the government, let alone anything showing that the Handling Agent used a separate, unaccounted-for, personal phone.

[6]  The government's motion on this issue is based in part on defense counsel's letter dated October 21, 2024, which sought the government's position on its own proposed motions in limine.  According to the defense, one of its proposed motions will seek to bar any reference to the defendant's "alleged disloyalty," and in its letter, the defense referred to the defendant's "work as a servant of the United States."

official by foreign actors).  Indeed, the defendant could consider himself a loyal servant to the United States, or be considered such by others, but that does not make it any more or less probable that he lied as charged in the indictment.

While such evidence or argument has no probative value, its introduction at trial would be unfairly prejudicial because it could confuse the jury, improperly invoke the jury's sympathies, invite nullification in lieu of a fair verdict, and, perhaps most harmful, lead to a mini-trial whereby the defendant's character as being "loyal" to or a "servant of the United States" would be litigated needlessly.  *See* Fed. R. Evid. 403.  The lack of relevancy and the potential prejudice of such evidence and argument is further reflected in Federal Rule of Evidence 404(a)(1), which precludes evidence of a person's character or character trait "to prove on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1); *see United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir. 1989) (affirming exclusion of evidence of patriotic or pro-government character under Fed. R. Evid. 404(a)).  For those reasons, the defendant should be excluded from referencing, commenting on, or arguing about himself as being "loyal" to or a "servant of the United States."

**VI.   Conclusion**

For the reasons set forth above, the Court should exclude the defendant from presenting any evidence, argument, or questioning at trial concerning (1) the defendant's potential punishment; (2) his pretrial detention status or eye issues; (3) claims that the United States government directed the defendant to meet with Burisma officials in 2017 or foreign intelligence officials in December 2023; (4) claims that the defendant's FBI Handling Agent used a "personal phone" to communicate with him; and (5) assertions that the defendant is "loyal" to the United States or a "servant of the United States."