DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6090
    E-mail:      LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:      SFM@usdoj.gov; CMR@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR UNSPECIFIED DISCOVERY VIOLATION |

    The United States of America, by and through its counsel of record, hereby submits this response in opposition to defendant Alexander Smirnov's Motion to Dismiss for an Unspecified Discovery Violation. ECF No. 162.

    This opposition is based upon the attached memorandum of points and authorities, the Declaration of Derek E. Hines, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: November 12, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

*/s/* _____

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

United States Department of Justice

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On November 5, 2024, the defendant filed a motion to dismiss the indictment based on an unspecified discovery violation ("Motion"), ECF 162. This Motion copies meritless arguments from a motion he filed the previous day, November 4, 2024, when he made his third request for a continuance by filing his Second *Ex Parte* Motion to Continue Trial Date, ECF 159. *See also* ECF 64, 132. The Motion, ECF 162, is flawed for the same reasons the government stated in its filing in opposition to the motion for a continuance. *See* ECF 164. The defendant falsely claims, without any support or specificity, that he received reports that contain *Brady* material. He did not. The proof that his claim is false is that his Motion does not attach as an exhibit a single report that purportedly contains *Brady* material. Tellingly, in his own Motion, the defendant contradicts himself—on the one hand he claims that the reports contain *Brady*, but on the other hand he asserts he has not had time to review the reports, so a dismissal is somehow warranted. Put another way, if he hasn't reviewed the reports he doesn't know and can't know that they contain *Brady*. And they don't. Out of an abundance of caution, the government is treating these reports as Jencks material for the defendant's Handling Agent, who authored them and will testify at trial. The government chose to produce them six weeks earlier than the Jencks deadline in an effort to avoid wasting the Court's time and judicial resources.

Defense counsel's claim that they "cannot possibly be expected, less than one month before trial," to review the reports is preposterous. Mot. at 9. One attorney for the government reviewed all of these reports in less than four hours. In his motion to continue trial, the defendant claimed his four lawyers need 120 days to do the same task. But rather than having any of his four retained lawyers actually review the reports, he instead drafted and filed two baseless motions, a third motion for a continuance and this one. ECF 137, 162. Because none of the reports the defendant complains about contain *Brady* material, and because he has failed to meet his burden of establishing both "flagrant misbehavior" by the government and "substantial prejudice," the Motion should be denied.

## II. FACTUAL BACKGROUND

The defendant was indicted for making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001 (Count One), and for causing the creation of a false record in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two). ECF 1. The charges are based on false derogatory information that he provided in June 2020 to the FBI about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1. He provided this information in June 2020 about supposed conversations that he had years earlier only after Public Official 1 became a candidate for President of the United States.

Specifically, the Indictment alleges that in June 2020, the defendant reported to his FBI handler, for the first time, two meetings that occurred in 2015 and/or 2016, during the Obama-Biden Administration, in which he claimed Burisma executives admitted to him that they hired Businessperson 1 to "protect us, through his dad, from all kinds of problems," and later that they had paid $5 million each to Public Official 1 and Businessperson 1, when Public Official 1 was still in office, so that "[Businessperson 1] will take care of all those issues through his dad," referring to a criminal investigation being conducted by the then-Ukrainian Prosecutor General into Burisma and to "deal with [the then-Ukrainian Prosecutor General]." ECF No. 1 (Indictment) ¶¶ 6(b), 24, 26. The defendant also told his FBI handler about "two purported phone calls between himself and Burisma Official 1 wherein Burisma Official 1 stated that he had been forced to pay Public Official 1 and Businessperson 1 and that it would take investigators 10 years to find records of illicit payments to Public Official 1." *Id*. ¶¶ 6(c), 24, 35. Prior to those statements, the defendant had expressed bias against Public Official 1 in a series of messages exchanged between himself and his handler. *See id.* ¶¶ 8–21.

The Indictment alleges that the defendant knew that his statements about the purported bribery payments were false (based on the defendant's communications and travel records which contradict his claims, among other evidence), and that the defendant

2

did not have contacts with Burisma officials until the year 2017, "after the end of the Obama-Biden Administration and after the then-Ukrainian Prosecutor General had been fired in February 2016, in other words, when Public Official 1 had no ability to influence U.S. policy and when the Prosecutor General was no longer in office." *Id.* ¶ 6(d); *see also id.* ¶ 25 (timing of payments according to the defendant), *id.* ¶¶ 29–32. The Indictment further alleges that specific meetings and conversations claimed by the defendant, including the purported bribery admissions made by Burisma officials, did not occur. *See id.* ¶ 31 (no statements made by Burisma Official 2 during meeting at Burisma's headquarters regarding the hiring of Businessperson 1 to "protect us, through his dad, from all kinds of problems"); *id.* ¶¶ 33, 36 (no calls or meetings between Associate 1 and Burisma Official 1); *id.* ¶ 34 (no travel to Vienna by the defendant during relevant period).

On October 16, 2024, the defendant filed a motion to compel the production of certain discovery, ECF 139, which the Court denied. ECF 165. The Court found that the defendant "fail[ed] to clearly articulate to the Court what discovery he is seeking to compel" and "fail[ed] to explain why the law supports his specific discovery requests." *Id.* In the correspondence attached to that motion, the defendant had requested FBI reports that predate and postdate the allegations in this case and that, in any event, contain no mention of Burisma or Public Official 1 or Businessperson 1. Before the Court issued its order denying the motion, in an effort to resolve the dispute and further avoid wasting the Court's time, the government elected to treat these reports as Jencks material for the Handling Agent, who will testify at trial, and further elected to produce these reports on October 25, 2024, rather than waiting to disclose with the other Jencks materials one week before trial as the government previously advised it would do (and which the defendant did not object to). Hines Decl. at ¶ 2. This production included approximately 420 FBI FD-1023 reports, called "1023s," which included statements that the defendant made to his Handling Agent over the course of their 13-year relationship. None of these reports mention Burisma or Public Official 1 or Businessperson 1. The reports are not exculpatory,

3

1  because they show that between 2010 and 2023, the defendant never reported on Burisma,
2  Businessperson 1, or Public Official 1, other than as alleged in the 2017 and 2020 reports
3  cited in the Indictment, which were produced to the defendant in April 2024.

4        Hypothetically, an exculpatory report could have included, for example, statements
5  in which the defendant told his Handling Agent in 2015, 2016, or 2017 about the same
6  conversation he later reported in 2020, which would be contradictory to the allegations in
7  the Indictment. However, no such exculpatory report exists. That is because, as alleged in
8  the Indictment, the defendant fabricated his claims in 2020 and never met with Burisma
9  executives prior to 2017, as he falsely claimed. This is further evident because the
10 defendant fails to cite to any such report in his Motion.

11       Instead, the 420 reports contain only unrelated claims the defendant made to his
12 handling agent over the course of their 13-year relationship, the large majority of which
13 relate to an Armenian organized crime and check-cashing scheme the defendant was
14 involved with primarily from 2011 to 2014. In that vein, the bulk of the reports consist of
15 a brief cover page where the Handling Agent notes that the defendant has provided him
16 with government benefit checks that the defendant received from members of an Armenian
17 organized crime group, followed by pages of photographs of those checks. To be clear,
18 because the defendant never reported on the bribery allegations he claimed in 2020 in prior
19 years, the reports from prior years include nothing exculpatory and, therefore, they are not
20 *Brady*. In fact, the absence of this information from the reporting is inculpatory.

21       Because the defendant failed to attach any of the reports to his Motion, a glaring
22 omission that reveals its frivolousness, the government has attached ten reports to this
23 Motion which fairly represent the type of reporting the defendant made to his handling
24 agent and cover a sample time period in 2011. *See* Exh. 1. The first report provides
25 information about two checks in a check cashing scheme. Exh. 1 at 1. This has nothing to
26 do with the allegations in the Indictment. In the second report, the defendant discloses an
27 arrest that did not involve any of the individuals in this case. Exh. 1 at 2. The third report
28

4

discloses a bank manager who the defendant claimed was an insider in an illicit financial scheme that has nothing to do with this case. Exh. 1 at 3. In the fourth report, the defendant claims someone is involved in drug dealing, investment fraud, and insurance fraud, but neither that person nor the schemes the Defendant claims that person is involved in has any relationship to anyone or any of the allegations in this case. Exh. 1 at 4. The fifth report is about someone named "Mike" who was purportedly attempting to cash fraudulently obtained checks. Exh. 1 at 5. "Mike" has no relationship whatsoever to this case. The sixth report is of contact information on a business card for a bank manager who has no relation to this Indictment. Exh. 1 at 6. The seventh report describes someone that the defendant claims is a member of the Zetas cartel who is using an Aston Martin to smuggle cocaine from Mexico. Exh. 1 at 8. This is not a drug case. The eighth report relates to someone who obtained either 200 or 300 Green Dot money transfer cards in an illicit federal tax return scheme, which also bears no relationship to this case. Exh. 1 at 9. The ninth report contains an allegation by the defendant that someone stole a half million dollars and paid off Mexican law enforcement officials. Exh. 1 at 10. There is no allegation regarding Mexican law enforcement officials in this case. The tenth report contains information about two checks that are purportedly part of a check cashing scheme. Exh. 1 at 11. This is not a check cashing case. In sum, none of these ten reports, like the other 410 reports, even mention Burisma or Public Official 1 or Businessperson 1.

Contrary to the defendant's categorical claims, none of these reports are exculpatory. Rather, the reports are inculpatory and establish not only that the defendant never told his Handling Agent about the allegations he later told the Handling Agent in 2020, but they also establish the defendant's knowledge that information he provided his Handling Agent was recorded in reports and used in criminal investigations.

Further, reports included in the Exhibit are each 1 or 2 pages in length. Often, they don't even fill those one or two pages. This is consistent with most of the other reports in the production. Of the 420 reports, approximately 366 reports are only 1-2 pages in length,

and approximately 47 reports are only 3 to 4 pages in length. Hines Decl. at ¶ 4. There are only approximately 7 reports which are 5 or more pages in length. *Id.* As stated previously, undersigned counsel reviewed all 420 reports in less than four hours and defense counsel should have no difficulty reviewing them in that amount of time either. *Id.* In fact, with four defense lawyers, these reports could be reviewed in an hour.

### III.   ARGUMENT

The defendant's motion should be denied because the defendant failed to provide any evidence that the government engaged in "flagrant misbehavior" in support of his request that the Court take the "drastic step" of dismissing an indictment, which is a "disfavored remedy" for a *Brady* violation, and that has not even occurred here. *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985). It should also be denied because the defendant failed to establish "substantial prejudice" caused by the government's production of Jencks materials six weeks before trial, which could have been reviewed by one of the defendant's four defense lawyers in less than four hours. *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020).

"If the government's investigatory or prosecutorial conduct is reprehensible, but not quite a violation of due process, the district court may nonetheless dismiss an indictment under its supervisory powers." *United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999) However, "these supervisory powers . . . are more often referred to than invoked," *id.*, and the circumstances under which the Court may exercise its supervisory power are "substantially limited," *United States v. Tucker*, 8 F.3d 673, 674 (9th Cir. 1993) (en banc). A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020).

The "drastic step" of "dismissing an indictment is a disfavored remedy," *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985), and implicates separation-of-powers principles, *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (explaining that improper dismissal of indictment with prejudice "encroaches on the prosecutor's charging authority"). Accordingly, the Ninth Circuit has held that "[u]nder its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is '(1) flagrant misbehavior and (2) substantial prejudice,'" *Bundy*, 968 F.3d at 1031 (quoting *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)), and there is "no lesser remedial action" available, *id*. As discussed below, the defendant has failed to show any misbehavior, let alone "flagrant misbehavior" by the government because his Motion fails to establish any *Brady* violation, and there was none. Moreover, as further discussed below, the defendant cannot establish "substantial prejudice" because he received Jencks materials six weeks before trial. And in any event, "a lesser remedial action" is available – the defendant's lawyers could spend four hours reviewing the Jencks materials that they received six weeks before trial.

**A.  Defendant Fails to Establish "Flagrant Misbehavior" by the Government Because There Was No *Brady* Material In the Discovery And He Received It Six Weeks Before Trial**

The defendant vaguely claims the government engaged in "flagrant misbehavior" by recently producing unspecified *Brady* materials. Mot. at 8. Contrary to his general representation, none of the materials the defendant received are *Brady* materials. The government has complied with and will continue to comply with its obligations under *Brady*. In *Brady v. Maryland*, the Supreme Court held that the government must disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981) (citing *United States v. Augurs*, 427 U.S. 97 (1976)). In *Griffin*, the

7

defendant demanded that he receive the notes taken by agents of his interviews based on nothing more than speculation that the missing records might contain *Brady* or *Giglio*. The Ninth Circuit held that this speculation was insufficient to sustain a discovery violation. *Id.*; *see also United States v. Ramos*, 27 F.3d 65, 70 (3rd Cir. 1994) ("We think it unwise to infer the existence of *Brady* material based upon speculation alone."). "[M]ere speculation about materials in the government's files [does] not require the district court to make those materials available, or mandate an in camera inspection." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009).

The defendant received the Jencks material and has not identified any *Brady* in it. In other words, just like the defendant in *Griffin*, the defendant's Motion is based on pure speculation. While he could have reviewed the entire production in the time it took him to write his Motion, instead he simply claims, "[t]his discovery is material; qualifies as *Brady* evidence; and supports the theory of defense in this case." Mot. at 7. But he does not say what reports supposedly contain *Brady*, he does not attach those reports as exhibits, he does not describe they are material and how they support the theory of defense, and he does not say why he was unable to make use of the information six weeks before trial.

Based on the defendant's other filings in this case, ECF 157, ECF 152-1, the government infers that he may want to rely on these reports as specific instances of truthfulness. But as the government has established, because character for truthfulness is not an element of the offenses charged in this case, Federal Rule of Evidence 405(b) prohibits the defendant from offering such specific instances of conduct evidence at trial. ECF 152. As described above and as demonstrated in the ten reports attached as Exhibit 1, the defendant's reporting over the course of his 13-year relationship with his Handling Agent does not contain references to Burisma or Public Official 1 or Businessperson 1. The defendant offers no explanation for why his prior reporting about Armenian check cashing scheme, Mexican drug smuggling, or California-based financial frauds are *Brady*.

1 The reports are not *Brady*. Moreover, the defendant already knows what he told his
2 Handling Agent and this information, already known to him, also would not be *Brady*.

3 Despite labeling the discovery as "*Brady*" without specifying what he believes is
4 actually *Brady*, in another motion, the defendant contended that the materials were *Giglio*
5 materials because information in the reports "impeaches the quality of the law enforcement
6 conduct in this case." ECF 159 at 8. Defendant fails to explain how any of this information
7 is admissible impeachment material and the government has already filed a motion in
8 limine to preclude its introduction. ECF 151 ("Motion in Limine to Exclude FBI Handling
9 Agent's Alleged Mistakes"). Notwithstanding his incorrect assumption that the reports
10 contain impeachment material, even if it were impeachment material, it would be
11 considered *Giglio* material which "ripens into evidentiary material for purposes of
12 impeachment only if and when the witness testifies at trial." *United States v. Cuthbertson*,
13 630 F.2d 139, 144 (3rd Cir. 1980); *see also United States v. Nixon*, 418 U.S. 683, 701
14 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require
15 its production in advance of trial."); *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983)
16 ("The thrust of *Giglio* and its progeny has been to ensure that the jury knows the facts that
17 might motivate a witness in giving testimony[.]"). Thus, if the material were impeachment
18 material as the defendant claimed in his other filing, he was not entitled to receive the
19 material until trial, but the government produced it six weeks before trial. A six-week early
20 production of inadmissible reports that the defendant contends are impeachment material
21 does not justify dismissal of the indictment.

22 For the sake of argument only, and it is only argument because none of the reports
23 contain it, *Brady* material should be disclosed before trial, *United States v. Nagra*, 147
24 F.3d 875, 881 (9th Cir. 1998), when the defense can make practical use of the material.
25 *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995); *see also United States v.*
26 *Miller*, 529 F.2d 1125 (9th Cir. 1976) (if exculpatory evidence can be effectively presented
27 at trial and the defendant is not prevented by lack of time to make necessary investigation,
28

there is no grounds for reversal from belated disclosure). The government has disclosed these reports six weeks in advance of trial. Even if the reports contained *Brady*, which they do not, the defendant does not even attempt to explain how the government's behavior is "flagrant misbehavior" and why the extreme remedy of dismissal is warranted.

> B. **Defendant Fails to Establish "Substantial Prejudice" Because He Received the Discovery Six Weeks Before Trial But Decided Not to Spend Four Hours Reviewing It**

To begin with, the defendant cannot claim substantial prejudice, as the Ninth Circuit has held he must, because, as he admits, the defendant didn't even bother to review the early Jencks material before he filed his Motion. *Bundy*, 968 F.3d at 1031. In any event, the defendant has retained four lawyers in this matter—the docket lists his counsel as Mark A. Byrne of Byrne and Nixon LLP, Richard A. Schonfeld and David Z. Chesnoff of Chesnoff and Schonfeld and Naser J. Khoury of the Naser J. Khoury Law Offices. While none of his lawyers reviewed the discovery before filing the Motion on November 5, 2024, they easily could have, as evidenced by the fact that it took one of the government's attorneys less than four hours to review all of the reports. The defendant has not articulated any reason why he could not review the materials in the six weeks leading up to trial.

In April 2024, the government advised the defendant that it would provide Jencks materials one week before trial. He cannot now claim he is substantially prejudiced by receiving Jencks material six weeks before that deadline. Defense counsel did not object to the government's proposed Jencks deadline of one week before trial. Then they filed a motion to compel demanding that the government produce the material early. When the government elected to do so, rather than reviewing it, they filed a baseless motion for a continuance and a baseless motion to dismiss the charges based on the early production of Jencks. The defendant cannot show any prejudice, let alone substantial prejudice, since he received the materials six weeks before trial but declined to review them.

IV. **CONCLUSION**

For the reasons set forth above, the Court should deny the defendant's Motion.