DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

\* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:24-CR-00091-ODW |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S OPPOSITION TO** |
| | ) | **GOVERNMENT'S MOTION *IN*** |
| v. | ) | ***LIMINE* TO EXCLUDE FBI** |
| | ) | **HANDLING AGENT'S ALLEGED** |
| | ) | **MISTAKES (ECF NO. 151)** |
| ALEXANDER SMIRNOV, | ) | |
| | ) | **Honorable Otis D. Wright II** |
| Defendant, | ) | **November 25, 2024 at 10:00 a.m.** |
| | ) | |

Comes Now, Defendant Alexander Smirnov, by and through his counsel of record David Z. Chesnoff, Esq., and Richard A. Schonfeld, Esq., and hereby submits his Opposition to the Government's Motion *in Limine* to Exclude the FBI Handling Agent's Alleged Mistakes. *See* ECF No. 151 ("Gov. Mot.").

1

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument that is heard.

Dated this 15th day of November, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

2

# TABLE OF CONTENTS

A.    Introduction...............................................................…..6

B.    Charged Offenses........................................................……6

C.    Argument.................................................................….7

      1.    The FBI Handler's Mistakes are Relevant to Mr. Smirnov's
          Defense...............................................................…..7

D.    Conclusion.............................................................…... 15

1

## TABLE OF AUTHORITIES

2

3    *Beauchamp v. Stouffer,*
No. CV PWG-14-603, 2016 WL 6822483 (D. Md. Nov. 18, 2016).............13

4

5    *Bowen v. Maynard,*
799 F.2d 593 (10th Cir. 1986)...................................…..… 10

6

7    *Brown v. Warden, Lee Corr. Inst.,*
2019 WL 6091000 (D.S.C. July 31, 2019), *report and recommendation adopted,*
8    WL 4509190 (D.S.C. Sept. 19, 2019)................................... 13

9    *Carriger v. Stewart,*
10    132 F.3d 463 (9th Cir. 1997)..................................…10

11    *Chambers v. Mississippi,*
12    410 U.S. 284 (1973)....................................…..… 11-12

13    *Crane v. Kentucky,*
14    476 U.S. 683 (1986)....................................…..… 11

15    *Jackson v. United States,*
16    768 A.2d 580 (D.C. Cir. 2001).............................… 14

17    *Kyles v. Whitley,*
18    514 U.S. 419 (1995).................................…..……… 9-12

19    *Leaphart v. Eagleton,*
20    2017 WL 1160418 (D.S.C. Mar. 29, 2017).....................…..…… 13

21    *Lindsey v. King,*
22    769 F.2d 1034 (5th Cir. 1985)...........................…..………10

23    *Monroe v. Angelone,*
24    323 F.3d 286, 312 (4th Cir. 2003)..........................… 12

25

26

27

28

*Penson v. United States,*
No. 115CR00007MRWCM1, 2019 WL 498852 (W.D.N.C. Feb. 8, 2019).... 12-13

*Sherman v. Gittere,*
92 F.4th 868 (9th Cir. 2024)...........................................................11

*United States v. Aguilar,*
831 F. Supp. 2d 1180 (C.D. Cal. 2011)............................................11

*United States v. Hanna,*
55 F.3d 1456 (9th Cir. 1995)..........................................................14

*United States v. Howell,*
231 F.3d 615 (9th Cir. 2000)..........................................................13

*United States v. Lecco,*
2010 WL 1507891 (S.D.W. Va. Apr. 14, 2010)................................... 12

*United States v. Miles,*
2022 WL 474721 (S.D. Ind. Feb. 16, 2022)...................................... 14

*United States v. Sager,*
227 F.3d 1138 (9th Cir. 2000)......................................................9-11

*Washington v. Texas,*
388 U.S. 14 (1967)................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Introduction

The government's motion seeks to exclude Mr. Smirnov from introducing evidence of mistakes made by his FBI Handler while he (Mr. Smirnov) served as a confidential human source ("CHS"), including any of the numerous documentation errors that the Handler made.  As shown below, the government's flawed argument—in addition to being part of its wider-scale, motions-based effort to preclude Mr. Smirnov from introducing *any* exculpatory evidence or argument at trial--ignores Defendant's constitutional rights, including his rights to a fair trial, due process, and the right to present a complete defense.  Accordingly, the Motion should be denied in its entirety.

### B.    Charged Offenses

The two-count indictment in the present case (ECF No. 1) charges Mr. Smirnov with: 1) Making False Statements to a government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519. As alleged in the indictment, Mr. Smirnov served as a CHS for the FBI for at least 10 years, from 2013 through October 2023.

## C.    Argument

### 1.    The FBI Handler's Mistakes are Relevant to Mr. Smirnov's Defense

The government slyly reduces the many documentary mistakes made by the Handler to three administrative reports: (1) a February 13, 2013 Human Source Validation Report; (2) a Standard Validation Report from February 13, 2013 to March 18, 2021; and (3) a Standard Validation Report from March 18, 2021 to November 16, 2023. With this misleading reduction complete, the government next claims that:

> "[t]wo of the three administrative reports fall outside of the time period covered by the indictment—the Human Source Validation Report is dated February 13, 2013, and one of the Standard Validation Reports is dated March 2021 to November 2023. The indictment concerns statements made by the defendant to his Handling Agent from 2017 to 2020. These reports address time periods occurring years before and after the charged conduct, and accordingly, they are not relevant."

Gov. Mot. 2. This, too, is deliberately misleading, as mistakes made before *and* after the time period for the charged offenses are relevant to establish that mistakes and investigative errors also occurred *during* the time frame in the Indictment. The government should not be permitted to hide the full extent of the relationship between Defendant and Handler from the jury, a relationship that necessarily includes a torrent of documentary errors made by the Handler.

The reports are also critical to the defense, including based on the anticipated testimony of the Defendant's noticed expert. For example, in the February 13, 2013, Field Office Annual Source Report, FOASR, the following deficiencies were noted:

1.    The Handler failed to give the CHS extraterritorial travel admonishments;

2.    The Handler allowed the CHS to conduct otherwise illegal activity, OIA, outside of   approved time periods;

3.    The Handler documented the CHS's true name in the wrong CHS subfile;

4.    The Handler placed an unrelated CHS's NCIC record in this CHS's file;

5.    The Handler identified the wrong country of birth for this CHS in his file;

6.    The Handler failed to document appropriate receipts for payments to the CHS;

7.    CHS was allowed to conduct personal international travel without appropriate approval and documentation in his file.

In a later Standard Validation Report covering 2013-2021 it was noted:

1.    HA continued to fail to appropriately obtain approval and document CHS's international travel;

2.    Derogatory    information    reported    about    the    CHS    and    more unreported/undocumented otherwise illegal activity, OIA.

In the Source Validation Report for the period March, 2021-November, 2023 FBIHQ recommended that FBI Seattle, the office where the HA had transferred to from FBI San Francisco in 2019 and brought Smirnov's file with him, stop operating

the CHS noting that they believed that the CHS was no longer fully under the HA's control, may be committing unauthorized illegal activity, UIA, and concern that the media's reporting of the CHS's information concerning the Biden family's influence peddling in Ukraine would vitiate his ability to continue to function as a CHS. In that same document, it was recommended that CHS be polygraphed. Based upon the records provided by the government, it does not appear that a polygraph of Mr. Smirnov was ever scheduled or conducted.

Accordingly, Mr. Smirnov must be permitted to introduce relevant evidence, including that his FBI handler often failed to competently document his (Mr. Smirnov's) communications and reports. This evidence will take the form of (among other things) the numerous specific acts of Mr. Smirnov communicating with his Handler (and assisting the government), with no corresponding record of the same. Despite the government's attempts to exclude this evidence, it is plainly admissible and probative of Mr. Smirnov's defense. Indeed, and despite the government's attempts to exclude it in ECF No. 153, such negligent reporting is plainly admissible and probative of Mr. Smirnov's defense. *See, e.g., United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (after quoting *Kyles v. Whitley*, 514 U.S. 419 (1995), Ninth Circuit refers to "the utility of [the defense practice of] attacking police investigations as 'shoddy'").

Such evidence impeaches the quality of the law enforcement conduct in this case, which goes to the heart of Mr. Smirnov's defense: 1) that his Handler's shoddy work involved repeatedly failing to follow appropriate procedures; and 2) that this obvious negligence is consistent with the lack of record keeping regarding Defendant's disclosure related to Burisma, as claimed in the Indictment. *See, e.g., Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation"); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (new trial granted to prisoner convicted in state court where withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case"); *Kyles v. Whitley*, 514 U.S. 419, 446 (1995).

The Ninth Circuit has recognized the importance of the holding in *Kyles* that facts demonstrating a skewed or biased investigation may constitute *Brady* material that a Defendant is entitled to obtain and a jury permitted to consider. *See Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) ("Had this evidence of [the chief prosecution witness's] prolificacy in his profession been known, the defense could have used it to question the thoroughness or good faith of an investigation that did not include [him] as a suspect.") (citing *Kyles*, 514 U.S. at 444–48); *Sager*, 227 F.3d at 1145 (referring to "the utility of attacking police investigations as 'shoddy' "); *see*

1    *also United States v. Aguilar*, 831 F. Supp. 2d 1180, 1203 (C.D. Cal. 2011) ("In at

2    least two cases the Ninth Circuit has recognized the importance of the holding in

3    *Kyles* that facts demonstrating a skewed or biased investigation may constitute

4

5    *Brady* material that a Defendant is entitled to obtain and a jury permitted to

6    consider.") (citing *Carriger*, 132 F.3d at 481 and *Sager*, 227 F.3d at 1145).

7

8         These principles apply squarely to the present case, and the government's

9    assertion that the evidence is prejudicial must be rejected. Mr. Smirnov will

10   introduce the incomplete, shoddy reports prepared by his Handler to show that such

11

12   negligent record keeping is consistent with the Handler failing to document the "non-

13   relevant" conversation (as the government glibly characterizes it in the Indictment)

14   with Smirnov in 2017, as reflected in the FD-1023.  The tendered evidence thus

15

16   shows that Mr. Smirnov's allegedly unlawful disclosure *was* made, but that the

17   Handler, through negligence, *failed* to document it. The evidence is, therefore,

18   admissible as a critical part of Mr. Smirnov's defense, and exclusion would result in

19

20   a manifest injustice and deprive Mr. Smirnov's rights to a fair trial, due process, and

21   the right to present a complete defense. *See, e.g., Sherman v. Gittere*, 92 F.4th 868,

22   878–79 (9th Cir. 2024) ("The constitutional right to 'a meaningful opportunity to

23

24   present a complete defense' is rooted in both the Due Process Clause and the Sixth

25   Amendment. [*Crane v. Kentucky*, 476 U.S. 683, 690] (1986) (quoting [*California v.*

26   *Trombetta*, 467 U.S. 479, 485] (1984); *see Chambers v. Mississippi*, 410 U.S. 284,

27

28

1  294 (1973) . . . . *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The [Sixth

2  Amendment] right to offer the testimony of witnesses, and to compel their

3

4  attendance, if necessary, is in plain terms *the right to present a defense, the right to*

5  *present the defendant's version of the facts as well as the prosecution's to the jury*

6

7  *so it may decide where the truth lies*.") (emphases added).

8      The government's citation to *United States v. Lecco*, 2010 WL 1507891, at *3

9  (S.D.W. Va. Apr. 14, 2010) is misplaced and is not binding on this court. In *Lecco*,

10

11  the court stated in part that:

12      [i]t may be the case that defendant might, through other means and
        sources, develop a defense along the lines sanctioned by Kyles. It is
13      clear, however, as it was in 2007, that the Guidelines, the MOU, and
        similar materials may not be used for that or any related purpose. As
14      noted by our court of appeals in Jackson, the law "does not provide
        license for courts to police compliance with" internal agency protocols.
15      Defendant's approach would essentially shift this prohibited policing
        function from the court to the jury."
16

17

18  *Id.*
        While the government cherry picks the *Lecco* decision, other decisions and
19

20  orders clearly permit the utilization of such defense strategies. *See supra; see also*

21  *e.g., Monroe v. Angelone*, 323 F.3d 286, 312 (4th Cir. 2003) (finding that defense

22

23  "emphasized the poor investigative work of the police," such as their failure to

24  conduct certain tests); *Penson v. United States*, No. 115CR00007MRWCM1, 2019

25  WL 498852, at *4 (W.D.N.C. Feb. 8, 2019) ("Counsel argued at trial that there was

26

27  a reasonable doubt about Petitioner's identity due to sloppy police work, including

28

failure to submit evidence including the cap and muffler for testing, and that the evidence connecting Petitioner to the robbery was purely circumstantial."); *Beauchamp v. Stouffer*, No. CV PWG-14-603, 2016 WL 6822483, at *8 (D. Md. Nov. 18, 2016) ("[Counsel] explained his trial strategy with regard to the evidence collection and the failure to test it was that [Detective] Massey performed a sloppy investigation."); *Leaphart v. Eagleton*, 2017 WL 1160418, at *11 (D.S.C. Mar. 29, 2017) ("As the court explained above, trial counsel's strategy was to attack the police investigation as shoddy or underhanded . . . . . "); *Brown v. Warden, Lee Corr. Inst.*, 2019 WL 6091000, at *14 (D.S.C. July 31, 2019), *report and recommendation adopted*, WL 4509190 (D.S.C. Sept. 19, 2019) ("[T]he State's failure to conduct DNA testing played into counsel's plan of painting the investigation as sloppy; rather than create evidence the State should have obtained itself, counsel wanted to emphasize to the evidentiary holes the State left open.").

As stated above, the Ninth Circuit Court of Appeals has recognized this as well. *See, e.g., United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("In this case, the fact that not one, but two separate police reports contained an identical error as to a critical piece of evidence certainly raises the opportunity to attack the thoroughness, and even good faith, of the investigation."); *Sager*, 227 F.3d at 1145-46 (9th Cir. 2000) ("[T]he court muddled the issue by informing the jury ... it could not consider possible defects in Morris's investigation. To tell the jury . . . it may

assess the product of an investigation, but . . . not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information."); *see also United States v. Hanna*, 55 F.3d 1456, 1460 (9th Cir. 1995); *Jackson v. United States*, 768 A.2d 580, 590 (D.C. Cir. 2001) (generally describing approval of defendant's admission of defective police work).

Likewise, the government's reliance on *United States v. Miles*, 2022 WL 474721, at \*1 (S.D. Ind. Feb. 16, 2022) is misplaced. *Miles* was filed in 2019, and the defendant was charged with drug and firearms charges. The government sought to exclude a 2004 disciplinary action of one of the government's law enforcement witnesses. In accepting that argument, the *Miles* court stated in part that "the length of time since the events occurred significantly diminishes its relevancy and probative value." *Id.* at \*2. Here, Mr. Smirnov is charged with making a false statement to the FBI and the evidence the government seeks to exclude is part and parcel of the relationship between Mr. Smirnov and the Handing Agent. As such the mistakes are highly probative and are not mere disciplinary actions against the agent (and they are not remote in time).

Lastly, the government's citation to the unpublished *United States v. Harris*, 551 F. App'x 699, 706 (4th Cir. 2014) is distinguishable. In *Harris*, the defendant sought to introduce evidence related to officers' disciplinary records. The court had concerns that the allegations were not misconduct based on untruthfulness and about

14

the trial becoming sidetracked by a mini-trial. Such is not the case here, because Mr. Smirnov's Handler's mistakes occurred in direct relation to his interactions with Mr. Smirnov (and, therefore, bear directly on Mr. Smirnov's right to discredit the caliber of the investigation *and* the decision to charge him). Accordingly, the government's Motion should be denied.

**D.    Conclusion**

For the foregoing reasons, Mr. Smirnov respectfully requests that this Court deny the Government's Motion *in Limine* to Exclude the FBI Handling Agent's Alleged Mistakes. *See* ECF No. 151.

DATED this 15th day of November, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2024, I caused the forgoing

document to be filed electronically with the Clerk of the Court through the CM/ECF

system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld