DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
\* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ALEXANDER SMIRNOV, ) <br> ) <br> Defendant, ) <br> ) | CASE NO. 2:24-CR-00091-ODW <br><br> **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE IRRELEVANT FACTUAL ISSUES (ECF NO. 154)** <br><br> **Honorable Otis D. Wright II** <br> **November 25, 2024 at 10:00 a.m.** |

Comes Now, Defendant Alexander Smirnov, by and through his counsel of record David Z. Chesnoff, Esq., and Richard A. Schonfeld, Esq., and hereby submits his Opposition to the Government's Motion *in Limine* to Preclude Irrelevant Factual Issues. *See* ECF No. 154 ("Gov. Mot.").

1

This Opposition is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument that is heard.

Dated this 15th day of November, 2024.

                      Respectfully Submitted:

                      CHESNOFF & SCHONFELD

                      <u>/s/ David Z. Chesnoff</u>
                      DAVID Z. CHESNOFF, ESQ.
                      *Pro Hac Vice*
                      RICHARD A. SCHONFELD, ESQ.
                      California Bar No. 202182
                      520 South Fourth Street
                      Las Vegas, Nevada 89101
                      Telephone: (702)384-5563
                      dzchesnoff@cslawoffice.net
                      rschonfeld@cslawoffice.net
                      Attorneys for Defendant
                      ALEXANDER SMIRNOV

# MEMORANDUM OF POINTS AND AUTHORITIES

### A. Introduction

By way of its Motion, the government seeks to exclude the Defendant from introducing evidence, argument, or questioning at trial related, directly or indirectly, to (1) the Defendant's potential punishment; (2) his pretrial detention status or medical condition involving his eyes; (3) claims that the United States government directed the Defendant to meet with Burisma officials in 2017 or foreign intelligence officials in December 2023; (4) claims that the Defendant's FBI Handling Agent used a "personal phone" to communicate with him; and (5) assertions that the Defendant is "loyal" to the United States or a "servant of the United States." Mr. Smirnov will respond to each aspect of the Motion.

### B. Charged Offenses

The two-count indictment in the present case (ECF No. 1) charges Mr. Smirnov with: 1) Making False Statements toa Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519. As alleged in the indictment, Mr. Smirnov served as a confidential human source ("CHS") for the FBI for at least 10 years, from 2013 through October 2023.

C.  **Argument**

    1.    **The government's Motion should be Denied.**

        i.    **Mr. Smirnov's potential punishment in the event he is convicted and his pretrial detention status**

Preliminary, regarding Mr. Smirnov's potential punishment in the event he is convicted and his pretrial detention status, Mr. Smirnov will comply with the law. Accordingly, there is no need for the government's Motion on these points.

        ii.    **Mr. Smirnov's medical condition involving his eyes**

The government's argument that Mr. Smirnov's medical condition involving his eyes should be excluded because it may result in jury nullification, is pure speculation and not based on the law. His medical condition should not come up in the context of his pre-trial detention, however, his medical condition may be discussed or become relevant, including as to Mr. Smirnov's ability to perceive events related to relevant time frames or in the event Mr. Smirnov were to testify. Thus, the government's Motion on this issue should be denied.

        iii.    **Claims that the United States government directed the Defendant to meet with Burisma officials in 2017 or foreign intelligence officials in December 2023**

Here, the government seeks to exclude evidence that the United States government directed Defendant to meet with Burisma officials in 2017 or foreign intelligence officials in December 2023 because the government argues that there is no evidence to support such. This must be rejected. Preliminarily, it must be noted

that the defense is not required to reveal trial strategy in response to a motion *in limine*. On or about April 13, 2017, a month after receiving Burisma Official 2's business card, the FBI Handler followed up with the Defendant regarding who the Defendant anticipated from Burisma would be at the meeting. USA-06-00000703. This suggests the Handler directed the Defendant to meet with Burisma officials and prompted the Defendant to provide information regarding Burisma.

As far as responding to the government's request for Defendant to provide information as to his trial strategies and analysis of the chronology, it is respectfully submitted that this is improper for a motion in limine. *Compare, e.g., United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 5493839, at *5 (S.D.N.Y. Nov. 22, 2021) ("The government has lesser entitlement to require the defense to disclose the witnesses it would call to negate the government's proof. *Meredith*, 2014 WL 897373, at *1. Nor is the government entitled pretrial to information regarding the specific charges to which the defendant intends to assert an advice-of-counsel defense. "Such disclosure would require the defendant to reveal his trial strategy pretrial." *Id.*); *see also United States v. Meredith*, No. 3:12CR-143-S, 2014 WL 897373, at *1 (W.D. Ky. Mar. 6, 2014); *United States v. Tomison*, 969 F. Supp. 587, 595 (E.D. Cal. 1997) ("Moreover, one would think it clear that there is no public right of access to a criminal defendant's trial strategy."). At best, the government's Motion on this issue is entirely premature.

        **iv.    Claims that the defendant's FBI Handler used a "personal phone" to communicate with him**

The government contends that:

> During the investigation, the prosecution obtained the official phones used by the Handling Agent to communicate with the defendant as well as the defendant's cell phones and iCloud data. The prosecution has produced all discoverable information related to those devices and data to the defense. Based on the investigation, there is no evidence to suggest that any phones (personal or otherwise) were used by the Handling Agent to communicate with the defendant beyond what was produced by the prosecution in discovery.

Gov. Mot. at pp. 6-7. Mr. Smirnov does not intend to introduce any communications that were not produced in discovery by the government, however, the defense is not required to broadcast its strategy. Simply put, there is no legal basis to warrant exclusion. Accordingly, Mr. Smirnov must be given the opportunity to explain—through defense evidence and cross-examination—the specific exculpatory context in which he made the allegedly unlawful communication charged in the Indictment. Stated another way, it would be constitutionally unfair to allow the Handler to take the stand in a vacuum, testify about how, in 2020, Mr. Smirnov lied to him—but then preclude Mr. Smirnov from adducing any evidence (or, engaging in any cross-examination) to set that allegedly unlawful act in its proper context. *See, e.g., Perez v. Madden*, 2019 WL 4670197, at *4 (E.D. Cal. Sept. 25, 2019), report and recommendation adopted sub nom. *Trejo Perez v. Madden*, WL 1154807 (E.D. Cal. Mar. 10, 2020) (noting, in analogous context, that "excluding potentially-

exculpatory evidence simply because the government has presented strong evidence of a defendant's guilt—thereby evaluating only the government's evidence without allowing the defendant to rebut it—can violate the right" . . . to present a complete defense . . . [u]nder the Sixth and Fourteenth Amendments of the Constitution.") (citing *Holmes v. South Carolina*, 547 U.S. 319, 329 (2006) and *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002)). Here, to establish context and completeness, Mr. Smirnov seeks to adduce evidence revealing the unique, somewhat informal manner in which he and his Handler sometimes communicated with each other. The defense evidence will show these two men had a social relationship with each other: they exchanged numerous calls and texts, enjoyed dinners together, and the like— but these interactions were not documented fully (or, at all) in the Handler's FBI reports regarding the CHS under his supervision. More specifically, setting the context for their relationship will explain the Handler's failure to document what the government tries to downplay as the "non-relevant" conversation about the Bidens in 2017—which supports Mr. Smirnov having indeed reported this information to his Handler back in 2017 (or, potentially, in 2016). And finally, such evidence is relevant and necessary to establish that, after having maintained a sterling relationship with Mr. Smirnov for a decade, intermediary steps could have been taken to determine his truthfulness, but were not. Without being able to elicit testimony of Mr. Smirnov's decade of friendly, suspicion-free, interactions with his

7

Handler (including the Handler using his personal phone), the defense will not be able to put into context the FBI's consistent failure to verify the accuracy of his information by using the tools available to it (such as a simple polygraph test). Thus, the government's request to exclude this evidence must be denied.

      **v.    Assertions that the Defendant is "loyal" to the United States or a "servant of the United States."**

The government seeks to exclude "any references, comments, or suggestions, directly or indirectly, at trial about the Defendant's loyalty to the United States, his patriotism, or any characterization of him as a servant to the United States.'" Essentially, the government seeks to try this case in a vacuum and ignore the underlying factual history in this case. For example, the discovery reflects that Mr. Smirnov "consider[ed] himself a person aligned with the goals of law enforcement." Moreover, the Handler repeatedly wrote about how Mr. Smirnov would integrate himself with all different sources on a regular basis (for years and years without any complaint), and that was one of his strengths, regardless of whether he was asked to do it. There is nothing to suggest besides the instant case, that Mr. Smirnov was ever disciplined or sanctioned in his role with the government (notwithstanding that he was not born in the United States). The government's attempt to limit the ability for Mr. Smirnov to present these or similar points (including during examination or argument) should be rejected. It must be noted that *United States v. Hedgcorth*, 873

F.2d 1307 (9th Cir. 1989), cited by the United States is distinguishable. In *Hedgcorth,* the court stated in part:

> Camper first objects to the trial court's decision to foreclose inquiry into his role as an intelligence operative for the United States government and the legitimate use of the Mercenary Association in those operations. The trial court properly held such evidence inadmissible to the extent that it was offered to show that Camper was a "patriotic," "pro-government" individual unlikely to engage in acts of terrorism. Under Fed.R.Evid. 404(a), evidence of a trait of character is inadmissible to show that defendant acted in conformity therewith on a particular occasion. The trial court invited Camper to articulate an alternative theory of relevance. After making and withdrawing an initial proffer, Camper failed to do so. On appeal, Camper argues that his history of involvement with the government is relevant to show his lawful character. However, while a defendant may show a character for lawfulness through opinion or reputation testimony, *see Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948), evidence of specific acts is generally inadmissible. *Id.* at 477, 69 S.Ct. at 219; *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir.1987). *See* Fed.R.Evid. 405. The trial court's limitation of Camper's testimony was not an abuse of discretion.

Here, as detailed in Mr. Smirnov's other filings, he intends to present through permissible "specific incidents" reports that were not only consistently truthful but were also praised and relied upon by the FBI. Moreover, Mr. Smirnov can introduce such evidence to show character for lawfulness through opinion or reputation testimony. At best, the government's Motion is entirely premature and should be denied.

### D. Conclusion

For the foregoing reasons, Mr. Smirnov respectfully requests that this Court deny the Government's Motion *in Limine* to Preclude Irrelevant Factual Issues. See ECF No. 154.

DATED this 15th day of November, 2024.

        Respectfully Submitted:

        CHESNOFF & SCHONFELD

        /s/  David Z. Chesnoff
        DAVID Z. CHESNOFF, ESQ.
        *Pro Hac Vice*
        RICHARD A. SCHONFELD, ESQ.
        California Bar No. 202182
        520 South Fourth Street
        Las Vegas, Nevada 89101
        Telephone: (702)384-5563
        rschonfeld@cslawoffice.net
        dzchesnoff@cslawoffice.net
        Attorneys for Defendant
        ALEXANDER SMIRNOV

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld