**F I L E D**
CLERK, U.S. DISTRICT COURT

11/21/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ASI _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>ALEXANDER SMIRNOV,<br><br>          Defendant. | No. 2:24-cr-00702-HDV<br><br>I N D I C T M E N T<br><br>[26 U.S.C. § 7201: evasion of assessment; 26 U.S.C. § 7206: false or fraudulent tax return] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.      Defendant ALEXANDER SMIRNOV was a resident of Los Angeles, California and a self-described "consultant."

2.      Defendant was born in the U.S.S.R. and was naturalized as a U.S. citizen on July 21, 2015.

3.      Defendant received more than two million dollars in income from multiple sources in 2020, 2021 and 2022.  He used these funds to pay personal expenses for himself and his Domestic Partner, a woman that he has referred to as his girlfriend and at other times his wife,

although they are not married. These expenditures included a $1.4 million Las Vegas condominium, a Bentley, and hundreds of thousands of dollars of clothes, jewelry and accessories for himself and Domestic Partner purchased at high-end retailers in Los Angeles and Las Vegas. Defendant directed the payors to wire the money to

   a. a Bank of America (hereafter "BoA") account ending in 3928 held in the name of Avalon Group Inc. (hereafter "Avalon Account"), which the defendant controlled;

   b. a Wells Fargo account ending in 1356 held in the name of Domestic Partner, ("Domestic Partner Account") which the defendant controlled and into which the Defendant also transferred approximately $1.8 million from the Avalon Account; and

   c. a Wells Fargo account ending in 1299 held in the name of Goldman Investments Group, which the defendant controlled and into which he also transferred $150,000 from the Avalon Account.

4.    Avalon Group Inc. ("Avalon") is the Defendant's alter ego. Avalon was incorporated in the State of Delaware on January 22, 2020. The Defendant identified himself in a State of Delaware Annual Franchise Tax Report as the CEO of Avalon and its only officer and director. According to bank account applications, the Defendant identified himself as the president of Avalon. On a business credit card application dated June 18, 2022, Smirnov listed $60,000 in total annual income and $250,000 in gross business income, identified investment income as the source of his income, and listed his current position as real estate. Despite having an IRS tax filing requirement, Avalon never filed a U.S. Corporation Income Tax Return on Form 1120.

I. <u>Sources of Income</u>

*A. Company 1*

5.     In 2020, 2021 and 2022, Defendant received into the Avalon Account, $1,534,000 from Company 1, including the payments listed below.

| DATE | PAYOR | AMOUNT |
|------|-------|--------|
| 9/22/2020 | Wire — Company 1 | $600,000 |
| 12/14/2020 | Wire — Company 1 | $750,000 |
| 8/31/2021 | Wire — Company 1 | $60,000 |
| 9/29/2021 | Wire — Company 1 | $60,000 |
| 10/27/2021 | Wire — Company 1 | $64,000 |
| **TOTAL** | | **$1,534,000** |

B. *BCG, LLC and Payor 1*

6.     In 2021 and 2022, Defendant received into the Avalon Account, $800,000 from Payor 1 and BCG, LLC ("BCG"), an entity owned and controlled by Payor 1, including the payments listed below.

| DATE | PAYOR | AMOUNT |
|------|-------|--------|
| 12/1/2021 | Wire — BCG | $500,000 |
| 3/30/2022 | Wire — Payor 1 | $250,000 |
| 8/29/2022 | Wire — BCG | $50,000 |
| | **TOTAL** | **$800,000** |

II.   <u>Transfers to the Domestic Partner Wells Fargo Account</u>

7.     In 2020, 2021 and 2022, the Defendant transferred more than $1.8 million from the Avalon Account to the Domestic Partner Account. Specifically,

a.   The Defendant wired the following amounts on the dates listed below:

| DATE | AMOUNT |
|------|--------|
| 12/21/2020 | $740,000 |
| 12/6/2022 | $45,000 |

b.  On the following dates, the Defendant purchased BoA cashiers' checks in the amounts listed below, which were drawn on the Avalon Account and then deposited into the Domestic Partner Account.

| DATE | AMOUNT |
|------|--------|
| 3/6/2020 | $150,000 |
| 6/25/2020 | $99,500 |
| 10/13/2020 | $599,000 |
| 7/29/2021 | $14,500 |
| 8/31/2021 | $50,000 |
| 9/2/2021 | $50,000 |
| 9/7/2021 | $60,000 |
| 10/4/2021 | $59,500 |
| 11/5/2021 | $60,000 |
| 11/22/2021 | $60,000 |
| 11/29/2021 | $45,000 |
| 12/6/2021 | $30,000 |
| 2/24/2022 | $50,000 |
| 3/11/2022 | $150,000 |
| 3/23/2022 | $150,000 |
| 4/5/2022 | $50,000 |
| 5/2/2022 | $150,000 |
| 11/25/2022 | $45,000 |
| **TOTAL** | **$1,872,500** |

8.  The Defendant co-mingled these funds with other funds in the Domestic Partner Account.

III.  <u>Defendant Used His Unreported Income to Pay His and Domestic Partner's Personal Expenses</u>

9.  The Defendant used unreported income he received in the Avalon Account and the Domestic Partner Account to pay various personal expenses for the Defendant and for Domestic Partner.

10.  The largest personal expense was the purchase of a million dollar condominium where he and Domestic Partner lived in Las Vegas in 2022.

4

11.    The second largest single expense occurred on October 11, 2022, when the Defendant leased a Bentley using $122,360 in funds from the Domestic Partner Account.  The Defendant signed the check made out to Bentley Financial Services for the lease:



12.    From 2021 to 2024, more than $400,000 in personal credit card debt on the Defendant's Citi credit card was paid off from funds from the Domestic Partner Account.

IV.  False and Fictitious Tax Returns

13.    In order to conceal the millions of dollars he received in income in 2020, 2021 and 2022, the Defendant created and filed false Forms 1040, U.S. Individual Income Tax Returns, for himself and in Domestic Partner's name that included false and fictitious income and expenses.  The Defendant used a professional tax return preparer to create these returns.  The professional tax return preparer, who worked in Los Angeles, used a tax preparation software to create returns for the Defendant.  The Defendant provided the professional tax return preparer with the income and expense figures included in the returns

5

1  filed on his own behalf and the ones filed in Domestic Partner's name.

2  The Defendant did not provide any documents that substantiated any of

3  these figures.   As a result, the professional tax return preparer

4  refused to sign the returns.   The Defendant told the professional tax

5  return preparer that he would not disclose how he earned any income

6  and that the professional tax return preparer should not inquire about

7  how he earned his income.   The Defendant also instructed the tax return

8  preparer to delete any emails or messages with the Defendant, which

9  the professional tax return preparer did.   The professional tax return

10 preparer advised the Defendant that the Schedule C to an U.S. Individual

11 Income Tax Return was the most audited part of a tax return because it

12 was often used to cheat on taxes and that, as a result, the Defendant

13 should collect and maintain records that supported all the income and

14 expenses he instructed the professional tax return preparer to include

15 on Schedule C.   The Defendant provided income and expense numbers to

16 the professional tax return preparer both for his Form 1040 and the

17 Form 1040 that he submitted in Domestic Partner's name.     The

18 professional tax return preparer never spoke to or interacted with

19 Domestic Partner in 2020, 2021 or 2022.

20     14.     In addition, on or about March 19, 2021, the Defendant

21 prepared and filed a false Form 1120-S, U.S. Income Tax Return for an

22 S Corporation, for Goldman Investments Group in 2020.   This return

23 included false and fictious income and expenses for Goldman Investments

24 Group.  The Defendant did not use the services of the professional tax

25 return preparer in the creation of this return.

26

27

28

*A. Alexander Smirnov Forms 1040*

15.    Defendant filed false Forms 1040, U.S. Individual Income Tax Returns, for himself where he falsely claimed on the Schedule C attached to each return that he received:

    a.    $40,000, in gross receipts for "consulting" in 2020,

    a.    $40,000 in gross receipts for "consulting" in 2021, and

    b.    $50,000 in gross receipts for "consulting" in 2022.

16.    The Defendant did not pay taxes on this fictitious income. Instead, on those Schedules C, he claimed fictitious expenses in the following amounts in the following tax years:

    a.    In 2020, $31,980;

    b.    In 2021, $39,878; and

    c.    In 2022, $26,768.

17.    As a result, the Defendant falsely self-assessed owing the U.S. Treasury:

    a.    In 2020, only $1,133 in taxes; Defendant further reduced his tax obligations by falsely claimed a $600 COVID-19 pandemic rebate for persons who earned $75,000 or less, and $538 in earned income credit(EIC) which he falsely claimed entitled him to a refund of $5;

    b.    In 2021, $0 in taxes; Defendant again further reduced his tax obligations by falsely claiming a $1,400 COVID-19 pandemic rebate for persons who earned less than $80,000, and $19 in EIC, which he then claimed entitled him to a refund in the amount of $1,419; and

    c.    In 2022, only $4,136 in taxes.

*B. Domestic Partner Forms 1040*

18.     To further conceal the millions of dollars in income he received and used to pay his and Domestic Partner's personal expenses, including income deposited into the Domestic Partner Account from which his personal expenses were paid, Defendant also prepared and filed false Forms 1040 in the name of Domestic Partner in 2020, 2021 and 2022 where he falsely claimed on the Schedule C attached to each return that Domestic Partner received:

d.     $40,000, in gross receipts for "consulting" in 2020,

e.     $40,000 in gross receipts for "consulting" in 2021, and

f.     $60,000 in gross receipts for "consulting" in 2022.

19.     Like his own Form 1040, Defendant claimed on those Schedules C similar fictitious expenses in the following amounts in the following tax years:

a.     In 2020, $31,314;

b.     In 2021, $36,689; and

c.     In 2022, $31,553.

20.     As a result, the Defendant falsely assessed that Domestic Partner owed the U.S. Treasury:

a. In 2020, $1,228 in taxes; the Defendant further reduced any tax obligations by falsely claiming that Domestic Partner was entitled to a $538 EIC which he claimed resulted in Domestic Partner owing the U.S. Treasury only $690;

b. In 2021, $468 in taxes; the Defendant again further reduced any tax obligations by falsely claiming that Domestic Partner was entitled to $470 EIC, which he then claimed entitled her to a refund in the amount of $2; and

c. In 2022, $5,933 in taxes.

8

1    *C. Goldman Investments Group Forms 1120*

2    21.    To further conceal the millions of dollars in income he

3    received into a bank account held in the name of Goldman Investments

4    Group, the Defendant filed a Form 1120-S, U.S. Income Tax Return for

5    an S Corporation, in the name of Goldman Investments Group in 2021.

6    The Defendant falsely reported that Goldman had $89,282 in gross sales

7    and $92,300 in total deductions.

8    *D. Defendant Signed the False Returns*

9    22.    In 2021, the Defendant signed his own false return and the

10   false returns he prepared in the name of Domestic Partner and Goldman

11   Investments Group for tax year 2020.

12            a.    2020 Alexander Smirnov Form 1040

13
14   

15

16

17            b.    2020 Domestic Partner Form 1040

18
19   

20

21

22

23            c.    2020 Goldman Investments Group Form 1120

24
25   

26

27

28

9

23.    In 2022, the Defendant signed his own false Form 1040 and signed the false Form 1040 that he prepared for Domestic Partner for tax year 2021:

a.    2021 Alexander Smirnov Form 1040



b.    2021 Domestic Partner Form 1040



[this space intentionally left blank]

10

24.     In 2023, the Defendant prepared a false and fictious Form 1040 for Domestic Partner and while he signed his own false and fictitious Form 1040 his signature did not appear on Domestic Partner's return for tax year 2022:

a.     2022 Alexander Smirnov Form 1040



b.     2022 Domestic Partner Form 1040



[this space intentionally left blank]

11

COUNT ONE

[26 U.S.C. § 7201: 2020 tax evasion]

1.      The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.      On February 10, 2020, the Defendant caused the opening of the Avalon Bank Account, in the name of Avalon Group Inc., which he identified on the account opening document as an "S Corporation."  An individual (hereafter "Bookkeeper") was identified as "president" of Avalon and the Defendant was identified as a "signer" on the account opening document.  Bookkeeper agreed to be listed on the account because the Defendant had told her he wanted to use her services as a bookkeeper for Avalon's business and having signatory authority on the account meant she could access its statements for bookkeeping purposes.  Bookkeeper never accessed any of the funds in the Avalon Account.  Later the Defendant told Bookkeeper that he didn't need her services because Avalon wasn't operating.  On July 21, 2021, the Defendant submitted a revised signature card to Bank of America that removed Bookkeeper, making him the sole signatory on the account.

3.      On August 5, 2020, the Defendant submitted to Wells Fargo an "Addendum to Certificate of Authority," for the Goldman Investments Group account ending in 1299, adding himself as an authorized signer.  The Defendant had previously, on June 27, 2018, caused Domestic Partner's adult son to open the Goldman Investments Group account ending in 1299 at Wells Fargo.

4.      On August 24, 2020, the Defendant entered into a stock purchase agreement with Company 1.  The defendant signed the stock purchase agreement on behalf of "Avalon Group Inc., a Delaware corporation" as its "President" and "Authorized Officer."  Pursuant

12

to that agreement, Company 1 purchased 51% of Avalon's common stock for a cash payment of $1,350,000 "at Closing," and 1,500,000 shares of Company 1 "after closing."

5.      The Defendant never delivered to Company 1 any stock certificates for Avalon because it was his alter ego.

6.      In order to cause Company 1 to purchase 51% of Avalon's common stock, the Defendant represented that Avalon owned valuable intellectual property.  Specifically, in the stock purchase agreement, the Defendant represented that "Avalon has all rights, without encumbrance, to the Best Finex System and Ai Trading Algorithms."  The Defendant never provided Company 1 with access to the "Best Finex System and Ai Trading Algorithms."

7.      Further, in that agreement, the Defendant represented that:

        a.    "Avalon has provided to Company 1 financial statements for the year ended December 31, 2019 (collectively, the "Financial Statements")."  The Defendant did not, in fact, provide any financial statements for Avalon to Company 1 because Avalon had none, as it was the Defendant's alter ego.

        b.    Avalon has "timely filed all tax returns and reports (including information returns and reports) as required by law."  In fact, the Defendant had never filed tax returns on behalf of Avalon Group Inc. because it was his alter ego.

        c.    "No employee, officer, director or shareholder of Avalon or member of his or her immediate family (together, "Related Parties") is indebted to Avalon, nor is Avalon indebted (or committed to make loans or extend or guarantee credit) to the Related Parties in the aggregate in excess of $10,000."  Thus, the money that the

1    Defendant took from Avalon's BoA account ending in 3928 was not the

2    repayment of a loan from him to Avalon.

3              d.   "Avalon has furnished to Company 1 true and complete

4    copies of … (b) the minute books of Avalon and (c) the stock transfer

5    books of Avalon."  The Defendant did not, in fact, provide Company 1

6    with the minute books of Avalon or the stock transfer books of Avalon

7    because neither existed since it was his alter ego.

8    8.    On September 22, 2020, Company 1 wired the Defendant

9    $600,000 and on December 14, 2020, Company 1 wired the Defendant

10   $750,000, for a total of $1.35 million, the amount contained in the

11   stock purchase agreement.  Both wires were made into the Avalon

12   Account at BoA ending in 3928.

13   9.    When the Avalon Account was opened on February 10, 2020,

14   $100 was deposited into it.  On July 9, 2024, the balance in the

15   Avalon Account was $31.12.  The next transaction in the account was

16   when Company 1 wired $600,000 into the account on September 22, 2020,

17   pursuant to the stock purchase agreement.  The Defendant then paid

18   various personal expenses totaling $617 out of the Avalon Account.

19   10.   On October 13, 2020, less than 30 days after he received

20   the $600,000 payment from Company 1, the Defendant withdrew $599,000

21   and purchased a cashier's check in the same amount, which was then

22   deposited in Domestic Partner Account.  Various personal expenses

23   were then paid out of the Wells Fargo account for the Defendant's and

24   Domestic Partner's benefit including property taxes and homeowner's

25   association fees for their home in California at the time, utilities

26   for that home, healthcare costs, personal credit cards and other

27   expenses.  Similarly, on December 21, 2020, less than one week after

28   the Defendant received a $750,000 wire from Company 1 into the Avalon

Account, he wired $740,000 to the Domestic Partner Account.  After December 21, 2020, personal expenses were paid out of the Domestic Partner Account for the benefit of the Defendant and Domestic Partner.

<u>The Charge</u>

11.    From on or about January 1, 2020, through on or about April 21, 2021, in the Central District of California and elsewhere, the Defendant ALEXANDER SMIRNOV, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2020, by committing the following affirmative acts among others:

a.    On March 13, 2021, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Income Tax Return for an S Corporation, Form 1120-S, for Goldman Investments Group, which was submitted to the Internal Revenue Service.

b.    On April 21, 2021, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for himself, which was submitted to the Internal Revenue Service.

c.    On April 21, 2021, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Domestic Partner, which was submitted to the Internal Revenue Service.

In violation of Title 26, United States Code, Section 7201.

COUNT TWO

[26 U.S.C. § 7206: Smirnov false 2020 1040]

1.     The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.     On or about April 21, 2021, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a Form 1040, U.S. Individual Income Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items,

 a.     "total income," in the amount of $8,020 at line 9;

 b.     "Earned Income Credit" in the amount of $538 at line 27; and

 c.     "Recovery rebate credit," in the amount of $600 at line 30.

 In violation of Title 26, United States Code, Section 7206(1).

COUNT THREE

[26 U.S.C. § 7206: Domestic Partner false 2020 1040]

1.    The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.    On or about April 21, 2021, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, on Form 1040, in the name of Domestic Partner, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items:

a.    "total income," in the amount of $8,686 at line 9; and

b.    "earned income credit," in the amount of $538 on line 27.

3.    The return also contained the Defendant's signature, rather than Domestic Partner's:

a.    2020 Alexander Smirnov Form 1040



b.    2020 Domestic Partner Form 1040



In violation of Title 26, United States Code, Section 7206(1).

COUNT FOUR

[26 U.S.C. § 7206: Goldman Investments Group's false 2020 1120-S]

1.      The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.      On or about March 13, 2021, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Income Tax Return for an S Corporation, on Form 1120-S, in the name of Goldman Investments Group, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items:

     a.    "gross receipts or sales," in the amount of $89,282 on line 1a; and

     b.    "Total deductions," in the amount of $92,300 on line 20.

3.    The return also contained the Defendant's signature:

     a.    2020 Alexander Smirnov Form 1040



     b.    2020 Goldman Investments Group Form 1120

In violation of Title 26, United States Code, Section 7206(1).

COUNT FIVE

[26 U.S.C. § 7201: 2021 tax evasion]

1.      The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.      On September 27, 2021, the Defendant submitted a "Business Signature Card and Substitute Form W-9" to BoA for the Avalon Account ending in 3928 where he identified himself as "president" of Avalon.

3.      On August 31, 2021, the Defendant received in the Avalon Account a $60,000 wire from Company 1.

4.      On September 7, 2021, the Defendant purchased a BoA cashiers' check in the amount of $60,000 drawn on the Avalon Account, which was deposited into the Domestic Partner Account.  These funds were co-mingled with other funds in the Domestic Partner Account and used to pay the Defendant's and Domestic Partner's personal expenses.

5.      On September 29, 2021, the Defendant received in the Avalon Account a $60,000 wire from Company 1.

6.      On October 4, 2021, the Defendant purchased a BoA cashiers' check in the amount of $59,500 drawn on the Avalon Account, which was deposited into the Domestic Partner Account.  These funds were co-mingled with other funds in the Domestic Partner Account and used to pay the Defendant's and Domestic Partner's personal expenses.

7.      On October 27, 2021, the Defendant received in the Avalon Account a $64,000 wire from Company 1.

8.      On November 5, 2021, the Defendant purchased a BoA cashiers' check in the amount of $60,000 drawn on the Avalon Account, which was deposited into the Domestic Partner Account.  These funds were co-mingled with other funds in the Domestic Partner Account and used to pay the Defendant's and Domestic Partner's personal expenses.

9.      The Defendant caused Company 1 to make these payments--$60,000 on August 31, 2021, $60,000 on September 29, 2021, and $64,000 on October 27, 2021--on the representation that he would use them to pay marketing expenses associated with Avalon's intellectual property.  The Defendant did not use these funds to pay marketing expenses associated with Avalon's intellectual property.  Instead, the Defendant used these funds to pay personal expenses for himself and Domestic Partner.

10.     On December 1, 2021, BCG LLC wired the Defendant $500,000 into the Avalon Account.  The Defendant used the funds from BCG LLC to pay personal expenses for himself and Domestic Partner.

11.     On the following dates, the Defendant purchased BoA cashiers' checks in the amounts listed below, which were drawn on the Avalon Account and then deposited into the Domestic Partner Account.

| DATE | AMOUNT |
|------|--------|
| 2/24/2022 | $50,000 |
| 3/11/2022 | $150,000 |
| 3/23/2022 | $150,000 |
| **TOTAL** | **$350,000** |

These funds were co-mingled with other funds in the Domestic Partner Account and used to pay the Defendant's and Domestic Partner's personal expenses.

<u>The Charge</u>

12.     From on or about January 1, 2021, through on or about March 23, 2022, in the Central District of California and elsewhere, the Defendant ALEXANDER SMIRNOV, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2021, by committing the following affirmative acts among others:

        a.    On March 23, 2022, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for himself, which was submitted to the Internal Revenue Service.

        b.    On March 23, 2022, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Domestic Partner, which was submitted to the Internal Revenue Service.

    In violation of Title 26, United States Code, Section 7201.

COUNT SIX

[26 U.S.C. § 7206: Smirnov false 2021 1040]

1.    The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.    On or about March 23, 2022, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, on Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items:

      a. "total income," in the amount of $122 at line 9;

      b. "Earned Income Credit in the amount of $19 at line 27a; and

      c. "Recovery rebate credit," in the amount of $1,400 at line 30.

In violation of Title 26, United States Code, Section 7206(1).

COUNT SEVEN

[26 U.S.C. § 7206: Domestic Partner false 2021 1040]

1.    The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.    On or about March 23, 2022, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, on Form 1040, in the name of Domestic Partner, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically,

   a. "total income," in the amount of $3,311 at line 9; and

   b. "Earned income credit" in the amount of $470 at line 27.

3.    The return also contained the Defendant's signature, rather than Domestic Partner's:

   a.    2021 Alexander Smirnov Form 1040



   b.    2021 Domestic Partner Form 1040



In violation of Title 26, United States Code, Section 7206(1).

1                              COUNT EIGHT

2                    [26 U.S.C. § 7201: 2022 tax evasion]

3      1.      The Grand Jury re-alleges paragraphs 1 through 20 of the

4  Introductory Allegations in this Indictment here.

5      2.      On March 30, 2022, the Defendant received in the Avalon

6  Account a $250,000 wire from Payor 1.

7      3.      On August 29, 2022, the Defendant received in the Avalon

8  Account a $50,000 wire from BCG LLC, an entity owned and controlled

9  by Payor 1.

10     4.      Defendant told Payor 1, that the money Payor 1 was wiring

11 to the Avalon Account was to pay marketing, software developers, and

12 payroll in connection with a business venture Payor 1 had with the

13 Defendant.  The Defendant did not use the funds for that purpose and

14 instead used Payor 1's funds to pay various personal expenses of the

15 Defendant and Domestic Partner.

16     5.      On the following dates, the Defendant purchased BoA

17 cashiers' checks in the amounts listed below, which were drawn on the

18 Avalon Account and then deposited into the Domestic Partner Account:

| DATE | AMOUNT |
|---|---|
| 4/5/2022 | $50,000 |
| 4/18/2022 | $150,000 |
| 5/2/2022 | $50,000 |
| 10/18/2022 | $40,000 |
| 11/25/2022 | $45,000 |
| 12/6/2022 | $45,000 |
| **TOTAL** | **$380,000** |

25     6.      On December 6, 2022, the Defendant wired $45,000 from the

26 Avalon Account to the Domestic Partner Account.

27

28

                                    24

7.     The funds the Defendant transferred to the Domestic Partner Account were co-mingled with funds in that account and used to pay the Defendant's and Domestic Partner's personal expenses.

The Charge

8.     From on or about January 1, 2022, through on or about April 14, 2023, in the Central District of California and elsewhere, the Defendant ALEXANDER SMIRNOV, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2022, by committing the following affirmative acts among others:

a.     On April 14, 2023, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for himself, which was submitted to the Internal Revenue Service.

b.     On April 14, 2023, the Defendant prepared and caused to be prepared, and signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Domestic Partner, which was submitted to the Internal Revenue Service.

In violation of Title 26, United States Code, Section 7201.

COUNT NINE

[26 U.S.C. § 7206: Smirnov false 2022 1040]

1.      The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.      On or about April 14, 2023, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, on Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items, "total income," in the amount of $23,232 at line 9.

    In violation of Title 26, United States Code, Section 7206(1).

COUNT TEN

[26 U.S.C. § 7206: Domestic Partner false 2022 1040]

1.    The Grand Jury re-alleges paragraphs 1 through 20 of the Introductory Allegations in this Indictment here.

2.    On or about April 14, 2023, in the Central District of California, and elsewhere, the Defendant ALEXANDER SMIRNOV willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, a U.S. Individual Income Tax Return, on Form 1040, in the name of Domestic Partner, which was verified by a written declaration that it was made under the penalties of perjury and which Defendant did not believe to be true and correct as to every material matter. Specifically, among other items, "total income," in the amount of $28,447 at line 9

In violation of Title 26, United States Code, Section 7206(1).


A TRUE BILL


/S/ _____
Foreperson


DAVID C. WEISS
Special Counsel


LEO J. WISE
Principal Senior Assistant Special
Counsel

DEREK E. HINES
Senior Assistant Special Counsel

United States Department of Justice

27